**EXHIBIT A**



David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff John Lofton, on his own behalf, and behalf of all others similarly situated*

FILED
ALAMEDA COUNTY
NOV 12 2013
CLERK OF THE SUPERIOR COURT
Deputy

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF ALAMEDA**

| | |
|---|---|
| JOHN LOFTON, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON WIRELESS (VAW) LLC, and DOES 1-100, inclusive,<br><br>Defendants. | No. RG12634618<br><br>Honorable George C. Hernandez, Jr.<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT FOR**<br><br>**(1) VIOLATION OF THE INVASION OF PRIVACY ACT;**<br><br>**(2) VIOLATION OF THE UNFAIR COMPETITION LAW; AND**<br><br>**(3) VIOLATION OF THE TCPA.**<br><br>**JURY DEMAND**<br><br>BY FAX<br><br>Complaint Filed: June 14, 2012 |

**THIRD AMENDED CLASS ACTION COMPLAINT**

Plaintiff John Lofton ("Lofton" or "Plaintiff"), makes this complaint against Defendant Verizon Wireless (VAW) LLC ("Verizon" or "Defendant"), and Does 1 to 100 (collectively, "Defendants"). Plaintiff's allegations as to his own actions are based on personal knowledge. The other allegations are based on his counsel's investigation, and information and belief.

AC02677

## Introduction

1. This case arises from commission of unlawful acts by Defendants' agents. Verizon uses third-party vendors to collect alleged consumer debts. These vendors record and/or monitor outgoing telephone calls placed in the course of collecting debts without first disclosing the recording and/or monitoring to consumers or obtaining their consent and permission to do so. These vendors also use predictive dialers to make telephone calls to telephone numbers, often without the prior consent of the persons using those cellular telephone numbers. This practice violates California's Invasion of Privacy Act ("IPA") (specifically, Penal Code section 632.7), the Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA"), and the unfair competition law (Business and Professions Code 17200) ("UCL").

2. Plaintiff has sustained actual damages and lost property in the form of wasted cellular telephone airtime. Plaintiff seeks statutory damages and injunctive relief on his individual and class IPA claim under Penal Code section 637.2, statutory damages and injunctive relief on his individual and class claims under 47 U.S.C. § 227(b)(3), injunctive relief under his individual and class claims under Business and Professions Code 17203, and an award of attorneys' fees under Code of Civil Procedure section 1021.5.

## Parties

3. Plaintiff John Lofton is a natural person residing in Oakland, California. Lofton brings this action on behalf of himself and others similarly situated.

4. Defendant Verizon Wireless (VAW) LLC is a limited liability company which lists its address with the California Secretary of State as One Verizon Way, Basking Ridge, New Jersey 07920.

5. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 100, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named Doe

Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by plaintiff.

6. Plaintiff is informed and believes and based thereon alleges that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

7. All Defendants, including Does 1 through 100, are collectively referred to as "Defendants" or "Verizon."

8. Whenever this complaint refers to any act of Defendants, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

**Jurisdiction and Venue**

9. This Court may exercise jurisdiction over this case and these parties under Code of Civil Procedure § 410.10. This is a court of general jurisdiction, and the amount in controversy exceeds this court's jurisdictional minimum. Plaintiff is a California resident. All the proposed Class members are residents of California at the time this Complaint is filed. All Defendants are citizens of California.

10. Venue in this County is proper under Code of Civil Procedure section 395.5, because Verizon's liability arose in the County of Alameda.

11. All allegations in this complaint are based on information and belief and/or the documents and information currently available and in the hands of Plaintiff's attorneys, and are such that additional evidentiary support and detail will be forthcoming after a reasonable opportunity for further investigation or discovery.

**The Invasion of Privacy Act**

12. The Legislature enacted a comprehensive statutory scheme called the Invasion of Privacy Act (Pen. Code, §§ 630-638) to regulates recording telephone calls, which generally prohibits the same without the informed consent of all parties to the telephone call. The Legislature expressly identified the Act's purpose and set forth its statutory intent:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

(Pen. Code, § 630.) The IPA prohibits monitoring or recording a telephone communication without the consent of the parties to the communication:

> Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment

(Pen. Code, § 632.7(a).)

13. The Legislature provided for a private right of action for actual damages and civil penalties for violations of the IPA as follows:

> (a) Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for [$,5000] . . .
>
> (b) Any person may, in accordance with Chapter 3 (commencing with Section 525) of Title 7 of Part 2 of the Code of Civil Procedure, bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a).
>
> (c) It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages.

(Pen. Code, § 637.2.)

**The Telephone Consumer Protection Act**

14. Congress enacted the Telephone Consumer Protection Act in 1991. The TCPA prohibits certain uses of telecommunication equipment that would interfere with telephone

service subscribers' privacy and/or property rights with respect to their telephone. In particular, the TCPA provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…to any telephone number assigned to a… cellular telephone service…

47 U.S.C. § 227(b)(1)(A).

15. The TCPA provides telephone service subscribers a private right of action for injunctive relief and statutory damages for violations:

> A person or entity may…bring… an action based on a violation of [47 U.S.C.§ 227(b)] to enjoin such a violation, an action to recovery for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or both… If the court finds that the defendant willfully or knowingly violated [47 U.S.C.§ 227(b),] the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the [statutory damages available above].

47 U.S.C. § 227(b)(3).

**Plaintiff's Individual Allegations**

16. Verizon engaged Collecto to assist in the collection of debts on past-due Verizon accounts. Collecto has persistently and repeatedly called Lofton, seeking to contact another individual who is apparently a delinquent subscriber of Verizon. As Lofton has repeatedly explained to Collecto, he is not this person Verizon is seeking, he does not know this person, and the other person does not use the number at which Collecto called Lofton.

17. Lofton is the regular user and carrier of the cellular telephone called by Collecto.

18. Collecto called Lofton on June 4, 2012. After waiting an unspecified amount of time for a live representative, Lofton explained to Collecto's representatives that he was not the person Verizon sought.

19. Collecto called Lofton again on June 7, 2012. Once again after waiting for a live representative to begin talking, Lofton explained to Collecto's representatives that he was not the person Verizon sought. Lofton asked Collecto's representative if Collecto was recording the call. Collecto's representative indicated that Collecto was recording the call. Lofton did not know that Collecto was recording the call prior to that disclosure. Lofton told Collecto's representative to

stop the recording and that he did not consent to be recorded. Collecto's representative stated that she could not stop the recording, and that Collecto recorded all calls for quality assurance purposes. Collecto's representative promised to take Lofton's number off the call list Collecto was using.

20. Lofton never received any notice that Collecto recorded its outgoing calls until he asked during the June 7, 2012 conversation. On the basis of its representative's June 7, 2012 statement, Collecto recorded and/or monitored all of its outgoing calls to Lofton but did not alert or inform Lofton that the calls were being recorded, eavesdropped, monitored and/or tapped until Lofton inquired during the June 7 call.

21. In light of the foregoing circumstances, Lofton had a reasonable expectation that Collecto was not recording, eavesdropping, wiretapping and/or monitoring its outgoing calls to Lofton. Lofton did not consent to Collecto's recording of its outgoing calls to Lofton.

22. Collecto obtained Lofton's cellular telephone via skip-tracing. Collecto did not have prior express consent to call Lofton's cellular telephone via skip-tracing.

23. During all of Collecto's calls, there was a significant pause before Collecto's representative started speaking, which is a telltale sign that Collecto used a predictive dialer to make the call:

> Predictive dialers initiate phone calls while telemarketers are talking to other consumers...In attempting to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, protective dialers may either "hang up" on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as "dead air".

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,2003 *Report and Order*,CG Docket No. 02-278,FCC 03-153, (insert paragraph symbol) 146, 18 FCC Rcd. 14014, 14101, 2003 WL 21517853, *51 (July 3, 2003) *available at* http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*"). Collecto has also testified in other civil actions that it has used predictive dialers. Collecto placed each and every call alleged in this complaint with one or more predictive dialers. Predictive dialers constitute an automatic telephone dialing system; they are capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing

telephone numbers using a random or sequential number generator. Further, no human manually entered Lofton's cellular telephone number when Collecto made the calls alleged below. Rather, the predictive dialer(s) electronically dialed Lofton's cellular telephones in an automated fashion. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(b)(1)(A)(i).

24. Collecto frequently uses skip-tracing services to locate telephone numbers used by consumers whom it calls. These skip-tracing services include LexisNexis and/or CBCInnovis. Collecto does not obtain such numbers from the original creditor. When Collecto obtains cellular numbers from a skip-tracing service, it does not have prior express consent to call those numbers.

25. Verizon has produced a declaration from Craig Battinelli dated July 16, 2012 which avers Verizon engaged a third-party vendor, Collecto, Inc. (doing business as Collection Company of America, CCA, and/or EOS CCA), to assist in the collection of debts on past-due Verizon accounts, and that it was Collecto who made the calls to Plaintiff alleged below.

26. Verizon is vicariously liable for Collecto's violations of the IPA and TCPA alleged above. Collecto acted as Verizon's agent, and violated the IPA and TCPA in the course of such agency.

**Class Certification Allegations**

27. **Class Definition:** Lofton seeks to certify two classes and brings this Complaint against the Defendants, pursuant to Code of Civil Procedure section 382, on behalf of himself and the following classes:

The "IPA Class":

All California residents who

(a) received on their cellular telephone one or more telephone calls from Collecto or any other of third-party vendors which Verizon engaged to collect debts,

(b) in which such persons made a spontaneous oral communication (i.e., excluding any voicemail greeting or similar recording) in response to Defendants or their Agents (such as Collecto),

(c) which communication the Agents recorded or monitored or caused

to be recorded or monitored without or prior to disclosing or alerting the persons that Defendants were recording or monitoring the telephone call.

The "TCPA Class":

All natural persons residing in the United States who

(a) received one or more telephone calls from a predictive dialer, operated by Collecto or any other third party vendors which Verizon engaged to collect debts, to their cellular telephone number,

(b) on or before four years from the date Lofton's original complaint was filed,

(c) where the number was obtained through skip-tracing or captured by Collecto's or other Verizon' agent's equipment from an inbound call, but the person never had an agreement with the creditor .

Excluded from the IPA Class and TCPA Class are Defendants, any person which Verizon's record identify as a current or past subscriber, any entity in which Defendants (or Agents) have a controlling interest or which has a controlling interest in Defendants, and any of the Defendants' agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the classes are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Lofton reserves the right to revise the definition of the classes based on facts learned during discovery. Lofton is a member of the classes that he seeks to represent.

28. The members of the IPA Class and TCPA Class can be reasonably identified using information that is kept by Defendants and/or Agents in the usual course of business and/or is in Defendants' control. The calls in controversy can be identified through, e.g., ministerial review of the recordings at issue.

29. **Class Numerosity:** The exact numbers of members of the classes are unknown and are not available to Plaintiff at this time, but Plaintiff believes the numbers exceed the minimum needed to establish numerosity.

30. **Class Commonality:** Common questions of fact and law exist as to all members of the classes and predominate over the questions affecting only individual members of the classes. Identification of the individuals who qualify as a member of the classes will be sufficient to establish liability to the class member.

31. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the classes. Plaintiff is not different in any relevant way from any other member of the classes, and the relief he seeks is common to the classes.

32. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the classes: his interests do not conflict with their interests. Plaintiffs have retained counsel competent and experienced in complex class actions, and they intend to prosecute this action vigorously.

33. **Predominance and Superiority:** The classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for class members to individually obtain effective relief from Defendant's misconduct. Even if class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

34. **Generally Applicable Policies:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the classes as a whole. The policies of the Defendants challenged herein apply and affect members of the classes uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

35. **Injunctive Relief is Appropriate:** Based on information and belief, Defendants and Agents continue to engage in the improper practices discussed above. Injunctive relief is

necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and class members for which they have no adequate remedy at law.

**Class Allegations**

36. **Verizon's Agents:** This complaint concerns not only Collecto's IPA and TCPA violations, but also the IPA and TCPA violations committed by any of the other third-party vendors which Verizon engaged to collect debts under a contract materially similar to the contract between Verizon and Collecto ("Agents"). The relevant portions of the copy of the contract between Verizon and Collecto are attached to this complaint as Exhibit A.

37. **The Agents Violate the IPA:** The Agents make outgoing calls to consumers and others in the regular course of the work they perform for Verizon. Collecto's policy is to record and/or monitor all of its outgoing calls to consumers in which it is attempting to collect a debt. The Agents have intentionally installed and/or caused to be installed certain recording, wire-tapping and eavesdropping equipment on their telephone lines. In addition or in the alternative, the Agents have configured their telephone systems to record outgoing calls.

38. The Agents do not disclose to the IPA Class members that they are recording at the start of the call – *or at all* – in some of their outgoing calls. In light of the foregoing circumstances, the IPA Class members had a reasonable expectation that the Agents were not recording, eavesdropping, wiretapping and/or monitoring the calls to the IPA Class members. In light of the foregoing circumstances, the IPA Class members did not consent to recording of the calls which they received from Defendants and/or the Agents.

39. **The Agents Violate the TCPA:** The Agents make outgoing calls to consumers and others cellular telephone numbers during the regular course of its business. The Agents place calls to the TCPA Class members using predictive dialers. The predictive dialers are an automatic telephone dialing system; no human manually entered the cellular telephone numbers which agents called at the time it was made.

40. The Agents obtain the TCPA Class members' cellular telephone via skip-tracing. The Agents do not ask for prior consent to call TCPA Class members's cellular telephones via skip tracing. In light of the foregoing circumstances, the TCPA Class members did not consent to

recording of the calls which they received from Defendants and/or the Agents.

41. **Verizon Is Liable for the Agents' Conduct**: Defendants are vicariously liable for the violations of the IPA and TCPA alleged above. Verizon gave the Agents authority to collect debts on past-due Verizon accounts on Verizon's behalf, and the Agents recorded the calls to Plaintiff in the course of collecting debts on Verizon's behalf. Further, Verizon knew that Collecto recorded outgoing calls without disclosing the same. Indeed, as set forth below, Verizon's policy instructed Collecto that it did not need to disclose its recording. The Agents acted as Verizon's agents, and violated the IPA in the course of such agency. In addition or the alternative, Verizon advised and encouraged the Agents' IPA violations.

42. In addition or the alternative, Verizon conspired to violate the IPA with the Agents. Verizon implicitly and/or explicitly agreed that the Agents would record outgoing calls without disclosure by continuing to employ and assign accounts to the Agents.

43. In the addition or the alternative, Verizon assisted and/or aided and abetted the Agents' IPA violations. Verizon paid the Agents in connection with their debt collection activities, and the funds paid to the Agents facilitated, e.g., the purchase and maintanence of the equipment used to record their calls, and the purchase of telephone service used to make the calls. Verizon permitted the Agents to use its name while making debt collection calls. By allowing the Agents to use its name, Verizon facilitated the Agents' collection activities by promoting their ability to initiate and continue more live telephonic conversations and thereby assisted/aided the Agents to record more calls.

44. **Verizon Directed Its Agents to Call Skip-Traced Telephone Numbers:** Verizon's contracts explicitly require the Agents to obtain telephone numbers by skip-tracing, and to then call such numbers. For instance, Verizon's contract with Collecto requires Collecto "initiate a minimum of eight (8) Skip Tracing efforts within the first thirty (30) days of receipt of the Placed Account, and a minimum of two Skip Tracing efforts each month thereafter[.]" (VER0005797.) The contract also requires Collecto to "[i]nitiate a minimum of eight (8) telephone call attempts in the first thirty (30) days, or until customer contact" and to "[i]nitiate a minimum of two (2) telephone attempts every thirty (30) days thereafter until either customer

contact, or end of Placement Period." (VER0005796.)

45. **Verizon Knew that the Agents Recorded Calls Without Disclosing the Recording:** Verizon has produced a declaration from Craig Battinelli dated August 21, 2012 (attached as Exhibit B) which avers that Verizon's policy is to "disclose immediately after identifying themselves on a call that the call may be monitored or recorded for quality purposes" and that this policy "is expressed to third-party vendors of Verizon Wireless that assist in the collection of debts on past-due Verizon Wireless accounts," including Collecto and the other Agents. (VER0005815.) In fact, the written policy authenticated in the August Battinelli declaration provides that certain calls "may be made without disclosure" of the recording, such as calls where a non-subscriber "answers the call and advises it is a wrong number." (VER0005817-18.)

46. There is no rational reason for Verizon to express its "disclosure policy" is to the Agents unless the Agents recorded their outgoing telephone calls in the regular course of business. The only reasonable inferences from the August Battinelli declaration is that (1) Verizon knew the Agents were recording outgoing telephone calls, and that (2) Verizon knew that the Agents did not disclose such recording in every outgoing telephone call to non-subscribers.

47. **Verizon Controlled the Agents' Communications with Class Members:** Under its contracts with Collecto and the Agents, Verizon tightly controlled the Agents' operations. As the August Battinelli declaration indicates, Verizon dictated how and when the Agents would disclose that they recorded outgoing telephone calls through the "disclosure policy" alleged above. Under the contracts, the Agents agreed to follow any procedures that Verizon provided for authenticating the identity of, e.g., the person receiving a call before discussing account information. (VER000053.) Verizon also required the Agents to

> furnish to Verizon for ***its review and approval*** all correspondence, telegrams, and other communications that it intends to utilize with respect to the collection of debts owing to Verizon, and any changes to these that may be contemplated in the future.

(VER0005795 [emphasis added]. See also VER0005791.)

48. **Verizon Controlled the Agents' Personnel:** Further, the contracts provided Verizon the right to demand that "at any time and for any reason that specific employees, subcontractors, and agents of [the Agents] be removed from" providing services for Verizon. (VER0005762.) Verizon also had the right to approve and disapprove any of the Agents' subcontractors. (VER0005759.) Also, the contracts required that the Agents' personnel who were assigned to collect Verizon accounts "do so exclusively for Verizon." (VER0005793.)

49. **Verizon Controlled the Agents' Operations:** Verizon's control over the Agents extended to other areas. Under the contracts, the Agents agreed (1) to conduct background checks and drug tests on all their employees (VER0005746); (2) not to store or access Verizon's confidential information outside the United States without authorization (VER0005752); and (3) to return data concerning closed Verizon accounts "in a format and media approved by Verizon" (VER0005752; see also VER0005792). Verizon also required the Agents to disclose, assign, and/or license to Verizon

> all notes, designs, models, prototypes, drawings, data storage media, listings, deliverables, technical data, inventions, improvements, discoveries, computer software (including firmware), and other forms of technology or intellectual property made, conceived, developed or actually or constructively reduced to practice in connection with or pursuant to the terms and conditions of [the contracts.]

(VER0005756.) Verizon's contracts also (1) controlled when and how often the Agents would communicate with or attempt to locate subscribers (VER0005796-97); (2) controlled the Agents' authority to settle delinquent accounts with subscribers (VER0005797); and (3) controlled when Agents could litigate against subscribers and prohibited the Agents from threatening to litigate against subscribers (VER0005798).

50. **Verizon Has the Ability to Terminate the Agents' Services Unilaterally:** Under the operative contracts, Verizon has unrestricted ability to unilaterally terminate the Agents' services. The contracts provide Verizon the right to terminate the Agents' services on thirty (30) days' written notice of "a material breach or default of any of the terms, conditions or covenants" of contracts. (VER0005754.) The contracts require the Agents to provide services "at the highest professional standards in the field, to Verizon's satisfaction." (VER0005747.) In

addition, the contracts provide that "any dispute or controversy relating to whether any Services meet the highest level of performance in the industry shall be decided by Verizon in its reasonable discretion and its decision shall be final, conclusive and binding." (*Ibid.*)

51. The contracts call for the Agents to perform the specific tasks identified in "Authorization Letters" provided by Verizon. (*Ibid.*) However, the contracts also provide that "Authorization Letters may be withdrawn at any time in writing by Verizon Wireless, and may be made effective immediately. (VER0005792.) In addition to the foregoing, the contracts provided Verizon the ability to terminate an Agent's services by withdrawing all pending Authorization Letters from the Agent.

52. Likewise, the contracts provide that Agents collect on "Placed Accounts." "Placed Accounts" mean "any past due and/or charged-off Customer account which Verizon, ***in its sole discretion***, may place with Supplier to enact telephone collections and dunning notices, Skip Tracing, or other activity on behalf of Verizon pursuant to this Agreement." (VER0005745 [emphasis added].) Moreover, the contracts provide that "Verizon is under no obligation to refer any particular type, age or minimum number of Customer accounts to Supplier." (*Ibid.*) In addition to the foregoing, the contracts provided Verizon the ability to terminate an Agent's services by no longer placing any accounts with the Agent.

53. **Apparent Agency:** When Collecto's representatives called Plaintiff and the other Class members, they stated they were "with Verizon." Further, Collecto called Plaintiff from the telephone number (877) 208-4175. Calls to (877) 208-4175 are answered by an automated voice that says "Thank you for calling Verizon Wireless." In contracts with Verizon, Verizon has explicitly authorized Collecto and the other Agents to use Verizon's trade names: "Supplier may use the names . . . "Verizon Wireless" . . . solely for the purpose of identifying a creditor (i) in communications with a Debtor with respect to a Placed Account in order to collect amounts outstanding thereon . . ." (VER0005757.) Defendants and the Agents called Class members on their cellular telephones.

54. In addition or in the alternative to the foregoing, Plaintiff alleges that the Agents are "ostensible agents" under Civil Code section 2300. Plaintiff and the Class members

reasonably believed that the Agent representatives who called them were employed by Verizon. Verizon is liable for the Agents' IPA violations because it knew that the Agents used Verizon's name when calling Class members, but did nothing to prevent Class members from believing that the Agents were Verizon's employees (and indeed expressly authorized the Agents to use Verizon's name).

**FIRST CAUSE OF ACTION:**
**Violation of IPA Against All Defendants**
**by Plaintiff Individually and on Behalf of the IPA Class**

55. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the IPA Class Members.

56. The Agents configured their telephone system to record all of their telephone calls. In addition or in the alternative, the Agents installed and/or caused to be installed certain wiretapping, eavesdropping, monitoring and/or recording equipment on all or many of their telephone lines.

57. The Agents' policy is to use this equipment (including their telephone systems) to record and/or monitor their outgoing telephone calls. The Agents in fact used this equipment to record and/or monitor their outgoing telephone calls to the IPA Class members' cellular telephones.

58. The Agents did not disclose that they were recording and/or monitoring its outgoing telephone calls to the IPA Class members prior to recording and/or monitoring such telephone calls. In light of the foregoing allegations, Lofton and the other members of the IPA Class had an objectively reasonable expectation that the Agents were not recording, eavesdropping, wiretapping and/or monitoring these outgoing calls which the Agents initiated to Lofton and the other members of the IPA Class.

59. Defendants' recording and/or monitoring of the outgoing telephone calls to IPAClass members' cellular telephones without their consent violated California Penal Code section 632.7(a).

60. Defendants are vicariously liable for the violations of the IPA alleged above.

Verizon gave the Agents authority to collect of debts on past-due Verizon accounts on Verizon's behalf, and the Agents recorded the calls to Plaintiff in the course of collecting debts on Verizon's behalf. The Agents acted as Verizon's agents, and violated the IPA in the course of such agency. On information and belief as alleged more specifically above, Verizon knows that the Agents record outgoing calls to cellular telephones without the recipients' consent and does not take action to stop these practices.

61. Lofton, on his own behalf, and behalf of the other IPA Class members, seeks to recover statutory damages, as well as injunctive and equitable relief under Penal Code section 637.2. Lofton brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Lofton is therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

**SECOND CAUSE OF ACTION:**
**Violation of the TCPA Against All Defendants by Plaintiff Individually and on behalf of the TCPA Class**

62. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the TCPA Class.

63. The Agents make outgoing calls to consumers and others in the regular course of its business. The Agents called Lofton and class members' cellular telephone numbers.

64. The Agents placed calls to Lofton and class members using predictive dialers. The predictive dialers are an automatic telephone dialing system; no human manually entered the cellular telephone numbers which the agents called at the time the call was made. Rather, the predictive dialers electronically dialed the TCPA Class members' cellular telephones in an automated fashion. The predictive dialers are capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C.§ 227(a)(1).

65. The Agents do not and did not obtain legally effective prior express consent to call the TCPA Class members cellular telephone numbers. Agents frequently uses skip tracing

services to identify TCPA Class members' cellular telephone numbers. Agents also obtained TCPA Class members' cellular telephone numbers by logging the originating number for any incoming calls. When agents obtain TCPA Class members' cellular telephone number in this manner, it does not have legally effective prior express consent to call those numbers.

66. Defendants are vicariously liable for the violations of the TCPA alleged above. Verizon gave the Agents authority to collect of debts on past-due Verizon accounts on Verizon's behalf, and the Agents used predictive dialers to call Plaintiff in the course of collecting debts on Verizon's behalf. The Agents acted as Verizon's agents, and violated the TCPA in the course of such agency. Agents and through vicarious liability defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by placing telephone calls to Lofton and other members of the class (1) that were automatically dialed by the agents telephone system; (2) made to a cellular telephone number; (3) which number the agents obtained from a skip-tracing service, and not as the result of the TCPA Class members' transaction with a creditor or alleged creditor.

67. Lofton, on his own behalf, and behalf of the other TCPA Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(b)(3), against Defendants. Lofton brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Lofton is therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

**THIRD CAUSE OF ACTION:**
**Violation of the UCL Against All Defendants by Plaintiff Individually and on behalf of the IPA and/or TCPA Class**

68. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the IPA and TCPA Class Members.

69. The Agents' conduct violates California Penal Code section 632.7(a) and is therefore unlawful under the UCL. Defendants are vicariously liable for the Agents' conduct under the UCL.

70. The Agents' conduct violates 47 U.S.C. § 227(b)(1)(A)(iii) and is therefore

unlawful under the UCL. Defendants are vicariously liable for the Agents' conduct under the UCL.

71. Plaintiff and the other IPA Class members and TCPA Class members have suffered injury in fact and lost property during the course of the foregoing UCL violations in the form of wasted cellular telephone airtime. Lofton, on his own behalf, and on behalf of the other Class members, seeks injunctive and equitable relief under Business & Professions Code § 17203, and to recover the costs of the action (including attorneys' fees) under Code of Civil Procedure section 1021.5.

WHEREFORE, Plaintiff John Lofton prays that the Court enter judgment and orders in his favor and against Verizon and Does 1 to 100 as follows:

a. An order certifying the classes, directing that this case proceed as a class action, and appointing Lofton and his counsel to represent the IPA Class and the TCPA Class;

b. Judgment against Defendants, and in favor of Lofton and the other IPA Class members in the amount of $5,000 per violation of the IPA as proven at trial;

c. Judgment against Defendants, and in favor of Lofton and the other TCPA Class members in the amount of $1,500 per violation of the TCPA to be proven at trial;

d. Equitable and injunctive relief, including injunctions enjoining further violations of the IPA, the TCPA, and the UCL;

e. An order granting costs and attorneys' fees; and

f. Such other and further relief as this Court may deem appropriate.

Dated: November 5, 2013

By: ______________________

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)

Case4:13-cv-05665-YGR Document1-1 Filed12/06/13 Page20 of 54

ep@eplaw.us

*Attorneys for Plaintiff John Lofton, on his own behalf, and behalf of all others similarly situated*

Third Amended Class Action Complaint 19 No. RG12634618

AC02695

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: November 5, 2013

By: ______________________

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff John Lofton, on his own behalf, and behalf of all others similarly situated*



Case4:13-cv-05665-YGR Document1-1 Filed12/06/13 Page22 of 54

# Exhibit A

Exhibits to Second Amended Class Action Complaint No. RG12634618

AC02697

Case4:13-cv-05665-YGR Document1-1 Filed12/06/13 Page23 of 54

MA-000850-2007

# Agreement for Collection Agency Services

Between

Verizon Services Corp.

And

Collection Company of America

Collection Company of America
Agreement No. MA-000850-2007
Verizon Confidential

VER0005741

AC02698

Table of Contents

1. PARTIES ..... 1
2. TERM ..... 1
3. DEFINITIONS ..... 1
4. SCOPE ..... 2
5. AUTHORIZATION LETTERS ..... 4
6. BILLING, INVOICING AND PAYMENT ..... 5
7. RECORDS AND REPORTS ..... 6
8. ACCEPTANCE ..... 8
9. WARRANTIES ..... 8
10. TERMINATION ..... 11
11. INFRINGEMENT ..... 12
12. CONFIDENTIAL INFORMATION ..... 12
13. VERIZON PROPERTY AND TRADEMARKS ..... 13
14. PUBLICITY AND DISCLOSURE ..... 14
15. COMPLIANCE WITH LAWS ..... 15
16. FORCE MAJEURE ..... 15
17. ASSIGNMENT ..... 16
18. SUBCONTRACTING ..... 16
19. TAXES ..... 17
20. PERMITS ..... 18
21. PLANT AND WORK RULES AND RIGHT OF ACCESS ..... 18
22. INDEMNIFICATION ..... 19
23. INSURANCE ..... 20
24. RELATIONSHIP OF PARTIES ..... 21
25. NOTICES ..... 22
26. NONWAIVER ..... 22
27. SEVERABILITY ..... 23
28. LIMITATION OF LIABILITY ..... 23
29. DISPUTE RESOLUTION ..... 23
30. ORDER OF PRECEDENCE ..... 24
31. SECTION HEADINGS ..... 24
32. SURVIVAL OF OBLIGATIONS ..... 24
33. CHOICE OF LAW AND JURISDICTION ..... 24



Case4:13-cv-05665-YGR Document1-1 Filed12/06/13 Page25 of 54

34. GIFTS AND GRATUITIES AND CONFLICTS OF INTEREST .......... 25
35. ENTIRE AGREEMENT .......... 25
36. SIGNATURES .......... 25
VERIZON BUSINESS .......... 26
SCOPE OF SERVICES .......... 26
VERIZON TELECOM .......... 36
SCOPE OF SERVICES .......... 36
VERIZON WIRELESS .......... 48
SCOPE OF SERVICES .......... 48
EXHIBIT A-1 FORM AUTHORIZATION LETTER FOR OUTSIDE COLLECTION AGENCIES .......... 56
EXHIBIT A-1 FORM AUTHORIZATION LETTER FOR OUTSIDE COLLECTION AGENCIES .......... 58
EXHIBIT B NON-DISCLOSURE .......... 61
EXHIBIT C COMPLIANCE WITH MINORITY, WOMAN-OWNED, AND SERVICE-DISABLED VETERAN BUSINESS ENTERPRISES (MWDVBE) UTILIZATION .......... 63
EXHIBIT D CUSTOMER COMPLAINT LOG .......... 68

Collection Company of America
Agreement No. MA-000850-2007
Verizon Confidential

VER0005743

AC02700

# AGREEMENT FOR COLLECTION AGENCY SERVICES

## 1. PARTIES

This Agreement for Collection Agency Services ("Agreement") is made between Collection Company of America, with offices at 700 Longwater Drive, Norwell, MA 62061 ("Supplier"), and Verizon Services Corp. ("Verizon"), a Delaware corporation, having an office at One Verizon Way, Basking Ridge, New Jersey 07920, on behalf of itself and for the benefit of its Affiliates, hereinafter defined, each of Verizon and Supplier a Party and together the Parties hereto.

## 2. TERM

This Agreement shall become effective when fully executed by both Parties hereto (the "Effective Date"), and the term of the Agreement shall commence on September 1, 2007 and shall continue in effect until August 31, 2008 (the "Term").

This Agreement shall automatically renew for subsequent one (1) year periods at the end of the Term unless written notice of intent not to renew is given by one Party to the other sixty (60) days prior to the end of the initial or any renewal term.

## 3. DEFINITIONS

3.1 The terms defined in this Section shall have the meanings set forth below whenever they appear in this Agreement, unless the context in which they are used clearly requires a different meaning or a different definition is described for a particular Section or provision:

3.1.1 "Affiliate(s)" shall mean, at any time, and with respect to any corporation, partnership, person or other entity, any other corporation, partnership, person or other entity that at such time directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such first corporation, partnership, person or other entity. As used in this definition, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a corporation, partnership, person or other entity, whether through the ownership of voting securities, or by contract or otherwise. An Affiliate that issues an Order hereunder shall be a purchaser and may enforce the terms and conditions of this Agreement with respect to any Product or Service purchased by such Affiliate as though it was a direct signatory to the Agreement.

3.1.2 "Supplier Personnel" means Supplier, any Supplier employees, agents, and servants, and any subcontractors supplied hereunder or utilized by Supplier to perform services for Verizon.

3.1.3 "Customer" or "Debtor" means the Verizon customer account placed with Supplier by Verizon for the purposes of collecting funds due.

3.1.4 "Placed Account" means any past due and/or charged-off Customer account which Verizon, in its sole discretion, may place with Supplier to enact telephone collections and dunning notices, Skip Tracing, or other activity on behalf of Verizon pursuant to this Agreement.

3.1.5 "Recovery" or "Recoveries" means the total amount collected for each Placed Account.

3.1.6 "Service" or "Services" shall mean the collections services specified in Exhibit A ("Scope of Services") of this Agreement.

3.1.7 "Settlement Authority" means the authority, if and as specifically designated by Verizon in writing, for Supplier to negotiate payment on a reduced account balance without further approval from Verizon.

3.1.8 "Skip Tracing" means the act of locating Customers through a search procedure whereby updated and/or new contact information is obtained.

## 4. SCOPE

4.1 Supplier shall perform, on a nonexclusive basis, those Services on Placed Accounts, as set forth in this Agreement, including Exhibit A ("Scope of Services") as further set forth in the applicable Authorization Letter issued pursuant to Section 5.1 herein. Verizon is under no obligation to refer any particular type, age or minimum number of Customer accounts to Supplier.

4.2 Services under this Agreement will be performed under Supplier's name only. Supplier may utilize specified Verizon-owned trade names or brand names only as set forth in Section 13.3 ("Trademarks and Trade Names") unless otherwise specified in the applicable Authorization Letter or Scope of Services.

4.3 Collections Services

4.3.1 Supplier must undertake promptly, through proper and lawful means, the collection of accounts referred by Verizon. Supplier Personnel must at all times act in compliance with all laws and regulations applicable to Supplier's business or the performance of the Services, as set forth in Section 15 ("Compliance with Laws"). Supplier Personnel may not, under any circumstance, use any threats, intimidation, or harassment of a Debtor in the collection of accounts or violate any applicable law or regulation. Verizon is not liable for any costs or expenses incurred by Supplier or Supplier's Personnel resulting from fines, penalties, suits, or the violation of any law or regulation arising as a result of Supplier's collection efforts on behalf of Verizon, or for any other cost or expense not specifically

approved by Verizon in writing. Supplier must notify Verizon in writing immediately of any imposed fines, penalties, suits, or alleged violation of any law or regulation in relation to the performance of this Agreement.

4.3.2 Supplier shall have the capability to accept all payment methods for funds recovered, including check, credit card, debit card, check by phone, electronic payment and/or other means as specifically set forth in the applicable Authorization Letter and as specifically approved by Verizon therein. Supplier shall not assess any additional fee for any payment method without the prior written approval of Verizon. Any such fee assessed must be clearly identified to the Customer as a fee owed to the Supplier, rather than a fee owed to Verizon.

4.4 Supplier must have sufficient qualified personnel to meet its contractual obligations.

4.5 Supplier must provide day-to-day management and supervision of the Services.

4.6 Supplier, at its expense, must monitor the current status of all accounts referred to Supplier for collection.

4.7 Background Checks

4.7.1 For each of the employees that Supplier wishes to assign to perform Services for Verizon, Supplier shall certify to Verizon that it has conducted (or used an agency to conduct) criminal history checking, drug testing, and verification of education, employment history, Social Security Number, as described herein (collectively referred to as "background checking"). For purposes of this Section, "employee" shall include Supplier's employees and any of Supplier's contract personnel.

4.7.1.1 The criminal history check shall consist, at minimum, of a federal and state check for felony and misdemeanor criminal convictions in all counties of the state(s) where the assigned employee has resided, has been employed, or has attended school in the immediately preceding seven (7) years, and a check of U.S. Government Specially Designated National and export denial lists. Statewide county searches shall be performed in all states where such search mechanism is available without requiring specialized data (such as fingerprints or DNA), and the National Criminal File database shall also be searched. Reports are to be comprehensive and shall include pending felony and misdemeanor charges.

4.7.1.2 Drug testing shall consist of a ten-panel urine analysis drug screen used to test for the presence of marijuana, cocaine, amphetamines, PCP, opiates/metabolites, barbiturates, benzodiazepines, propoxyphene, methadone and methaqualone. All specimens shall be tested at Department of Health and Human Services (DHHS)/Substance Abuse

Mental Health Services Administration (SAMHSA)-certified labs, and the screening service shall include confirmation of all positive test results.

4.7.1.3 The highest diploma, degree or certificate earned shall be verified.

4.7.1.4 Employment history shall be verified for at least the previous seven (7) years of employment and military service, or less if the employee was a full-time student during that period.

4.7.1.5 The name to which employee's Social Security Number is attributed shall be verified.

4.7.2   Supplier shall secure from each employee who provides Services to Verizon such employee's written consent to perform the background checking in Section 1(a)-(e) and to disclose the results thereof to Verizon upon Verizon's request and shall provide such results and written consent to Verizon upon request from Verizon.

4.7.3   Supplier shall not assign any employee to provide Services to Verizon if such employee:

4.7.3.1 has been convicted of a felony or misdemeanor, or for whom a felony or misdemeanor charge is currently pending, or is on a U.S. Government Specially Designated National or export denial list.  The foregoing shall not apply to a minor traffic violation, i.e., a moving traffic violation other than reckless driving, hit and run, driving to endanger, vehicular homicide or other criminal offense involving gross negligence, recklessness, intentional or willful misconduct while operating a motor vehicle; or

4.7.3.2 has a confirmed positive test result from the drug screening in Section 1(b) above.

4.7.4   Supplier shall certify to Verizon that Supplier has caused the foregoing background checking to be performed on each employee currently assigned to provide Service for Verizon; further, Supplier shall thereafter certify to having met the foregoing requirements upon assigning any additional employees to perform Services for Verizon.

## 5.   AUTHORIZATION LETTERS

5.1   Supplier shall furnish Services as specified in Letters of Authorization issued from time to time by Verizon and accepted by Supplier in the form appended hereto as Exhibit A-1 ("Authorization Letter"), setting forth in detail the specific tasks to be performed and the time frame in which they are to be performed or which incorporates the applicable Scope of Services.  Services shall be ordered only pursuant to Authorization Letters issued pursuant to this Section 5.1. Verizon shall appoint a Project Leader in each Authorization

U.S. Trust Territory of the Pacific Islands (Republic of Palau, the Commonwealth of the Northern Mariana Islands, Republic of the Marshall Islands, or Federated States of Micronesia), Laos, Cambodia (Kampuchea), Taiwan, Burma, Thailand, Malaysia, Indonesia, Singapore, Brunei, Macao, Hong Kong, Fiji, Tonga, Kiribati, Tuvalu, or Nauru); Subcontinent Asian Americans (persons with origins from India, Pakistan, Bangladesh, Sri Lanka, Bhutan, the Maldives Islands or Nepal); Native Americans (American Indians, Eskimos, Aleuts, and Native Hawaiians); and members of other groups designated by the U. S. Small Business Administration (SBA) as minorities.

7.5.5 "Women-owned Business Enterprise" means a business concern which is Owned and Controlled by a woman or women. Such women's business enterprise shall further be classified as either minority or non-minority women-owned business, depending upon the greater portion of ownership.

7.5.6 "Service-disabled Veteran-owned Business Enterprise" means a business concern that is Owned by one or more service-disabled veterans or, in the case of a veteran with a permanent and severe disability, the spouse or permanent caregiver of such veteran.

7.5.7 "Service-disabled veteran" means a veteran, as defined in 38 U.S.C. §101(2), with a disability that is service-connected as defined in 38 U.S.C. §101(16).

7.5.8 "Persons with Disabilities-owned Business Enterprise" means a business concern that is Owned and Controlled by an owner or owners who are disabled as defined by the Americans with Disabilities Act (ADA). This classification can also include agencies that employ fifty-one percent (51%) or more disabled persons.

7.6 If the Supplier is not itself a Certified Minority, Woman, Service Disabled Veteran and Person with Disability Owned and Controlled Business Enterprises (MWDVBE) as set forth in Section 7.5 above, then with respect to the Supplier's compliance (as the Primary Supplier) with Minority, Woman, Service Disabled Veteran and Person with Disability-Owned Business Enterprises (MWDVBE) Utilization, Supplier agrees to provide opportunities for Certified MWDVBE suppliers and meet the requirements set forth in Exhibit C, Compliance with Minority, Woman, Service-Disabled Veteran and Person with Disability-Owned Business Enterprises (MWDVBE) Utilization.

## 8. ACCEPTANCE

All Services performed under this Agreement shall be performed to the satisfaction of Verizon. The acceptance of such Services by Verizon shall be a condition precedent to the right of Supplier to receive payment in full for such Services.

## 9. WARRANTIES

9.1 Supplier represents and warrants that:

9.1.1 It is a duly licensed collection agency and agrees to accept for collection unpaid

Customer accounts as Verizon may, at its sole discretion, refer for collection.

9.1.2 In performing Services, Supplier will strictly comply with the descriptions and representations as to the Services (including, but not limited to, performance capabilities, accuracy, completeness, and requirements) set forth herein and in the applicable Authorization Letter or Scope of Services. Supplier also warrants that its employees and any subcontractors will perform Services on time and in strict accordance with all applicable federal, state and local laws, codes, ordinances, orders, rules and regulations as set forth in Section 15 ("Compliance with Laws"). Supplier further warrants that all persons conducting or assisting in an investigation on behalf of Verizon, whether employed by Supplier or by a subcontractor, shall act ethically and shall not make any false statements to obtain information.

9.1.3 All Services furnished by Supplier shall be performed (i) in a diligent, efficient and skillful manner, (ii) to the best of Supplier's ability and (iii) at the highest professional standards in the field, to Verizon's satisfaction. Any substantial interruption or degradation of Service, as determined by Verizon, will be considered below the highest level of performance in the industry. Notwithstanding anything to the contrary contained in this Agreement, any dispute or controversy relating to whether any Services meet the highest level of performance in the industry shall be decided by Verizon in its reasonable discretion and its decision shall be final, conclusive and binding.

9.2 Offshore Restrictions

9.2.1 Except with Verizon's advance written consent, in no event shall Confidential Information regarding or pertaining to Verizon's systems, infrastructure, employees, or customers be stored, transmitted, or accessed at, in, through, or from a site located outside the United States nor made available to any person who is located outside the United States unless such Confidential Information relates solely, directly and independently (i) to Verizon employees or customers located outside of the United States, or (ii) to voice or data communications of Verizon or its customers that originate and terminate outside the United States, or (iii) to Verizon systems and/or infrastructure dedicated to the provision of Verizon's voice or data services outside the United States or otherwise necessary for storage or access outside the United States in connection with security, back-up, disaster recovery, or related purposes as required by Verizon services specifications, security and/or technical requirements.

9.2.2 Notwithstanding subsection 9.2.1 above, unless Supplier secures Verizon Wireless' further, prior written consent, in no event (i) shall Supplier provide, direct, control, supervise, or manage any voice or data communication with regard to Verizon Wireless customers that occurs between United States locations (or the United States portion of any international communication that may originate or terminate within the United States) from a location outside of the United States, nor (ii) shall Verizon Wireless Customer Data be stored,

transmitted, or accessed, from, at, in, or through a site located outside the United Stated without Verizon Wireless prior written consent. "Verizon Wireless Customer Data" shall include (a) any subscriber information, including, without limitation, name, address, telephone number or other personal information of the Verizon Wireless subscriber; (b) any call-associated data, including without limitation, the telephone number, internet address or other similar identifying designator associated with a communication; (c) any billing records; (d) the time, date, size, duration of a communication or physical location of equipment used in connection with a communication; or (e) the content of any Verizon Wireless customer communication.

9.2.3 Nothing in this Section is intended to nor shall it operate in derogation of any requirement imposed on Verizon by a governmental body or agency outside the United States.

9.3 Most Favored Customer

9.3.1 Supplier represents and warrants that all of the prices, warranties, benefits, terms and conditions granted to Verizon by Supplier hereunder are now and shall be, during the Term of this Agreement and any extensions thereof, no less favorable than the prices, warranties, benefits, terms and conditions granted to Supplier's other commercial customers under like or similar circumstances.

9.3.2 If at any time during the Term of this Agreement or any extension thereof, Supplier shall offer more favorable prices, warranties, benefits, terms, or conditions for substantially the same or similar Services as those provided hereunder, then:

9.3.2.1 Supplier shall, within thirty (30) days after the effective date of such offering, notify Verizon of such fact in accordance with Section 25 ("Notices") hereof, and offer Verizon the more favorable offering and negotiate any additional differentiating factors; and

9.3.2.2 This Agreement and all applicable Authorization Letters shall be deemed to be automatically amended, effective retroactively to the effective date of the more favorable offering, and Supplier shall provide the same prices, warranties, benefits, terms and conditions to Verizon; and

9.3.2.3 Verizon shall have the right to decline to accept the offering, in which event such automatic amendment shall be deemed to be void.

9.3.3 Supplier's compliance with this clause shall be subject, at Verizon's option, to independent verification in accordance with the Section 7 ("Records and Reports").

9.4 All representations, warranties and covenants of Supplier contained in this section shall continue for the Term of this Agreement and shall survive its termination.

## 10. TERMINATION

10.1 Verizon may terminate this Agreement or any Authorization Letter issued hereunder without cause, effective immediately, upon written notice to Supplier and, in such event, Supplier shall receive commissions only for Services that are fully completed in accordance with this Agreement on or before the date of termination.

10.2 This Agreement may be terminated, by written notice only, as follows:

10.2.1 By Verizon for a material breach or default of any of the terms, conditions or covenants of this Agreement by Supplier, provided that such termination may be made only following the expiration of a thirty-day (30) period during which Supplier has failed to cure such breach after having been given written notice of such breach.

10.2.2 By Verizon, effective immediately, upon written notice to Supplier, if any of the following events occurs:

10.2.2.1 Supplier violates the terms of Section 4.3 ("Scope"), Section 12 "Confidential Information"), Section 15 ("Compliance with Laws") and/or Section 20 ("Permits");

10.2.2.2 Supplier files a voluntary petition in bankruptcy;

10.2.2.3 Supplier is adjudged bankrupt;

10.2.2.4 A court assumes jurisdiction of the assets of Supplier under a federal reorganization act;

10.2.2.5 A trustee or receiver is appointed by a court for all or a substantial portion of the assets of Supplier;

10.2.2.6 Supplier becomes insolvent or suspends its business;

10.2.2.7 Supplier makes an assignment of its assets for the benefit of its creditors except as required in the ordinary course of business; or

10.2.2.8 The identity of Supplier's business is materially changed by sale of its business, transfer of control of its outstanding stock, merger or otherwise;

10.3 Termination of this Agreement shall not affect any Authorization Letter placed prior to the date of termination unless otherwise stated in the notice of termination or applicable Authorization Letter.

10.4 The foregoing rights are in addition to, and not in limitation of, any other remedy Verizon may have at law or equity.

## 11. INFRINGEMENT

11.1 Supplier shall indemnify, defend and hold harmless Verizon, its parents, subsidiaries and Affiliates, and its and their respective directors, officers, partners, employees, agents, successors and assigns ("Indemnified Parties") from any claims, demands, lawsuits, liabilities, expenses (including, but not limited to, reasonable fees and disbursements of counsel and court costs), judgments, settlements and penalties of every kind ("IP Claims") arising from or relating to any actual or alleged infringement or misappropriation of any patent, trademark, copyright, trade secret or any actual or alleged violation of any other intellectual property or proprietary rights arising from or in connection with the Services performed under this Agreement or their use. Notwithstanding anything to the contrary contained in this Agreement (including, but not limited to, Section 22.1 ("Indemnification"), the provisions of this Section 11, shall govern the rights of Indemnified Parties with respect to indemnification for IP Claims.

11.2 The procedures set forth in Section 22.2 ("Indemnification") shall apply in the case of IP Claims hereunder.

11.3 Without limitation of Sections 11.1 and 11.2, if use of the Services becomes subject to an IP Claim, Supplier shall, at Verizon's option and Supplier's expense:

11.3.1 Procure for Verizon the right to use the Services;

11.3.2 Replace the Services with equivalent, non-infringing Services; or

11.3.3 Modify the Services so they become non-infringing.

## 12. CONFIDENTIAL INFORMATION

12.1 Verizon Information

The non-disclosure provisions set forth as Exhibit B shall apply to this Agreement. Absent written approval of Verizon, Supplier shall not disclose any Confidential Information, as defined in Exhibit B to any Affiliate ordering hereunder unless such information pertains to that Affiliate. Supplier shall not disclose such Confidential Information to agents, contractors or others without the prior written approval of Verizon; and in the event of such approval, Supplier shall obtain their written agreement, in a form acceptable to Verizon, to protect Confidential Information provided hereunder.

12.2 SUPPLIER INFORMATION

No specifications, drawings, sketches, models, samples, tools, computer programs, technical information, business information, or data, written, oral or otherwise, furnished

by Supplier to Verizon hereunder or in contemplation hereof shall be considered by Verizon to be confidential or proprietary unless so agreed to by Verizon in writing.

## 13. VERIZON PROPERTY AND TRADEMARKS

13.1 Ownership of Work Product

Supplier shall make prompt written disclosure to Verizon of all notes, designs, models, prototypes, drawings, data storage media, listings, deliverables, technical data, inventions, improvements, discoveries, computer software (including firmware), and other forms of technology or intellectual property made, conceived, developed or actually or constructively reduced to practice in connection with or pursuant to the terms and conditions of this Agreement, whether solely or jointly with others, and which are associated with, refer to, are suggested by, or result from any Services which Supplier may do or perform pursuant to this Agreement, or from any information obtained by Supplier from Verizon or in discussions and meetings with employees of Verizon or any of its Affiliates including any reports to be prepared by Supplier for Verizon under this Agreement, ("Work Product"). Supplier hereby agrees that all such Work Product are works made for hire exclusively for Verizon under the patent or copyright laws of the United States and shall become and remain the exclusive property of Verizon, and Verizon shall have the rights to use such for any purpose without any additional compensation to Supplier.

In the event any work conceived or first produced under this Agreement shall not be deemed to be a work made for hire exclusively for Verizon under the patent or copyright laws of the United States, Supplier hereby assigns and agrees to assign to Verizon its entire right, title and interest in and to (including the right to reproduce, modify, display, produce derivative works of, translate, publish, sell, use, dispose of, and to authorize others so to do, and the right to patent or copyright and to register such patent or copyright in Verizon's or its nominee's name) all Work Product. Supplier further agrees to assist Verizon in every proper way to protect Work Product, including, but not limited to, signing patent and copyright applications, oaths or declarations, and assignments in favor of Verizon relating to the Work Product, as well as such ancillary and confirmatory documents as may be required or appropriate to insure that such title is clearly and exclusively vested in Verizon, within the United States and in any and all foreign countries. Supplier further agrees to assist and cooperate with all efforts to enforce the rights of Verizon in such property against any third parties.

Further, Supplier grants to Verizon a royalty-free, nonexclusive, transferable, sublicensable, and irrevocable license to any and all patented or copyrighted or patentable or copyrightable works not conceived or first produced by Supplier in the performance of this Agreement, but which are incorporated in any materials furnished under this Agreement to Verizon by Supplier, provided that such license shall only be to the extent that Supplier has, or prior to completion of final settlement of this Agreement, may acquire, the right to grant such license without becoming liable to pay compensation to others solely because of such grant.

Supplier warrants and represents that it has or will have the right, through written agreements with all employees performing Services under or in connection with this

Agreement, to secure for Verizon the rights called for in this Section. Further, in the event Supplier uses any subcontractor, consultant or other third party to perform any of the Services contracted for by this Agreement, Supplier agrees to enter into such written agreements with such third party, and to take such other steps as are or may be required to secure for Verizon the rights called for in this Section.

13.2 Verizon Property

Title to all property owned by Verizon and furnished to Supplier shall remain with Verizon.

Any property owned by Verizon and in Supplier's possession or control shall be used only in the performance of this Agreement unless authorized in writing by Verizon. Supplier shall adequately protect such property, and shall deliver or return it to Verizon or otherwise dispose of it as directed by Verizon.

Supplier shall be responsible for any loss of or damage to property owned by Verizon and in Supplier's possession or control.

13.3 Trademarks and Trade Names

Except as specifically set out in this Agreement, nothing in this Agreement shall grant, suggest or imply any authority for one Party to use the name, trademarks, service marks or trade names of the other for any purpose whatsoever. Notwithstanding the foregoing, Supplier may use the names "Verizon", "Verizon Wireless", "Verizon Business", "MCI", "TTI National" or "Telecom USA" solely for the purpose of identifying a creditor (i) in communications with a Debtor with respect to a Placed Account in order to collect amounts outstanding thereon, (ii) in connection with filing suit in connection with such Placed Account, (iii) for internal reporting purposes, or (iv) in bankruptcy and probate proceedings relating to such Placed Account. If necessary, Verizon may set forth additional or different names in the applicable Letter of Authorization.

## 14. PUBLICITY AND DISCLOSURE

Supplier agrees not to provide copies of this Agreement, or otherwise disclose the terms of this Agreement, to any third party without the prior written consent of Verizon. Supplier further agrees to submit to the contacts below, for written approval, all advertising, sales promotion, press releases and other publicity matters relating to the product furnished and/or the Service performed pursuant to this Agreement, when a Verizon name or mark or the name or mark of any of its partners or Affiliates is mentioned or language from which the connection of said name or mark may be inferred or implied. Such requests shall be sent to each of the following:

Vice President -- Corporate Communications
Verizon Wireless
One Verizon Way
VC43E062
Basking Ridge, New Jersey 07920

Vice President -- Media Relations
Verizon Telecom
One Verizon Way
VC31W467
Basking Ridge, NJ 07920

Vice President -- Media Relations
Verizon Business
One Verizon Way
VC31W461
Basking Ridge, NJ 07920.

**15. COMPLIANCE WITH LAWS**

Supplier and any subcontractors shall comply with the provisions of all applicable federal, state, county and local laws, ordinances, regulations, rules, codes and orders (collectively "law") in performance of this Agreement. Such law shall include, but not be limited to: laws pertaining to employment of labor, hours of labor, health and safety, and payment of wages; payment of taxes; the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, the Electronic Fund Transfers Act, state and local laws regarding the collection of debt or reporting of same; the NACHA Operating Rules, any operating rules of any credit card association, the Payment Card Industry (PCI) Compliance Standards, and laws pertaining to safeguarding, protection and disposal of personal or similar information used, maintained and/or accessed on Verizon's behalf, such as California Civil Code Section 1798.82 and the Fair and Accurate Credit Transactions Act of 2003, P.L 108-159. If Verizon provides Supplier access to Customer Proprietary Network Information (CPNI) or personal information pertaining to Verizon customers and/or personnel, Supplier may disclose such information only to Supplier personnel with a need to know such information for the performance of their Verizon work, provided that such disclosure is also otherwise permitted by this Agreement, and shall adopt effective technical, physical and organizational measures that achieve this result. For this purpose, "Customer Proprietary Network Information" shall be as defined in 47 U.S.C. Section 222(f)(1). In the event of an unauthorized disclosure of personal or similar information in violation of the foregoing, Supplier shall provide notice of same by electronic mail to security.issues@verizon.com within forty-eight hours, and shall provide Notice in accordance with this agreement. In addition, all persons conducting or assisting in an investigation on behalf of Verizon, whether employed by Supplier or by a subcontractor, shall act ethically and not make any false statements to obtain information. Supplier and any subcontractor shall procure all permits or certificates necessary to perform their obligations under this agreement. Supplier shall indemnify and hold Verizon harmless from all claims, losses, fines or penalties, including reasonable attorneys' fees, arising out of or related to non-compliance with this paragraph.

**16. FORCE MAJEURE**

Except as otherwise set out in this section, if performance of this Agreement is

prevented, restricted or interfered with by reason of acts of God, wars, revolution, civil commotion, acts of public enemy, terrorism, embargo, acts of government in its sovereign capacity, or any other circumstances beyond the reasonable control and not involving any fault or negligence of the Party affected ("Force Majeure Event"), the Party whose performance is affected ("Force Majeure Party"), upon giving prompt notice to the other Party, shall be excused from such performance on a day-to-day basis during the Force Majeure Event. The other Party shall likewise be excused from performance of its obligations on a day-to-day basis during the Force Majeure Event, provided, however, that the Force Majeure Party shall use reasonable efforts to avoid or remove the Force Majeure Events and both Parties shall proceed immediately with the performance of their obligations under this Agreement whenever the Force Majeure Event ceases. If the Force Majeure Event continues for more than thirty (30) days, and Verizon is not the Force Majeure Party, then Verizon may terminate this Agreement without penalty. Labor difficulties, including without limitation, strikes, slowdowns, work stoppage, picketing or boycotts, shall not constitute a Force Majeure Event that excuses Supplier from performance of its obligations under this Agreement. In the event of such labor difficulties, Supplier shall use all lawful means to perform the Services.

**17. ASSIGNMENT**

The rights, obligations, and other interests of Supplier shall not be assigned by Supplier, in whole or in part, without the prior written consent of Verizon and any purported assignment of same shall be void.

If Verizon sells, exchanges or otherwise disposes of all or a portion of the assets of, or Verizon's interest in, any business unit for which Services are performed, then Verizon shall have the right to assign to such third party all applicable licenses, warranties, maintenance schedules and rights granted under this Agreement with respect to such Service, provided that the third party agrees to be bound by all obligations of Verizon to Supplier that pertain to the Service.

**18. SUBCONTRACTING**

Supplier shall not use subcontractors for the collection of delinquent or written off accounts in connection with the Services except by prior written consent of Verizon. Supplier shall not use subcontractors to perform ancillary activities or functions related to the Services under this Agreement except by prior written notice to Verizon. Such notices to Verizon to use subcontractors for ancillary activities shall specify the Services to be subcontracted and the identity of the proposed subcontractors. Verizon reserves the right to disapprove a subcontractor at any time in its sole discretion with no liability regardless of whether such subcontractors has commenced performance. In such event, Supplier shall immediately cease use of such subcontractor. It shall be Supplier's responsibility to update Verizon as it adds or deletes subcontractors. Supplier accepts full responsibility for the acts and omissions of subcontractors and of persons either directly or indirectly employed by them to the same extent as Supplier is responsible for the acts and omissions of persons directly employed by Supplier.

contain no hidden files; (b) not replicate, transmit, or activate itself without control of a person operating computing equipment on which it resides; (c) not alter, damage, or erase any data or computer programs without control of a person operating the computing equipment on which it resides; (d) contain no encrypted imbedded key unknown to Verizon, node lock, time-out or other function, whether implemented by electronic, mechanical or other means, which restricts or may restrict use or access to any programs or data developed under this Agreement, based on residency on a specific hardware configuration, frequency of duration of use, or other limiting criteria ("Illicit Code"). Supplier shall indemnify and hold Verizon harmless from any loss or damage arising from Supplier's violation of this Section.

21.5 Verizon reserves the right to request at any time and for any reason that specific employees, subcontractors, and agents of Supplier be removed from and not assigned by Supplier to perform Services for Verizon, and Supplier acknowledges, agrees and understands that Supplier will immediately comply with such request by Verizon.

## 22. INDEMNIFICATION

22.1 Supplier shall defend, indemnify and hold harmless Verizon, its parents, subsidiaries and Affiliates, and its and their respective directors, officers, partners, employees, agents, successors and assigns ("Indemnified Parties") from and against any claims, demands, lawsuits, damages, liabilities, loss, costs or expenses (including, but not limited to, reasonable fees and disbursements of counsel and court costs), judgments, settlements and penalties of every kind ("Claims"), that may be made: (i) by anyone for injuries (including death) to persons or damage to property, including theft, resulting in whole or in part from the acts or omissions of Supplier or those persons furnished by Supplier, including its subcontractors (if any); (ii) by persons furnished by Supplier and its subcontractors (if any) under Worker's Compensation or similar acts; (ii) by anyone in connection with or based upon Services provided by Supplier and its subcontractors, if any, or contemplated by this Agreement, including Claims regarding the adequacy of any disclosures related to any such Services; and (iv) under any federal securities laws or under any other statute, at common law or otherwise arising out of or in connection with the performance of Services by Supplier contemplated by this Agreement or any information obtained in connection with such performance of Services. The foregoing indemnification shall apply whether Supplier or an Indemnified Party defends such Claim and whether the Claim arises or is alleged to arise out of the sole acts or omissions of the Supplier (and/or any subcontractor of Supplier) or out of the concurrent acts or omissions of Supplier (and/or any subcontractor of Supplier) and any Indemnified Parties. Supplier further agrees to bind its subcontractors, if any, to similarly indemnify, hold harmless, and defend the Indemnified Parties.

22.2 Verizon will provide Supplier with prompt, written notice of any Claim covered by this indemnification and will cooperate appropriately with Supplier in connection with Supplier's evaluation of such Claim. Supplier shall defend any Indemnified Party, at the Indemnified Party's request, against any Claim. Promptly after receipt of such request, Supplier shall assume the defense of such Claim with counsel reasonably satisfactory to the Indemnified

**Exhibit A-c**
**Verizon Wireless**
**SCOPE OF SERVICES**

This Scope of Services relates specifically to the requirements of Verizon Wireless. Verizon Wireless is referred to herein as "Verizon". Upon receipt of or execution of an Authorization Letter from an authorized Verizon representative, Contractor may perform the following services:

**1. General**

**A. Collection Services**

Contractor shall perform Services in accordance with this Agreement and any Authorization Letter issued hereunder, which shall include, but not be limited to the following:

Process Placed Accounts which may include but not be limited to (i) download appropriate account information, (ii) acknowledge receipt of Placed Accounts, (iii) produce and mail dunning letters and/or other correspondence, as necessary to Customers, the initial letter containing advisement of Verizon practice of charging Collection Fees in addition to Principal, with a separate statement of principal balance and collection fees (in states where fees are charged), (iv) update Placed Account information including, but not limited to, contact information, payments, collection fee transactions and Placed Account status and (v) Close and Return Placed Accounts ("Close and Return" means the cessation of collection efforts by Contractor and the return of accounts to Verizon.)

Provide to Verizon for its review all correspondence, telegrams, and other communications that it intends to utilize with respect to the collection of debts owing to Verizon, and any changes to these that may be contemplated in the future. Verizon's review of these communications does not relieve Contractor from liability under applicable law resulting from its communications.

Remit and process payment for all funds received on behalf of Verizon. Contractor may deposit such funds in Contractor's own bank accounts, provided that Contractor shall perform a wire transfer of these funds to Verizon on each Friday and the first calendar day of each month for the funds collected during the immediately previous period.

Maintain adequate records consistent with general accounting procedures and general industry practices.

Maintain a Disaster Recovery Plan that addresses facility as well as data recovery.

Provide other services as may be reasonably requested by Verizon.

Contractor shall at all times comply with all provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. Sections 1692a-p and all similar state and federal laws.

Contractor shall not charge interest, collection fee, or a late fee to any customer without advanced written consent from Verizon.

Authorization Letters may be withdrawn at any time in writing by Verizon Wireless, and may be made effective immediately.

**B. Bankruptcy Procedure**

Contractor shall not violate the automatic stay as required by the U.S. Bankruptcy Code. Before beginning any collection services on an account, Contractor will verify whether the Customer has filed any petition in bankruptcy under the U.S. Bankruptcy Code by conducting a search of appropriate databases. Contractor shall immediately notify Verizon if any debtor has made such a bankruptcy filing and Close and Return the account within seven (7) calendar days. If, after beginning collection services, Contractor becomes aware that a Customer has subsequently filed for bankruptcy protection, Contractor shall immediately notify Verizon, cease all collection services and Close and Return the account. If Contractor is notified (whether verbally or in writing and whether by the Customer or a person acting on the Customer's behalf) that a Customer has filed a petition in bankruptcy, Contractor shall immediately cease all collection services and verify whether or not the debtor has made such a bankruptcy filing. The Contractor shall promptly report the results of its investigation to Verizon and Close and Return

**C. Deceased Procedure**

If after receiving the Placed Account, Contractor learns that the Customer is deceased, Contractor shall obtain and forward proof of death to Verizon, and immediately Close and Return.

**D. Closing and Returning of Accounts**

Unless otherwise specified, Contractor shall Close and Return Placed Accounts at the end of the Placement Period as set forth in this Scope of Services or the Authorization Letter as applicable. Contractor shall then provide Verizon with a report of Placed Account status, which shall include, but not be limited to SIF, PIF, Bankrupt, or Deceased status. Contractor shall return Closed and Returned Placed Accounts to Verizon in a format and media approved by Verizon.

**E. Customer Information**

Any information provided by Verizon to Contractor must be used solely for the purpose of Skip-Tracing and/or collecting the Placed Account. Specifically, Contractor shall not use any Customer information to market to Debtors or to market the names and/or addresses of Debtors to any third party.

Contractor is responsible for utilizing reasonable measures and appropriately authenticating the identity of a Customer prior to releasing or discussing Account information. Should Verizon choose to so provide, Contractor will follow authentication procedures provided by Verizon.

Contractor is responsible for protecting Customer information from inappropriate use or disclosure, and is responsible for destroying Customer information when no longer necessary for the performance of authorized services for Verizon, or as any federal, state, or local law, regulation, or legally effective obligation may require.

Contractor's Personnel who are assigned to affect collections in support of this Agreement shall do so exclusively for Verizon. In the event Contractor provides Services to other Verizon Affiliates, Contractor agrees to retain dedicated Personnel who affect collections solely in support of each Affiliate. Supervisors are not required to be dedicated.

**2. Invoicing and Payments**

For the full, satisfactory and timely performance of all the requirements of this Agreement, Verizon shall pay Contractor the Commission Rates set forth in Exhibit A-1 Form Authorization Letter. Contractor is not entitled to any other compensation, commission, or reimbursement except as agreed to in writing by both Parties.

Contractor must submit Electronic Invoice Plus (EIP) for Services to Verizon each week. The invoices must be submitted to Verizon's office no later than 11am EST per remit calendar. Invoices are required to include information regarding:

a. Verizon account number;
b. Date(s) and amount(s) of payment(s);
c. Type/form of payment (partial, full, settlement, legal, direct, etc.);
d. Payments made directly to Verizon by Debtor or third party;
e. Insufficient funds received; and
f. Commission due Contractor.

Contractor must make net remittance, by wire, of the gross amount collected less commission. The Parties agree that if the amount wired is less than the monthly invoiced amount, Verizon will contact Contractor to verify discrepancy in funds vs. EIP. In the event of a disputed EIP, Verizon shall provide verbal notice to Contractor within 3 business days of receipt. Contractor shall respond with documentation supporting disputed charge(s) and reflect revised amount via EIP or Financial File.

**3. Reporting Requirements**

Contractor must provide to Verizon periodically, at an interval to be agreed upon by Contractor and Verizon, updated Debtor information that Contractor has obtained in the process of collecting on the account, e.g., name, address, phone

number, social security number or other relevant Skip Tracing information. Contractor agrees that Verizon may share this information with other collection contractors in the event Verizon recalls and reassigns a Debtor account.

Contractor must submit reports to Verizon by the fifth (5th) business day of each calendar month or as requested. Contractor must provide reports via an electronic means (e-mail, tape to tape, Network Data Mover ("NDM") or any other electronic means reasonably designated by Verizon), in accordance with instructions from Verizon. The items in the reports will be listed in and according to the format of Exhibit A-2, "Reporting Requirements". Verizon reserves the right to make changes to the report format requirements as Verizon deems necessary, and Contractor must implement such changes within a mutually agreed-upon time frame.

**4. Customer Complaints**

With respect to Customer complaints (including direct complaints to Contractor, formal or informal complaints from regulatory bodies, or litigation involving Verizon Placed Accounts, even if Verizon is not a named party), Contractor shall (1) take reasonable steps to minimize the number of Customer complaints, (2) ensure its Personnel are trained to appropriately handle Customer complaints, and (3) document and record all Customer complaints and the action taken by Contractor to resolve outstanding issues, on a Customer Complaint Log, which shall be in a format similar to the attached Exhibit D. Contractor shall maintain a Customer Complaint Log and forward each month to Verizon to the address and on the date specified by Verizon.

Contractor shall promptly provide to Verizon copies of any complaints received as part of any litigation involving Verizon Placed Accounts. Verizon reserves the right, at its sole discretion, to assume the defense of litigation involving Verizon Placed Accounts.

Contractor agrees to designate a single point of contact to act as a Compliance Officer to receive Customer complaints. The Compliance Officer shall be qualified in the handling and management of Customer complaints. In the event Customer complaints are directed to Verizon rather than Contractor, Verizon shall forward such Customer complaints to Contractor's designated Compliance Officer.

**5. Disaster Recovery**

As part of the Services, Contractor shall provide a disaster recovery plan (the "Disaster Recovery Plan") that is acceptable to Verizon. The Disaster Recovery Plan shall be provided for each Contractor Location at which the Services are to be performed. During the Term of this Agreement, Contractor shall (a) periodically update and test the operability of such plan, (b) certify to Verizon that the plan is fully operational at least once annually, and (c) implement the plan upon the occurrence of a disaster. Contractor shall restore all Critical Functions, as defined below, within the time periods set forth in the Disaster Recovery Plan. In the event that Critical Functions are interrupted, Verizon

shall not be responsible for any Service fees until such functions are restored. Critical Functions shall be defined as any function that affects Contractor's ability to handle Placed Accounts in accordance with the terms of this Agreement.

**6. Prior to Placement**

A. Contractor must provide Verizon with its most recent audited financial statements upon execution of this Agreement.

B. Contractor must provide Verizon with a copy of Contractor's state collection agency license(s) upon execution of this Agreement, such listing to include the state, the appropriate license number(s), and the expiration date(s). Contractor agrees that it shall maintain current state collection agency licenses where required. Contractor will provide Verizon with an updated licensing listing or with a copy of its actual license(s) at Verizon's request.

C. Contractor must furnish to Verizon for its review and approval all correspondence, telegrams, and other communications that it intends to utilize with respect to the collection of debts owing to Verizon, and any changes to these that may be contemplated in the future. Verizon's review does not relieve Contractor from liability resulting from its communications.

D. Contractor must assure, via a written waiver of offset signed by Contractor's bank, that Contractor's bank will not utilize any funds deposited on behalf of or to the benefit of Verizon by the Contractor to offset the Contractor's debt with the bank.

E. ITEMS DESCRIBED IN SECTIONS A-D ARE TO BE DELIVERED TO VERIZON TO THE FOLLOWING ADDRESS:

Verizon Wireless
295 Parkshore Drive
Folsom, Ca 95630
Attn: Recovery Manager

**7. Technological System Set Up**

A. Prior to receiving any accounts from Verizon, Contractor, at its own expense, must:

i. Install and maintain a terminal and/or software, at a location designated by Verizon, or
ii. Provide Verizon remote access via website to Verizon placed accounts.

iii. Either option must be sufficient to allow Verizon to monitor the current status of all accounts referred to Contractor by Verizon for collection, both in summary form and by individual account. Verizon's access to all information in Contractor's possession or

control regarding Verizon accounts being handled for collection by Contractor is to be completely unrestricted.

B. Verizon's access to the Contractor's system shall not relieve the Contractor from liability to any individual Debtor. Rather, the Contractor remains expressly and solely liable for its actions in attempting to collect a debt.

C. Contractor must have the ability to receive customer invoice detail via overnight mail and other account information via electronic mail. Verizon reserves the right to unilaterally change the method of delivery in order to reduce costs or improve the efficiency of the collections process.

E. Contractor must notify Verizon prior to making any internal systems conversion and cooperate fully with Verizon to perform testing of any new system. Testing must be completed to Verizon's satisfaction prior to use of any new system to perform collection activities.

F. Any software provided to Contractor by Verizon remains the property of Verizon. Contractor may utilize this software in its business during the term of this Agreement. If requested by Verizon, Contractor must return this software to Verizon upon termination of this Agreement.

G. Contractor must be able to accommodate electronic transfer of recoveries on a weekly basis.

**8. Placement**

Subject to limitations of the FDCPA and other similar state or federal laws, Contractor shall abide by the following minimum work standards, which includes letters, skip tracing and telephone calls:

A. Contractor shall send a demand letter, and attempt telephone contact within one (1) business day of Placed Account

B. Contractor shall initiate telephone calls for Placed Accounts that include accurate telephone numbers as set forth below:

i. Initiate a minimum of eight (8) telephone call attempts in the first thirty (30) days, or until customer contact.

ii. Initiate a minimum of two (2) telephone attempts every thirty (30) days thereafter until either customer contact, or end of Placement Period.

iii. Initiate a minimum of one (1) evening and/or weekend telephone attempt weekly until customer contact, or end of Placement Period.

iv. Initiate a minimum of one (1) follow-up telephone call within one (1) hour after receiving a busy signal on a call attempt.

v. Initiate a minimum of one (1) follow-up telephone call within one (1) day after a customer has defaulted on a payment offer.

C. In the event a Placed Account does not include an accurate telephone number, Contractor shall initiate a minimum of eight (8) Skip Tracing efforts within the first thirty (30) days of receipt of the Placed Account, and a minimum of two (2) Skip Tracing efforts each month thereafter until either contact is made or the Placement Period ends.

D. Contractor shall provide Verizon Wireless with account reviews as may be requested from time to time, prior to a Placed Accounts scheduled Close and Return.

**9. Settlement**

A. Contractor shall make all reasonable efforts to recover the full amount due on each Placed Account.

B. Verizon hereby grants Settlement Authority to Contractor subject to the following:

i. Contractor designated as primary shall not accept settlement payments that are less than eighty (80) percent of the Placed Account balance. Contractors designated as secondary shall not accept settlement payments that are less than seventy (70) percent of the Placed Account balance. Contractors designated as tertiary shall not accept settlement payments that are less than sixty (60) percent of the Placed Account balance. If Contractor accepts a settlement payment that is less than one hundred (100) percent of the Placed Account balance, Contractor shall obtain documentation which evidences Customer's inability to pay in full ("PIF"). Such documentation may include, but not be limited to, copy of credit bureau report, employment information, and/or budget or financial plans.

ii. Contractor shall ensure that all settlement payments are arranged so that payments on Placed Accounts are received within thirty (30) days. Contractor must obtain prior written notification from Verizon of any exceptions.

iii. If Contractor makes a settlement offer, which is accepted by a Customer who does not make payment in the agreed upon manner, then Contractor shall rescind the settlement offer, which then becomes null and void. In addition, no additional settlement offers shall be presented to the Customer.

iv. Final settlement payments shall constitute Contractor's settlement in full ("SIF") of the Placed Account.

v. Contractor shall report all settlement payments to Verizon Wireless.

vi. Contractor shall not execute any release, waiver or settlement agreement with respect to any Placed Account without the express written consent of Verizon Wireless. Any release, waiver or settlement agreement received by Contractor shall be submitted to the Customer Financial Services group who, in turn, will obtain approval of the Verizon Legal Department.

vii. Contractor shall retain copies of all documents involved in the settling of Placed Accounts, to include but not be limited to, payment documents, and authorizations, if applicable. At Verizon' request, Contractor shall immediately provide copies of all requested Placed Account documentation to Verizon Wireless.

viii. Verizon reserves the right to rescind or modify Settlement Authority at any time upon written notice to Agency.

**10. Litigation**

Contractor acknowledges that Verizon's current form of customer agreement with its customers provides for arbitration of disputes. Therefore, Contractor shall not commence any suit or legal action in connection with an account. In the event Verizon modifies its customer agreement form to provide for litigation or otherwise determines that litigation by Contractor is permissible under the customer agreement, Contractor shall only commence litigation when approved in writing by Verizon on a case-by-case basis. In addition, Contractor shall not use threats of litigation in performing the Services.

**11. Closing and Returning of Accounts**

Unless otherwise specified, Contractor shall close and return Placed Accounts at the end of the Placement Period. Contractor shall then provide Verizon with a report of Placed Account status, which shall include, but not be limited to SIF, PIF, Bankrupt, or Deceased status. Contractor shall return Closed and Returned placed accounts to Verizon in a format and media approved by Verizon Wireless.

Case4:13-cv-05665-YGR Document1-1 Filed12/06/13 Page48 of 54

# Exhibit B

Exhibits to Second Amended Class Action Complaint No. RG12634618

AC02723

HENRY WEISSMANN (State Bar No. 132418)
MIRIAM SEIFTER (State Bar No. 269859)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Henry.Weissmann@mto.com
Miriam.Seifter@mto.com

Attorneys for Defendant
VERIZON WIRELESS

JOHN LOFTON, an individual, on his own behalf and on behalf of all others similarly situated,

Plaintiff,

vs.

VERIZON WIRELESS (VAW) LLC, and DOES 1 through 10, inclusive,

Defendants.

**DECLARATION OF CRAIG BATTINELLI**

I, Craig Battinelli, declare as follows:

1. I am an Associate Director of Customer Financial Services Operations for Verizon Wireless. My geographic area of responsibility includes Verizon Wireless customers in the State of California.

2. As a result of my position with Verizon Wireless, I am familiar with Verizon Wireless's practices regarding telephone calls placed in relation to existing Verizon Wireless accounts, including calls placed in the course of attempting to collect outstanding debts.

3. Verizon Wireless's policy is for customer financial service

representatives to disclose immediately after identifying themselves on a call that the call may be monitored or recorded for quality purposes. This policy applies and is expressed to third-party vendors of Verizon Wireless that assist in the collection of debts on past-due Verizon Wireless accounts, including Collection Company of America ("CCA").

4. Attached hereto as Exhibit A is a true and correct copy of Verizon Wireless's "Monitoring Disclosure" policy that is provided to third-party vendors of Verizon Wireless, including CCA.

I declare under penalty of perjury, under the laws of the United States of America, that the above is true and correct.

Executed on August 24, 2012.

Craig Battinelli

Case4:13-cv-05665-YGR Document1-1 Filed12/06/13 Page51 of 54

# Exhibit A

VER0005816

AC02726

# CFS Collections: Monitoring Disclosure

Updated: 10/13/2011 11:43:46 | Past Versions: [10/13/2011] Feedback

## Processes

CFS (Customer Financial Services) Representatives are required to ensure customers are aware of the monitoring disclosure immediately after identifying themselves and before engaging in any conversation with the party contacted. Disclosure must be repeated anytime a new person comes on the line.

**See Also**

- How to Determine Verification Requirements

The Monitoring Disclosure is: "This call may be monitored or recorded for quality purposes."

The following requests may be made without disclosure. Request to:

- speak with the Account Owner
- a callback from the Account Owner
- confirm or remove invalid CBR (Can Be Reached) Number

Any further conversation, including probing questions, must begin with the monitoring disclosure. Refer to the following examples:

| Situation | Example |
|---|---|
| the AO (Account Owner) or AM (Account Manager) answers the call | VZW Employee: "May I speak with (customer name), please?"<br><br>Party contacted: "This is (name)."<br><br>VZW Employee: "My name is (representative name) from Verizon Wireless. This call may be monitored or recorded for quality purposes." |
| another party answers the call and advises that the AO or AM is available and then, when the AO or AM is connected | VZW Employee: "May I speak with (customer name), please?"<br><br>Party contacted: "Just a moment, I'll get him."<br><br>Second party on line: "This is (customer name)."<br><br>VZW Employee: "My name is (representative name) from Verizon Wireless. This call may be monitored or recorded for quality purposes." |
| another party answers the call and advises that the AO or AM is not available | VZW Employee: "May I speak with (customer name), please?"<br><br>Party contacted: "(Customer name) is not available."<br><br>VZW Employee: "My name is (representative name) from Verizon Wireless. Can you have him return our call regarding his account. Our number is... Thank you." |
| another party answers the call and advises the AO or | VZW Employee: "May I speak with (customer name), please?" |

CONFIDENTIAL

| | |
|---|---|
| AM is available (or not available) and asks the nature of the call | Party contacted: "This is her husband. Who's calling?" VZW Employee: "My name is (representative name) from Verizon Wireless. This call may be monitored or recorded for quality purposes. Do you handle the wireless account?" |
| another party answers the call and advises it is a wrong number (call to a VZW Mobile Telephone Number) | VZW Employee: "May I speak with (customer name), please?" Party contacted: "There's nobody here by that name." VZW Employee: "My name is (representative name) from Verizon Wireless. This call may be monitored or recorded for quality purposes. I'm calling regarding his account. Do you have an alternate number where I could reach him? |
| another party answers the call and advises it is a wrong number (call to an alternate CBR Number) | VZW Employee: "May I speak with (customer name), please?" Party contacted: "There's nobody here by that name." VZW Employee: "My name is (representative name) from Verizon Wireless. I was attempting to dial the number ending in XXXX. Is that not a good number to reach him?" Party Contacted: "No it's not." VZW Employee: "I apologize for the call. I will remove it from our records. Thank You." |
| speaking with a Direct or Indirect VZW representative and then again when the phone is passed to the customer | when the AO or AM is placed on the phone: • Identify yourself. • Immediately provide disclosure. |

The information contained here is proprietary and confidential. Any dissemination, distribution or copying of this information is strictly prohibited. Do not print, forward, or distribute this information to customers, potential customers, or any other entities outside of Verizon Wireless.

CONFIDENTIAL

**PROOF OF SERVICE**

I am employed in the County of Maricopa, State of Arizona. I am over the age of 18 and not a party to the within action; my business address is: 8245 North 85th Way, Scottsdale, Arizona 85258.

On November 12, 2013, I served the foregoing documents described as:

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

On interested parties in this action by placing ( ) the original (x) a true copy thereof enclosed in a sealed envelope addressed as follows:

Charles R. Messer
Carlson & Messer LLP
5959 West Century Boulevard, Suite 1214
Los Angeles, California 90045

Counsel for Verizon Wireless (VAW) LLC

**VIA U.S. MAIL**

David C. Parisi
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403

Counsel for John Lofton

**VIA EMAIL ONLY**

[x] **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondences for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Scottsdale, Arizona in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **(BY EMAIL)** By causing this document to be delivered in pdf format to the email addresses of the persons identified above.

Executed on November 12, 2013, at Scottsdale, Arizona.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Ethan Preston