David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff John Lofton, on his own
behalf, and behalf of all others similarly situated*

**IN THE UNITED STATES DISTRICT COURT FOR
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| JOHN LOFTON, an individual, on his own behalf and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VERIZON WIRELESS (VAW) LLC, a Delaware limited liability company, and DOES 1-100, inclusive, <br><br> Defendants. | No. C 13-05665 YGR <br><br> Honorable Yvonne Gonzalez Rogers <br><br> **PLAINTIFF JOHN LOFTON'S MEMORANDOM SUPPORTING HIS MOTION FOR PRELIMINARY INJUNCTION RESTRAINING DEFENDANT VERIZON WIRELESS (VAW) LLC'S FROM FUTURE VIOLATIONS OF THE INVASION OF PRIVACY ACT (CAL. PEN. CODE §§ 630-638), AND FOR CLASS CERTIFICATION** <br><br> Date:       February 27, 2014 <br> Time:       10:00 a.m. <br> Location:  Courtroom 5 <br>                Ronald V. Dellums Federal Bldg. <br>                1301 Clay Street <br>                Oakland, California 94612 |

# **TABLE OF CONTENTS**

I.    Lofton Satisfies the Standards for a Preliminary Injunction Under Rule 65 ................ 1

    A.    Evidence Supports Lofton Is Likely To Succeed In Establishing the Elements of His IPA Claim .................................................................................. 2

        1.    Verizon's Debt Collector Called Lofton's Cellular Telephone ........... 3

        2.    Verizon's Debt Collector Recorded Its Calls to Lofton Without Consent ........................................................................................... 3

        3.    Verizon's Monitoring Disclosure Policy Violated Section 632.7 ....... 3

    B.    Without the Proposed Injunction, Lofton and the Other Injunctive Class Members Are at Risk of Irreparable Harm ........................................... 7

        1.    IPA Violations Constitute Cause Irreparable Harm .......................... 7

        2.    Money Damages Are Not an Adequate Remedy .............................. 8

        3.    Verizon's March 11, 2013 Change to Its Monitoring Disclosure Policy Does Not Alleviate the Risk of Irreparable Harm .................. 10

    C.    The Balance of Harms Favors the Proposed Injunction ................................ 13

    D.    The Public Interest Favors the Proposed Injunction ..................................... 13

    E.    The Court Should Only Require a Nominal Bond .......................................... 14

II.   Lofton Satisfies the Standards for Class Certification Under Rule 23(b)(2) ................ 15

    A.    The Class Meets the Requirements of Rule 23(a) ........................................ 16

        1.    The Injunctive Class Satisfies the Ascertainability Requirement ...... 17

        2.    The Injunctive Class Satisfies the Numerosity Requirement ............ 18

        3.    Common Legal and Factual Issues Pertain to Both Lofton and the Injunctive Class ...................................................................... 22

        4.    Lofton Is an Adequate Representatives for the Class ....................... 23

        5.    Lofton's Counsel Is Adequate ......................................................... 24

    B.    The Injunctive Class Meets the Requirements of Rule 23(b)(2) .................... 24

III.  Conclusion ................................................................................................................ 25

1
2

## TABLE OF AUTHORITIES

CASES                                                                                           PAGE(S)

3
4

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ..................................................................................10

5

*Aguirre v. Chula Vista Sanitary Serv. & Sani-Tainer, Inc.*,
   542 F.2d 779 (9th Cir. 1976) .......................................................................................2

6
7

*Akaosugi v. Benihana Nat'l Corp.*,
   282 F.R.D. 241 (N.D. Cal. 2012).................................................................................17

8
9

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) .......................................................................................1

10

*Alonzo v. Maximus, Inc.*,
   275 F.R.D. 513 (C.D. Cal. 2011).................................................................................24

11
12

*Am. Fed'n of Gov't Employees, Local 1616 v. Thornburgh*,
   713 F. Supp. 359 (N.D. Cal. 1989)...............................................................................8

13
14

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
   No. 06-02671, 2012 WL 3762440 (S.D. Cal. Aug. 28, 2012)..................................11

15
16

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ...............................................................................10, 23

17

*Arnold v. United Artists Theatre Circuit, Inc.*,
   158 F.R.D. 439 (N.D. Cal. 1994)...........................................................................16, 21

18
19

*Barahona-Gomez v. Reno*,
   167 F.3d 1228 (9th Cir. 1999) ....................................................................................14

20
21

*Barnes v. Healy*,
   980 F.2d 572 (9th Cir. 1992) ......................................................................................11

22
23

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ................................................................................16, 24

24

*Boyce's Ex'rs v. Grundy*,
   28 U.S. 210 (1830)........................................................................................................9

25
26

*Buttino v. FBI*,
   No. 90-1639, 1992 WL 12013803 (N.D. Cal. Sept. 25, 1992)..................................21

27
28

*Johnson v. California*,
   543 U.S. 499 (2005)....................................................................................................10

*Cadence Design Sys., Inc. v. Avant! Corp.*,
  125 F.3d 824 (9th Cir. 1997) ...............................................................13

*Californians for Disability Rights, Inc. v. California Dep't of Transp.*,
  249 F.R.D. 334 (N.D. Cal. 2008) ............................................... 19-20, 24

*CashCall, Inc. v. Superior Court*,
  159 Cal. App. 4th 273 (2008) ..............................................................21

*Center of Hope Christian Fellowship, Local, Church of God in Christ v. Wells Fargo Bank Nevada, N.A.*,
  781 F. Supp. 2d 1075 (D. Nev. 2011) .....................................................1

*Charlebois v. Angels Baseball, LP*,
  No. 10-0853, 2011 WL 2610122 (C.D. Cal. June 30, 2011) ...................21

*Conant v. McCaffrey*,
  172 F.R.D. 681 (N.D .Cal. 1997) ...........................................................17

*Conservation Congress v. United States Forest Serv.*,
  720 F.3d 1048 (9th Cir. 2013) ................................................................2

*Cummings v. Connell*,
  316 F.3d 886 (9th Cir. 2003) ................................................................23

*Cupolo v. Bay Area Rapid Transit*,
  5 F. Supp. 2d 1078 (N.D. Cal. 1997) .................................................8, 14

*Davis v. Astrue*,
  250 F.R.D. 476 (N.D. Cal. 2008) ..........................................................18

*Dilts v. Penske Logistics, LLC*,
  267 F.R.D. 625 (S.D. Cal. 2010) ...........................................................16

*Doe v. Charleston Area Med. Ctr., Inc.*,
  529 F.2d 638 (4th Cir. 1975) ................................................................21

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
  92 F.3d 1486 (9th Cir. 1996) ................................................................15

*EEOC v. Federal Exp. Corp.*,
  558 F.3d 842 (9th Cir. 2009) ................................................................11

*Envm'tl Protection Info. Ctr. v. United States Forest Service*,
  No. 02-2708, 2006 WL 2130905 (N.D. Cal. July 28, 2006) ...................12

*Folsom v. Blum*,
  87 F.R.D. 443 (S.D.N.Y. 1980) ..............................................................19

*Friddle v. Epstein*,
 16 Cal. App. 4th 1649 (1993) ........................................................................8

*Ft. Funston Dog Walkers v. Babbitt*,
 96 F. Supp. 2d 1021 (N.D. Cal. 2000) ...........................................................8

*F.T.C. v. Affordable Media*,
 179 F. 3d 1228 (9th Cir. 1999) .....................................................................11

*Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*,
 593 F. Supp. 2d 1088 (N.D. Cal. 2009) ........................................................11

*General Tel. Co. of Sw. v. Falcon*,
 457 U.S. 147, 102 S. Ct. 2364 (1982) ...........................................................23

*Gilder v. PGA Tour, Inc.*,
 936 F.2d 417 (9th Cir. 1991) .........................................................................8

*Gonzales v. Comcast Corp.*,
 No. 10-01010, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ..............................19

*Gonzales v. O Centro Espirita Beneficente Uniao*,
 546 U.S. 418 (2006) .......................................................................................2

*Greko v. Diesel U.S.A., Inc.*,
 277 F.R.D. 419 (N.D. Cal. 2011) ..................................................................21

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1990) .......................................................................23

*Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*,
 938 F. Supp. 612 (C.D. Cal. 1996) ...............................................................10

*Horn v. Assoc'd Wholesale Grocers, Inc.*,
 555 F.2d 270 (10th Cir. 1977) .......................................................................21

*Hunt v. Check Recovery Sys., Inc.*,
 241 F.R.D. 505 (N.D. Cal. 2007) ..................................................................21

*In re Activision Sec. Litig.*,
 621 F. Supp. 415 (N.D. Cal. 1985) ...............................................................16

*In re Cooper Cos. Inc. Sec. Litig.*,
 254 F.R.D. 628 (C.D. Cal. 2009) ..................................................................19

*In re Estate of Ferdinand Marcos, Human Rights Litig.*,
 25 F.3d 1467 (9th Cir. 1994) ...........................................................................9

*In re Hanford Nuclear Reservation Litig.*,
    292 F.3d 1124 (9th Cir. 2002) ......................................................................16

*Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*,
    572 F.3d 644 (9th Cir. 2009) .......................................................................13

*J2 Global Commc'ns, Inc. v. Blue Jay Inc.*,
    No. 08-4254, 2009 WL 4572726 (N.D. Cal. Dec. 1, 2009).............................7

*Jay Bharat Developers, Inc. v. Minidis*,
    167 Cal. App. 4th 437 (2008) .......................................................................10

*Jordan v. City of Los Angeles*,
    669 F.2d 1311 (9th Cir. 1982) ................................................................ 20-21

*Jorgensen v. Cassiday*,
    320 F.3d 906 (9th Cir. 2003) .......................................................................14

*Justin v. City of Los Angeles*,
    No. 00-12352, 2000 WL 1808426 (C.D. Cal. Dec. 5, 2000).........................14

*Kavu, Inc. v. Omnipak Corp.*,
    246 F.R.D. 642 (W.D. Wash. 2007) ..............................................................12

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal. 4th 95 (2006) ...............................................................................9, 13

*Lake Charles Rice Milling Co. v. Pac. Rice Growers' Ass'n*,
    295 F. 246 (9th Cir. 1924) .............................................................................9

*Lane v. Wells Fargo Bank, N.A.*,
    No. 12-04026, 2013 WL 3187410 (N.D. Cal. June 21, 2013)........................19

*Lofton v. Verizon (VAW) Wireless LLC*,
    No. RG12634618 (Sup. Ct. Alameda County Dec. 3, 2012)............................5

*Marlo v. United Parcel Serv. Inc.*,
    251 F.R.D. 476 (C.D. Cal. 2008) ..................................................................16

*Mathias v. Smoking Everywhere, Inc.*,
    No. 09-03434, 2011 WL 5024545 (E.D. Cal. Oct. 20, 2011).........................19

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ........................................................................22

*McKenzie v. Federal Exp. Corp.*,
    275 F.R.D. 290 (C.D. Cal. 2011) ..................................................................24

*McNeill v. New York City Housing Authority*,
719 F. Supp. 233 (S.D.N.Y. 1989) ...............................................................22

*McPhail v. First Command Fin. Planning, Inc.*,
247 F.R.D. 598 (S.D. Cal. 2007) .................................................................23

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
518 F. Supp. 2d 1197 (C.D. Cal. 2007) ..............................................7, 10, 13

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) ..................................................................1, 7

*Michaels v. Internet Entm't Group, Inc.*,
5 F. Supp. 2d 823 (C.D. Cal.1998) .............................................................8-9

*Moeller v. Taco Bell Corp.*,
220 F.R.D. 604 (N.D. Cal. 2004)..................................................................20

*Moeller v. Taco Bell Corp.*,
816 F. Supp. 2d 831 (N.D. Cal. 2011) ..........................................................10

*Molski v. Gleich*,
318 F.3d 937 (9th Cir. 2003) ......................................................................23

*Monterrubio v. Best Buy Stores, L.P.*,
291 F.R.D. 443 (E.D. Cal. 2013) .................................................................18

*Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*,
246 F.R.D. 621 (C.D. Cal. 2007) .................................................................17

*Narouz v. Charter Commc'ns, LLC*,
591 F.3d 1261 (9th Cir. 2010) .....................................................................17

*Nat'l Ass'n of Radiation Survivors v. Walters*,
111 F.R.D. 595 (N.D. Cal. 1986).............................................................20-22

*Norris-Wilson v. Delta-T Group, Inc.*,
270 F.R.D. 596 (S.D. Cal. 2010) .................................................................16

*O'Connor v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) .................................................................18

*O'Donovan v. CashCall, Inc.*,
278 F.R.D. 479 (N.D. Cal. 2011) .................................................................18

*Park v. Ralph's Grocery Co.*,
254 F.R.D. 112 (C.D. Cal. 2008).................................................................19

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ...................................................................2

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
   793 F.2d 1132 (9th Cir. 1986) ........................................................... 12-13

*Preis v. Amer. Indemn. Co.*,
   (1990) 220 Cal.App.3d 752 ......................................................................5

*Probe v. State Teachers' Ret. Sys.*,
   780 F.2d 776 (9th Cir. 1986) ...................................................................17

*R.P.-K. ex rel. C.K. v. Department of Educ., Hawaii*,
   272 F.R.D. 541 (D. Haw. 2011)...............................................................20

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991) ....................................................................8

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985) ...............................................................................9

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012)............................................................18

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993).....................................................................20

*Rodgers v. United States*,
   158 F. Supp. 670 (S.D. Cal. 1958)............................................................9

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) .................................................................17

*Rosemere Neighborhood Ass'n v. EPA*,
   581 F.3d 1169 (9th Cir. 2009) .................................................................12

*Save Our Sonoan, Inc. v. Flowers*,
   408 F.3d 1113 (9th Cir. 2004) .................................................................14

*S.G. Borello & Sons, Inc. v. Department of Indust. Relations*,
   (1989) 48 Cal. 3d 341 ...............................................................................5

*SEC v. Koracorp Indus., Inc.*,
   575 F.2d 692 (9th Cir. 1978) ...................................................................13

*Simpson v. Vantage Hospitality Group, Inc.*,
   No. 12-04814-YGR, 2012 WL 6025772 (N.D. Cal. Dec. 4, 2012)............3

*Smith v. Univ. of Wa. Law Sch.*,
  2 F. Supp. 2d 1324 (W.D. Wash. 1998)..................................................23

*Soc'y for Individual Rights, Inc. v. Hampton*,
  528 F.2d 905 (9th Cir. 1975) .................................................................15

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ...............................................................2

*Sweet v. Pfizer*,
  232 F.R.D. 360 (C.D. Cal. 2005) ...........................................................20

*Thompson v. Community Ins. Co.*,
  213 F.R.D. 284 (S.D. Ohio 2002) ..........................................................19

*Tourgeman v. Collins Fin. Servs., Inc.*,
  No. 08-1392, 2012 WL 1327824 (S.D. Cal. Apr. 17, 2012).....................22

*United States v. Bluitt*,
  815 F. Supp. 1314 (N.D. Cal. 1992) .......................................................9

*United States v. Odessa Union Warehouse Co-op*,
  833 F.2d 172 (9th Cir. 1987) .................................................................12

*United States v. Parke, Davis & Co.*,
  362 U.S. 29 (1960).................................................................................12

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) .................................................................15

*Vietnam Veterans of Am. v. CIA*,
  288 F.R.D. 192 (N.D. Cal. 2012)............................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ..................................................................... 22-23

*Walker v. Pierce*,
  665 F. Supp. 831 (N.D. Cal. 1987) .........................................................14

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ...........................................................9, 25

*Weiss v. York Hosp.*,
  745 F.2d 786 (3d Cir. 1984)...................................................................21

*Westways World Travel, Inc. v. AMR Corp.*,
  218 F.R.D. 223 (C.D. Cal. 2003) ...........................................................22

*Williams v. San Francisco Unified School Dist.*,
    340 F. Supp. 438 (N.D. Cal. 1972) ...............................................................1

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ...............................................................17

*Xiufang Situ v. Leavitt*,
    240 F.R.D. 551 (N.D. Cal. 2007) ...................................................... 20-23

*Yue v. Conseco Life Ins. Co.*,
    282 F.R.D. 469 (C.D. Cal. 2012) .................................................................8

*Zepeda v. INS*,
    753 F.2d 719 (9th Cir. 1983) .....................................................................15

STATUTES

CAL. PEN. CODE § 31 ...........................................................................................4

CAL. PEN. CODE § 630 .........................................................................................7

CAL. PEN. CODE § 632.7 ............................................................................ passim

CAL. PEN. CODE § 632.7(a) ................................................................................3

CAL. PEN. CODE § 637.2 .....................................................................................8

CAL. PEN. CODE § 637.2(b) ................................................................................7

CAL. CIVIL CODE § 2338 ....................................................................................4

Invastion Privacy Act (CAL. PEN. CODE §§ 630-638)..............................1, 25

Telephone Consumer Protection Act ................................................................7

OTHER AUTHORITIES

7AA Charles Alan Wright, Arthur R. Miller, et al, *Federal Practice & Procedure*,
    § 1790 (3d ed. 2010) ................................................................................15

28 FCC Rcd. 3700 (March 21, 2013) .................................................................5

FED. R. CIV. P. 23 ........................................................................................ 15-17

FED. R. CIV. P. 23(a) ...................................................................................16, 23

FED. R. CIV. P. 23(a)(1) .....................................................................................18

FED. R. CIV. P. 23(a)(2) .....................................................................................22

FED. R. CIV. P. 23(a)(3) ...................................................................................................22

FED. R. CIV. P. 23(a)(4) ............................................................................................... 23-24

FED. R. CIV. P. 23(b)(1) ...............................................................................................15

FED. R. CIV. P. 23(b)(2) ...................................................................................... 1, 15, 24-25

FED. R. CIV. P. 23(b)(3) ................................................................................................15

FED. R. CIV. P. 23(c)(4) ........................................................................................... 15-16

FED. R. CIV. P. 23(c)(4)(A) ..........................................................................................15

FED. R. CIV. P. 23(g) ....................................................................................................24

FED. R. CIV. P. 23(g)(1)(A) ..........................................................................................24

FED. R. CIV. P. 65 ..........................................................................................................1

FED. R. CIV. P. 65(c) .....................................................................................................14

MANUAL FOR COMPLEX LITIGATION, § 21.24 .........................................................15

*In re Implementation of Section 6002(b) of the Omnibus Budget Reconciliation Act of
    1993, Annual Report and Analysis of Competitive Market Conditions With Respect to
    Mobile Wireless, Including Commercial Mobile Services*,
    WT No. 11-186, FCC No. 13-34 ................................................................................5

Plaintiff John Lofton ("Lofton") hereby submits his Memorandum of Points and Authorities in support of his Motion for Preliminary Injunction and Limited Class Certification. Lofton seeks an order from the Court that restrains Defendant Verizon Wireless (VAW) LLC ("Verizon"), Verizon's debt collectors, and its other customer service representatives from violating section 632.7 of the California Invasion of Privacy Act (Cal. Pen. Code §§ 630-638) ("IPA") by recording calls to cellular telephone users in California without first disclosing such recording. Lofton also seeks certification under Rule 23(b)(2) of a class of all persons (1) residing in California; (2) who have a cellular telephone number; (3) who are not past or current customers of Verizon; and (4) who have been or may be called by Verizon or its debt collectors in the future (the "Injunctive Class") in order to obtain injunctive relief for persons other than Lofton, including the foregoing preliminary injunction.

## I.     Lofton Satisfies the Standards for a Preliminary Injunction Under Rule 65

The evidence cited below presents a sufficient basis to issue an order restraining Verizon from further violations of the IPA. The Ninth Circuit has provided two tests applicable to motions under Federal Rule 65. The traditional criteria are "(1) a likelihood of success on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). The alternative test takes a "'sliding scale" approach to preliminary injunctions . . . Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Under the sliding scale test, movants must demonstrate at least a "reasonable probability" for success on the merits or irreparable harm, and a stronger showing for the other factor. *Center of Hope Christian Fellowship, Local, Church of God in Christ v. Wells Fargo Bank Nevada, N.A.*, 781 F. Supp. 2d 1075, 1078 (D. Nev. 2011). Conversely, a movant for preliminary injunction "need not prove its case with absolute certainty prior to the trial in order to succeed in its motion for a preliminary injunction." *Williams v. San Francisco Unified School Dist.*, 340 F. Supp. 438, 450 (N.D. Cal. 1972) (citing *Hamilton Watch Co. v.*

---

Memorandum Supporting Plaintiff's Motion                    1                    No. C 13-05665 YGR
for Preliminary Injunction re IPA

*Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953) for proposition that "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation")).

Lofton demonstrates how this case and this Motion satisfy each of the elements for injunctive relief below. Where Lofton presents evidence supporting his claims, the Motion should not be denied absent countervailing evidence from Verizon. "[T]he burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). This means that, where a nonmovant "concede[s] the [movant's] prima facie case," the burden shifts to the nonmovant to justify denial of the preliminary injunction. *Id.* at 428. The rule that the burden of proof shifts to defendant after plaintiff establishes *prima facie* case "applies at the hearing on a motion for preliminary injunction." *Aguirre v. Chula Vista Sanitary Serv. & Sani-Tainer, Inc.*, 542 F.2d 779, 781 (9th Cir. 1976).[1] Because Lofton readily establishes a prima facie case that Verizon violated section 632.7 below, the onus shifts to Verizon to produce contrary evidence to justify the denial of the proposed preliminary injunction.

### A. Evidence Supports Lofton Is Likely To Succeed In Establishing the Elements of His IPA Claim

Lofton can readily demonstrate a likelihood of prevailing on his section 632.7 claims. The evidence is irrefutable that Collecto violated section 632.7, while it was collecting a debt for Verizon pursuant to Verizon's monitoring policy. Section 632.7 applies to

> [e]very person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between

---

[1]   *Cf. Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) ("once the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed"). This analysis is consistent with the general rule that the grant or denial of a motion for preliminary injunction is reviewed for abuse of discretion. An abuse of discretion occurs where the ruling was based on "clearly erroneous findings of fact." *Conservation Congress v. United States Forest Serv.*, 720 F.3d 1048, 1053 (9th Cir. 2013) (citations, punctuation omitted) In turn, a finding of fact is "clearly erroneous [if] ***the record contains no evidence to support it***." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009) (emphasis added).

two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone . . .

Cal. Pen. Code § 632.7(a). The elements of a section 632.7 claim are 1) the defendant received communications via the plaintiff's cellular telephone; (2) the defendant recorded the call; and (3) the defendant recorded the call without the plaintiff's consent. *Simpson v. Vantage Hospitality Group, Inc.*, No. 12-04814-YGR, 2012 WL 6025772, *6 (N.D. Cal. Dec. 4, 2012). A plaintiff establishes liability under section 632.7 by proving that "Defendant received [Plaintiff's] communications via calls made on [Plaintiff's] cellular phone, that Defendant recorded the calls, and that Defendant did so without obtaining [Plaintiff's] consent." *Id*. It is trivial for Lofton to demonstrate evidence supporting each of these elements.

### 1. Verizon's Debt Collector Called Lofton's Cellular Telephone

Lofton has a cellular telephone. (Lofton Decl. ¶¶2, 4.) Collecto called Lofton's cellular telephone on June 4, 2012 and June 7, 2012. (*Id*. ¶5.) Verizon has admitted Collecto made calls to Lofton in June 2012. (Preston Decl. ¶2.)

### 2. Verizon's Debt Collector Recorded Its Calls to Lofton Without Consent

Verizon has admitted that Collecto recorded the June 2012 calls to Lofton, and has produced recordings of Collecto's calls to Lofton. (Preston Decl. ¶¶2, 3.) Lofton did not consent to the recording of these calls. (Lofton Decl. ¶¶2, 3.) Indeed, in the final June 7, 2012 call, when Lofton learned that Collecto was recording its calls, Lofton explicitly indicated that he did not consent to Collecto's conduct. (*Id*. ¶3.) Verizon has admitted it has no evidence that Lofton consented to Collecto's recording the June 2012 calls. (*Id*. ¶2.)

### 3. Verizon's Monitoring Disclosure Policy Violated Section 632.7

Collecto was acting as Verizon's agent (and specifically its debt collector) when it called Lofton. Verizon admits that it authorized Collecto to make calls on its behalf to collect past-due Verizon accounts. (*Id*.) Collecto was collecting a Verizon account at the time it called Lofton. (*Id*. ¶4.) Indeed, in each of the calls to Lofton, Collecto's representatives indicated they were "with Verizon Wireless." (*Id*. ¶3.) Verizon's contract with Collecto explicitly authorized Collecto to use Verizon's name: "Supplier may use the name[] . . . 'Verizon Wireless' . . . solely

for the purpose of identifying a creditor (i) in communications with a Debtor with respect to a Placed Account in order to collect amounts outstanding thereon . . ." (*Id.* ¶5.) Indeed, Verizon admits that it knew that Collecto was using Verizon's name when it called consumers to collect on Verizon debts, and that Collecto was recording such calls. (*Id.* ¶6.)

Lofton's experience was not an isolated incident. Collecto violated section 632.7 because it was following Verizon's monitoring disclosure policy. Verizon's monitoring disclosure policy "applie[d] and is expressed to third-party vendors of Verizon Wireless that assist in the collection of debts on past-due Verizon Wireless accounts, including [Collecto]." (*Id.* ¶7. *See also* AC552.) Verizon's monitoring disclosure policy carved out exclusions in which its debt collectors would never disclose to the recipient of their calls that they were recording the calls.

> The Monitoring Disclosure Is: "This call may be monitored or recorded for quality purposes."
> The following requests may be made without disclosure. Request to:
> • speak with the accountholder
> . . .
> • confirm or remove invalid CBR (Can Be Reached) Number

(*Id. See also* AC554.) Verizon maintained these exclusions in its monitoring disclosure policy from September 3, 2010 until March 11, 2013. (*Id.* ¶¶8-10.) In the Alameda Superior Court, the Honorable Judge Steven A. Brick held that these facts were sufficient to establish Verizon's vicarious liability for Collecto's conduct:

> Plaintiff has provided a copy of the agreement between Verizon and Collecto, as well as a policy governing disclosure of call recording, and pleaded various theories supporting Verizon's liability, including aiding and abetting under Penal Code section 31, conspiracy, actual agency and ostensible agency. The pleadings allege sufficient facts to support liability under several of these theories. For example, under section 31, one who "aid and abets" or "advises and encourages" another to commit a crime becomes liable as a principal. The agreement between Verizon and Collecto and the related disclosure of recording policy show that Verizon was aware of and encouraged Collecto's monitoring, recording and disclosure practices and encouraged/assisted Collecto in recording some conversations without first obtaining consent because Verizon dictated the very policy which permitted undisclosed recording of "wrong number" phone calls. . . .

> Verizon also demurs on the grounds that it cannot be responsible under the doctrine of respondeat superior (codified at Civil Code section 2338) for Collecto's alleged conduct because Collecto was a true independent contractor over which Verizon did not exercise sufficient control. In light of the specific and pervasive control that Verizon exercised over Collecto's collection efforts through the subject agreement, and its provision of its detailed policy governing requirements for disclosure of call monitoring, the Court cannot find, as a matter

of law, that Collecto was not the agent of Verizon. (*See, e.g.*, *S.G. Borello & Sons, Inc. v. Department of Indust. Relations* (1989) 48 Cal. 3d 341, 351 [discussing test for independent contractor versus employee].)

Finally, in light of Verizon's admission that it permitted Collecto agents to hold themselves out as being "with Verizon," which is confirmed by Verizon's disclosure policy and examples therein (SAC Ex. B), Plaintiff has pleaded sufficient facts to establish ostensible agency. (*See, e.g.*, *Preis v. Amer. Indemn. Co.* (1990) 220 Cal.App.3d 752, 76l.)

*Lofton v. Verizon (VAW) Wireless LLC,* No. RG12634618 (Sup. Ct. Alameda County Dec. 3, 2012). (*See* AC01663.)

Lofton has determined that Collecto violated the IPA on a massive scale while acting under Verizon's policy. On August 31, 2013, Verizon produced Collecto's notes for roughly 219,000 accounts. (Preston Decl. ¶12.) Each of these account notes reflects Collecto's efforts to collect on a Verizon account, and contains one or more telephone numbers with a California area code that Collecto's employees recorded as a wrong number—i.e., not the telephone number of the person Collecto sought to call. (*Id.*) Lofton then compared the telephone numbers from Collecto's account notes with Collecto's telephone bills from January 2012 to June 2012. (*Id.* ¶13.) Lofton has identified telephone numbers: (1) which Collecto actually called where the call lasted more than five seconds (based on Collecto's telephone bills); and (2) where the telephone bills and account notes confirm Collecto called on the same date; while filtering out telephone numbers (3) where the account notes indicate (a) a disconnected number; (b) that a message was left (to weed out answering machines); or (c) a fax. (*Id.* ¶¶13-14.) Lofton was still left with 2,411 telephone numbers; approximately one-third are cellular telephone numbers. (*Id.* ¶14.) The FCC has determined that, as of 2011, an estimated 32.3 percent of all adults in the United States lived in cellular telephone-only households and 34 percent of all households in the United States were cellular telephone-only. *See In re Implementation of Section 6002(b) of the Omnibus Budget Reconciliation Act of 1993, Annual Report and Analysis of Competitive Market Conditions With Respect to Mobile Wireless, Including Commercial Mobile Services*, WT No. 11-186, FCC No. 13-34, ¶1, 28 FCC Rcd. 3700, 3724 (March 21, 2013). But even an estimated 800 or so section 632.7 violations still significantly undercounts the number of IPA violations. Most obviously, Lofton only compared the account notes against six months of telephone bills—he filtered out

any telephone number that did not appear in Collecto's telephone bills for first six months of 2012, and where the date of the call did not match in telephone bills and the account notes.[2]

At least one other debt collector (Vantage Credit Group LLC ("Vantage")) also followed Verizon's monitoring policy. (Preston Decl. ¶15.) Verizon has assigned a significant number of accounts to Vantage. Between June 2011 and June 2013, Verizon assigned Collecto approximately 503,000 accounts. (*Id*. ¶16.) During the same period, Verizon assigned Vantage approximately 2,570,000 accounts. (*Id*.) Verizon has produced roughly 26 million lines of account notes from its own CACS database; these account notes were saved to Verizon's systems by all its debt collectors (including Vantage) between September 3, 2010 and March 11, 2013. (*Id*. ¶17.) Lofton has found 131,979 notes in the CACS files which were (1) prepared by Vantage; and (2) which contain the notation "bad CBR" (i.e., "wrong Can Be Reached number"). (*Id*.) While Lofton cannot readily *identify* the wrong numbers in these notes (at least not in the form they were produced), his analysis suggests these debt collectors place a significant volume of calls to non-Verizon subscribers.[3] Lofton freely concedes that his analysis of the CACS and Collecto account notes does not account for every contingency and therefore does not conclusively identify wrong numbers called by Collecto or Vantage.[4] That is not the point: Lofton does not need a definitive list of class members for the purposes of this Motion. Rather, the point is that it is reasonable to infer from the facts available *now* about (1) the volume of accounts Verizon assigned to Collecto, Vantage, and VKI; (2) these debt collectors' compliance with Verizon's monitoring disclosure policy; and (3) the prevalence of indications that the debt collectors called wrong numbers in Collecto's notes and Verizon's CACS notes, that Verizon's monitoring disclosure policy caused a significant number of section 632.7 violations.

---

[2] Until recently, Lofton did not have any of Collecto's telephone bills past January 2012. In late December 2013, Lofton obtained telephone bills from Collecto's telephone company going back to July 2009.

[3] Verizon has also produced 117 California area code telephone numbers which are marked as "wrong numbers" by Vantage, although Lofton again has reason to believe this number is again grossly underinclusive.

[4] The reason for this is that Verizon has obstructed Lofton's class discovery at every turn.

**B.      Without the Proposed Injunction, Lofton and the Other Injunctive Class Members Are at Risk of Irreparable Harm**

The IPA specifically authorizes injunctive relief. "Any person may . . . bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages[.]" Cal. Pen. Code § 637.2(b). Where "injunctions are authorized by statute, irreparable injury need not be shown." *J2 Global Commc'ns, Inc. v. Blue Jay Inc.*, No. 08-4254, 2009 WL 4572726, at *8 (N.D. Cal. Dec. 1, 2009) (quoting *United States v. Laerdal Mfg. Co.*, 73 F.3d 852, 855 (9th Cir. 1995) for proposition that "a statutory injunction may be imposed when a violation of a statute has been or is about to be committed"; cited by *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, No. 13-00229, 2013 WL 6571629, *18 (N.D. Cal. Aug. 19, 2013)). The proposed injunction restrains prospective violations of the IPA by prohibiting Verizon, its debt collectors, and its other customer service representatives from recording any calls to California cellular telephone users without first disclosing such recording.

Of course, Lofton does not rest on the IPA's authorization of injunctive relief alone. Violations of section 632.7 pose a risk of irreparable harm—to the Injunctive Class members' privacy. Notwithstanding Verizon's March 11, 2013 change to its monitoring disclosure policy, the Injunctive Class is still at risk of irreparable harm—the Injunctive Class's legal position with respect to Verizon did not fundamentally change in March 2013.

**1.      IPA Violations Constitute Cause Irreparable Harm**

Verizon's TCPA violations harm the Injunctive Class's privacy interests under section 632.7. Violation of statutory privacy interests constitutes irreparable harm. Where a statute is "intended to protect" a consumer's "interest" in his or her privacy, the violation of the "right to privacy" under such statute constitutes "irreparable harm." *Meyer*, 707 F.3d at 1044, 1045 (violations of Telephone Consumer Protection Act). The IPA was expressly enacted "to protect the right of privacy of the people of this state." Cal. Pen. Code § 630.

Irreparable harm is protean and "does not readily lend itself to definition": irreparable injuries "cannot be adequately atoned for in money, or . . . cannot [be] remed[ied] . . . following a final determination on the merits." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518

F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) ("*MGM*") (citation, punctuation omitted). Hence, courts in the Ninth Circuit have recognized that a broad range of "intangible injuries . . . qualify as irreparable harm." *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citing *Regents of Univ. of Cal. v. American Broad. Cos.*, 747 F.2d 511, 519-20 (9th Cir. 1984)).[5] In particular, "[i]njuries to individual dignity . . . constitute irreparable injury." *Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1084 (N.D. Cal. 1997) (ADA case). The IPA's provision for private remedies reflects the judgment of the California Legislature that "that no violation of the privacy act is to go unpunished[;] [a]ny invasion of privacy involves an affront to human dignity[.]" *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993) (emphasis added). Courts have recognized that invasions of other types of privacy interest constitute irreparable harm. *See Michaels v. Internet Entm't Group, Inc.*, 5 F. Supp. 2d 823, 842 (C.D. Cal.1998) (injury from invasion of privacy was to plaintiff's "human dignity and peace of mind"; "such injuries are to some extent irreparable"); *Am. Fed'n of Gov't Employees, Local 1616 v. Thornburgh*, 713 F. Supp. 359, 366 (N.D. Cal. 1989) ("significant possibility of irreparable injury by . . . infringement of individual privacy"). The fact that such injuries do not create clearly defined financial losses does not mean that is there no irreparable harm. On the contrary, as discussed below, where "damages would be difficult to valuate[,] [they] thus constitute[] possible irreparable harm." *Rent-A-Center*, 944 F.2d at 603. *See also Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991).

## 2.    Money Damages Are Not an Adequate Remedy

The IPA provides remedies for injunctive relief, treble "actual damages," and statutory damages. Cal. Pen. Code § 637.2. "[T]he 'mere existence' of [a damages remedy] is not sufficient to warrant denial of equitable relief: 'In order to preclude the granting of relief by the equity court, an available remedy at law must be plain, clear and certain, prompt or speedy,

---

[5]    Similar intangible injuries have also been found to constitute irreparable harm. *See, e.g., Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 483 (C.D. Cal. 2012) (loss of "peace of mind," "stress, anxiety, and uncertainty" constitutes irreparable harm); *Ft. Funston Dog Walkers v. Babbitt*, 96 F. Supp. 2d 1021, 1040 (N.D. Cal. 2000) (imminent park closure threatened plaintiffs' "continued access to recreation that improves the quality of their lives"; harm posed by closure was "substantial and irreparable").

sufficient, full and complete, practical, efficient to the attainment of the ends of justice, and final.'" *United States v. Bluitt*, 815 F. Supp. 1314, 1317-18 (N.D. Cal. 1992) (quoting *Interstate Cigar Co. v. United States*, 928 F.2d 221, 223 (7th Cir. 1991), punctuation omitted).[6]

**Actual Damages Are Difficult to Calculate:** The California Supreme Court has "recognize[d] that ascribing a monetary value to the invasion of privacy resulting from the secret recording of a telephone conversation is difficult . . . and that the deterrent value of such a potential monetary recovery cannot affect conduct that already has occurred." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 130 (2006). Damages are an inadequate remedy where the "nature of the plaintiff's loss [makes] damages very difficult to calculate." *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1479 (9th Cir. 1994) (citation omitted). *See also Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998) ("no legal remedies available that would adequately compensate [plaintiffs where] [t]here is no way to calculate the value of [violation of constitutional rights] or the damages that result from erroneous deportation"). *Cf. Michaels*, 5 F. Supp. 2d at 842 (while "monetary damages are available for [injuries from invasion of privacy], they are difficult to quantify" and therefore support injunctive relief).

**Damages Will Not Restore to Injunctive Class Members Their Right of Control Dissemination of Their Statements:** Damages are not effective or practical protection for a legal right or interest if they merely set the price of a license for a persistent tortfeasor to violate that right or interest. The IPA protects one of the "important aspect[s] of privacy of communication": a speaker's "right to control the nature and extent of the firsthand dissemination of his statements." *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985). Courts in this Circuit have recognized that damages are inadequate in other contexts, if the result is that the plaintiff effectively loses control over a right or interest (even if it is at some price set by the court). The Ninth Circuit rejected a request for compulsory royalties in lieu of injunctive relief

---

[6] "It is not enough that there is a remedy at law: it must be plain and adequate, or in other words, as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity." *Boyce's Ex'rs v. Grundy*, 28 U.S. 210, 214 (1830) (quoted by *Lake Charles Rice Milling Co. v. Pac. Rice Growers' Ass'n*, 295 F. 246, 249 (9th Cir. 1924); *Rodgers v. United States*, 158 F. Supp. 670, 679 (S.D. Cal. 1958)).

1   against contributory copyright infringement because the plaintiffs "would lose the power to

2   control their intellectual property[.]"*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1029

3   (9th Cir. 2001) (cited, followed by *MGM*, 518 F. Supp. 2d at 1217 (copyright infringement

4   causes irreparable harm where "it has the actual effect of irreparably harming a plaintiff's right

5   to control the use of his/her copyrighted material")). *See also Hollywood Athletic Club Licensing*

6   *Corp. v. GHAC-CityWalk*, 938 F. Supp. 612, 615, 616 (C.D. Cal. 1996) ("significant threat of

7   irreparable harm" where continued trademark infringement would lead to consumer confusion

8   and deprive the trademark owner of being "able to control its reputation"); *Jay Bharat*

9   *Developers, Inc. v. Minidis*, 167 Cal. App. 4th 437, 447 (2008) (injunctive relief was appropriate

10  where plaintiff proved irreparable harm and "that the interim harm it would suffer was more than

11  monetary," by establishing "lack of control over its Red Brick Pizza mark").

### 3.   Verizon's March 11, 2013 Change to Its Monitoring Disclosure Policy Does Not Alleviate the Risk of Irreparable Harm

13          Beginning in September 3, 2010, Verizon's monitoring policy excluded a monitoring

14  disclosure for "invalid CBR (Can Be Reached) numbers." (*See* Preston Decl. ¶¶7-8.) The Ninth

15  Circuit has held that there are "at least two ways in which to demonstrate that [irreparable] injury

16  is likely to recur." *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001), *abrogated on other*

17  *grounds by Johnson v. California*, 543 U.S. 499 (2005). The first is to "show that the defendant

18  had, ***at the time of the injury***, a written policy, and that the injury "stems from" that policy." Id.

19  ("where the harm alleged is directly traceable to a written policy . . . there is an implicit

20  likelihood of its repetition in the immediate future"; emphasis added). The second way to

21  demonstrate "sufficient possibility that [defendants] will engage in [injurious acts] in the near

22  future" is to show that they "have repeatedly engaged in the injurious acts in the past." *Id*.

23  (followed by, e.g., *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 850-51 (N.D. Cal. 2011)

24  which held plaintiffs had standing for injunctive relief even where defendant's restaurants were

25  compliant at the time of the motion for injunction). Both these factors are present here.

26          Verizon's elimination of the exclusion for monitoring disclosures for "invalid CBR" calls

27  from its policy in March 11, 2013 does not moot the risk of irreparable harm. "It is well settled

28

---

that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways." *EEOC v. Federal Exp. Corp.*, 558 F.3d 842, 847 (9th Cir. 2009) (citation , punctuation omitted). In particular, courts' "power to grant injunctive relief survives discontinuance of the illegal conduct." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992).

It is true that voluntary cessation *can* eliminate the risk of irreparable harm—under the right circumstances. But the evidentiary standard for "determining whether a case has been mooted by the defendant's voluntary conduct is stringent," and the burden of proof resolutely falls on Verizon. *Federal Exp.*, 558 F.3d at 847 (citation , punctuation omitted).

> A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Id*. (same). While a "victim can moot her need for injunctive relief by her own conduct[,] the alleged wrongdoer can not moot the need for injunctive relief as easily." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1237 (9th Cir. 1999). An "action for an injunction does not become moot merely because the conduct complained of was terminated, *if there is a possibility of recurrence*, since otherwise the defendants would be free to return to their old ways." *Id*. (citation, punctuation omitted, emphasis in original). Unless a defendant fails to show "that it is 'absolutely clear' that their wrongful activities are not reasonably likely to recur," courts will not conclude that "the need for injunctive relief is moot solely because of the [defendant's] cessation of their unlawful conduct." *Id*. at 1238.[7] *See also Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 593 F. Supp. 2d 1088, 1110-11 (N.D. Cal. 2009) ("cessation of unlawful conduct may render a request for injunctive relief moot, [but] 'the reform of the defendant must be irrefutable and total'; quoting *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986)).

Courts in this Circuit have consistently rejected "attempts to shift the burden to [the

---

[7]   It is instructive to compare this case with the daunting evidentiary demonstration required by the Court to prove that voluntary cessation has actually mooted injunctive relief. *Cf. Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 06-02671, 2012 WL 3762440, *3  (S.D. Cal. Aug. 28, 2012).

movant] to defeat mootness" based on voluntary cessation as "impermissibl[e]." *Rosemere Neighborhood Ass'n v. EPA,* 581 F.3d 1169, 1173 (9th Cir. 2009). Where defendants do not "stop violating [plaintiff's] rights until" after the plaintiff sues, the Court "should not require [plaintiff] also to introduce concrete evidence that the defendants are likely to [violate their rights] again" before imposing injunctive relief. *Polo Fashions*, 793 F.2d at 1135 (reversing district court that "refused to grant an injunction because the plaintiffs had not introduced any specific evidence to demonstrate that the defendants would infringe in the future").

Here, Verizon cannot show it is "absolutely clear" that it will never again carve out the "invalid CBR" exclusion in its monitoring disclosure policy which gave rise to this case. Until September 3, 2010, Verizon's monitoring policy did not contain this exclusion. (Preston Decl. ¶8.) Thus, from August 2008 to September 2010, Verizon's monitoring policy provided for a monitoring disclosure in every outbound call. (*Id.*) Hence, Verizon changed its policy to carve out disclosures for "invalid CBR" calls in 2010 and *it can do the exact same after this litigation is over.* Indeed, Verizon has admitted "that it has the same ability to alter its [monitoring disclosure] policies now as in the past." (*Id.* ¶11.)

The timing of Verizon's March 2013 policy change is relevant as well. Verizon did not change its monitoring disclosure policy until nine months after Lofton filed suit, and less than three weeks after Lofton served discovery about its current monitoring policy. (*Id.* ¶¶9-10.) A defendant's assertion that it will not violate the law does not moot injunctive relief where the defendant "did not make that promise before plaintiff filed this lawsuit[;] plaintiff is not required to take defendant at its word." *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 649 (W.D. Wash. 2007). Voluntary cessation does not render injunctive relief moot "where the defendant has ceased to engage in the challenged conduct only for practical or strategic reasons—such as avoiding litigation[.]" *Envm'tl Protection Info. Ctr. v. United States Forest Service*, No. 02-2708, 2006 WL 2130905, *4 (N.D. Cal. July 28, 2006).[8]

---

[8]   *See also United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 176 (9th Cir. 1987) ("Courts must beware of attempts to forestall injunctions through remedial efforts and promises of reform that seem timed to anticipate legal action[.]"); *United States v. Parke, Davis & Co.*, 362 U.S. 29, 48 (1960) (district court's "wide discretion in fashioning" injunctive relief cannot be restricted "by lightly inferring an abandonment of

## C.      The Balance of Harms Favors the Proposed Injunction

The injunction is narrowly drafted to require Verizon to refrain from doing only what the IPA prohibits: recording telephone calls to cellular telephones without prior disclosure of the recording. Plainly, Lofton and the other Injunctive Class members have a significant interest in their privacy rights under the IPA. Conversely, Verizon has required prior disclosure of recording now and in the past: the injunctive relief cannot impose any costs on Verizon. "If [Verizon] sincerely intend[s] not to [violate the IPA], the injunction harms [it] little;" but if Verizon does continue to violating the IPA, the injunction gives Lofton and the other Injunctive Class Members "substantial protection[.]" *Polo Fashions*, 793 F.2d at 1135-36.

Moreover, Verizon cannot have a valid interest in reverting to a policy that violates the IPA. "Where the only hardship that the defendant will suffer is [economic benefits] from an activity which has been shown likely to [violate the law], such an argument in defense merits little equitable consideration [with respect to a] preliminary injunction." *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) (copyright case, citation and punctuation omitted). Hence, the balance of hardships must tip soundly in Lofton's favor.

## D.      The Public Interest Favors the Proposed Injunction

The public interest factor in the determination to issue a preliminary injunction concerns "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009) (citation omitted). No third parties could be harmed if Verizon is prevented from violating the IPA. Rather, the injunction would benefit competitors of Verizon which comply with the IPA by leveling the competitive playing field between Verizon and competitors which comply with the IPA. *Cf. Kearney*, 39 Cal.4th at 126 (application of IPA to companies like Verizon prevents "unequal application of the law very well might place [compliant] companies at a competitive disadvantage").

---

the unlawful activities from a cessation which seems timed to anticipate suit"; quoted by *MGM*, 518 F. Supp. 2d at 1221); *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978) ("courts must be particularly skeptical about attaching any significance to contrition under protest").

### E.   The Court Should Only Require a Nominal Bond

Federal Rule of Civil Procedure 65(c) requires that a movant for a preliminary injunction give "security . . . in such sum as the court deems proper" before any preliminary  injunction issues. Fed. R. Civ. P. 65(c). "Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)) (emphasis in original). A district court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id. See also Justin v. City of Los Angeles*, No. 00-12352, 2000 WL 1808426, at *2 (C.D. Cal. Dec. 5, 2000) (bonds under Rule 65(c) have "been dispensed with entirely where there was no proof of likelihood of harm to the party enjoined"). Here, Verizon cannot argue that compliance with the injunction would harm its interests in any way.

Conversely, there is "long-standing precedent that requiring nominal bonds is perfectly proper in public interest litigation." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2004).  *See also Cupolo*, 5 F. Supp. 2d at 1086 (in "noncommercial cases[,]courts should consider the hardship a bond requirement would impose on the party seeking the injunction in addition to the expenses the enjoined party may incur as a result of the injunction"; imposing $100 bond in class action); *Walker v. Pierce*, 665 F. Supp. 831, 843-44 (N.D. Cal. 1987) (waiving bond requirement for class representative). Lofton is an individual consumer: he obtained representation on a contingency basis and cannot responsibly devote more than $1,000 towards a bond that will serve to protect his interests and the interests of other recipients of Verizon's calls. (Lofton Decl. ¶6.)  Lofton's status as class representative, his inability to absorb the expenses of large commercial enterprises like Verizon, the minimal costs of complying with the proposed injunction, and the public interest features of the relief sought all weigh in favor of a minimal bond, or no bond at all. *Cf. Jorgensen*, 320 F.3d at 919-20 (affirming no bond absent "showing that some harm is more likely absent the posting of a security bond").[9]

---

[9]   *See also Barahona-Gomez*, 167 F.3d at 1237 (affirming district court's discretion to require only nominal bond of $1,000); *Justin*, 2000 WL 1808426, at *13 (where injunction on constitutional claim "pose[d] no risk of pecuniary injury," class representative exempted from bond).

**II.     Lofton Satisfies the Standards for Class Certification Under Rule 23(b)(2)**

Injunctive relief may be "limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs." *Zepeda v. INS*, 753 F.2d 719, 728 (9th Cir. 1983). Lofton asserts that he is entitled to an injunction under *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996), which recognized that "an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit – even if it is not a class action . . . " *Id*. at 1501-02. Lofton expressly reserves that argument, but also asserts in the alternative that the Court can and should certify the Injunctive Class for the limited purpose of effectuating the proposed injunction. The Injunctive Class is defined as all persons (1) residing in California; (2) who have a cellular telephone number; (3) who are not past or current customers of Verizon; and (4) who have been or may be called by Verizon or its debt collectors in the future.

Rule 23 provides the Court with sufficient flexibility to certify the Injunctive Class for the purpose of effectuating the preliminary injunction: "an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Rule 23(c)(4) provides the Court with the power to "to limit the issues in a class action to those parts of a lawsuit which lend themselves to convenient use of the class action motif." *Soc'y for Individual Rights, Inc. v. Hampton*, 528 F.2d 905, 906 (9th Cir. 1975) (punctuation, citation omitted, certification of class only for prospective injunctive relief was proper).[10] *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (even where "Rule 23 authorizes the district court in appropriate cases to isolate . . . common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues"). For instance, "[a] court may certify a Rule 23(b)(3) class for certain claims, allowing class members to opt out, while creating a non-opt-out Rule 23(b)(1) or (b)(2) class for other claims." Manual for Complex Litigation § 21.24 (4th ed. 2004).

> [Rule 23(c)(4)] is particularly helpful in enabling courts to restructure complex cases to meet the . . . requirements for maintaining a class action. . . . [Rule

---

[10] "Rule 23(c)(4) . . . authorizes the court . . . to allow a class action to be maintained with respect to particular issues . . . Rule 23(c)(4) gives the court ample power to 'treat common things in common and to distinguish the distinguishable.'" 7AA Charles Alan Wright, Arthur R. Miller, et al, Federal Practice & Procedure § 1790 (3d ed. 2010).

> 23(c)(4)] is designed to give the court maximum flexibility in handling class actions, its proper utilization will allow a Rule 23 action to be adjudicated that otherwise might have had to be dismissed or reduced to a nonrepresentative proceeding because it appears to be unmanageable.

*In re Activision Sec. Litig.*, 621 F. Supp. 415, 438 (N.D. Cal. 1985) (certification on single issue related to liability). *See also In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1139 (9th Cir. 2002) (remanding with recommendation that the trial court consider "[class] certification only for questions of generic causation common to plaintiffs who suffer from the same or a materially similar disease"); *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 453 (N.D. Cal. 1994) (certifying class for injunctive and statutory damages, but using Rule 23(c)(4) to exclude certification for damages under different theory that required individualized proof). Under Federal Rule 23(c)(4), the Court can certify a class for the purpose of granting the preliminary injunction sought above.

### A. The Class Meets the Requirements of Rule 23(a)

Certification of a class under Rule 23 requires numerosity (i.e., "the class is so numerous that joinder of all members is impracticable"); commonality ("questions of law or fact common to the class"), typicality (the class representative's "are typical" of the class's claims), and adequacy (the class representative "will fairly and adequately" protect the class's interests), as well as ascertainability. Fed. R. Civ. P. 23(a). Lofton presents sufficient evidence to demonstrate each of the elements of class certification, as explained below.

Class certification has a lenient evidentiary standard; "all that is required" to certify a class is "material sufficient to form a reasonable judgment on each requirement" of Rule 23. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Lofton's "burden at the class certification stage is slight"; the Court "need only be able to make a reasonable judgment that Rule 23 requirements are satisfied." *Marlo v. United Parcel Serv. Inc.*, 251 F.R.D. 476, 487 (C.D. Cal. 2008) (quoted by *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 601 (S.D. Cal. 2010)). *See also Blackie*, 524 F.2d at 901 ("extensive evidentiary showing . . . is not required"). Conversely, "weighing competing evidence is inappropriate at [the class certification] stage of the litigation." *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 630 (S.D. Cal. 2010) (citing

*Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)).[11] In light of the evidence supporting this Motion, the Court has more than enough material sufficient to form a reasonable judgment that class certification is appropriate.

### 1.     The Injunctive Class Satisfies the Ascertainability Requirement

Although "it is not an enumerated requirement of Rule 23," a class "must be adequately defined and clearly ascertainable" to obtain certification. *Vietnam Veterans of Am. v. CIA*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (citation, punctuation omitted). Ascertainability requires that the class definition use "objective criteria," so that "it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Id.* (same). The Injunctive Class meets this requirement because it uses a straightforward and objective definition: California residents with a cellular telephone who have been called or may be called by Verizon's debt collectors. This class definition does not need to be more precise. "A precise class definition is less important in cases in which plaintiffs are attempting to certify a class for injunctive relief[.]" *Conant v. McCaffrey*, 172 F.R.D. 681, 693 (N.D .Cal. 1997).

**Future Class Members Does Not Impair Ascertainability:** Lofton anticipates two likely objections. First, "[t]he fact that the class includes future members does not render the class definition so vague as to preclude certification." *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986) ("[t]he inclusion of future class members in a class is not itself unusual or objectionable"; cited by *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2010)). A class which includes future class members is still ascertainable. *Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 255 (N.D. Cal. 2012). Indeed, "the very nature of an injunctive class contemplates that there will be class members who can only be determined in the future." *Multi-*

---

[11]     Additionally, appellate review on "'a grant of class certification . . . accord[s] the district court noticeably more deference than . . . a denial of class certification.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010) (quoting *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008)). Where a district court's denial of class certification "fails to make sufficient findings to support its application of the Rule 23 criteria," the denial "is not entitled to the traditional deference given to such a determination." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010) (citation, punctuation omitted).

*Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621, 630 (C.D. Cal. 2007). *Cf. Davis v. Astrue*, 250 F.R.D. 476, 485 (N.D. Cal. 2008) ("courts consistently certify classes that look to future members[;] class may properly include future beneficiaries"; citations omitted).

**Ascertainability Does Not Require Lofton Identify Injunctive Class Members:**

Second, "[t]here is no requirement that 'the identity of the class members . . . be known at the time of certification.'" *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (quoting *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011)). See also *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (ascertainability does not mandate that "every potential member can be identified at the commencement of the action"). It is irrelevant whether Verizon can identify Injunctive Class members; it only needs to make sure its monitoring disclosure policy complies with the IPA.

### 2.    The Injunctive Class Satisfies the Numerosity Requirement

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "'[I]mpractical' does not mean 'impossible.'" *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 488 (N.D. Cal. 2011) (citation omitted). "As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement." *Davis*, 250 F.R.D. at 485.

**The Court Has a Reasonable Basis to Infer Minimum Number of Class Members:**
The Court has sufficient evidence before it to find numerosity. Lofton does not need "'to either identify each particular member of a class, or to state the exact number of persons in a class.'" *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 449 (E.D. Cal. 2013) (quoting *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988)). Lofton's analysis of Collecto's notes indicates Collecto called more than 800 California area code cellular telephone numbers during the times Collecto followed Verizon's no-monitoring disclosure policy. (Preston Decl. ¶¶12-14.) Even without relying on Lofton's analysis of the Collecto notes, it is reasonable to infer numerosity from the other facts presented. At a minimum, Collecto's notes indicate that Collecto identified at least 219,000 wrong numbers with California area codes while collecting

on approximately 503,000 Verizon accounts. (*Id*. ¶12.) It is reasonable to infer minimum numerosity based on the 503,000 and 2,570,000 Verizon accounts respectively assigned to Collecto and Vantage. (*Id*. ¶16.) Likewise, Vantage has made over 130,000 "bad CBR" notations (i.e., wrong "can be reached" numbers) in Verizon's CACS systems. (*Id*. ¶17.)

The Court does not have to assume that each and every one of these figures represents a class number.  Rather, a "court may make common sense assumptions to support a finding that joinder would be impracticable." *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 347 (N.D. Cal. 2008). Even when class plaintiffs cannot identify actual class members out of the population of potential class members, courts infer numerosity when the population of potential class members is large and the difference between potential and actual class members is an everyday or unremarkable occurrence. *Cf. Lane v. Wells Fargo Bank, N.A.*, No. 12-04026, 2013 WL 3187410, *6 (N.D. Cal. June 21, 2013) (numerosity established by population of 200,000 potential class members; "[e]ven if the California class comprised only one percent" of 200,000 mortgagees with force-placed insurance policies).[12]

The Injunctive Class fits neatly with *Lane* and the footnoted cases: Verizon's uniform policy was not to disclose recording "invalid CBR" calls, and Collecto and Vantage followed this policy while collecting on *millions* of Verizon accounts. Given these facts, it is implausible

---

[12]   This is consistent with prevailing authority. *Gonzales v. Comcast Corp.*, No. 10-01010, 2012 WL 10621, *10 (E.D. Cal. Jan. 3, 2012) (where "Comcast has millions of customers in California alone," reasonable to infer that sufficient number cancelled their Comcast service to establish numerosity); *Mathias v. Smoking Everywhere, Inc.*, No. 09-03434, 2011 WL 5024545, *1 (E.D. Cal. Oct. 20, 2011) (numerosity established where there would be 600 class members "if California residents comprise[d] only one percent of" defendant's sales, even if defendant sold 60,000 kits instead of 300,000); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (court "certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year"); *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 120 (C.D. Cal. 2008) (population of 150,000 potential class members established numerosity, even though potential class members who were listed as disabled in census were not necessarily disabled  for purposes of the ADA and did not necessarily suffer discrimination from defendant); *Thompson v. Community Ins. Co.*, 213 F.R.D. 284, 292 (S.D. Ohio 2002) (court found numerosity where there would be 130 subclass members if "even one percent" of potential subclass members did not obtain replacement coverage, even though plaintiffs did not show how many of 13,000 potential subclass members did not obtain replacement coverage); *Folsom v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y. 1980) (population of 25,000 households potential class members established numerosity, even though challenged policy only applied to some unknown percent of these households, "the class will undoubtedly number in the hundreds at the very least").

that these debt collectors did *not* record at least forty California cellular telephone users. "[W]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Sweet v. Pfizer*, 232 F.R.D. 360, 366 (C.D. Cal 2005) (citation, quotation omitted). *Cf. R.P.-K. ex rel. C.K. v. Department of Educ., Hawaii*, 272 F.R.D. 541, 547 -548 (D. Haw. 2011) (numerosity established where it was "highly improbable" that factors cited by defendant would eliminate nearly entire population of 1,300 potential class members from the class); *Californians for Disability Rights*, 249 F.R.D. at 347 (where potential of 1.5 million potential class members, it was "nonsensical to suggest . . . that out of these 1.5 million, no more than the 22 class members identified" encountered barriers to disabled people on property maintained by California Department of Transportation); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004) (where population of potential class members was 150,000 wheelchair users in California, "the only way that this class is not numerous is if virtually none of [the 50 million] transactions [in 2002 at defendant's 220 restaurants in California] involved persons who use wheelchairs or scooters")

**Most Injunctive Class Members Do Not Know Their Rights Have Been Violated:**
Numerosity does not depend solely on "the absolute number of class members"; "other indicia of impracticability" include "the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought[.]" *Jordan v. City of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982). *Cf. Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Courts have recognized that limitations on class members' ability to bring individual claims favor numerosity.  *Cf. R.P.-K. ex rel. C.K.*, 272 F.R.D. at 548 (class "comprised exclusively of learning-disabled youth" favored numerosity because it was "extremely unlikely that these individuals would bring individual actions"); *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007) (numerosity favored where class members had "limited financial resources that would make it difficult or impossible for them to bring individual lawsuits"); *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 600 (N.D. Cal. 1986) (numerosity favored where it was "unlikely that many of these claimants have the financial resources to" bring individual claims). Here, the very nature of Verizon's section 632.7 violations makes it unlikely potential class

members can bring a claim. Where a defendant does not disclose illicit recording, "none of the class members could have known their privacy rights had been violated" and none of them can therefore bring a claim. *CashCall, Inc. v. Superior Court*, 159 Cal. App. 4th 273, 291 (2008). *Cf. Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007) (where "individual consumers are most likely unaware of their [statutory] rights[,] the likelihood of individual actions is remote")

   **Numerosity Requirement Is Relaxed Because Lofton Seeks Injunctive Relief for Unidentified, Future Class Members:** Injunctive relief supports numerosity because the proposed injunction protects, and the Injunctive Class includes, not only people who have received calls from Verizon but people who *will* receive calls from Verizon. "Where the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met," regardless of class size." *Nat'l Ass'n of Radiation Survivors*, 111 F.R.D. at 600 (N.D. Cal. 1986) (citation, punctuation omitted).[13] Lofton seeks class certification to obtain injunctive relief through this Motion; "numerosity requirements are often 'relaxed' when only injunctive or declaratory relief is sought." *Charlebois v. Angels Baseball, LP*, No. 10-0853, 2011 WL 2610122, *9 (C.D. Cal. June 30, 2011) (citing *Sueoka v. United States*, 101 Fed. Appx. 649, 653 (9th Cir. 2004)). Indeed, courts have held that where the plaintiff seeks "declaratory and injunctive relief, speculative assertions of class size are sufficient to meet the numerosity requirement." *Buttino v. FBI*, No. 90-1639, 1992 WL 12013803, *2 (N.D. Cal. Sept. 25, 1992).[14]

---

[13]   *See also Jordan,* 669 F.2d at 1320 ("joinder of unknown individuals is inherently impracticable"); G*reko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 426 (N.D. Cal. 2011) (class which "potentially include[d] future employees who have not yet been identified" supported numerosity); *Xiufang Situ*, 240 F.R.D. at 560 (fluid class "involve[ing] future members who are presently unidentifiable because new individuals regularly" fell into class definition supported numerosity); *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (joinder impractical where class members "are unknown and cannot be readily identified").

[14]   Other courts of appeal have recognized this principle. *See also Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir. 1984) (where class representative seeks injunctive relief, "rigorous application of the numerosity requirement would not . . . be warranted"); *Horn v. Assoc'd Wholesale Grocers, Inc.*, 555 F.2d 270, 275-76 (10th Cir. 1977) ("where the relief sought is injunctive and declaratory, even speculative and conclusory representations as to the size of the class are sufficient"); *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 645 (4th Cir. 1975) (same).

**Verizon Has Exclusive Access to Data Identifying Class Members' Telephone Numbers:** Lofton has detailed his travails in obtaining class discovery from Verizon elsewhere. (*Cf.* ECF No. 9.) Lofton has a greater license to rely on "reasonable inferences drawn from the available facts in estimating the size of the class" where "information regarding the number of individuals affected by [Verizon's] wrongful conduct is inherently within [its] control." *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 234 (C.D. Cal. 2003). A defendant "can hardly complain that plaintiffs have failed to establish the number" of class members when it has "at [its] disposal the information necessary to determine the number of [class members] but, to date, have made no attempt to do so." *National Ass'n of Radiation Survivors*, 111 F.R.D. at 598. *See also McNeill v. New York City Housing Authority*, 719 F. Supp. 233, 252 (S.D.N.Y. 1989) ("lack of knowledge as to the exact number of [class members] is not a bar to maintaining a class action where the defendants alone have access to such data"). Conversely, courts refuse to "deny class certification because of defendants' own failure to keep adequate records [to identify class members.]" *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-1392, 2012 WL 1327824, *8 (S.D. Cal. Apr. 17, 2012).

### 3. Common Legal and Factual Issues Pertain to Both Lofton and the Injunctive Class

The commonality and typicality requirements under Rules 23(a)(2) and 23(a)(3) are satisfied because there are sufficient common legal and factual questions as to each Injunctive Class member, including Lofton, to certify the Class. "[C]ommonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). Commonality can be "easily satisf[ied]" where class members "all base their claims on the same legal theory." *Xiufang Situ*, 240 F.R.D. at 560 (citation, punctuation omitted). However, these common issues must be material to the resolution of the class claims. "[C]ommon contention[s] . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

2541, 2551 (2011) (citation, punctuation omitted). Commonality is met when a class action will "generate common answers apt to drive the resolution of the litigation." *Id*. (citation, punctuation omitted). Here, Verizon's monitoring disclosure policy and its debt collectors' compliance with that policy (including recording of "invalid CBR" calls to cellular telephones without prior disclosure) are common to all Injunctive class members.

Because Lofton shares the foregoing common factual and legal issues with the other Class members, he also satisfies the typicality requirement. "The commonality and typicality requirements of Rule 23(a) tend to merge." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13, 102 S. Ct. 2364, 2371 n.13 (1982) cited by, e.g., *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 611 (S.D. Cal. 2007) ("the commonality and typicality inquiries overlap in their focus on the similarities in class claims")); *Armstrong*, 275 F.3d at 868 -869 ("issue presented with respect to typicality is similar to that presented with respect to commonality"). Typicality only requires that absent class members "have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id*. at 869.[15]

### 4.    Lofton Is an Adequate Representatives for the Class

Lastly, Rule 23(a)(4) requires that Lofton fairly and adequately protect the Injunctive Class's interests. The adequacy test poses two questions: (1) are there conflicts between Lofton or his counsel and the other Injunctive Class members, and (2) will Lofton and his counsel vigorously prosecute the class action? *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). *See also Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (adequacy "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive"). There is no evidence of any conflict between Lofton and any other Injunctive Class member. The Ninth Circuit "does not favor denial of class certification on the basis of speculative conflicts." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citation omitted). "[C]ourts have

---

[15]    *See also Xiufang Situ*, 240 F.R.D. at 561 ("[t]ypicality requires that named plaintiffs be members of the class they represent and possess the same interest and suffer the same injury as class members," citation, punctuation omitted). *Cf. Smith v. Univ. of Wa. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) (typicality does not turn on "particularized defenses against individual class members").

1    generally declined to consider conflicts . . . sufficient to defeat class action status at the outset

2    unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Blackie*,

3    524 F.2d at 909.

4              **5.      Lofton's Counsel Is Adequate**

5              Rule 23(g) was added in 2003 to require  an separate analysis of class counsel adequacy

6    independent from the analysis of class representative adequacy under Rule 24(a)(4). *See* Fed. R.

7    Civ. P. 23(g) advisory committee's note on 2003 amendment. Rule 23(g) provides that the Court

8    must consider counsel's work on the case, experience in handling complex litigation, counsel's

9    knowledge and the resources of counsel. Fed. R. Civ. P. 23(g)(1)(A). "Adequate representation is

10   usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v.*

11   *California Dep't. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008). Lofton's counsel has

12   diligently litigated this case, as well as the related *Collecto* action. Lofton's counsel are generally

13   well qualified and experienced in litigating consumer class actions, and specifically have

14   successfully litigated other consumer class actions in the past. (*See* Preston Decl. ¶18.) Counsel

15   have advanced the costs of litigation, representing the Class on a contingent fee basis, and have

16   provided adequate representation to the class pursuant to Rule 23(g). (*Id.*) Plaintiff's counsel are

17   adequate to represent the class. *Cf. Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 524 (C.D. Cal.

18   2011); *McKenzie v. Federal Exp. Corp.*, 275 F.R.D. 290, 302-03 (C.D. Cal. 2011).

19        **B.     The Injunctive Class Meets the Requirements of Rule 23(b)(2)**

20             Lofton seeks to certify a class under Rule 23(b)(2). Here, Verizon's monitoring

21   disclosure policy is directed at the entire Injunctive Class; under Rule 23(b)(2), it is immaterial

22   whether Verizon's debt collectors actually called any particular member. Class certification

23   under Rule 23(b)(2) requires that the defendant acts "on grounds that apply generally to the class,

24   so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

25   class as a whole." Fed. R. Civ. P. 23(b)(2). A defendants' conduct is directed towards the class,

26   within the meaning of Rule 23(b)(2), "even if it has taken effect or is threatened only as to one or

27   a few members of the class, provided it is based on grounds which have general application to

28   the class." Fed. R. Civ. P. 23(b)(2) advisory committee notes on 1966 amendments. Hence,

---

Memorandum Supporting Plaintiff's Motion            24                    No. C 13-05665 YGR
for Preliminary Injunction re IPA

[e]ven if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate [under Rule 23(b)(2)]. . . . "All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)."

*Walters*, 145 F.3d at 1047 (quoting 7A Charles Alan Wright, Arthur R. Miller, et al, Federal Practice & Procedure § 1775 (2d ed. 1986)). Certification under Rule 23(b)(2) is appropriate where the class action will "settl[e] the legality of the behavior [at issue] with respect to the class as a whole[.]" Fed. R. Civ. P. 23(b)(2) advisory committee notes on 1966 amendments. Rule 23(b)(2) certification is appropriate where the proposed injunction will settle the legality of Verizon's monitoring disclosure policy as a whole.

### III. Conclusion

There is sufficient evidence to conclude that Verizon routinely violates the California Invasion of Privacy Act. Lofton is entitled to injunctive relief to protect him and the other recipients of Verizon's calls. The proposed preliminary injunction balances appropriate protection of the privacy interests of Lofton and the other recipients of Verizon's calls, while minimizing the harm to Verizon's business to what is required to comply with the IPA. The Court should grant the proposed injunction. The Court should also certify the proposed Injunctive Class in order to effectuate the proposed injunction.

Dated: January 22, 2014

By:    s/Ethan Preston

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us
*Attorneys for Plaintiff John Lofton, on his own behalf, and behalf of all others similarly situated*