UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA



BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

| | | |
|---|---|---|
| JOHN LOFTON, AN INDIVIDUAL ON HIS OWN BEHALF AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) ) | PAGES 1 - 24 |
| PLAINTIFF, | ) ) | |
| VS. | ) ) | NO. C 13-05665 YGR |
| VERIZON WIRELESS (VAW) LLC, ET AL., | ) ) ) | DEFENDANTS' MOTION TO DISMISS |
| DEFENDANTS. | ) ) | OAKLAND, CALIFORNIA TUESDAY, MARCH 11, 2014 |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

FOR PLAINTIFF:          PRESTON LAW OFFICES
                        8245 NORTH 85TH WAY
                        SCOTTSDALE, ARIZONA  85258
                 BY:   ETHAN PRESTON, ATTORNEY AT LAW


                        PARISI & HAVENS LLP
                        15233 VALLEYHEART DRIVE
                        SHERMAN OAKS, CALIFORNIA  91403
                 BY:   DAVID C. PARISI, ATTORNEY AT LAW


FOR DEFENDANTS:         CARLSON & MESSER LLP
                        5959 W. CENTURY BOULEVARD, SUITE 1214
                        LOS ANGELES, CALIFORNIA  90045
                 BY:   CHARLES R. MESSER, ATTORNEY AT LAW


ALSO PRESENT:           PATRICIA SUNAR
                        JONATHAN BLAVIN

REPORTED BY:            RAYNEE H. MERCADO, CSR NO. 8258


    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

```
 1    TUESDAY, MARCH, 11, 2014                          2:07 P.M.

 2                    P R O C E E D I N G S

 3           THE CLERK:  CALLING CIVIL ACTION 13-5665, LOFTON

 4    VERSUS VERIZON WIRELESS.

 5       COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

 6           MR. PRESTON:  ETHAN PRESTON ON BEHALF OF PLAINTIFF

 7    JOHN LOFTON.

 8           MR. PARISI:  GOOD AFTERNOON, YOUR HONOR.  DAVID

 9    PARISI ALSO ON BEHALF OF PLAINTIFF JOHN LOFTON.

10           THE COURT:  GOOD AFTERNOON.

11           MR. MESSER:  CHARLES MESSER FOR THE DEFENDANT VERIZON

12    WIRELESS.  WITH ME AT THE TABLE, I HAVE PATRICIA SUNAR, WHO IS

13    THE ASSISTANT GENERAL COUNSEL OF VERIZON WIRELESS; AND

14    JONATHAN BLAVIN OF MUNGER, TOLLES & BLAVIN, LONG-TIME

15    CORPORATE COUNSEL FOR VERIZON WIRELESS.

16           THE COURT:  ALL RIGHT.  WHO'S GOING TO ARGUE THE

17    MOTIONS?

18           MR. MESSER:  I WILL ON BEHALF OF VERIZON WIRELESS,

19    YOUR HONOR.

20           MR. PRESTON:  I WILL, YOUR HONOR.

21           THE COURT:  OKAY.  WELL, LET ME TELL YOU BOTH, THEN,

22    WHERE I STAND COMING INTO THIS.

23       WITH RESPECT TO THE MOTION TO DISMISS, MY INCLINATION IS

24    TO DENY IT.

25       WITH RESPECT TO THE MOTIONS FOR PRELIMINARY INJUNCTION, MY
```

1   INCLINATION IS TO DENY IT.

2       LET'S START WITH THE MOTION TO DISMISS.  FIRST OF ALL,

3   PROCEDURALLY, WHY ARE WE HERE?  YOU'VE HAD MULTIPLE

4   OPPORTUNITIES TO RAISE THESE ISSUES WITH JUDGE BRICK; YOU

5   NEVER DID.  SO WHY NOW?

6           **MR. MESSER:**  BECAUSE THIS IS THE FIRST COMPLAINT THAT

7   PLEADED THE VERIZON POLICY AS PART OF THE COMPLAINT.  AND SO

8   IT IS THE FIRST PROCEDURAL WAY, SHORT OF SUMMARY JUDGMENT, IN

9   WHICH TO RAISE THIS ISSUE.

10      BECAUSE BEFORE, THE VERIZON POLICY WAS PART OF THE

11  COMPLAINT, WE JUST HAD A GENERAL ALLEGATION THAT THIS -- THE

12  VERIZON'S POLICY VIOLATED THE IPA.  BUT THE VERIZON POLICY

13  CRYSTALIZES THE NARROW CLASSES OF PERSONS TO WHOM THE

14  DISCLOSURE WAS NOT MADE.

15      PERSONS WHO WERE CALLED SAID, I'M CHARLES MESSER.  ARE YOU

16  CHARLES MESSER?  NO, I'LL GET HIM.  I'M CHARLES MESSER.  THE

17  FIRST PERSON ON THE PLAINTIFF'S THEORY IS ENTITLED TO

18  STATUTORY DAMAGES.  WE ASSERT THAT THAT IS AN IMPLAUSIBLE

19  INTERPRETATION OF THE CALIFORNIA IPA.

20      SECOND CATEGORY, CHARLES MESSER IS THERE?  NO.  CAN I --

21  LEAVE A MESSAGE TO CALL HIM.  SURE.  TAKE DOWN THIS

22  INFORMATION, CALL VERIZON WIRELESS.  NO DISCLOSURE.  AGAIN, NO

23  PRIVATE INFORMATION.  WE DON'T THINK THAT'S WHAT THE

24  LEGISLATURE INTENDED, FOR THAT TO BE PUNISHABLE BY A $5,000

25  STATUTORY PENALTY FOR EACH RECORDING BECAUSE THERE'S NO

1    INVASION OF PRIVACY.  AND THE THIRD EXAMPLE, THE WRONG NUMBER

2    CALL OF WHICH MR. LOFTON IS A CLASS MEMBER.

3        BUT PROCEDURALLY, THAT'S THE REASON THAT IT WAS NOT RAISED

4    BEFORE NOW BECAUSE THESE CATEGORIES OF PERSONS WERE NOT BEFORE

5    THE COURT -- WERE NOT -- WERE NOT DEFINED.

6            **THE COURT:**  WELL, WHAT CATEGORY OF PERSONS WAS

7    DEFINED THEN?

8            **MR. PRESTON:**  YOUR HONOR, IT'S ALWAYS BEEN A WRONG

9    NUMBER CASE.  WE'VE --

10           **THE COURT:**  YEAH.  I MEAN, THE FUNDAMENTAL UNDERLYING

11   FACTS DIDN'T CHANGE.  THIS STATUTE WAS PLEADED.  YOU HAD

12   MULTIPLE ROUNDS OF DEMURRERS IN FRONT OF JUDGE BRICK, WHO IS

13   PURELY AND EMINENTLY CAPABLE OF INTERPRETING A CALIFORNIA

14   STATUTE.  THE ONLY THING THAT CHANGED WAS THAT THEY ADDED A

15   FEDERAL CAUSE OF ACTION, WHICH IS WHAT BROUGHT YOU HERE.

16           **MR. MESSER:**  RIGHT.

17           **THE COURT:**  SO DID THE FACTUAL ALLEGATIONS CHANGE?

18           **MR. MESSER:**  WELL, THEY GOT MORE SPECIFIC.

19           **THE COURT:**  IS THAT TRUE?

20           **MR. PRESTON:**  NOT MATERIALLY.  WE DID ADD THE POLICY.

21   BUT THIS HAS ALWAYS BEEN A WRONG NUMBER CASE.  IN EVERY SINGLE

22   VERSION OF THIS COMPLAINT, WE HAVE ALLEGED, LOOK, IT'S ALL THE

23   PEOPLE WHO ARE NON-SUBSCRIBERS.  NOBODY WHO'S A SUBSCRIBER.

24   THAT'S ALWAYS BEEN THE CASE.  THEY'RE --

25        THE DISTINCTION HE'S -- MR. MESSER IS RELYING ON IS, WELL,

```
1    IT'S -- THIS IS THE FIRST TIME WE'VE DISCUSSED, YOU KNOW,

2    NONCONSUMERS.  NO, MA'AM.  WE HAVE ALWAYS ALLEGED A CLASS OF

3    NONCONSUMERS.  MR. LOFTON HAS ALWAYS EXPLICITLY BEEN ALLEGED

4    TO BE NOT A -- A SUBSCRIBER OF VERIZON.

5         THE COURT:  WELL, LET'S LOOK AT THE STATUTE.

6         THERE HAVE BEEN A NUMBER OF FEDERAL COURTS WHO'VE

7    SPECIFICALLY LOOKED AT 637.2 AND AGREE WITH YOUR

8    INTERPRETATION.  CERTAINLY, WHILE FLANAGAN DID NOT DEAL WITH

9    UNDERLYING CONCERN ABOUT 637.2, IT DID ADDRESS THE COHERENT

10   SCHEME THAT WAS CONTEMPLATED UNDER -- IN THAT PARTICULAR

11   SECTION AND SUGGESTED THAT THERE WAS A -- NO DIFFERENCE IN

12   TERMS OF THE REQUIREMENT THAT YOU'RE ASKING FOR UNDER 637.2 AS

13   CRAFTED WITH 632.

14        MR. MESSER:  WELL --

15        THE COURT:  AND -- AND I SEE NOTHING IN THE -- YOU

16   GAVE ME NO LEGISLATIVE HISTORY OTHER THAN, YOU KNOW, LAW

17   ACCORDING TO THE DEFENDANT TO SUGGEST THAT I SHOULD VEER AWAY

18   FROM WHAT THE SUPREME COURT OF CALIFORNIA HAS SUGGESTED.

19        MR. MESSER:  WELL, YOUR HONOR, FLANAGAN WAS A 632

20   CASE AS YOU KNOW --

21              (SIMULTANEOUS COLLOQUY.)

22        MR. MESSER:  AND WE KNOW THAT YOU WROTE THE SIMPSON

23   VS. VANTAGE HOSPITALITY CASE --

24              (SIMULTANEOUS COLLOQUY.)

25        THE COURT:  WHICH YOU DIDN'T BOTHER TO RAISE IN YOUR
```

1    BRIEFING, BUT GO AHEAD.

2              **MR. MESSER:**  I DID IN MY REPLY BRIEF AT LENGTH.  I

3    DISCUSSED IT.  AND -- AND, IN FACT, THE ORIGINAL MOTION QUOTED

4    THE SECTION ON THE RULES OF STATUTORY INTERPRETATION.  WE KNOW

5    YOU WROTE THIS DECISION.  WE AGREE WITH THAT DECISION.

6         WE DISAGREE --

7              **THE COURT:**  WELL, THEN FOR PRACTICE PURPOSES, BY THE

8    WAY, TAKE A PRACTICE TIP, TELL THE JUDGE UP FRONT IN YOUR

9    MOTION, DON'T WAIT TILL YOUR REPLY BRIEF BECAUSE YOUR

10   CREDIBILITY SUFFERS.  BUT GO AHEAD.

11             **MR. MESSER:**  WELL, I'M MAKING AN ARGUMENT FOR THE

12   RECORD.  I'LL KEEP IT VERY SHORT.  WE ARGUED -- THE POINT OF

13   OUR MOTION WAS THAT JUST BECAUSE CONFIDENTIALITY IS NOT PART

14   OF SECTION 632.7 DOES NOT MEAN THAT PRIVACY IS NOT A PART OF

15   IT.  AND THAT PRIVACY AND CONFIDENTIALITY ARE DIFFERENT

16   BECAUSE IF THEY WERE THE SAME, COURTS WOULD BE SEALING COURT

17   RECORDS LEFT AND RIGHT.

18        WE KNOW PRIVACY IS BROADER, AND THE PURPOSE OF THE STATUTE

19   IS -- IS SET FORTH IN SECTION 630 TO PROTECT PRIVACY --

20             **THE COURT:**  RIGHT.  AND IT WAS INTERESTING TO ME THAT

21   YOU QUOTED BRANDEIS, 'CAUSE I WENT BACK TO THAT WONDERFUL 1890

22   LAW REVIEW ARTICLE IN WHICH BRANDEIS TALKED ABOUT THE RIGHT OF

23   PRIVACY.  AND WHAT I LOVED ABOUT IT WAS THAT BRANDEIS SAID

24   THAT THE RIGHT OF PRIVACY SHOULD BE DEFINED AS, QUOTE, THE

25   RIGHT TO BE LET ALONE, END OF QUOTE.

1    INTERESTING.  DON'T RECORD MY PHONE CALLS WHEN YOU CALL

2    ME.  LEAVE ME ALONE.  WHAT COULD BE MORE PRIVATE THAN THAT?

3    AND WHY CAN'T CALIFORNIA HAVE A VERY BROAD APPROACH TO THESE

4    THINGS?  THIS IS NOT THE WAY IT IS IN EVERY OTHER STATE, BY

5    THE WAY.  AND I UNDERSTAND THAT.

6         BUT CALIFORNIA HAS CHOSEN WITH VERY BROAD LANGUAGE TO SAY

7    THAT NO, YOU CAN'T RECORD OUR PHONE CALLS.

8         **MR. MESSER:**  CALIFORNIA CAN ABSOLUTELY DEFINE BROAD

9    PRIVACY RIGHTS.  WE HAVE NO QUARREL WITH THAT.  THE LEGAL

10   ARGUMENT IS WHETHER 632.7 CONTAINS -- IS ITSELF CONTAINS SOME

11   PRIVACY RIGHT OR WHETHER YOU MUST TURN TO SOME INTRINSIC

12   SOURCE OF PRIVACY LIKE A STATUTE CASE OR THE CONSTITUTION.

13        **THE COURT:**  AND WHERE DOES IT SAY THAT?  BUT WHERE --

14   YOU HAVE NO LAW.  YOU HAVE NO LAW TO SUPPORT YOU.  AND -- AND

15   THE BASIC APPROACH TO DEALING WITH STATUTORY CONSTRUCTION IS

16   TO LOOK AT THE WORDS.  SO IF THAT -- IF THAT'S THE CASE,

17   WHERE'S THE -- WHERE IS THE LEGISLATIVE HISTORY?  YOU DIDN'T

18   GIVE IT TO ME.

19        **MR. MESSER:**  I DID NOT.

20        **THE COURT:**  IS THERE ANY?  DID YOU LOOK?

21        **MR. MESSER:**  I DID.

22        **THE COURT:**  AND SO THAT --

23             (SIMULTANEOUS COLLOQUY.)

24        **THE COURT:**  AND SO IT DIDN'T SUPPORT YOUR VIEW

25   EITHER.

1    **MR. MESSER:**  DOESN'T SAY IT EITHER WAY.  WE RELY ON

2    THE SUPREME COURT OPINION IN <u>KEARNEY</u> ON SECTION 630 TO SAY

3    THAT THE LAW SHOULD BE INTERPRETED IN LIGHT OF ITS PURPOSE.

4    ITS PURPOSE IS TO PROTECT PRIVACY.

5       WE POINTED OUT IN OUR PAPERS HOW, IN OUR VIEW, THE OLD

6    VERIZON POLICY BETTER PROTECTED THE PRIVACY OF OUR CUSTOMERS

7    THAN THE PLAINTIFFS' INTERPRETATION.  WE THINK THE -- THE IPA

8    SHOULD BE SO CONSTRUED.

9          **THE COURT:**  WELL, YOU KNOW, IT'S INTERESTING BECAUSE

10   IF SOMEBODY CALLED A FEDERAL JUDGE AND TOOK A NICE LITTLE

11   SNIPPET OF OUR VOICE AND RECORDED IT AND THEN USED IT, EVEN IF

12   IT WAS LIKE, NO, I DON'T AGREE, THE NEXT THING WE KNOW OUR

13   VOICE IS THERE BEING USED BY SOMEONE.  WE COULD NOT USE

14   PENAL CODE SECTION 637.2 TO SAY, YOU RECORDED MY VOICE WITHOUT

15   TELLING ME?

16      WHAT DO YOU THINK ABOUT THAT?  THAT WOULD NOT BE -- I

17   DON'T KNOW.  I THOUGHT ABOUT THAT ONE AS I WAS THINKING ABOUT

18   YOUR CASE.

19          **MR. MESSER:**  UNLESS -- IF THAT WAS A NON-PRIVATE

20   CONVERSATION, THAT WOULD NOT BE A VIOLATION OF THE ACT IN OUR

21   VIEW.

22          **THE COURT:**  ANY COMMENTS?

23          **MR. PRESTON:**  SIMPLY THIS, YOUR HONOR:  PRIVACY

24   ENCOMPASSES LOTS OF DIFFERENT THINGS.  SOME ASPECTS OF PRIVACY

25   MEAN THAT -- PROTECT -- CONCERN THE REASONABLE EXPECTATION OF

1 PRIVACY.  DID YOU KNOW THAT YOU WERE BEING RECORDED?  DID YOU

2 EXPECT TO BE RECORDED?

3    RIBAS AND CLARK, WITH RESPECT TO THE INVASION OF PRIVACY

4 ACT, IS PRETTY CLEAR.  IT -- THE POINT OF THIS STATUTE IS

5 THE -- THE RIGHT TO PROTECT -- THE RIGHT TO CONTROL THE

6 DISSEMINATION OF YOUR OWN VOICE, AND THAT'S WHAT'S AT ISSUE.

7 AND SO WE DON'T ACTUALLY DISAGREE.  THE -- THIS HAS --

8           THE COURT:  WELL, IT DOESN'T SAY --

9                (SIMULTANEOUS COLLOQUY.)

10          THE COURT:  IT DOES NOT SAY "VOICE."  THE WORD IS

11 "COMMUNICATION."  PARTIES TO A COMMUNICATION IS WHAT IT

12 CONCERNS.  IT IS A COMMUNICATION TRANSMITTED BETWEEN TWO

13 PHONES OF A PARTICULAR NATURE.  SO IT DOESN'T SAY "VOICES."

14          MR. PRESTON:  THAT'S THE -- THAT'S RIGHT.  THAT'S

15 STATUTE.

16    I'M REFERENCING RIBAS AND CLARK.  AND, ACTUALLY, IT'S

17 RIGHT TO CONTROL FIRST-HAND DISSEMINATION OF HIS STATEMENTS,

18 WHICH IS NOT DISSIMILAR FROM WHAT YOUR HONOR IS SAYING.  IT'S

19 A COMMUNICATION FURTHER LIMITED IN THAT CONTEXT OF THE

20 STATUTE.  IT MATTERS WHETHER OR NOT YOU'RE ON A CELL PHONE OR

21 NOT.

22          THE COURT:  SO HOW IS "COMMUNICATION" DEFINED?  IS IT

23 EVER DEFINED IN A WAY THAT SUPPORTS EITHER ONE OF YOUR

24 PERSPECTIVES?  COMMUNICATION GENERALLY, NOT CONFIDENTIAL

25 COMMUNICATION BECAUSE THE SUPREME COURT HAS MADE -- HAS STATED

1    EXPLICITLY WHAT THAT REFERS TO; THAT IS, THE SUPREME COURT OF

2    CALIFORNIA.

3        THE PENAL CODE DOESN'T DEFINE "COMMUNICATION."  REMEMBER

4    PEOPLE CAN BE SENT TO JAIL FOR VIOLATING THIS STATUTE, SO IT'S

5    NOT JUST ABOUT MONEY.  SOMEONE CAN BE SENT TO JAIL.  SO WHAT

6    DOES "COMMUNICATION" MEAN?

7            **MR. PRESTON:**  I WOULD SUGGEST THAT COVERS VOICE.  IT

8    INCLUDES VOICE.  IT PROBABLY COVERS BEYOND THAT SOMEBODY --

9    THIS IS DATING ME, BUT SOMEBODY USES A MODEM TO CALL UP AOL.

10   IT'S A DIAL-UP, AND THERE, SOMEBODY TAPES THAT CALL.  AND YOU

11   COULD, IN THEORY, SEE WHAT THE PERSON WAS DOING OVER THE LINE.

12   THAT WOULD BE A COMMUNICATION.  ANY KIND OF TRANSFER OF

13   INTELLIGENCE OR DATA, INFORMATION.

14       I -- I THINK THE DICTIONARY DEFINITION OF THE WORD

15   "COMMUNICATION" IS SUFFICIENT FOR MR. LOFTON TO PREVAIL ON THE

16   MOTION.

17           **THE COURT:**  COUNSEL?

18           **MR. MESSER:**  THERE HAVE BEEN CASES -- AND I DON'T --

19   NOT REALLY PREPARED TO CITE THE CASES TODAY, ALTHOUGH I COULD

20   IF THE COURT IS INTERESTED, FIND THEM, I BELIEVE, THAT HAVE

21   NARROWED THE CONCEPT OF "COMMUNICATION," BUT I DON'T THINK IN

22   THE CONTEXT OF THE IPA.  I THINK IN THE CONTEXT OF OTHER LAWS,

23   AND SO IT'S NOT NECESSARILY EVERY CONVERSATION THAT

24   CONSTITUTES A COMMUNICATION.

25           **THE COURT:**  CRIMINAL STATUTES HAVE TO GIVE NOTICE TO

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1   PEOPLE OF THE LIMITATIONS ON THEIR CONDUCT IF THEY'RE GOING TO

2   BE USED FOR PURPOSES OF PUTTING THEM IN JAIL.  SO IS IT

3   PARTICULAR ENOUGH?

4       IF I SAY, "HELLO," BEFORE YOU TELL ME THAT THE

5   CONVERSATION IS BEING RECORDED, IS THAT A VIOLATION OF THE

6   STATUTE?

7           **MR. MESSER:**  WE WOULD SAY NO.

8           **THE COURT:**  I KNOW YOU WOULD SAY NO.  I'M NOT ASKING

9   YOU.

10          **MR. PRESTON:**  I WOULD SAY YES.

11          **THE COURT:**  SO BEFORE YOU EVEN HAVE AN OPPORTUNITY --

12  I PICK UP THE PHONE AND SAY "HELLO" -- SO HOW DOES THE PERSON

13  ON THE OTHER SIDE OF THE PHONE HAVE AN OPPORTUNITY TO TELL ME

14  THAT MY PHONE CALL IS BEING RECORDED IF I HAVEN'T GIVEN THEM

15  THAT OPPORTUNITY.

16          **MR. PRESTON:**  THAT IS VERY SIMPLE, YOUR HONOR.  YOU

17  DON'T TAPE THE CALL UNTIL THEY AGREE THAT YOU MAY DO SO.

18          **THE COURT:**  WHAT?

19          **MR. PRESTON:**  YOU DON'T TAPE THE CALL UNTIL THE OTHER

20  PERSON AGREES YOU MAY DO SO.

21          **THE COURT:**  RESPONSE TO THAT.

22          **MR. MESSER:**  YES.  ONE, THAT TECHNOLOGY IS NOW

23  AVAILABLE BUT WAS NOT -- AND EVEN NOW JUST BEING IMPLEMENTED.

24      SECOND, A REASON THAT RECORDING CALLS IS -- HAS BECOME

25  WIDESPREAD IS -- ONE REASON IS THAT THERE HAVE BEEN RECURRENT

1    CLAIMS, PARTICULARLY IN THE DEBT COLLECTION FIELD, THAT DEBT

2    COLLECTORS HAVE MADE STATEMENTS TO THE PERSONS WHO OWE MONEY

3    THAT ARE FALSE, THAT ARE THREATENING, THAT ARE VIOLATIONS OF

4    OTHER FEDERAL LAWS LIKE THAT FAIR DEBT COLLECTION PRACTICES

5    ACT, FOR EXAMPLE.

6        AND RECORDING CALLS IS A WAY OF ENSURING THAT DEBT

7    COLLECTORS COMPLY WITH THE LAW AND THAT DISPUTES ABOUT

8    COMPLIANCE CAN BE EASILY RESOLVED.  AND IF THE COLLECTOR CAN

9    TURN THE RECORDER ON AND OFF AT WILL, THIS UNDERMINES THAT

10   EFFORT.

11       AND FEDERAL COURTS IN THE LAST FIVE YEARS HAVE SEEN A

12   SKYROCKETING DOCKET OF CLAIMS FILED UNDER THE FAIR DEBT

13   COLLECTION PRACTICES ACT.  AND RECORDING IS AN EFFORT BY THE

14   RESPONSIBLE COMPANIES, LIKE VERIZON WIRELESS, TO MAKE SURE

15   THAT ITS CUSTOMERS ARE PROPERLY TREATED IN -- IN FULL

16   COMPLIANCE WITH FEDERAL LAWS.

17       **THE COURT:**  WHERE'S YOUR DEFINITION OF COMMUNICATION

18   IN YOUR BRIEF?

19       **MR. PRESTON:**  I DON'T BELIEVE WE DEFINED IT.  WE WERE

20   GOING TO RELY ON THE DICTIONARY DEFINITION OF THE WORD.  I

21   DON'T BELIEVE --

22       **THE COURT:**  YOU DON'T GIVE IT -- YOU DON'T GIVE ME A

23   DICTIONARY DEFINITION?  THAT'S WHAT I WAS LOOKING FOR.  I

24   DON'T HAVE A DICTIONARY UP HERE.

25       **MR. PRESTON:**  MA'AM, I -- WE DIDN'T CITE A DEFINITION

1    FOR THAT WORD.  THAT WAS NOT AT ISSUE IN THE BRIEFING.  I'M

2    HAPPY TO FIND YOU MULTIPLE DEFINITIONS.

3              **THE COURT:**  WELL, I CAN FIND MYSELF MULTIPLE -- I WAS

4    JUST SEEING IF YOU HAD ONE UP HERE.

5              **MR. PRESTON:**  I'M AFRAID NOT, MA'AM.

6                   (PAUSE IN THE PROCEEDINGS.)

7              **THE COURT:**  WELL, MY MAIN PROBLEM WITH THE DEFENSE'S

8    ARGUMENT IS THAT IT'S -- IS THAT JUST -- IT DOES IMPLY A TERM.

9    AND I JUST DON'T SEE SOMEHOW -- HOW I CAN IMPLY THAT

10   LIMITATION IN THIS STATUTE.

11       ANYTHING ELSE ON THIS?

12             **MR. PRESTON:**  NO, YOUR HONOR.

13             **MR. MESSER:**  JUST ONE MORE POINT, YOUR HONOR.  THE

14   ABSENCE OF LAW ON THE PARTICULAR ISSUE CUTS BOTH WAYS.  I

15   SUGGEST THAT THERE IS NO CASE THAT HAS SQUARELY HELD THAT

16   PRIVACY IS NOT AN ELEMENT OF 632.7.

17       WE FULLY RECOGNIZE THE CONFIDENTIALITY CASES AND AGREE

18   WITH THOSE CASES.  SO THIS KIND OF RULING IN OUR VIEW IS

19   WITHOUT PRECEDENT.  AND ON THAT BASIS, WE WOULD SUBMIT.

20             **THE COURT:**  OKAY.  ON THE MOTION FOR INJUNCTIVE

21   RELIEF, WITH RESPECT TO THAT MOTION, THE ELEMENTS THAT NEED TO

22   BE SHOWN FOR WHAT IS OTHERWISE EXTRAORDINARY RELIEF INCLUDE

23   IRREPARABLE HARM.  THE NINTH CIRCUIT HAS REPEATEDLY HELD THAT

24   PLAINTIFF MUST DEMONSTRATE IMMEDIATE THREATENED INJURY AS A

25   PREREQUISITE TO SUCH EXTRAORDINARY RELIEF.  AND THAT

1    SPECULATIVE INJURY ISN'T SUFFICIENT.  CITE A COUPLE CASES FOR

2    THE RECORD, CARIBBEAN MARINE SERVICES CO. VS. BALDRIGE.

3    THAT'S 844 F2D. 668, JUMP CITE 674.  IT'S A NINTH CIRCUIT CASE

4    AT 1988.

5        PRIVITERA, SPELLED P-R-I-V-I-T-E-R-A, VS. CALIFORNIA BOARD

6    OF MEDICAL QUALITY ASSURANCE, NINTH CIRCUIT CASE, 1991, 926

7    F2D. 890, 897.  THE ISSUE HERE IS THAT EVEN IF MR. PARISEE

8    (PHONETIC) -- IS THAT -- IS THAT HOW YOU SAY IT?

9            **MR. PRESTON:**  I THINK IT'S PARISI.

10           **THE COURT:**  MR. PRESTON, SORRY.

11           **MR. PRESTON:**  I'M EASIER.

12           **THE COURT:**  YES, YOU ARE.

13       IS THAT EVEN IF YOU HAVE A STRONG CASE ON THE ELEMENTS IN

14   TERMS OF YOUR ABILITY TO SUCCEED, I STILL DON'T SEE ANY

15   IRREPARABLE INJURY, CERTAINLY NOT INJURY THAT CAN'T BE

16   COMPENSATED BY MONETARY COMPENSATION.  THEY'VE CHANGED THEIR

17   POLICY.  THEY'RE NOT DOING WHAT YOU ARE CONCERNED ABOUT, SO I

18   DON'T SEE THE NEED FOR SUCH EXTRAORDINARY RELIEF.

19       AND I WOULD BE INCLINED TO DENY IT WITHOUT LEAVE OR

20   WITHOUT PREJUDICE IN THE EVENT THAT FACTS CHANGE.  AND I -- I

21   JUST DON'T EVER GRANT THESE THINGS -- I MEAN, IT'S -- AN

22   EXTRAORDINARY REMEDY IS JUST THAT, IT HAS TO BE EXTRAORDINARY.

23           **MR. PRESTON:**  YOUR HONOR, THE CORE OF THIS STATUTE IS

24   THE PROTECTION OF PRIVACY.  IT'S THE PROTECTION OF THE RIGHT

25   TO CONTROL.

```
1              THE COURT:  WHAT FACTS DO YOU HAVE TO SUGGEST THAT

2     THEY ARE GOING TO GO BACK TO THE CONDUCT THAT THEY DID BEFORE

3     THEY CHANGED THE MANNER IN WHICH THEY WERE DOING IT?  DO YOU

4     HAVE ANY EVIDENCE TO SUGGEST THAT THEY'RE GOING TO DO THAT

5     NOW?

6              MR. PRESTON:  MA'AM, IT'S NOT MY BURDEN.  IT'S THEIR

7     BURDEN TO SHOW MOOTNESS.  I'VE SHOWN A PRIMA FACIE CASE.

8              THE COURT:  I'M SUGGESTING THAT YOU HAVEN'T.

9              MR. PRESTON:  I UNDERSTAND.  OKAY.

10              THE COURT:  SO WHAT DO YOU HAVE?

11              MR. PRESTON:  YOU HAVE THE ENTIRE RECORD IN FRONT OF

12     US.  THE FACT IS THEY CHANGED THEIR POLICY ONLY AFTER WE

13     STARTED TO TAKE DISCOVERY ON WHAT THEIR POLICY WAS RIGHT NOW.

14     IT WAS TWO WEEKS, THREE WEEKS AFTER WE SERVED THAT DISCOVERY,

15     THEY CHANGED THEIR POLICY.  THEY'RE LIKELY TO CHANGE IT BACK

16     AS SOON AS --

17              THE COURT:  HOW DO YOU KNOW THAT?  HOW DO YOU KNOW

18     THAT?  HOW --

19              MR. PRESTON:  BECAUSE THEY CHANGED THEIR POLICY ONCE

20     BEFORE.

21              THE COURT:  HOW IS THAT ANYTHING OTHER THAN

22     SPECULATION?  IF I PUT YOU ON THE STAND AND YOU SWORE AN OATH,

23     HOW -- WOULD YOU HAVE ANY FACTUAL BASIS TO MAKE THAT

24     ASSERTION?

25              MR. PRESTON:  I THINK WE POSIT UNDER ARMSTRONG, IT'S
```

1    SUFFICIENT TO SHOW A RECURRING HARM, EITHER WITH A WRITTEN

2    POLICY THAT'S IN EFFECT AT THE TIME THAT CAUSES THE HARM HERE,

3    WHICH IS WHAT WE HAVE.  IT'S ABSOLUTELY WHAT WE HAVE ON ALL

4    FOURS.  OR RECURRENT INJURY.  BOTH OF THOSE ELEMENTS ARE MET.

5    I HAVE MET MY PRIMA FACIE CASE FOR IRREPARABLE HARM.

6         AND THEIR VOLUNTARY CESSATION, THEY HAVEN'T CARRIED

7    THEIR -- THEIR -- THEIR AFFIRMATIVE DEFENSE OF MOOTNESS.  THEY

8    HAD TO SHOW THERE WAS NO WAY IT COULD POSSIBLY RECUR.  AND

9    THAT'S -- THERE'S NOTHING FROM VERIZON IN THE RECORD.  THE

10   BURDEN SHIFTED TO THEM.  AND THERE'S NOTHING IN THE RECORD

11   ABOUT VERIZON.

12        VERIZON HAD AN OPPORTUNITY TO SAY, NO, WE ARE ABSOLUTELY

13   NEVER GOING TO CHANGE OUR POLICY BACK.  THIS IS THE POLICY

14   WE'RE GOING TO GO WITH, AND THEY'RE -- PLAINTIFFS ARE BARKING

15   UP THE WRONG TREE.  WHAT THEY SUBMITTED AND SAID WAS

16   COLLECTO'S NEVER GOING TO CALL MR. LOFTON AGAIN.  AND THAT'S

17   NOT AT ISSUE.  THAT'S NOT IMPORTANT.  WE'RE CONCERNED ABOUT

18   VERIZON'S EXISTING DEBT COLLECTORS.

19             **THE COURT:**  RESPONSE?

20             **MR. MESSER:**  THERE'S A TOTAL FAILURE TO SHOW AN

21   IMMINENT THREAT OF IRREPARABLE HARM.  ONE, THE DELAY IN FILING

22   THE MOTION IS UNJUSTIFIED.  THE -- VERIZON PRODUCED ITS OLD

23   POLICY THE PLAINTIFF CONTENDS WAS UNLAWFUL IN AUGUST OF 2012.

24        MR. LOFTON NEVER FILED A MOTION FOR PRELIMINARY INJUNCTION

25   BECAUSE HE NEVER FELT ANY IMMINENT THREAT OF IRREPARABLE HARM.

1    AND THE FACT THEY MAKE A MOTION NOW ON A CLASS BASIS SHOWS

2    THAT, FOR EXAMPLE, LOFTON'S CLAIMS ARE NOT TYPICAL OF THE

3    CLASS.

4         NOR -- THERE IS NOT -- DESPITE MASSIVE DISCOVERY, MORE

5    THAN 30 MILLION VERIZON RECORDS PRODUCED, PLAINTIFF HAS NOT

6    GOT ONE EXAMPLE OF THE VERIZON -- CURRENT POLICY EVER BEING

7    VIOLATED ON EVEN ONE OCCASION, NOT EVEN ONE.  THE POLICY WAS

8    CHANGED YEAR AGO IN MARCH 2013.

9         RECURRING HARM, THERE ARE -- THERE IS ZERO EVIDENCE OF

10   RECURRING HARM.  THERE IS ZERO EVIDENCE OF RECURRING EVENTS.

11   AND THIS RECORD SHOWS AN ABSOLUTE LACK OF NUMEROSITY OF THE

12   PROPOSED INJUNCTIVE CLASS.

13        NOT ONLY THAT, MR. LOFTON HIMSELF IN ALL OF HIS

14   COMPLAINTS -- FOUR OF THEM SO FAR -- HAS NEVER ALLEGED A

15   THREAT OF IMMINENT OR IRREPARABLE HARM.  AND UNDER THE NINTH

16   CIRCUIT'S CASE LAST -- CITED LAST MONTH, BERGER VS. HOME

17   DEPOT, IT'S CLEAR THAT HE'S GOT TO BE A MEMBER OF THE CLASS TO

18   SEEK CLASS-WIDE RELIEF.

19        WELL -- AND THE RESPONSE BY THE PLAINTIFF WAS IN THE REPLY

20   BRIEF TO SAY, WELL, WE SHOULD BE ABLE TO -- ABLE TO AMEND OUR

21   COMPLAINT TO CONFORM TO PROOF OF THE HEARING.  AND THE COURT

22   SHOULD GRANT PRELIMINARY INJUNCTION AND CLASS CERTIFICATION ON

23   THAT BASIS.

24        AND DEFENDANT STRENUOUSLY OBJECTS TO THAT AS BEING TOTALLY

25   PROCEDURALLY UNFAIR.  IF THAT'S GOING TO BE THE NEW

1    ALLEGATION -- OH, LAST TIME WE WANTED TO AMEND, THEY MET AND

2    CONFERRED AND SENT US A DRAFT COMPLAINT, AND WE AGREED TO

3    STIPULATE.  NO SUCH PROCESS HAS GONE IN -- ON IN THIS HEARING.

4    WE GET HIT WITH THE REPLY BRIEF, SO NO WE'RE NOT GOING TO

5    STIPULATE.  AND WE MAY OPPOSE THAT MOTION IF IT'S PROPOSED.

6         THERE'S NO FOURTH AMENDMENT COMPLAINT PROPOSED.  WE'VE HAD

7    NO RIGHT TO DISCOVERY AND PLAINTIFF NOWHERE TRIES TO JUSTIFY

8    THIS KIND OF PROCEDURAL UNFAIRNESS.  AND SO THE MATTER IS

9    MOOT.  IT -- A INJUNCTION IS UNNECESSARY BECAUSE THERE'S ZERO

10   EVIDENCE OF NONCOMPLIANCE.

11        AND ALSO VERIZON WIRELESS WILL NOT CHANGE ITS CURRENT

12   MONITORING DISCLOSURE POLICY UNLESS A COURT OF RECORD RULES

13   THAT SOME OTHER OR DIFFERENT POLICY IS LAWFUL.  VERIZON

14   WIRELESS HAS NO INTEREST -- ZERO INTEREST IN VIOLATING ANY

15   LAW.

16             **THE COURT:**  ANY RESPONSE?

17        **MR. PRESTON:**  I THINK THAT'S A CONCESSION THAT THE

18   LAST POLICY VIOLATED THE LAW.

19             **THE COURT:**  I WOULD RESPOND TO HIS OTHER SUBSTANTIVE

20   ARGUMENTS.  DO YOU HAVE ANY RESPONSE TO THOSE?

21        **MR. PRESTON:**  SURE.  OF COURSE.

22        LOOK, THE ALLEGATION OF THE CLAIM, IT'S NOT LIKE THEY WERE

23   SANDBAGGED.  THEY KNEW WE WERE ASKING FOR INJUNCTIVE RELIEF.

24   IT'S IN EVERY SINGLE COMPLAINT.  SO THE IDEA THAT IT'S UNFAIR

25   THAT THEY THOUGHT, OH, WE MIGHT POSSIBLY MOVE FOR PRELIMINARY

1    INJUNCTION OR AN INJUNCTIVE CLASS, WELL, THAT'S JUST NOT THE

2    CASE.

3        AND I CAN CITE TO YOU WE DID ALLEGE IRREPARABLE HARM.

4    THAT IS ALLEGED.  THOSE WORDS APPEAR IN OUR COMPLAINT.

5        THE NOTION THAT MR. LOFTON IS NOT TYPICAL IS BELIED BY THE

6    FACT THAT THIS IS AN INJUNCTIVE CLASS.  YOU HAVE SHIFTING

7    POPULATIONS.  IT'S DESIGNED TO ENCOMPASS A LARGE AND SHIFTING

8    POPULATION.  AND IT PROTECTS ITS B2 CERTIFICATION.  IT'S

9    DESIGNED TO PROTECT AGAINST UNLAWFUL PRACTICES.

10       AND THE IDEA THAT THERE ARE -- MR. MESSER IS GOING TO SAY,

11   WELL, WE'RE NOT GOING TO CHANGE OUR POLICY, THAT'S WELL AND

12   GOOD, BUT WHY WASN'T THAT DONE IN THE OPPOSITION BRIEF.  WHY

13   ISN'T THERE -- THERE IS A WAY TO SHOW MOOTNESS.  THERE IS A

14   STANDARD BY WHICH YOU CAN SHOW THAT, LOOK, WE'RE NEVER GOING

15   TO VIOLATE THIS LAW EVER AGAIN.

16       AND -- AND WE CITE THAT IN OUR REPLY PAPERS AND WE

17   EXPLAIN, THIS IS WHAT YOU NEED TO DO TO -- TO ESTABLISH

18   MOOTNESS.  THEY DON'T COME ANYWHERE CLOSE TO THAT.  THERE'S

19   NOTHING VERIZON SAYING, WE WILL NOT CHANGE OUR POLICY.

20       THERE IS NO FORMAL COMMITMENT; JUST, YOU KNOW, MR. MESSER

21   TALKING AT A COURT HEARING.  THAT'S NOT WHAT'S NECESSARY.

22   WHAT'S NECESSARY IS THEY NEED TO SHOW -- AND IT'S A STRINGENT

23   SHOWING -- THAT THEIR INJUNCTIVE RELIEF IS MOOT.  AND THEY

24   HAVE -- THEY HAVE NOT DONE THAT.

25           **THE COURT:**  ANYTHING ELSE?

1    **MR. MESSER:** YES. PLAINTIFF HAS NOT ADDRESSED OUR

2 ARGUMENT THAT HE'S FAILED TO SHOW AN IMMINENT THREAT OF

3 IRREPARABLE HARM BECAUSE HE'S FAILED TO SHOW A SINGLE

4 VIOLATION OF THE CURRENT POLICY IN THE PAST YEAR. THERE IS NO

5 NUMEROSITY, NEARS TYPICALITY, THERE'S NO FACTUAL BASIS ON

6 WHICH TO FIND THAT THERE IS ANY RECURRING CONDUCT THAT

7 REQUIRES THE COURT INTERVENE WITH AN INJUNCTION. SO PLAINTIFF

8 HAS FAILED TO SUSTAIN HIS BURDEN ON IRREPARABLE HARM, AND THE

9 MOTION SHOULD BE DENIED.

10    **THE COURT:** MR. PRESTON, ANYTHING ELSE?

11    **MR. PRESTON:** WE'VE NOT BEEN ABLE TO TAKE DISCOVERY

12 SINCE THE REMOVAL TO FEDERAL COURT. AND YEAH, THERE'S NO WAY

13 TO SHOW -- IT -- IN THEORY, THE CURRENT POLICY THAT'S IN PLACE

14 NOW SHOULD PREVENT IPA VIOLATIONS.

15   THE QUESTION ABOUT WHETHER OR NOT THERE'S A CLASS IS

16 NOT -- A CLASS AGAINST WHOSE RIGHTS -- IPA RIGHTS HAVE BEEN

17 VIOLATED. WELL, OF COURSE THAT THERE'S NO CLASS WHOSE RIGHTS

18 HAVE BEEN VIOLATED. THAT'S NOT THE POINT OF AN INJUNCTION.

19 AN INJUNCTION PROTECTION AGAINST FUTURE VIOLATIONS. THE

20 CONCERN IS NOT THAT THEY'RE VIOLATING THE STATUTE RIGHT NOW.

21   THE CONCERN IS THEY CHANGE THEIR POLICY IN SEPTEMBER 2010

22 TO PROVIDE FOR THESE EXCEPTIONS SO THAT THEY DIDN'T TO HAVE

23 DISCLOSE RECORDING. THEY DID IT ONCE. THEY CHANGED IT BACK

24 AFTER WE STARTED TAKING DISCOVERY. AND THERE'S NOTHING IN THE

25 RECORDS THAT SHOWS IT'S MOOT BECAUSE THERE'S NOTHING IN THE

1    RECORD THAT SHOWS THEY WON'T CHANGE IT BACK AGAIN.  THEY

2    ALREADY DID IT ONCE.  THEY CAN DO IT AGAIN.

3              **THE COURT:**  SUBMITTED, GENTLEMEN?

4              **MR. MESSER:**  SUBMITTED.

5              **MR. PRESTON:**  SUBMITTED.

6              **THE COURT:**  ALL RIGHT.  WHAT IS GOING ON WITH THE

7    RELATED MDL?

8              **MR. MESSER:**  WELL, THERE'S A DEADLINE OF THURSDAY FOR

9    THE PARTIES TO DESIGNATE LEAD COUNSEL.  MY FIRM WILL BE LEAD

10   COUNSEL FOR COLLECTO IN THE MDL CASE.  AND I DON'T KNOW THE

11   STATUS ON THE PLAINTIFFS' SIDE.

12             **MR. PRESTON:**  THERE'S NEGOTIATIONS.

13             **THE COURT:**  AND WHERE IS THAT PENDING NOW?

14                  (SIMULTANEOUS COLLOQUY.)

15             **MR. PRESTON:**  THAT'S MASSACHUSETTS.  RICHARD STEARNS.

16             **MR. MESSER:**  AND WE'VE DISCUSSED -- I'VE DISCUSSED

17   WITH MR. PRESTON THE TCPA PART OF THIS CASE AND WHETHER THAT

18   SHOULD GO TO MASSACHUSETTS AND HOW WE WOULD PROCEDURALLY DO

19   THAT.  AND THOSE DISCUSSIONS ARE ONGOING.

20       FOR EXAMPLE, IF WE SEVER THE TCPA PART OF THE CASE AND

21   SEND IT TO MASSACHUSETTS, THIS COURT MIGHT LOSE JURISDICTION.

22   THE IPA MIGHT GO BACK TO ALAMEDA.  I DON'T KNOW -- I DON'T

23   EVEN KNOW WHETHER THAT'S PROCEDURALLY POSSIBLE.  BUT WE'VE HAD

24   THOSE DISCUSSIONS AND NO DECISIONS YET.

25             **THE COURT:**  WHEN WERE YOU GOING DECIDE?

1    **MR. PRESTON:**  TO BE -- TO BE CLEAR, WE'RE NOT GOING

2    BACK TO ALAMEDA COUNTY.  WE'RE GOING TO ALLEGE FIVE MILLION IN

3    CONTROVERSY UNDER THE CAFA, SO WE HAVE -- ARE NOT -- WE'RE IN

4    FRONT OF YOU.  WE'RE NOT GOING BACK DOWN.  IT'S NOT A

5    PING-PONG GAME.

6         **THE COURT:**  WELL, YOU'RE FRONT OF A FEDERAL JUDGE.

7    WE JUST GOT THREE NEW JUDGES, SO YOU MAY OR MAY NOT BE WITH

8    ME.  WE'LL SEE.

9         **MR. PRESTON:**  NONETHELESS --

10                  (SIMULTANEOUS COLLOQUY.)

11        **THE COURT:**  YOU'RE NOT GOING BACK TO ALAMEDA.

12        **MR. PRESTON:**  RIGHT.  THERE'S A LIMIT TO THE CHANGE

13   OF VENUE.  SO IT'S EVERY TIME -- YOU KNOW, IT'S DELAY AND --

14        **MR. MESSER:**  WELL, THAT'S GOOD TO KNOW.  IN THAT

15   CASE, WE'LL THINK ABOUT FILING A MOTION AND MAKE DECISION IN

16   THE NEXT FEW WEEKS.

17        **THE COURT:**  ALL RIGHT.

18   MR. MESSNER (PHONETIC), I THOUGHT ABOUT WRITING A -- AN

19   OPINION ON THIS.  I LIKE THE PRIVACY ISSUES.  THE AMERICAN LAW

20   INSTITUTE IS UNDERTAKING A PROJECT BECAUSE OF THE CHANGING

21   LANDSCAPE IN PRIVACY.  BUT IN THIS CASE, I'M NOT GOING TO DO

22   IT.

23   THE MOTION'S DENIED FOR THE REASONS THAT I STATED ON THE

24   RECORD.

25   THE MOTION FOR PRELIMINARY INJUNCTION IS ALSO DENIED.

 1      UNFORTUNATELY, WE'RE JUST A LITTLE BIT TOO OVERWHELMED

 2   RIGHT NOW.  AND AS MUCH AS I'D LIKE TO SIT AND CRAFT A NICE

 3   LITTLE LAW REVIEW ARTICLE OPINION ON STATUTORY INTERPRETATION,

 4   I AM GOING TO DECLINE THIS TIME.  PERHAPS IN SIX MONTHS, IF I

 5   GET A SIMILAR CASE AND WE'VE GOT NEW JUDGES ON BOARD AND I

 6   HAVE A LITTLE MORE TIME, I WILL DO THAT.  BUT I THINK IT'S

 7   PRETTY CLEAR.  AND I'M NOT GOING TO TAKE THE TIME TO DO IT.

 8      NICE EFFORT.

 9          **MR. MESSER:**  THANK YOU, YOUR HONOR.

10          **MR. PRESTON:**  THANK YOU, YOUR HONOR.

11          **THE COURT:**  ONE THING -- I GOT ON HIM, SO I'M GOING

12   TO GET ON YOU.

13          **MR. PRESTON:**  YES, YOUR HONOR.

14          **THE COURT:**  PAGE 14 OF 36 IN YOUR OPPOSITION, I NEVER

15   STATED IN MY OPINION IN SIMPSON WHAT THE ELEMENTS OF 637 --

16   632.7 WERE.  I IDENTIFIED WHAT IT WAS THAT THE PLAINTIFF

17   ALLEGED AND INDICATED THAT IT WAS SUFFICIENT, BUT THAT IS

18   DIFFERENT FROM STATING THE ELEMENTS.

19      SO BE CAREFUL IN HOW YOU POSTURE WHAT A JUDGE HAS DONE

20   ESPECIALLY IN FRONT OF THE JUDGE WHO WROTE THE OPINION.

21          **MR. PRESTON:**  THERE WAS CERTAINLY NO INTENT TO

22   DECEIVE YOU AS TO YOUR OWN OPINION, MA'AM.

23          **THE COURT:**  WELL, YOU COULDN'T HAVE 'CAUSE I WENT

24   BACK AND THOUGHT -- I SAID, I DON'T EVER REMEMBER DOING THAT.

25   WENT BACK AND SURE ENOUGH, I HADN'T.  I JUST MENTION IT.

1    THANK YOU, GENTLEMEN.

2         **MR. PRESTON:**  THANK YOU, YOUR HONOR.

3         (PROCEEDINGS WERE CONCLUDED AT 2:42 P.M.)

4                        --OOO--

5

6              **CERTIFICATE OF REPORTER**

7

8         I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

9    FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

10   I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

11   NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS

12   HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR

13   OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

14

15   _____

16        RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

17             MONDAY, APRIL 14, 2014

18

19

20

21

22

23

24

25

**RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530**