# PRESTON/LAW OFFICES

8245 North 85th Way / Scottsdale, Arizona 85258
(480) 269-9540 / (866) 509-1197 / ep@eplaw.us

Judge Jacqueline Scott Corley                                      November 9, 2014
San Francisco Courthouse, Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, California 94102

      Re:    *Lofton v. Verizon Wireless (VAW) LLC et al.*, No. 4:13-cv-05665-YGR

Dear Judge Corley:

      Plaintiff John Lofton ("Lofton") and Defendant Verizon Wireless (VAW) LLC ("Verizon") transmit this joint letter under Court's October 22 order directing the parties to submit supplemental briefing with respect to Verizon's responses to Lofton's Requests for Production of Documents ("RPDs") Nos. 49 and 50. (See ECF No. 52 at 2.)

**Lofton: Verizon Controls Documents in Its Debt Collectors' Possession**
      The Court's decision of whether or not Verizon controls documents in its debt collectors' possession will apply to a number of RPDs besides RPDs Nos. 49 and 50. It may also control Lofton's access to other class discovery and even impact Verizon's vicarious liability. Even now, one of Verizon's debt collectors refused to comply with Lofton's subpoena because they have construed the Court's October 22 order as ruling that Verizon does not have control over their records. (Preston Decl. ¶17.) Hence, the stakes in this dispute are higher than simply the production of documents responsive to RPDs 49 and 50.

      Importantly, this brief concerns only six debt collectors, not 22. (Preston Decl. ¶¶7, 11.) Verizon's characterization that Lofton is seeking discovery from 22 debt collectors is intentionally misleading: Lofton explicitly stated "that discovery should be limited to the pre-write off debt collectors; there is no need to involve 22 different vendors" in the July 3 joint case management statement. (ECF No. 37 at 8.) Below, Verizon faults Lofton for making discovery unmanageable by failing to name Verizon's 22 debt collectors as defendants. Verizon's proposed "solution" is self-evidently less manageable and less efficient than simply requiring a single defendant to comply with its obligations under Rule 34. "Rule 34 performs the salutary function of creating access to documentation in an economical and expeditious fashion by requiring a party to produce relevant records not in its physical possession when the records can be obtained easily from a third-party source." *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 517 (D. Kan. 2007) (italics, citation, punctuation omitted).

      **The Audit Provisions in Verizon's Contracts With Its Debt Collectors Establishes Verizon's Control Under Rule 34:** Rule 34 provides that a request for production of documents may require production of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Control is defined as the legal right to obtain documents upon demand[.]" *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (citing *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)).

      Paragraph 7.2 of Verizon's contract with Collecto provides Verizon a broad right "to examine and audit records, *to include, but not ... limited to*" specific enumerated

documents. (Preston Decl. ¶9 (emphasis added).) "[S]uch examination and audit may also include a review of Supplier's collection efforts ... and compliance with this Agreement." (*Id.*) This exact same language appears in Verizon's contracts with ER Solutions, Inc., Sunrise Credit Services, Inc., The CBE Group, Inc., and Valentine & Kebartas, Inc. (*Id.* ¶11.) Likewise, these contracts require ER Solutions, Sunrise Credit, and The CBE Group to provide sufficient access to Verizon's accounts, and that "***Verizon's access to all information in*** [their] ***possession or control regarding Verizon accounts being handled for collection by*** [these debt collectors] ***is to be completely unrestricted***." (*Id.* ¶¶9, 11.) Similarly, Verizon's contract with VKI requires VKI to "allow Verizon ... to audit [its] records" and provides that "the auditor shall have access to [VKI's] records at reasonable times during the Term and during periods in which Supplier is required to maintain records." (*Id.* ¶12.) *International Union* held that a parent union only had control over "only those documents [in its local unions' possession] mentioned in the union constitution." *Id.* at 1453. Below, Verizon argues that this result applies here. But the plain language of the contracts contradicts Verizon: the audit rights under Verizon's contracts "include[s], ***but*** [***are***] ***not ... limited to***" to the specific documents listed in the contracts. (Preston Decl. ¶9 (emphasis added).) And contrary to Verizon below, all of Lofton's discovery seeks information "regarding Verizon accounts."

     Courts have repeatedly found that similar audit provisions are sufficient to establish control under Rule 34. In *Rosie D. v. Romney*, 256 F. Supp. 2d 115 (D. Mass. 2003), the defendants' contracts with its service providers provided the defendants "the right, upon reasonable notice, to examine and copy [relevant records]." *Id.* at 119. *Rosie D.* held those "contractual provisions [left] little doubt that Defendants have the right to control and obtain the documents that are in the possession of the various non-defendant [service providers]." *Id.* (followed by *Allen v. Woodford*, No. 05-1104, 2007 WL 309945, *2-3 (E.D. Cal. Jan. 30, 2007)) Likewise, contracts which require that a non-party to "[p]ermit [a party] to examine, audit and copy all financial information and records upon reasonable prior notice" or make records "available for inspection and examination by [a party] at any reasonable time" are sufficient to establish that that party "controls the files within the meaning of Rule 34." *Haskins v. First Am. Title Ins. Co.*, No. 10–5044, 2012 WL 5183908, *2-3 (D.N.J. Oct. 18, 2012) (following *Boucher v. First American Title Ins. Co.*, No. 10-199, 2011 WL 5299497, *1 (W.D. Wash. Nov. 4, 2011) (contract which "require[d] [non-party] to produce any documents at any reasonable time upon request" established party's control over documents in non-party's possession)). Similarly, this Court found that a contract that, e.g., provided a party "the right to conduct... full and comprehensive inspections or audits of [a non-party" was sufficient to establish control. *Doe v. AT&T W. Disability Benefits Program*, No. 11-4603, 2012 WL 1669882, *3 (N.D. Cal. May 14, 2012) (documents were in "Defendant's control pursuant to the Contract audit provisions"). The audit provisions in Verizon's contracts are sufficient to establish control under Rule 34.

     Further, Verizon's contracts require all the collectors to "permit reasonable access during normal working hours to its facilities in connection with the Services," on reasonable prior notice. (Preston Decl. ¶9, 11.) Courts have found there "there can

hardly be greater proof of 'possession, custody or control' than the ability to access at will and search through [responsive] documents personally and unaccompanied[.]" *Fidelity National Title Ins. Co. Of New York v. Intercounty Nat'l*, No. 00-5658, 2002 WL 193385, *8 (N.D. Ill. Feb. 7, 2002) (citing *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999)).

**The Duty of Defense Provision in Verizon's Contracts With Its Debt Collectors Establishes Verizon's Control:** All of the relevant contracts impose a duty to defend and indemnify Verizon from any claims "resulting in whole or in part from the acts or omissions" of the collectors. (Preston Decl. ¶¶10-11.)[1] This Court has held that a contractual provision which imposes a duty to assist in a defendant's defense of the plaintiff's claim "establishes [a] contractual obligation pursuant to which [the [party] controls documents and information" that are relevant to the plaintiff's claim. *Doe*, 2012 WL 1669882, at *4. Likewise, in *Moore v. Firstsource Advantage, LLC*, No. 07-770, 2011 WL 4345703, (W.D.N.Y. Sept. 15, 2011), the defendant's contract with a third party "included a mutual indemnification clause providing that [the non-party] would be required to cooperate with the defense of the [party] in the event of a [lawsuit.]" *Id*. at *4. *Moore* held that, "[b]y virtue of this contractual relationship, [the defendant was] deemed to have 'control' over documents in [the non-party's] possession that are relevant to this case." *Id*. (citation omitted). Hence, the duty of defense provisions in Verizon's contracts are also sufficient to establish control.

**Verizon Has An Obligation to Preserve Control Over Relevant Documents:** Below, Verizon asks what control the Court may expect if Verizon terminates its contracts with its debt collectors. Verizon has a duty to preserve relevant documents; if it terminated a debt collector's contract without ensuring that it could later obtain relevant documents from that debt collector, it would have spoliated those documents. *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 197 (S.D.N.Y. 2007) (if defendant lost control over relevant documents in corporate transaction, then it "failed to have a sufficient litigation hold in place and . . . engaged in spoliation when it transferred documents" in that transaction). The fact that Verizon's *counsel* advances this argument in open court leaves little doubt as to the source of the discovery problems plaguing this case. (*Cf.* ECF No. 57-1.)

**Verizon's Past Production of Documents in Its Debt Collectors' Possession Demonstrates Control:** The test for control is inherently empirical. "Control must be firmly placed in reality "; the Court must "inquire whether *actual* control existed." *Int'l Union*, 870 F.2d at 1453-54 (italics in original; citation omitted). Under this test, the Court should consider all aspects of Verizon's relationships with its

---

[1] Verizon's contract with Vantage Sourcing, LLC goes further still, and requires Vantage to "cooperate fully and provide assistance to Verizon . . . in the investigation and resolution of any complaints, claims, actions, or proceedings which . . . involve any of [Vantage's] employees, agents, subcontractors or other personnel." (Preston Decl. ¶10.)

collectors. "Legal right is evaluated in the context of the facts of each case. The determination of control is often fact specific." *MGA Entm't, Inc. v. Nat'l Prods. Ltd.*, No. 10-07083, 2012 WL 182158, *6 (C.D. Cal. Jan. 23, 2012) (quoting *Allen*, 2007 WL 309945, at *2). The "relationship" between the party and the person possessing the document is "[c]entral to each case." *Id*.

      Here, the empirical evidence is that Verizon does control documents in its collectors' possession. Verizon began to produce extensive documents in the possession of its collectors (including, contrary to Verizon below, debt collectors *other than Collector*)—only after the state court issued guidance that Verizon controlled those documents. (Preston Decl. ¶15.) Courts have found that a litigant's "ability to demand and have access to documents in the normal course of business gives rise to the presumption that such documents are in the litigating corporation's control." *Camden Iron and Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 443 (D.N.J. 1991) (citation omitted; followed by *Tourgeman v. Collins Financial Services, Inc.*, No. 08-1392, 2010 WL 2181416, *6 (S.D. Cal. May 25, 2010)). Where a party has a relationship with a non-party "such that the [party] can secure... documents helpful for use in the litigation, the courts will not permit the [party] to deny control for purposes of discovery by an opposing party." *AFL Telecommc'ns LLC v. SurplusEQ.com Inc.*, No. 11-1086, 2012 WL 2590557, *2 (D. Ariz. July 5, 2012) (quoting *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3rd Cir. 1988)).[2] Indeed, here, *Verizon's declaration provides no evidence Verizon has ever even asked its collectors to comply with RPD Nos. 49 and 50.* There is no evidence to support the belief that Verizon has made a good faith effort to comply with Lofton's discovery, but was thwarted by resistance from its debt collectors. Hence, this case is distinguishable from *In re Citric Acid Litigation*, 191 F.3d 1090 (9th Cir. 1999). First, of course, here there *are* "contract[s] giving [Verizon] the right to compel [its debt collectors] to furnish it with documents in [their] possession." *Id*. at 1107. Second, more fundamentally, there is no evidence that Verizon "asked [its debt collectors] to produce [responsive] documents, but [they] refused." *Id*. at 1108. The fact that Verizon was able to produce records in its collectors' possession in the past does not dispositively prove that Verizon has control over such records today—*but it is surely relevant to the Court's inquiry*.[3]

---

[2]  Below, Verizon faults Lofton for not limiting *AFL* to its facts (which involve a parent and subsidiary), but in fact *AFL*'s actual analysis supports a much broader application of *Gerling* beyond those specific facts.

[3]  *See Slabaugh v. State Farm Fire & Cas. Co.*, No. 12-CV-01020, 2013 WL 4777206, *6 (S.D. Ind. Sept. 5, 2013) (finding control existed where defendant "demonstrated its ability to obtain the requested information and documents"); *Boucher*, 2011 WL 5299497, *6 (fact that some non-parties agreed "to satisfy any [defendant's] demand for documents" supported finding of control); *Ethypharm S.A. France v. Abbott Labs.*, 271 F.R.D. 82, 95-96 (D. Del. 2010); *Orthoarm, Inc. v. Forestadent USA, Inc.*, No. 06-730, 2007 WL 1796214, *2 (E.D. Mo. June 19, 2007) (fact defendant's past ability to obtain documents from non-parties without objection

Verizon contends that the fact Lofton has served subpoenas on its debt collectors "implicitly concedes" that Verizon does not have control. Verizon's self-interest is transparent when it tries to confuse Lofton taking precautions against the unpredictability of litigation (and Verizon's failure to preserve its debt collectors' evidence) with any concession by Lofton. *Indeed, Lofton has cause to believe Verizon has coordinated the debt collectors objections to his subpoenas*—a charge Verizon does not deny. (Preston Decl. ¶¶17-19.) It appears Verizon has directly communicated with the debt collectors, and has relevant information before Lofton does. (*Id.*)

**Verizon's Principal-Agency Relationship With Its Debt Collectors Demonstrates Control:** "Control may be established by the existence of a principal-agent relationship." *MGA*, 2012 WL 182158, at *6 (quoting *Allen*, 2007 WL 309945, at *2). More broadly, a party has control over a non-party's documents "if such party has retained any right *or ability to influence*' that non-party. *Ice Corp.*, 245 F.R.D. at 517 (D. Kan. 2007) (italics in original, citation punctuation omitted). The state court previously held that Lofton sufficiently alleged that Collecto was Verizon's agent based on "the specific and pervasive control that Verizon exercised over Collecto's collection efforts through [their contract.]" (Preston Decl. ¶14.) The state court's findings were based on various provisions which gave Verizon control over Collecto's operations and employees.(*Cf.* Pl.'s Compl. ¶¶44-54.) (Unlike the state court's discovery guidance on the control issue, the state court's agency ruling was a formal adjudication of the merits of the case.) Verizon's contracts with most of other existing debt collectors share these same provisions. (*See* Preston Decl. ¶¶11-13.) While *Collecto* itself may no longer work for Verizon, these same contractual provisions are logically sufficient to establish an agency relationship with the other debt collectors if they once did so for Collecto.

At a minimum, it is clear that the contracts provide Verizon the unilateral discretion to assign or withhold collection accounts from its current collectors—without cancelling the contracts in question. (*Id.* ¶¶7, 11.) Because control is an empirical question, it is appropriate—even necessary—to test whether withholding work from Verizon's debt collectors would prompt them to comply with Lofton's discovery. In *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 420 (N.D. Ill. 1977), the question was whether the defendants had control over former employees who still received compensation from the defendants:

> While the right to withhold payment does not ipso facto mean that defendants will be able to procure the documents, it is clearly an indicia of control. At the very least, defendants should make inquiry of such former employees. This is especially true where, as here, defendants do not assert that the former

---

"demonstrat[ed] ability to obtain documents . . . upon request"); *M.L.C., Inc. v. N. Am. Philips Corp.*, 109 F.R.D. 134, 138 (S.D.N.Y. 1986) (control existed where defendant's previous efforts sufficient to obtain documents from third parties and "[d]efendants [failed to show any] reason why similar efforts could not have been made when defendants were first served with [the plaintiff's] document production request").

>employees are unwilling or unable to cooperate. . . . If the former employees do not cooperate, we can then consider what further action may be required.

*Id*. at 423. As set forth below, it is impossible to conclude that Verizon lacks control over its debt collectors' records without empirically testing whether Verizon can induce its debt collectors to comply with Lofton's discovery.

**The Court Should Grant Lofton Relief:** Under prevailing law, Verizon's contracts with its debt collectors clearly establish control. Verizon's past production of documents from its debt collectors is further evidence of actual control. Verizon at least has to *ask* its debt collectors to comply with Lofton's discovery. If they nonetheless refuse to comply, the Court should determine whether Verizon can prompt compliance by withholding work from delinquent debt collectors. Verizon should at least make the same efforts to comply with Lofton's discovery that it makes to prepare its defense, *up to and including withholding work or collection accounts from its collectors until they produce the required information*. Verizon asserts an order requiring Verizon's compliance would not be "reasonably enforceable." There is a world of difference between the debt collectors resisting Lofton's subpoenas (without any risk or cost to themselves, and probably at Verizon's directive) and refusing Verizon's directives to *cooperate* with discovery on pain of losing future work from Verizon.

Finally, the Court should require Verizon to be transparent about its efforts to comply with Lofton's discovery. Where compliance with discovery is in dispute, courts have required parties to provide declarations about their efforts to produce responsive documents. *See Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) (citation, punctuation omitted); *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189-90 (C.D. Cal. 2006). There is an especially keen need for transparency in disputes over whether documents are in a party's control or not. The Supreme Court has directed "'lower courts to closely examine the actual relationship between [litigants and third party possessing relevant evidence]' when addressing the issue of control and to '*guard against . . . false and misleading actions whereby corporations try to hide documents or make discovery of them difficult*.'" *Ice Corp*, 245 F.R.D. at 517-18 (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 204 (1958); other citation omitted; emphasis added). If a defendant has sufficient control over non-parties to compel production of documents, the same defendant has sufficient control to induce those non-parties to feign resistance to complying with discovery which harmed that defendant's interests. Hence, it is appropriate to require Verizon to be transparent about its efforts to comply with discovery:

>There is no need for a privilege to cover information exchanged in the course of document searches, which are mostly mechanical yet which entail great risks of dishonest claims of complete compliance. Dropping a cone of silence over the process of searching for documents would do more harm than good.

*In re Feldberg*, 862 F.2d 622, 627 (7th Cir. 1988) (quoted, followed by *In re Grand Jury Proceeding*, 68 F.3d 193, 197 (7th Cir. 1995)). Verizon has produced its collectors' records in the past; if the collectors fail to comply with Lofton's discovery now, the reason why should be completely transparent. Verizon's interference with Lofton's subpoenas heightens the need for transparency here. (*See* Preston Decl. ¶¶17-19.)

### **Defendant Verizon Wireless's Position**

#### **Lofton Has Not Met His Burden to Show Control**

Control is the legal right to obtain documents upon demand. *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).  The party seeking discovery bears the burden of proving that the responding party has such control.  *Genentech, Inc. v. the Trustees of the University of Pennsylvania*, No. C 10–2037 PSG, 2011 WL 5373759, *1 (N.D. Cal. Nov. 7, 2011)(holding that Genentech was not required to produce responsive documents maintained by Genentech's parent company). It is not enough that a party may have a "practical ability to obtain the requested [discovery]…." *Id.* Lofton has not meet this burden of showing ***legal*** control.

#### **Lofton's Assertion that Verizon Controls its Debt Collectors With Respect to Discovery Conflates His IPA Claims and TCPA Claims.**

Lofton litigated his IPA theories for nearly two years in the Alameda County Superior Court, before he added federal TCPA claims that Verizon Wireless removed to the federal court.  In his IPA case, plaintiff alleged that some vendors followed Verizon Wireless Monitoring Disclosure policy that the plaintiff argues is unlawful.  In his new TCPA case, plaintiff alleged that vendors violated Verizon Wireless's policies by using unlawful automated telephone dialing systems to call consumers, in violation of the TCPA.

Verizon's former vendor Collecto made all of the calls to plaintiff John Lofton.  Six other vendors (ER Solutions, Inc/Convergent., Sunrise Credit Services, Inc., The CBE Group, Inc., Valentine & Kebartas, Inc., Vantage Sourcing, LLC, and GC Services) were identified as potentially relevant in the IPA case, but Collecto is the only vendor who agreed to defend Verizon.  All 22 vendors have been identified (see Document 37 at page 31 of 33, lines 8-20).

#### **Implicitly conceding that that Verizon does not control these vendors, Lofton has subpoenaed five of those six vendors (all except GC Services).**

The document requests at issue demand that Verizon Wireless should produce records about the telephone systems used by its 22 other vendors (all except Collecto, whose documents have been produced).  Plaintiff recently served subpoenas on five of those vendors (Convergent, Sunrise, CBE Group, Valentine, and Vantage), for call records that he hopes will support TCPA claims.  All five of those vendors have objected to the subpoenas, on grounds including relevancy and burden, and none have produced any records.  But importantly, those subpoenas implicitly concede that Verizon Wireless does not control its vendors' records.  And the other 15 vendors have not been subpoenaed, and plaintiff has made no showing that the agreements of those 15 vendors contain audit or access provisions that are similar to the Collecto-Verizon Agreement.

Verizon's vendor Collecto produced records in this case, but Collecto is unique because, 1) Plaintiff served Collecto with multiple Subpoenas for records on 8/17/12, 1/17/13, 5/15/13, 8/1/14, and 8/25/14, and 2) Collecto is the only one of Verizon's 22 vendors to provide a defense to Verizon Wireless in this case.  As in the insurance context, an indemnitor has the obligation, upon tender of defense, to defend "against all claims "embraced by the indemnity." *See Centex Homes v. Fin. Pac. Ins. Co.*, No. CVF07-00567AWISMS, 2009 WL 5030138, at *8 (E.D. Cal. Dec. 16, 2009).   Reliance on the indemnity provision to establish control of vendors who are not defending Verizon Wireless is unjustified and premature.

Importantly, plaintiff has failed to submit any evidence that supports TCPA claims against vendors other than Collecto, and the plaintiff has not even pleaded that such facts exist.  Indeed, the complaint does not even allege that Plaintiff received a single phone call from any of these other vendors, much less identify with any specificity their particular call practices or dialing systems.  This is a classic fishing expedition, plaintiff lacks standing to prosecute claims against these other vendors, and his discovery that is intended to establish those claims is unjustified and unwarranted.  *See, e.g., Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1169-70 (10th Cir. 2000) ("When, as is apparent here, a plaintiff brings an initial action without any factual basis evincing specific misconduct by the defendants and then bases extensive discovery requests upon conclusory allegations in the hope of finding the necessary evidence of misconduct, that plaintiff abuses the judicial process. Therefore, the magistrate judge appropriately recognized that defendants' compliance was sufficient and the likely benefit of any further attempted fishing expedition would be negligible."); *Jordan v. Paul Fin., LLC*, C 07-04496 SI, 2009 WL 192888 at *4 (N.D. Cal. Jan. 27, 2009)(holding plaintiff lacked "standing to join defendants that have never held or serviced his loans. Plaintiff appears to propose conducting class discovery to identify all possible defendants, and to then join named plaintiffs who would have standing against those defendants. This unorthodox procedure reverses the traditional approach of seeking class certification on behalf of a class that is represented by named plaintiffs who have standing to represent the putative class.").

**Verizon's limited contractual audit rights do not establish control over broad categories of records.**

Paragraph 7.2 of the Collection Agreement states as follows:

> Verizon, through its authorized representatives, shall have the right, at all reasonable times, to examine and audit records, to include, but not be limited to **copies of current permits, insurance and bonding information for [Collecto] and any subcontractors handling Placed Account, a copy of the Customer Complaint log (as required in Exhibit A) and copies of all letters used in collection of Placed Accounts**.  In addition, such examination and audit may also

>        include a review of Supplier's collection efforts, cash controls, methods
>        and procedures for recording and remitting payments, and compliance
>        with this Agreement.

Paragraph 7.2 (emphasis added).

Paragraph 7.2 permits Verizon access to letters and accounting information in the normal course of business operations.  Similarly, Ex. A, Paragraph 7 of the Collecto agreement states that Collecto must provide remote access via website, software or a terminal, again in the context of business operations.  The Agreement states that this remote access must allow Verizon to "monitor" accounts referred for collector and that such information regarding said accounts is to be "unrestricted."  But contractual access to these specific records is much narrower than the plaintiff's expansive requests for records in civil litigation about vendors' telephone systems.

In affirming partial denial of a motion to compel, the Ninth Circuit in *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1451 (9th Cir. 1989)("*Int'l Union*") limited the scope of control to only to those documents specified in the relevant contract.  In that case, the Department of Labor's ("DOL") subpoena sought financial data and election records of local unions affiliated with the International Union of Petroleum and Industrial Workers ("IUPIW").  The District Court ordered IUPIW to produce the financial data, but ruled that DOL had not shown that the International "controlled" the locals' election records.  *Id.*

The Ninth Circuit stated that relationship between IUPIW and the locals was governed by the IUPIW constitution, which is a "contract between labor organizations." *Id.* at 1452.  Similar to Lofton, the DOL attempted to "read several disparate provisions of the constitution [contract] together," but Court in *Int'l Union* stated the IUPIW had the right "to inspect, only those documents mentioned in the union constitution." *Id.* at 1453.  IUPIW only gained access to local records in the event of a dissolution of the local. *Id.*  The Ninth Circuit held this did not give an "unfettered right to demand that an active local turn over its records to the International, aside from those records mentioned in the constitution." *Id.* at 1453.

The specific discovery requests, Nos. 49 and 50, seek TCPA-related documents relating to whether or not the telephone equipment used by vendors constitute automatic telephone dialing systems under 47 U.S.C. section 227(a)(1), or predictive dialers.  There is nothing in the contracts that encompasses such a request, much less in the context of civil litigation.  Lofton's requests to Verizon, which have included multiple requests for account notes and calls logs from its collectors far exceed the scope of the audit provisions.  (See Declaration of Charles R. Messer, ¶ 6-15)

Verizon Wireless's position that limited inspection rights favor a finding of a lack of control is supported by *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, No. C 04-05368 SI, 2006 WL 3742244, at *3-4

(N.D. Cal. Dec. 19, 2006). In that case, the plaintiff asserted that an agreement between MDL Inc. and MDL GmbH established a principal-agent relationship, giving MDL Inc. the legal right of control over documents that were in the possession of MDL GmbH. *Id.* at *1. In denying the plaintiff's motion to compel documents from MDL Inc. that were in the possession of MDL GmbH, the Court noted the section 3.1 of the parties' cross-licensing Agreement provided for limited access to financial documents and access to accounting personnel to discuss said records. *Id.* at *3. The court held that if MDL GmbH was MDL Inc.'s agent, "then section 3.1 of the Agreement would be wholly superfluous. Section 3.1 thus strongly evidences the fact that MDL Inc. does not have general access to documents in possession of MDL GmbH.1." *Id.* at *4. *See also In re NCAA Student–Athlete Name & Likeness Litig.*, No. 09–CV–01967, 2012 WL 161240, at *2 (N.D.Cal. Jan. 17, 2012)(NCAA bylaw which required member institutions to "maintain written policies" for licensing and holding that such policies "shall be made available for examination on request" by the NCAA did not establish control).

Lofton's reliance on *Allen v. Woodford*, No. CVF051104OWWLJO, 2007 WL 309945, at *20 (E.D. Cal. Jan. 30, 2007), does not help the plaintiff's position, at least on this factual record. There, the Court decided against granting a motion to compel the defendants to produce documents in the possession of a third party, and asked for further factual submissions in the form of a declaration. *Id.* at *7, 9.

**The state court ruling that Lofton sufficiently pled that Collecto was Verizon's agent for purposes of Lofton's IPA claims did not establish that other vendors are agents as a matter of law for Lofton's TCPA claims**

Lofton asserts that because the state court held that he sufficiently pleaded that Collecto was an agent of Verizon Wireless, that other vendors must be Verizon's agents as a matter of law. This argument lacks any merit because the state court's ruling that Lofton sufficiently pled vicarious liability on his state-law IPA claims does not establish that Lofton established vicarious liability as a matter of law on his new federal TCPA claims. The existence of agency is ordinarily a question of fact, except where the evidence is susceptible to one inference, i.e. absence of agency, in which case no triable issue is presented. *In re McRoyal*, 869 F.2d 1497 (9th Cir.1989) ( None of the plaintiff's TCPA claims were litigated in state court, because Verizon Wireless removed the case to the federal court promptly after those TCPA claims were first filed.

Plaintiff's vicarious TCPA-liability theories were never ruled upon by the state court. Plaintiff has failed to present evidence that the contracts of all 22 vendors are substantially similar, and he has failed to plead any facts that implicate other vendors under the TCPA. Briefing of whether Lofton established agency for the purposes of establishing control under the TCPA would exceed the Court's page limitation. However, in summary: The Northern District in *Beilstein-Institut*, 2006 WL 3742244, at *4 (N.D. Cal. Dec. 19, 2006), rejected plaintiff's attempt to assert a principal-agency relationship given the contractual limitations on access to information. As shown above, the Collecto-Verizon agreement similarly limits access to records, which argues

against a finding of control establishing actual agency.

On the issue of ostensible agency, ostensible agency requires reliance by a third party upon the representation of Verizon (the alleged principal) to his or her detriment. *Reusche v. California Pac. Title Ins. Co.*, 231 Cal. App. 2d 731, 736 (1965) Lofton has not shown that any of the putative class members relied upon any representation of Verizon to their detriment, particularly in the context of the TCPA class action. Moreover, ostensible agency does not establish control. With respect to ratification, Lofton has not demonstrated that Verizon ratified any conduct of the collectors. Regardless, such ratification is insufficient to establish a principal-agent relationship. *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir.2003).

**Production of vendors' records in the IPA case is irrelevant to the pending discovery as to TCPA claims.**

Lofton's argument that "The fact that Verizon was able to produce records in its collectors' possession in the past proves that Verizon is able to produce any such records today," was specifically rejected by the Ninth Circuit in *In re Citric Acid Litig.*, 191 F.3d 1090, 1108 (9th Cir. 1999). The moving party in that case claimed that the opposing party "had the practical ability to obtain documents from C&L–Switzerland because C&L–Switzerland has voluntarily furnished C&L–US with documents and information in the past." *Id.* The Ninth Circuit rejected the concept of practical control because "There is no mechanism for C&L–US to compel C&L–Switzerland to produce those documents, and it is not clear how Varni wants C&L–US to go about getting the ECAMA documents, since C&L–Switzerland could legally—and without breaching any contract—continue to refuse to turn over such documents." *Id.*

Despite this authority, Lofton selectively cites *AFL Telecommunications LLC v. SurplusEQ.com Inc.*, No. CV11-1086 PHX DGC, 2012 WL 2590557, at *2 (D. Ariz. July 5, 2012), and omits a key part of the decision—that the relationship at issue in that case was that of a parent and subsidiary. The full citation is "Where the relationship is thus such that the ***agent-subsidiary*** can secure documents of the principal-agent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the ***agent-subsidiary*** to deny control for purposes of discovery by an opposing party." *Id.* (emphasis added)

Here, all of the vendors are independent companies. None are owned or controlled by Verizon Wireless. All are subject to process. There is no parent-subsidiary relationship between Verizon and any of its vendors.

**<u>Lofton's "Control" theory is unreasonably burdensome.</u>**

Verizon Wireless's vendors are all independent companies that are based in the United States, and which are subject to legal process. Lofton theorizes that those vendors violated the TCPA, again without including a single allegation in the complaint

November 9, 2014
Page 12 of 13

identifying such conduct, and his request to seek discovery from such non-parties imposes unreasonable burdens on Verizon Wireless and on the court.

Even if the court concludes that Verizon Wireless has some degree of "control" over its vendors, Verizon Wireless is skeptical that the court can issue an Order that is reasonably enforceable. The vendors have objected to Lofton's subpoenas on numerous grounds, including relevancy and burden. If the vendors continue to resist discovery, will the Court sanction Verizon Wireless? If Verizon Wireless terminates its contracts with vendors (as it terminated Collecto in August 2012), what post-termination "control" will the court expect?

Plaintiff's control theory does not justify his unprecedented demand that Verizon Wireless should expend substantial resources to make itself intimately familiar with electronic systems and records that are utilized by five or 22 other companies, in order to comply with Requests for Production.

**Lofton's "Control" theory is unmanageable.**

The plaintiff's complaints that Verizon Wireless has resisted discovery have a common theme: The records and information that the plaintiff seeks are *not* within the possession or control of Verizon Wireless, but *are* in the possession, custody or control of non-party companies (Verizon Wireless's vendors).

The absence of vendors has made this case structurally defective from the beginning. The companies from whom the plaintiff seeks information are not before the court. Plaintiff uses their absence to impose extraordinary and unprecedented demands on Verizon Wireless, and to impose extraordinary and unprecedented demands on the courts about demands that should be directed to the companies that possess the requested information, the vendors. Plaintiffs' efforts to subpoena the vendors acknowledges as much.

Last, the court should be guided by Rule 1 of the Federal Rules of Civil Procedure: "[These rules] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Though often overlooked, Rule 1 is the most important rule because unlike any other rule, Rule 1 affects the interpretation of *every* other rule. This case is replete with plaintiff's complaints that information from non-party vendors has been slow, inadequate, incomplete, or inaccurate. But those complaints are predictable consequences of the structural defects of this case, which have obstructed (not secured) the speedy or inexpensive determination of this action. And the plaintiff uses complaints about discovery from non-party vendors to unfairly cast Verizon Wireless in a false light, which is unjust.

For the reasons stated herein, the plaintiff's requests should be denied.

|  |  |
|---|---|
| Sincerely, | Sincerely, |
| /s/Ethan Preston | /s/Charles R. Messer |
| Ethan Preston | Charles R. Messer |