Pages 1 - 27

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Magistrate Judge

```
JOHN LOFTON, an individual,    )
on his own behalf and on       )
behalf of all others similarly )
situated,                      )
                               )
          Plaintiffs,          )
                               )
  VS.                          )      No. C 13-5665 YGR (JSC)
                               )
VERIZON WIRELESS (VAW) LLC, a  )
Delaware limited liability     )
company, and DOES 1-100,       )
inclusive,                     )
                               )
          Defendants.          )
_____)
```

San Francisco, California
Thursday, November 20, 2014

**TRANSCRIPT OF PROCEEDINGS OF THE
OFFICIAL ELECTRONIC SOUND RECORDING
FTR time: 2:35-3:04 = 29 minutes**

**APPEARANCES**:

For Plaintiffs:

Preston Law Offices
8245 North 85th Way
Scottsdale, Arizona  85258
**BY:  ETHAN MARK PRESTON, Attorney at Law**

(Appearances continued on next page)

transcribed By:     Candace Yount, CSR# 2737, RMR, CCRR
                    Contract Court Reporter/Transcriber
                    U.S. District Court

Computerized Transcription By Eclipse

**<u>APPEARANCES (Continued)</u>:**


For Plaintiffs (Continued):
                            Parisi & Havens LLP
                            212 Marine Street
                            Suite 100
                            Santa Monica, California  90405
                    **BY:  DAVID C. PARISI, Attorney at Law**


For Defendants:
                            Carlson & Messer LLP
                            5959 West Century Boulevard
                            Suite 1214
                            Los Angeles, California  90045
                    **BY:  CHARLES R. MESSER, Attorney at Law**

| | |
|---|---|
| 1 | <u>Thursday - November 20, 2014</u>                    <u>2:35 p.m.</u> |
| 2 | <u>**P R O C E E D I N G S**</u> |
| 3 | **---000---** |
| 4 | (Transcriber's Note:  Due to parties failing to speak up, |
|   | "(inaudible)" is noted throughout as appropriate.) |
| 5 | |
| 6 | **THE CLERK:**  Calling civil action C 13-5665, Lofton |
| 7 | versus Verizon Wireless. |
| 8 | **MR. PRESTON:**  Good morning, Your Honor.  My name is |
| 9 | Ethan Preston and I represent John Lofton. |
| 10 | **THE COURT:**  Good afternoon, Mr. Preston. |
| 11 | **RIGHT1:**  Good afternoon.  Charles Messer for Verizon |
| 12 | Wireless. |
| 13 | **THE COURT:**  All right.  Good afternoon. |
| 14 | All right.  So what we're going to have to do is figure |
| 15 | out what we have left, how we're going to get there, and then |
| 16 | what the date is for class certification. |
| 17 | So Judge Gonzalez Rogers referred the case to me, at least |
| 18 | for a recommendation as to the date.  I think she'll probably |
| 19 | accept my recommendations.  It's pretty clear we have to move |
| 20 | the date, so the question is figuring out what date to move. |
| 21 | And, so, to start with, I think we need to figure out what |
| 22 | discovery is left. |
| 23 | So I'll start with you, Mr. Preston. |
| 24 | **MR. PRESTON:**  The -- Collecto has three dialers.  We |
| 25 | have records for one dialer.  As we understand it, there's |

PROCEEDINGS

 1  not -- not, like, a confirming declaration yet but . . .

 2       THE COURT:  And tell me what these records are when

 3  you say you have records for one dialer.

 4       MR. PRESTON:  I'm going to use the terms Call Detail

 5  Record, Caller and Dialer Log interchangeably.  They are . . .

 6  records kept by the dialer itself.

 7       With respect to the GC dialer, which has been produced,

 8  the GC dialer and the account notes are the same thing.  The

 9  dialer logs are kept in the account notes.  And so they've

10  extracted everything from -- from the account notes, which is

11  that FACS system we keep talking about.  That's done.

12       There are two other documents --

13       THE COURT:  Okay.  So let me stop you.

14       So just tell me:  What's that -- What's that look like?

15  What did you get?

16       MR. PRESTON:  It -- It looks like . . .  They're big

17  Zip files and they're -- they're plain text and there are lines

18  of data that are delineated or delimited.  If I recall

19  correctly, they're delimited by tab.

20       MR. MESSER:  I think that's right.  They're in Excel

21  format --

22       MR. PRESTON:  Okay.

23       MR. MESSER:  -- as requested.

24       MR. PRESTON:  Okay.  So it looks . . .  The fields are

25  identified, and every field for every row of data is -- has the

PROCEEDINGS

1   same piece of data, so it's very easy to figure out, was this

2   call to a wrong number?  If not, you pitch it.  Was this call

3   during the class period?  So you look at the date.

4          **THE COURT:**  Okay.

5          **MR. PRESTON:**  If not, you pitch it.

6      For the sake of the IPA claim, was this call to a

7   California Class Area Code?

8      Okay.  You know, things like -- A little bit more

9   sophisticated later on but, for the moment, we're going to

10  pitch those.

11         **THE COURT:**  What do you mean by "pitch"?

12         **MR. PRESTON:**  Exclude.

13         **MR. MESSER:**  Throw out.

14         **MR. PRESTON:**  There are two other dialers.  Those

15  dialers are the Noble dialer and the Sound Bite dialer.

16  There's also a LiveVox dialer . . . that I -- I -- I don't

17  think -- Actually, now that I think about it, that was used by

18  Collecto during the class period because they were -- stopped

19  working for Verizon in 2012.

20         We're supposed to get the Noble dialer logs any day now.

21  We don't know what the story is with the Sound Bite dialer

22  logs.  I don't know exactly what's being produced because, as

23  you know, the dialer logs, a lot has been destroyed.

24         I -- I learned this morning from Mr. Messer that there's

25  yet another set of documents that supposedly contains the

1    information we need.  The -- It's the -- what he's described as

2    the metadata associated with the call recording archives.

3        You know, it -- it . . .  From our perspective, there was

4    spoliation.

5            THE COURT:  All right.  We're not arguing that motion

6    right now.

7        So -- So I just want to say is right:  So what you're

8    waiting for from Collecto is the Noble dialer logs and the

9    Sound Bite dialer logs.

10           MR. PRESTON:  Right.

11       Now, because this is -- In the Verizon case, there are all

12   the other --

13           THE COURT:  I know.  I just -- I'm taking this one

14   step at a time.

15           MR. PRESTON:  And that's fine.

16           THE COURT:  So, Mr. Messer.

17           MR. MESSER:  Yes.

18           THE COURT:  The Noble dialer logs.

19           MR. MESSER:  Well, the request was for information

20   that can identify calls, and we were extracting that

21   information from what we have.  That extraction will be

22   produced for Noble by Saturday and for all the other calls --

23   for the Sound Bite, by next Wednesday before Thanksgiving.

24       But we discovered yesterday, who -- We've known for a

25   couple of years that Collecto had an archive of recordings.

PROCEEDINGS

1    And the company's understanding was that those were recordings

2    and defined in the (inaudible) process.

3         Well, I had my expert actually pull one of those CDs.  And

4    what I learned yesterday was, yes, the CD had recording, but it

5    also has metadata for calls, not only for recorded calls but

6    for all calls.

7         And so there are three or 4,000 CDs that, according to

8    testimony, date back to 2007-2008.  I don't have them

9    cataloged.  The only one we've looked at is from July 2013.

10   But this is a potential source.

11        And so I told Mr. Preston, you know, I'm not going to stop

12   this current production to try to go CD mining.  I'm going to

13   extract what we can out of the existing records and produce

14   that, Noble by Saturday and the rest by next Wednesday.

15        But then let's sit down and let's talk about:  Do we need

16   to go CD mining?  Okay.  We might or we might not.  We might

17   need to mine CDs for the IPA class, which is one year, but not

18   the TCPA class which is four.  But those geographics are there.

19   They're out there.  I disclosed them as soon as I -- within

20   2 -- within 24 hours of when I learned of their existence.

21        And -- And I just want to be clear that the current

22   production is not going to include whatever data is -- is on

23   the CD or file.

24        **MR. PRESTON:**  I do have on this point -- And we're

25   taking it point by point.  I understand that.  I started off on

 1    the wrong foot previously.

 2        But from our perspective, it would be really great if we

 3    had some declarations about what has been produced and so it's

 4    crystal clear that these -- these are all the documents that,

 5    for this particular dialer, and then it corresponds with this

 6    particular dialer, and there's an authenticating person who --

 7    who explains where the documents came from.

 8        **THE COURT:**  So -- All right.  I hear -- So,

 9    Mr. Messer, your representation is that, by next Wednesday --

10        **MR. MESSER:**  Yes.

11        **THE COURT:**  -- the -- the account notes, or logs, or

12    whatever we want to call them, for the GC dialer, the Noble

13    dialer and the Sound Bite dialer will have all been produced.

14        **MR. MESSER:**  Yes.

15        **THE COURT:**  Is there any reason you or someone from

16    Verizon can't -- or Collecto, whoever -- can't submit a

17    declaration that just says that?

18        **MR. MESSER:**  We can do that.

19        **THE COURT:**  Okay.  All right.  Why don't you do that.

20    If you're going to produce -- Can you do it by Wednesday when

21    you produce the final documents, or at least by the following

22    Tuesday, the 2nd?

23        **MR. MESSER:**  By the following Tuesday for --

24        **THE COURT:**  Okay.

25        **MR. MESSER:**  -- the declaration.

1        **THE COURT:**  All right.  By December 2nd.  All right.

2    So that's the Collecto documents.

3        And as to this met -- metadata, you're going to look to

4    that and you're going to talk about that, whether you need to

5    see that.

6        **MR. PRESTON:**  Yeah, because it then -- it may be

7    duplicative.

8        **THE COURT:**  All right.

9        **MR. PRESTON:**  I want to let me flag an issue up front

10   so Your Honor understands sort of the stakes.

11       When we deposed Mr. Madden, he testified, look, the FACS

12   doesn't necessarily capture the dialer that's used, which one

13   of these three dialers, or the dialing mode.

14       Those are going to be relevant to the merits of the TCPA

15   claim, because they have different appendices and different

16   operations for different dialers.

17       And the dialer mode (inaudible) complication because

18   there's some One-Click dials that involve human intervention

19   that are not like the Power Mode dialer, the full predictive

20   dialer, where the -- the person literally sits on the phone and

21   is connected to call after call after call.  Those records were

22   in the dialer logs, the CDRs.

23       The records that Mr. Messer is producing, as I understand

24   it, are being extracted to some degree from FACS and they're

25   replicating the call logs through FACS.

PROCEEDINGS

1    As we understand it, FACS does not always or necessarily

2    contain the dialer mode, or the dialer, and it may not contain

3    the disposition code, which would be relevant if they were

4    using a wrong number (inaudible) for a caller or not.

5    So . . . if we can't get that information from . . . from

6    the records that go -- that are produced, then we have to start

7    talking about this -- this CD metadata.

8         **THE COURT:**  All right.  Those are the records you're

9    getting Saturday and Wednesday -- by Wednesday.

10        **MR. PRESTON:**  Yeah.  That is want I've been told.

11        **THE COURT:**  Okay.  All right.  Well, so, then, we're

12   not there.

13        **MR. PRESTON:**  Is there -- Actually, now that I have

14   you here, is there any reason we can't get that declaration to

15   explain whether or not the -- the data includes those three

16   categories?  These are the disposition code, the dialer, and

17   the dialer mode.  It would be real helpful to just have it up

18   front.  This is Verizon's/Collecto's assertion about what's

19   contained within our production.

20        **MR. MESSER:**  So you want disposition codes, dialer

21   I.D. --

22        **MR. PRESTON:**  And --

23        **MR. MESSER:**  -- and dialing mode.

24        **MR. PRESTON:**  Dialing mode.

25        **THE COURT:**  Well, just say whether it's there or not.

PROCEEDINGS

1          **MR. MESSER:**  Right.  Yeah.

2          **THE COURT:**  All right.  All right.  Okay.  So that

3 takes care of Collecto, then.

4      Is that correct, Mr. Preston?

5          **MR. PRESTON:**  Yes.

6          **THE COURT:**  All right.  So, then, we have the others.

7      So, we have the issue of the joint discovery letter on

8 sort of control, and that's with respect to essentially wanting

9 documents that show what kind -- is this right? -- what kind of

10 dialer the other vendors are using?  Whether they were using

11 predictive dialers?

12          **MR. PRESTON:**  Well, it's -- I understood your order a

13 bit more broadly.

14      And we were to brief control --

15          **THE COURT:**  No.

16          **MR. PRESTON:**  -- period.

17          **THE COURT:**  No, no.  I'm saying you brief control

18 but -- but it's with respect to -- but the motion to compel is

19 with respect to --

20          **MR. PRESTON:**  Oh, the original motion to compel.

21      Gosh, Your Honor, I . . .  I don't specifically recall.  I

22 think it was doctrines, whether or not there was some kind of

23 defense as to whether or not their -- their -- their documents

24 were predictive dialers or constituted ATDSs.

25          **THE COURT:**  Right.  And the issue was that they are

1    not Verizon's documents, they're vendors', and whether they

2    have legal control as the Ninth Circuit has defined it in

3    *Citric Acid*; right?

4            **MR. PRESTON:** Sure.

5            **THE COURT:** Okay. So this is my tentative view, which

6    is that I do think the contracts and the audit provisions give

7    Verizon legal control over the documents.

8        And the reason is, is because it says such examination

9    audit -- you can correct me if I'm wrong, Mr. Messer -- may

10   include reviews of suppliers' collection efforts.

11       I mean, the -- the reason that Verizon is here is because

12   the plaintiff, at least, is trying to hold them liable for what

13   Collecto did, and that's why you have your audit -- ability to

14   audit their collection efforts, to make sure they're complying

15   with the law.

16       And I find it hard to believe that if you wanted to know

17   if they were using an illegal dialer, that you couldn't find

18   that out, that under this contract, they wouldn't have a legal

19   obligation to disclose that information to you.

20           **MR. MESSER:** But this kind of information is far

21   beyond the scope of what these companies actually do in audits

22   and -- and far beyond -- and it -- it does not -- Contracts

23   don't anticipate litigation and, you know, it's -- it's -- the

24   record are not ours.

25           **THE COURT:** Well, there are cases that -- that -- that

PROCEEDINGS

1   when -- There -- There are cases where there's Cooperation

2   Agreements.  But there's certainly cases -- for example, the

3   *Doe vs. AT&T* from this district -- that relies on essentially a

4   provision that's no different from the one -- the ones at issue

5   here.

6         So are you just saying you shouldn't follow them?

7             MR. MESSER:  They're saying there -- there's both a

8   lack of legal control, a lack of practical control, and that

9   this kind of ruling in this context is really unprecedented,

10   that these are usually one-time requests, not in cases of

11   vicarious liability for the actions of several companies.  And

12   it's not manage -- reasonably manageable.

13             THE COURT:  Why is it not reasonably manageable?

14             MR. MESSER:  Because those parties, the vendors, are

15   not before the Court.  I mean, if I can't get them, what then?

16   What happens to me then?

17             THE COURT:  Well, that's the whole point.  The -- The

18   point is -- What I'm saying is that you can get them because

19   you have a contract that you -- Well, first of all, I'm

20   assuming they're still your vendors and the contract is still

21   good.

22             MR. MESSER:  All the -- Collecto -- Collecto's not.

23             THE COURT:  I understand Collecto, but an earlier

24   judge ruled they were your agent, or you were -- yeah, they

25   were your agent and so that's Collecto, sort of.

1          **MR. MESSER:**  Or at least they're -- that was pleaded

2    that they were.

3          **THE COURT:**  Okay.  That -- But they are still

4    currently, so you still have contracts with them that give you

5    the right to examine and audit and also review the supplier's

6    collection efforts.

7          I guess you're trying, well, that was intended -- and I

8    don't disagree with that -- to audit and review with respect

9    to -- I don't know.  I mean, how much they're collecting?

10         **MR. MESSER:**  Accounting.  Where's the -- Are we -- Is

11   there proper amounts of money being paid?

12         **THE COURT:**  But -- But I -- I -- I just find it hard

13   to believe that you would have no right to examine to make sure

14   that they were complying with the law in their collection

15   efforts.

16         I mean, clearly, Verizon does not want its vendors to be

17   breaking the law and would give itself the right -- and that's

18   how I read it -- to ensure they're complying with the law,

19   which is essentially what they're asking, documents that show

20   they're complying with the law.

21         And, frankly, if they're not using predictive dialers, I

22   would just produce them, and then you can get that part of the

23   class knocked out; right?

24         **MR. MESSER:**  Right.

25         The -- I understand the Court's point of view and -- and

 1   it's not a . . .

 2        I think it is a -- a -- disappointing but -- but not

 3   surprising, though.

 4             **THE COURT:**  That's all right.  You can say -- You can

 5   call it unreasonable.  I will not be offended.

 6             **MR. MESSER:**  Your Honor, I'm -- I'm -- I'm not going

 7   to go there.  I mean --

 8             **THE COURT:**  All right.

 9             **MR. MESSER:**  -- I've read the cases.

10             **THE COURT:**  All right.  All right.  Well, that's going

11   to be the Order of the Court.

12        I'll write something so that there's something written,

13   and then should you want to appeal it, of course, you have a

14   right to that with Judge Gonzalez Rogers.

15        I -- But I understand the objection.  I understand.  But

16   I -- I do think that -- I think they've shown legal control

17   within the Ninth Circuit's standard, which is a pretty high

18   standard, but I think it's met here.

19        That Arizona case you cited -- everyone keeps citing it to

20   me -- that is not a persuasive case at all and I'm not relying

21   on that case.  But I'm --

22             **MR. PRESTON:**  All right.

23             **THE COURT:**  -- relying on the *Doe* case.

24             **MR. PRESTON:**  It's helpful to have these discussions.

25        Why do you find it unpersuasive?

1          **THE COURT:**  Well, be --

2          **MR. PRESTON:**  Because of the context?

3          **THE COURT:**  Because of the context, absolutely.  It

4     was the plaintiff who filed suit and that was trying to avoid

5     producing any documents by creating a parrot just for the

6     purposes of the litigation.

7          **MR. PRESTON:**  But what I -- You know, I --

8          **THE COURT:**  But, anyway, let's not talk about it.  I'm

9     not relying on it.

10          **MR. PRESTON:**  That's fine.

11          **THE COURT:**  I'm not relying on it.  I'm relying simply

12     on the argument based on --

13          **MR. PRESTON:**  The (inaudible) analysis of *Gerling* and

14     *Citric Acid* is helpful.

15          **THE COURT:**  No.  That's all right.  Yeah.  I've

16     analyzed it before.  I just --

17          **MR. PRESTON:**  Yeah.

18          **THE COURT:**  I stick with *Citric Acid*, and the Ninth

19     Circuit.

20          So, in any event, that'll be the ruling of the Court.

21          Now, with respect to what the documents are.

22          Look, Mr. Preston doesn't need every single piece of

23     paper.  This isn't supposed to be burdensome.  What he needs is

24     a question answered.  What were they using?  What equipment

25     during the class period were they using?

1    And just to bring up.  I did, you know -- You raised again

2    the objection as to relevance, but I went back and I looked at

3    the Third Amended Complaint and the class definition clearly

4    includes all the vendors.  All the vendors.  So I think it's

5    relevant.  And that wasn't dismissed and there wasn't a

6    standing argument made at that time.

7         **MR. MESSER:**  So we're talking about the vendors.  I

8    want to make sure we're talking the pre -- pre-write-off, not

9    the claimed 26 --

10        **THE COURT:**  No.  We're talking -- I think you gave --

11   There was five names.

12        **MR. PRESTON:**  Right.

13        **MR. MESSER:**  Okay.  Good.  That's --

14        **MR. PRESTON:**  Yeah.

15        **MR. MESSER:**  That's also good for me to know.

16        **THE COURT:**  No, no, no.

17        **MR. MESSER:**  I don't -- I don't want -- That might be

18   unmanageable.

19        **THE COURT:**  No, no, no.  We're only talking about the

20   five that were addressed in the thing.

21        All right.  So, then, what else is there that you need or

22   are waiting to file your -- Oh, so there's a motion to quash

23   that's been filed before Judge Gonzalez Rogers and noticed for

24   January.

25        I'm going to do an order that moves that to me because I

 1   have all discovery in the case.

 2                    (Pause in proceedings.)

 3          THE COURT:  Oh, I did already?

 4          MR. MESSER:  Yeah.

 5          THE COURT:  Oh, I did?

 6          MR. MESSER:  She did.

 7          THE COURT:  Oh, she did.

 8          MR. MESSER:  Yester -- Yesterday afternoon, I think.

 9          THE COURT:  Oh, okay.

10          MR. PRESTON:  You know, I'm not sure.

11      We served those subpoenas at a time where this dispute had

12   not been resolved, and so it was a duplicative.  If we ran

13   aground in front of Your Honor, well, we've got a backup.

14      The subpoenas -- You know, if -- if Verizon is going to

15   produce those documents, I think the subpoenas are going to

16   be . . . not -- not terribly necessary.

17          THE COURT:  Well, this -- Let me tell you what I was

18   going to do, anyway.  And I'm -- Even though the -- the third

19   party's not here, but this was what I was going to do, anyway,

20   was, I was going to do an order, order you to meet and confer

21   because, from the -- the brief itself, it wasn't clear to me

22   that that had happened in a meaningful way, and that the -- No,

23   I don't want you to make any comment on it because they're not

24   here.

25          MR. PRESTON:  I understand.

1    **THE COURT:**  Okay.  And so that will then give you the

2  opportunity to make that decision and have that discussion with

3  them.

4    **MR. PRESTON:**  Sure.  I mean, candidly, I don't think

5  we should do a thing about it.  I shouldn't withdraw any of

6  those subpoenas until it's clear that Verizon is going to

7  produce all that stuff.

8    **THE COURT:**  I don't know what you want to do with

9  that.  I'm just telling you what I'm going to do with that

10  motion to quash.

11    All right.  So is there anything else, then, that you're

12  waiting to receive that you need to file your class

13  certification motion?

14    **MR. PRESTON:**  No.  Once we get the vendors, then

15  the -- that data will be analyzed and -- and produced and --

16  and we'll do --

17    **THE COURT:**  When you say, "Once we get the vendors,"

18  what are we talking about?

19    **MR. PRESTON:**  When we get the call logs from Verizon's

20  other debt collectors.

21    **THE COURT:**  All right.  So that's -- Okay.  So are

22  we -- Is that --

23    **MR. MESSER:**  That's not the -- That's not within the

24  scope of the motion to compel.

25    **THE COURT:**  Which was --

1          **MR. MESSER:**  Narrow.  It was -- The motion to compel

2    was focused on the dialing equipment and whether it was an

3    agent of --

4          **THE COURT:**  Yeah.  I understand.

5        But -- So let's just sort of predict the future motion to

6    compel.

7        So, Mr. Messer, I've now held or will hold -- issue an

8    order saying that you have . . . control -- legal control

9    within the meaning of *Citric Acid*.

10       So, I guess now you need to go speak to those people and

11   figure out what we're talking about -- right? -- with respect

12   to --

13       I mean, I suppose the first step is, Mr. Preston, for you

14   to find out what kind of equipment they're using, because if

15   they're not using a predictive dialer, or they're not

16   recording, you don't need the call logs.

17         **MR. PRESTON:**  Well, we know who's recording.  It's --

18   It's Vantage and BKI, because we -- that was the subject of

19   some discovery in the State Court.

20                    (Pause in proceedings.)

21         **MR. PRESTON:**  The documents that are subpoenaed and

22   the documents that we requested from Mr. -- Mr. Messer's

23   clients would reveal the model and make of these -- these

24   recorders.

25       But, I mean, if that's something that we could work out

PROCEEDINGS

1  in, you know, informal discovery, yeah, we're certainly --

2  nobody wants to force these people to -- to produce documents

3  from -- from machines that are definitely not predictive

4  dialers.

5      **THE COURT:**  Okay.  So maybe you can work it out with

6  some sort of sequence.  So you provide them with the documents

7  that show what the equipment is and then, if you can get an

8  agreement on that -- And I know that sometimes there's even a

9  disagreement on that.  But if you can get an agreement on that

10  and it's not, then there's no reason for them to go back and

11  pull the call logs.

12      **MR. PRESTON:**  I -- I agree with that.  But the only

13  thing I would ask is, you know, we've had -- I -- I don't

14  know -- I'm not saying anything, except that we've had some

15  difficulty with the subpoenas.

16      There is -- If you look at the Yee declaration -- that's

17  Document 63-1, Paragraph 3 -- I infer from that paragraph that

18  Verizon has had a hand in the directing or encouraging the debt

19  collectors not to comply with our subpoenas.  And that's been a

20  concern we've -- we aired with the Court in the motion for

21  sanctions, and in this motion.

22          (Pause in proceedings.)

23      **MR. PRESTON:**  I have some concern about the operation

24  where . . . if Verizon comes and says, "We can't produce these

25  documents, this vendor's being uncooperative," I -- I would

PROCEEDINGS

1  like there to be a record that is absolutely transparent and

2  absolutely crystal clear as to why that vendor is not

3  producing.

4          THE COURT:  All right.  Well, we'll get there when we

5  get there, and I'll set a further status so we can move along

6  because we're going to set a new class cert date and I want to

7  try to make sure we stay on with that date.  So we'll get there

8  when we get there.

9      But I just wanted to -- So I think we've cabined all the

10  documents that you need from Collecto.  You're getting those by

11  next Wednesday.

12          MR. PRESTON:  Yes.

13          THE COURT:  And then you're going to try to work out

14  something with respect to from the other vendors and something

15  sequential that makes sense so no one's producing anything that

16  doesn't need to be produced.

17          MR. PRESTON:  Yeah.  I mean, if there's cooperation,

18  we can probably cut it down (inaudible).

19          THE COURT:  All right.  So, what we can do with

20  respect to that is maybe have -- and we can do it by telephone

21  on December 4th -- a status.  Because, by then, hopefully, you

22  guys will have talked -- we do have Thanksgiving in the

23  middle -- and just see where we are with that.

24          THE CLERK:  Do you want to (inaudible) with that

25  motion to quash (inaudible)?

1      **THE COURT:**  Yeah.  I saw that she vacated it but I'll

2  do an order on the motion to quash.

3      That will be December 4th at . . .

4      What time should we -- What's my calendar?  What time

5  works better if you're by phone?  Morning or afternoon?  Or

6  does it matter?

7          **MR. PRESTON:**  I'm moving to Dallas.

8          **THE COURT:**  You're moving to Dallas?

9          **MR. PRESTON:**  On Saturday.

10          **THE COURT:**  From Arizona?

11          **MR. PRESTON:**  Yeah.

12          **THE COURT:**  Oh, that's why.

13          **MR. PRESTON:**  My wife --

14          **THE COURT:**  Oh.

15          **MR. PRESTON:**  My wife has cousin a less (inaudible)

16  job as a (inaudible) counselor of . . .

17          **THE COURT:**  What do you think?

18          **THE CLERK:**  How long is it going to take?  Because you

19  booked yourself at 9:30 and 2:30 for (inaudible).

20          **THE COURT:**  Oh, right, right, right.

21      So let's say --

22          **THE CLERK:**  We can do a --

23          **THE COURT:**  -- 2:00 -- 2:00 o'clock?

24                  (Pause in proceedings.)

25          **THE COURT:**  Does it work?

```
 1                    (Court and clerk confer.)

 2           THE COURT:  Oh, we can do it on a different -- Oh,

 3   just specially set it.

 4           THE CLERK:  Yeah.

 5           THE COURT:  Of course.

 6           THE CLERK:  Like the 2nd of December?

 7           THE COURT:  But that's too soon.  I mean, that's too

 8   soon.  I don't think we'll know.  I think the following . . .

 9           MR. PRESTON:  The week after would be better.

10           THE COURT:  The week after?

11           MR. PRESTON:  Because of the move.

12           THE COURT:  Well, no, and I want --

13           THE CLERK:  The 11th.

14           THE COURT:  -- everybody --

15           MR. PRESTON:  Yeah.

16                    (Pause in proceedings.)

17           MR. PRESTON:  The 11th.  We've got (inaudible) on the

18   12th.

19           THE CLERK:  So at 9:00?

20           THE COURT:  9 o'clock?

21           MR. PRESTON:  That works for me.

22           THE COURT:  Okay.  All right.

23           THE CLERK:  Do you want to set it up for CourtCall?

24           MR. PRESTON:  Yeah, because then there'd be -- We

25   talked about that.  Mr. Corroner (phonetic) wants to call the
```

 1  Court, and if that's the most convenient way to do it, that's

 2  fine.

 3          THE CLERK:  Okay.

 4          THE COURT:  All right.  We'll do CourtCall on December

 5  4th at 11:00.

 6          THE CLERK:  Okay.

 7          THE COURT:  All right.  So the last thing is the

 8  motion, I guess, for spoliation sanctions.  And you asked for

 9  some pretty dire sanctions, and so I don't think I can

10  really -- And you also did say, as you are wont to say, I need

11  more space.

12      (Laughing.)

13      So I also think, though -- I mean, that's a serious

14  matter.  It's not something that -- It has to do with,

15  potentially, I guess, with an inference but nothing that has to

16  be decided ASAP because it's not about the Production of

17  Documents, about whether documents cannot be produced.

18      So you maybe should just file a noticed motion and I'll

19  just hear it, you know, so each side -- You've already

20  submitted some declarations.  You don't have -- You can just

21  refer to them again.

22      But do -- If you're -- When you're -- A motion like that,

23  where you're seeking sanctions like that, I should think needs

24  to be done in a noticed motion.

25          MR. PRESTON:  Your Honor's discovery order is

PROCEEDINGS

 1   all-inclusive.

 2           **THE COURT:**  No, no, no.  I'm not faulting you.  I'm

 3   just saying now having seen it and --

 4           **MR. PRESTON:**  Right.

 5           **THE COURT:**  -- read it, I think it should be done that

 6   way.

 7           **MR. PRESTON:**  If it makes you feel a bit more

 8   comfortable, I was concerned that I was really going to have to

 9   make that record on four pages.

10           **THE COURT:**  No.

11           **MR. PRESTON:**  And, frankly, I did that little bit of a

12   job because the Court (inaudible).

13           **THE COURT:**  No.

14      So that's fine.  I'll just sort of deny it without

15   prejudice and that you just -- And maybe as you get -- Because

16   I think there is some issue as to whether you're going to get

17   the information that you claim is spoliated or needed, maybe,

18   when you get the stuff by Wednesday, some of that will be

19   clear, or not.  I don't know.  I'm just saying.  And then you

20   can file the motion whenever you file it, and I'll just hear it

21   as a regular noticed motion.

22           **MR. PRESTON:**  Thank you, Your Honor.

23           **THE COURT:**  All right.  Okay.  Is there anything else,

24   then?

25                     (Pause in proceedings.)

PROCEEDINGS

 1          **MR. MESSER:**  Not today, no.

 2          **THE COURT:**  Oh, great.  All right.  Good.  I think

 3   that was productive.

 4          **MR. PRESTON:**  It was productive.

 5          **THE COURT:**  All right.  So we, then.  Will have a

 6   status on December 2nd -- no, no -- 11th at 9 a.m.  Great.

 7          **MR. MESSER:**  We will be there.

 8          **THE COURT:**  Thank you everyone.  Have a good holiday.

 9          **MR. PRESTON:**  You as well.

10          **THE COURT:**  And good luck with your move.

11          **MR. PRESTON:**  Thank you.

12                    (Court adjourned at 3:04 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U. S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____

Candace Yount, Transcriber

Wednesday, November 26, 2014