David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff John Lofton, on his own
behalf, and behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LOFTON, an individual, on his own behalf and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VERIZON WIRELESS (VAW) LLC, and DOES 1-100, inclusive, <br><br> Defendants. | No. C 13-05665 YGR <br><br> The Honorable Jacqueline Scott Corley <br><br> **PLAINTIFF JOHN LOFTON'S MEMORANDUM SUPPORTING HIS MOTION TO COMPEL** <br><br> Date:       May 7, 2015 <br> Time:       9:00 a.m. <br> Location:   Courtroom F <br> Phillip Burton Federal Building <br> 450 Golden Gate Avenue <br> San Francisco, California 94102 |

## **TABLE OF CONTENTS**

I.     Verizon's Intransigence Has Left No Option Other than a Motion to Compel ...................1

II.    Verizon's Boilerplate Objections Are Facially Invalid .......................................3

    A.     Verizon Failed to Justify or Substantiate Its Boilerplate Objections .......................4

    B.     If Verizon Substantiates Its Objections, Class Discovery as to GC Services Is Unnecessary ...................................................................9

    C.     Verizon Cannot Substantiate Its Boilerplate Objections Now................................9

III.   Verizon Has Failed to Correct the Other Deficiencies in Its Discovery Responses ..........11

    A.     Verizon's Responses Do Not Indicate What Documents It Has Withheld............11

    B.     Verizon's Response to RPD No. 54 Also Violates Rule 34(b)............................12

    C.     Advance Notice of TCPA Liability Precludes Claims Class Discovery Is Unduly Burdensome ...................................................14

    D.     Verizon's "Compound" Objections Lack Merit ............................................16

    E.     Verizon's Privilege Assertions Are Invalid ..........................................19

        1.     Verizon's Termination of Collecto Is Not Privileged..............................19

        2.     Verizon's Knowledge of Debt Collector Call Logs Is Not Privileged ...................................................................20

        3.     There Is No Valid Privilege for Verizon's Communications With Its Debt Collectors About Discovery in this Case ...................................21

    F.     Unilateral Redaction of the *Powell* Documents Was Improper...........................23

    G.     Verizon's Statute of Limitations Objection Is Wrong .........................................24

IV.    Conclusion ...........................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A. Farber & Partners, Inc. v. Garber*,
    234 F.R.D. 186 (C.D. Cal. 2006) ...................................................................................4, 7, 8

*Akins v. State Farm Mut. Auto. Ins. Co.*,
    No. 10-12755, 2011 WL 3204839 (E.D. Mich. July 28, 2011) ............................................18

*Anaya v. CBS Broad., Inc.*,
    251 F.R.D. 645 (D.N.M. 2007) ............................................................................................20

*Appleton Electric Co. v. Advance-United Expressways*,
    494 F.2d 126 (7th Cir. 1974) ....................................................................................3, 14, 15

*Ashley v. Lake County*,
    No. 06-360, 2008 WL 2954975 (N.D. Ind. July 29, 2008) ...................................................10

*In re ATM Fee Antitrust Litig.*,
    233 F.R.D. 542 (N.D. Cal. 2005) .......................................................................................3, 7

*Bartholomew v. Avalon Capital Group, Inc.*,
    278 F.R.D. 441 (D. Minn. 2011) ............................................................................................5

*Bd. of Trs. of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*,
    253 F.R.D. 521 (C.D. Cal. 2008) ..........................................................................................24

*Boston Sci. Corp. v. Lee*,
    No. 14-80188, 2014 WL 3851157 (N.D. Cal. Aug. 4, 2014) ...............................................11

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    No. 94-897, 1995 WL 360526 (N.D. Ill. June 15, 1995) ......................................................16

*Bryant v. Armstrong*,
    285 F.R.D. 596 (S.D. Cal. 2012) ............................................................................................5

*Burlington N. & Santa Fe Ry. v. U.S. Dist. Court for Dist. of Mont.*,
    408 F.3d 1142 (9th Cir. 2005) ..........................................................................................6, 10

*Charles O. Bradley Trust v. Zenith Capital LLC*,
    No. 04-2239, 2005 WL 1030218 (N.D. Cal. May 3, 2005) .....................................................8

*Chevron Midstream Pipelines LLC v. Settoon Towing LLC*,
    No. 13-2809, 2015 WL 269051 (E.D. La. Jan. 21, 2015) .......................................................9

*Church & Dwight Co., Inc. v. Mayer Labs., Inc.*,
   No. 10-4429, 2011 WL 6119146 (N.D. Cal. Dec. 8, 2011) (Corley, J.)................................10

*Daewoo Elecs. Co. v. United States*,
   650 F. Supp. 1003 (Ct. Int'l Trade 1986) ..............................................................................16

*Davis v. Fendler*,
   650 F.2d 1154 (9th Cir. 1981) ................................................................................................3

*Diederich v. Dep't of Army*,
   132 F.R.D. 614 (S.D.N.Y. 1990) ...........................................................................................18

*DIRECTV, Inc. v. Puccinelli*,
   224 F.R.D. 677 (D. Kan. 2004)...............................................................................................13

*Doe v. AT&T W. Disability Benefits Program*,
   No. 11-4603, 2012 WL 1669882 (N.D. Cal. May 14, 2012).................................................23

*Doe v. District of Columbia*,
   230 F.R.D. 47 (D.D.C. 2005).................................................................................................22

*Duplan Corp. v. Deering Milliken, Inc.*,
   397 F. Supp. 1146 (D.S.C. 1974)...........................................................................................20

*Duran v. Cisco Sys., Inc.*,
   258 F.R.D. 375 (C.D. Cal. 2009) .........................................................................................3, 9

*United States ex rel. Englund v. Los Angeles County*,
   235 F.R.D. 675 (E.D. Cal. 2006) ............................................................................................5

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
   702 F.2d 770 (9th Cir. 1983) .................................................................................................21

*FDIC v. Halpern*,
   271 F.R.D. 191 (D. Nev. 2010)................................................................................................7

*Matter of Feldberg*,
   862 F.2d 622 (7th Cir. 1988) .................................................................................................22

*In re Fischel*,
   557 F.2d 209 (9th Cir. 1977) ............................................................................................19, 20

*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*,
   224 F.R.D. 644 (N.D. Cal. 2004)..............................................................................................7

*FTC v. Affordable Media*,
   179 F.3d 1228 (9th Cir. 1999) ...............................................................................................21

*Haeger v. Goodyear Tire & Rubber Co.*,
    906 F. Supp. 2d 938 (D. Ariz. 2012) ........................................12

*Heaney v. Time Warner Cable, Inc.*,
    No. 09-701, 2010 WL 56068 (W.D. Tex. Jan. 5, 2010) ........................13

*Heller v. City of Dallas*,
    303 F.R.D. 466 (N.D. Tex. 2014) ........................................10, 11, 12

*Henry v. Champlain Enter., Inc.*,
    212 F.R.D. 73 (N.D.N.Y. 2003) ........................................8

*Hill v. Eddie Bauer*,
    242 F.R.D. 556 (C.D. Cal. 2007) ........................................4, 8

*Howard v. DeAzevedo*,
    No. 11-0101, 2013 WL 6185054 (E.D. Cal. Nov. 26, 2013) ........................9

*Hyman Cos., Inc. v. Brozost*,
    No. 97-269, 1997 WL 535180 (E.D. Pa. Aug. 8, 1997) ........................13

*Ice Corp. v. Hamilton Sundstrand Corp.*,
    245 F.R.D. 513 (D. Kan. 2007) ........................................21

*In re Imperial Corp. of Am.*,
    167 F.R.D. 447 (S.D. Cal. 1995) ........................................20

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
    No. 11-9185, 2012 WL 7783405 (C.D. Cal. Apr. 23, 2012) ........................8

*Io Group Inc. v. GLBT Ltd.*,
    No. 10-01282, 2011 WL 3443773 (N.D. Cal. Aug. 8, 2011) ........................10

*Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*,
    173 F.R.D. 651 (D. Md. 1997) ........................................13

*La. Pac. Corp. v. Money Market 1 Institutional Inv. Dealer*,
    285 F.R.D. 481 (N.D. Cal. 2012) ........................................3

*In re Lithium Ion Batteries Antitrust Litigation*,
    No. 13-02420, 2015 WL 1221924 (N.D.Cal. Mar. 17, 2015) ........................17

*Live Nation Merchandise, Inc. v. Miller*,
    No. 13-03936, 2014 WL 1877912 (N.D. Cal., May 9, 2014) ........................24

*Macarz v. Transworld Sys., Inc.*,
    193 F.R.D. 46 (D. Conn. 2000) ........................................15

*Mancia v. Mayflower Textile Servs. Co.*,
  253 F.R.D. 354 (D. Md. 2008)..................................................................10

*Martell v. Trilogy Ltd.*,
  872 F.2d 322 (9th Cir. 1989) ....................................................................24

*Mayle v. Felix*,
  545 U.S. 644 (2005)...................................................................................24

*McKee v. Peoria Unified Sch. Dist.*,
  963 F. Supp. 2d 911 (D. Ariz. 2013) ........................................................24

*McLeod, Alexander, Powel & Apffel, P.C v. Quarles*,
  894 F.2d 1482 (5th Cir.1990) .....................................................................4

*Montgomery v. Leftwich, Moore & Douglas*,
  161 F.R.D. 224 (D.D.C. 1995)..................................................................20

*Moore v. Firstsource Advantage, LLC*,
  No. 07-770, 2011 WL 4345703 (W.D.N.Y. Sept. 15, 2011)....................23

*Nat'l Academy of Recording Arts & Scis., Inc. v. On Point Events, LP*,
  256 F.R.D. 678 (C.D. Cal. 2009).................................................................8

*Novelty, Inc. v. Mountain View Mktg., Inc.*,
  265 F.R.D. 370 (S.D. Ind. 2009)...............................................................13

*United States ex rel. O'Connell v. Chapman Univ.*,
  245 F.R.D. 646 (C.D. Cal. 2007).................................................................4

*Oatman v. Sec'y of Treasury*,
  893 F. Supp. 937 (D. Idaho 1995) .............................................................15

*Paulsen v. Case Corp.*,
  168 F.R.D. 285 (C.D. Cal. 1996).................................................................8

*Phillip M. Adams & Associates, L.L.C. v. Dell, Inc.*,
  621 F. Supp. 2d 1173 (D. Utah 2009)........................................................16

*In re Plascencia*,
  No. 10-05097, 2012 WL 2161412 (Bankr. N.D. Cal. Jun 12, 2012)........18

*Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*,
  05-01318, 2006 WL 1582122 (D. Nev. June 5, 2006) ..............................16

*Resolution Trust Corp. v. North Bridge Assocs., Inc.*,
  22 F.3d 1198 (1st Cir.1994).......................................................................13

*Richmark Corp. v. Timber Falling Consultants*,
　959 F.2d 1468 (9th Cir. 1992) ...........................................................................21

*Rogers v. Giurbino*,
　288 F.R.D. 469 (S.D. Cal. 2012) ........................................................................7

*Safeco of America v. Rawstron*,
　181 F.R.D. 441 (C.D. Cal. 1998) ......................................................................17

*Safeco Ins. Co. of America v. Rawstrom*,
　183 F.R.D. 668 (C.D. Cal. 1998) ......................................................................10

*SEC v. Sells*,
　No. 11-04941, 2013 WL 450844 (N.D. Cal. Feb. 4, 2013) ...............................13

*Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*,
　271 F.R.D. 139 (N.D. Ill. 2010) ........................................................................15

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
　904 F.2d 1301 (9th Cir. 1990) ......................................................................3, 15

*Soto v. Castlerock Farming & Transp., Inc.*,
　282 F.R.D. 492 (E.D. Cal. 2012) ........................................................................3

*Tennenbaum v. Deloitte & Touche*,
　77 F.3d 337 (9th Cir. 1996) .............................................................................23

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*,
　247 F.R.D. 198 (D.D.C. 2008) .........................................................................18

*Thomas v. Cate*,
　715 F. Supp. 2d 1012 (E.D. Cal. 2010)......................................................4, 5, 7, 15

*In re Toys R Us-Delaware, Inc. Fair and Accurate Credit Transactions Act
　(FACTA) Litig.*,
　No. 08-1980, 2010 WL 4942645 (C.D. Cal. July 29, 2010)...............................10

*Trevino v. ACB Am., Inc.*,
　232 F.R.D. 612 (N.D. Cal. 2006)................................................................6, 8, 17

*Tubbs v. Sacramento County Jail*,
　No. 06-0280, 2008 WL 863974 (E.D. Cal. Mar. 28, 2008)..................................4

*United States Postal Service Bd. v. Aikens*,
　460 U.S. 711 (1983).........................................................................................20

*United States v. Chen*,
　99 F.3d 1495 (9th Cir. 1996) ............................................................................19

*United States v. ChevronTexaco Corp.*,
    241 F.Supp.2d 1065 (N.D. Cal. 2002) ................................................................20

*United States v. Reeves*,
    No. 12-01916, 2013 WL 5523815 (D. Nev. Oct. 3, 2013) ....................................13

*United States v. Richey*,
    632 F.3d 559 (9th Cir. 2011) .................................................................................20

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ..........................................................................................20, 21

*Wachtel v. Health Net, Inc.*,
    239 F.R.D. 81 (D.N.J. 2006) .................................................................................10

*Wagner v. Dryvit Sys., Inc.*,
    208 F.R.D. 606 (D. Neb. 2001)..............................................................................16

*Walker v. Lakewood Condominium Owners Ass'n*,
    186 F.R.D. 584 (C.D. Cal. 1999) .............................................................................3

*Weil v. Inv./Indicators, Research and Mgmt., Inc.*,
    647 F.2d 18 (9th Cir. 1981) ...................................................................................23

*Williams v. Woodford*,
    No. 06-01535, 2010 WL 4530160 (E.D. Cal. Nov. 2, 2010).................................13

**Federal Statutes**

FDCPA...................................................................................................................15

**Rules**

Fed. R. Civ. P.

    Rule 15(c)...............................................................................................................24
    Rule 15(c)(1)...........................................................................................................24
    Rule 26.............................................................................................................6, 12
    Rule 26(a)(1)...........................................................................................................12
    Rule 26(a)(1)(A)(ii)...............................................................................................14
    Rule 26(b)...............................................................................................................6
    Rule 26(b)(2)..........................................................................................................17
    Rule 26(b)(5)(A).....................................................................................................6
    Rule 26(b)(5)(A)(ii)................................................................................................6
    Rule 26(e)...............................................................................................................13
    Rule 26(f).........................................................................................................1, 18
    Rule 33....................................................................................................................7
    Rule 33(a)(1)..........................................................................................................17

Rule 34 ................................................................................................6, 11, 12, 16

Rule 34(a) ..................................................................................................16

Rule 34(a)(1)(A) .......................................................................................16

Rule 34(b) ............................................................................................12, 13

Rule 34(b)(1)(B) .......................................................................................13

Rule 34(b)(2)(B) .......................................................................................13

Rule 34(b)(2)(C) .......................................................................................12

Rule 36 ..................................................................................................7, 18

Rule 36(a)(4) .......................................................................................18, 19

Rule 37 ........................................................................................................9

The Court has invited Plaintiff John Lofton ("Lofton") to file a regularly-noticed motion to compel. (ECF No. 114.) Lofton hereby submits his Memorandum of Points and Authorities in support of his Motion to Compel.

## I.      Verizon's Intransigence Has Left No Option Other than a Motion to Compel

The Court has bent over backwards to help the parties conduct discovery voluntarily. As the Court noted in its February 9, 2015 order,  it "has held no fewer than nine hearings and status conferences with the parties . . . and issued six discovery orders  . . . in an attempt to move discovery" since August 28, 2014. (ECF No. 106 at 1.) The Court expressly ordered Defendant Verizon (VAW) Wireless, LLC ("Verizon") to arrange calls with its debt collectors concerning campaign reports "on or before Friday, February 13, 2015." (*Id*. at 3.)[1] Since then, the Court held still two more hearings on February 12 and February 27. (ECF Nos. 111, 114.) Collecto stalled progress on its campaign data by producing files it knew were not what Lofton had requested. (ECF No. 109-1 at 8-9.) Two other Verizon debt collectors have bluntly refused to comply with the Court's order, and a third is non-responsive. (Preston Decl. ¶35.) It appears Verizon has not taken any steps to require its debt collectors' compliance. (*Id*.)

Verizon has a long history of obstructing and stalling discovery. In state court, Verizon threw sand into the gears of discovery at every turn, stubbornly obstructing discovery with meritless boilerplate objections. (*Cf*. ECF No. 37-1 ¶11 (listing 15 state court discovery disputes).) The state court concluded that "the number and nature of disputes . . . suggests that Defendant has not accorded discovery in this case the appropriate level of urgency or devoted sufficient resources to providing prompt and fulsome responses." (Ex. D10 to ECF No. 37-1 at AC02421.) Verizon continued this conduct after removal, refusing to participate in an effective Rule 26(f) conference, making uniform boilerplate objections to all of Lofton's federal discovery, and stalling Lofton's efforts to raise those disputes with the Court. (ECF No. 42-1 ¶¶10-32; 57-1 ¶¶10-30. *See also* ECF No. 75 ¶¶10-13.) Lofton documented other discovery issues (including concealment and spoliation of Collecto's call logs, Verizon's uniform

---

[1]      At the January 15, 2015 hearing, Lofton sought campaign reports as a way to narrow down class discovery and to reduce any attendant burden. (ECF No. 90; 103 ¶¶2-14.)

objections to class discovery, delay of depositions, and debt collectors' refusal to comply with subpoenas) which required the Court to vacate the deadline for class certification. (ECF Nos. 57; 57-1; 65; 68.) The Court ordered Verizon to produce reconstructed call logs by September 15, and again on October 3, and again on November 26—but Verizon did not complete production until December 9. (ECF Nos. 45; 50; 61; 75 ¶6.) The Court ordered Verizon to file a declaration as to whether its reconstructed call logs were complete by December 2, but that did not happen until December 14. (ECF Nos. 68, 76.) Verizon's declaration concedes that the reconstructed call logs are incomplete; out of court, its counsel identified additional data missing from the reconstructed call logs, the disposition codes reflecting that Collecto coded a telephone number as a wrong number which were only "sometimes" included in the reconstructed call logs. (*Cf.* ECF No. 76 ¶8 *with* ECF No. 75 ¶7.) And Verizon dragged its feet for months in producing archive samples which it contends are proof against spoliation. (ECF No. 90 ¶¶13-17; 103 ¶¶2-14; 119-2 ¶¶5-55.)

Here, Lofton seeks an order requiring Verizon to comply with the discovery in the attached Appendix. The history above makes it clear Verizon will not produce meaningful discovery or even comply with the Court's orders without judicial intervention. Section II discusses Verizon's boilerplate objections which are facially invalid. No matter how many times Lofton has pointed out these objections are deficient, Verizon continues to recycle and reassert them. (*See, e.g.*, Exs. D1 to D19 to ECF No. 37-1; Preston Decl. ¶¶25-31.) Verizon will not comply with Lofton's discovery, or even provide enough detail about its objections for Lofton to try to narrow the discovery disputes. (Parisi Decl. ¶¶2-4.) It is too late for Verizon to supplement these objections in its opposition—it would thwart the purpose of the meet and confer process and severely prejudice Lofton now.

Section III addresses issues which require specific reference to the discovery Lofton served. For instance, Verizon's discovery responses do not indicate whether or not Verizon has complied with the discovery or what (if anything) it has withheld under its objections, or whether it is still waiting to produce responsive information. Likewise, Verizon will contend that the burdens of searching and assembling the records render class discovery infeasible. But Verizon

1   cannot defend itself from class certification with deficient information systems when it had

2   advance notice of potential TCPA and IPA liability. Inefficient record-keeping systems will not

3   exempt Verizon from discovery or class certification. A class defendant "may not attempt to

4   'avoid a class suit merely because [its] own actions have made the class more difficult to identify

5   or locate.'" *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306-07 (9th

6   Cir. 1990) (quoting *Appleton Electric Co. v. Advance-United Expressways*, 494 F.2d 126, 135

7   (7th Cir. 1974); punctuation omitted). Last, Verizon continues to assert that it does not control

8   records in its debt collectors' possession. The facts belie this objection and both the state court

9   and this Court have rejected it. (Ex. D7 to ECF No. 37 at AC02377; ECF No. 71.) To prolong

10  this argument, Verizon must assert that its debt collectors refuse to comply with discovery—but

11  has refused to produce relevant communications with its debt collectors. This assertion of

12  privilege is not defensible: Verizon cannot disclose the content of these communications when it

13  suits Verizon's purposes, but claim they are privileged when it does not.

## II.      Verizon's Boilerplate Objections Are Facially Invalid

15          Verizon, as "the party opposing discovery[,] has the burden of showing that discovery

16  should not be allowed, and also has the burden of clarifying, explaining and supporting its

17  objections with competent evidence." *La. Pac. Corp. v. Money Market 1 Institutional Inv.

18  Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012).[2] Discovery objections "should be . . . specific

19  enough so that the court can understand in what way the [discovery requests] are alleged to be

20  objectionable." *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981).Verizon has refused to

21  shoulder this burden in either its formal responses or in the meet and confer process. Instead, it

22  has stalled discovery by recycling a limited set of boilerplate objections over and over.

23  "Boilerplate, generalized objections are inadequate and tantamount to not making any objection

24  at all." *Walker v. Lakewood Condominium Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal.

25  1999).[3] Verizon effectively used these objections to stall discovery and force Lofton to waste

---

[2]     *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 498 (E.D. Cal. 2012) (same).
[3]     *Cf. Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009) ("unexplained and unsupported boilerplate objections are improper"); *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 545 (N.D. Cal. 2005) ("litany of overly burdensome, oppressive, and irrelevant does not alone constitute a successful objection to a discovery request").

time on a completely fruitless meet and confer process.[4] Lofton made extensive efforts to meet and confer since September 2014, including three different in-person conferences, but Verizon has stood on its objections and refused to elaborate on them, offer alternatives (except in one instance (Parisi Decl., ¶4)), or any other avenue for progress. (Parisi Decl. ¶¶2-4.) Given it obstinacy during the meet and confer process, it would be unfair for Verizon to supplement its objections now. The Appendix summarizes Lofton's discovery and matches Verizon's objections with the relevant discovery requests. Lofton analyzes the particular boilerplate objections on which Verizon relies below. The Court should order Verizon to fully comply the discovery listed in the Appendix without further objection.

**A.  Verizon Failed to Justify or Substantiate Its Boilerplate Objections**

**"Undue Burden":** Verizon has reflexively objected that Lofton's discovery is "overly broad" and "unduly burdensome." (Pl.'s App. 2:11.) As Lofton has often pointed out to Verizon, "boilerplate objections such as 'overly burdensome['] . . . are improper—especially when a party fails to submit any evidentiary declarations supporting such objections." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (citing, e.g., *McLeod, Alexander, Powel & Apffel, P.C v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.1990) for proposition that objections that discovery is "overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable").[5]

**Relevance:** Verizon has routinely objected that many of Lofton's discovery requests seek irrelevant information. (Pl.'s App. 2:9-10.) Verizon's conclusory objections that Lofton's discovery seeks irrelevant information also lack merit: "boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper." *A. Farber*, 234 F.R.D. at 188. *See also Hill v. Eddie Bauer*, 242 F.R.D. 556, 561

---

[4]  *Cf. Tubbs v. Sacramento County Jail*, No. 06-0280, 2008 WL 863974, *4 (E.D. Cal. Mar. 28, 2008) ("meet and confer process . . . should not be . . . used as a means by which discovery timeliness can be unilaterally extended").

[5]  *See also United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649 (C.D. Cal. 2007) (objections that discovery was "[o]verbroad" and "unduly burdensome" were "general or boilerplate objections, which are not proper objections"). "[A]n objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010) (citations; punctuation omitted).

(C.D. Cal. 2007) (rejecting "general or boilerplate relevancy objection[s]" which failed to "provide[] any explanation at all why [discovery] requests are not relevant"). Verizon may argue that some portion of the information encompassed in Lofton's discovery is irrelevant.[6] But it is "inappropriate [to] exclud[e] alleged irrelevant information from documents that are otherwise responsive to a discovery request. It is a rare document that contains only relevant information. And irrelevant information . . . may be highly useful to providing context for the relevant information." *Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011).

**"Vague" and/or "Ambiguous":** Verizon has objected that much of Lofton's discovery requests are "vague" and/or "ambiguous" but failed to explain these objections. (Pl.'s App. 2:17; Parisi Decl. ¶¶2-4.) "[I]t is not ground for objection that [a] request is 'ambiguous' unless so ambiguous that the responding party cannot, in good faith, frame an intelligent reply." *United States ex rel. Englund v. Los Angeles County*, 235 F.R.D. 675, 685 (E.D. Cal. 2006).[7] "The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity [and] should exercise common sense and attribute ordinary definitions to terms in discovery requests." *Bryant v. Armstrong*, 285 F.R.D. 596, 606 (S.D. Cal. 2012) (citation, punctuation omitted).[8] Verizon had the burden of showing Lofton's discovery was vague or ambiguous; it failed to sustain those boilerplate objections.

**Privilege:** Verizon has objected to a broad variety of discovery requests on the basis of the attorney-client privilege, joint defense privilege, and/or the work product. (Pl.'s App. 2:5.) As stated below some of these objections are defective for particularized reasons, but Verizon waived most of these objections by refusing to provide an adequate privilege log. (Preston Decl. ¶32. *See id.* at ¶13.) Verizon has had years to prepare a privilege log: Lofton began requesting some form of a privilege log for documents that are within the scope of the discovery requests at

---

[6]   At outset, Verizon should have identified such portion so Lofton could have better tailored his discovery in the meet and confer process, rather than stalling discovery altogether.

[7]   *Cf.*, *e.g.*, *Bible*, 246 F.R.D. at 619 (there is "no merit to . . . general or boilerplate objections such as . . . 'vague and ambiguous'").

[8]   "The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Thomas,* 715 F. Supp. 2d at 1030 (citations; punctuation omitted).

issue in this Motion in September 2012. (*Id.* ¶¶4-12.) The Ninth Circuit has held that "boilerplate objections or blanket refusals inserted into a [discovery] response . . . are insufficient to assert a privilege." *Burlington N. & Santa Fe Ry. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Rather, Rule 26 requires that

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A)(ii). "If [Verizon] in fact withheld discovery on these grounds, [it] *must produce a privilege log detailing*" the documents withheld on this basis which complies with Rule 26(b)(5)(A). *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 618 (N.D. Cal. 2006) (citing Fed. R. Civ. P. 26(b) advisory committee notes on 1993 amendments (log must provide "sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection"; emphasis in original).[9] Except as discussed below, Verizon has failed to produce any privilege logs—despite Lofton's urging it do so. (*See* Preston Decl. ¶¶4-12; 25-32.) The Ninth Circuit has identified "the 30–day period [under Rule 34] as a default guideline" for determining whether a privilege log is timely. *Burlington*, 408 F.3d at 1149. "[W]aiver [of privilege is a] possible result of failure to properly provide a timely privilege log. 'To withhold materials without such notice is contrary to the rule . . . and may be viewed as a waiver of the privilege or protection.'" *Id.* at 1147 (quoting Fed. R. Civ. P. 26(b) advisory committee's note on 1993 amendments). Verizon's privilege objections are insufficient and Verizon has waived any privilege that might have been claimed otherwise.

**"Control":** Verizon has maintained its objections to various discovery on the basis that it seeks "information that is not within [its] possession, custody or control," but is within the control of its debt collectors. (Pl.'s App. 2:12-13.) Again, both the state court and this Court have already found that Verizon's contracts with its debt collectors give it control over a wide range of

---

[9] *Cf. Bible*, 246 F.R.D. at 620 (party fails to meet "its burden of demonstrating any particular document falls within the attorney-client privilege or work product protection" where it "has not even identified any documents as privileged!").

its debt collectors' records and information. (Ex. D7 to ECF No. 37 at AC02377; ECF No. 71.)

The Court found "Verizon has control over documents in the possession of the six vendors at

issue," and held that its "conclusion certainly requires Verizon to produce documents responsive

to Plaintiff's RFP Nos. 49 and 50 but is not limited to this context and may well have a broader

application." (*Id*. at 4:6-11.) The Court held

> "[C]ontrol" is defined as "the legal right to obtain documents upon demand." . . .
> The audit provisions in Verizon's vendor contracts establish exactly that. . . .
> Specifically, the audit provisions in these contracts provide that "Verizon, through
> its authorized representatives, shall have the right, at all times, to examine and
> audit records, to include, but not be limited to, copies of" certain types of records.
> (Dkt. No. 59-1 ¶¶ 9, 11.) The contracts also explicitly stated that "Verizon's
> access to all information in [the vendors'] possession or control regarding Verizon
> accounts . . . is to be completely unrestricted." (*Id*. ¶ 9.)

(*Id*. at 2:12-19.) It seems that Verizon views these objections as an opportunity to re-litigate the

Court's ruling. Certainly, Verizon has not demonstrated that it ever even asked its debt collectors

to comply with the discovery requests, let alone used any of the means at its disposal to require

their compliance. This failure to demonstrate a reasonable inquiry into the responses which assert

a lack of control makes Verizon's responses deficient under Federal Rules 33,[10] 34,[11] and 36.[12]

---

[10]     A party is generally charged with knowledge of . . . what is in records available to
it . . . A party cannot limit its interrogatory answers to matters within its own
knowledge and ignore information immediately available to it or under its control.
*FDIC v. Halpern*, 271 F.R.D. 191, 193 (D. Nev. 2010). "Rule 33 requires that a corporation
furnish such information as is available from the corporation itself or from sources under its
control." *In re ATM Fee Antitrust Litig.*, 233 F.R.D. at 545 (citations, punctuation omitted).
"When responding to interrogatories, a party has a duty to respond with all the information
under its custody and control." *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224
F.R.D. 644, 651 (N.D. Cal. 2004). "Rule 33 imposes a duty on the responding party to secure
all information available to it." *Thomas*, 715 F. Supp. 2d at 1032.

[11]     A party must make a reasonable inquiry to determine whether responsive
documents exist, and if they do not, the party should so state with sufficient
specificity to allow the Court to determine whether the party made a reasonable
inquiry and exercised due diligence. . . . [The responding party] *must do more
than merely assert that the search was conducted with due diligence*; *rather*, [it]
*must briefly describe the search to allow the Court to determine whether it was
reasonable.*
*Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) (citation, punctuation omitted;
italics added). *See also A. Farber*, 234 F.R.D. at 190 (order on motion to compel required
defendant to provide "declarations or affidavits detailing the nature of [its] 'reasonable
inquiry' to locate responsive documents" on "a request-by-request basis," in order to assure
that "actually ma[de] a 'reasonable inquiry'").

[12]     Rule 36 requires the responding party to make a reasonable inquiry, a reasonable
effort, to secure information that is readily obtainable from persons and
documents within the responding party's relative control and to state fully those
efforts. Such reasonable inquiry includes an investigation and inquiry of

---

1    **"Confidential and Proprietary":** Verizon objects to various discovery on the basis that

2    it "seeks confidential and proprietary information." (Pl.'s App. 2:8.) This objection is

3    insufficient, especially since there is a stipulated protective order in place. "There is no absolute

4    privilege for confidential information," and these objections fail if Verizon does not "provide any

5    declarations or other evidence to support its claim that the [responsive discovery is] confidential

6    proprietary information [whose] disclosure would be harmful to [Verizon.]" *Hill*, 242 F.R.D. at

7    561 (citation, punctuation omitted). "[C]onclusory assertions" are insufficient; if Verizon

8    genuinely believes that Lofton's discovery would be harmful, "it must explain and support its

9    objection, or seek a protective order, rather than refuse to produce the documents." *Paulsen v.*

10   *Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996) (citations, punctuation omitted). *See also*

11   *Nat'l Academy of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 683

12   (C.D. Cal. 2009) ("if defendant truly believes it has confidential information . . . it should have

13   entered into a stipulated protective order or filed a motion for a protective order before the date

14   by which it was to produce responsive documents"). Further, the parties here *have already*

15   entered into a stipulated protective order. "The protective order . . . already entered in this case

16   should be sufficient to address defendant's concerns regarding confidentiality." *InTouch Techs.,*

17   *Inc. v. VGO Commc'ns, Inc.*, No. 11-9185, 2012 WL 7783405, *1 (C.D. Cal. Apr. 23, 2012).[13]

18   Verizon has not asserted that the existing protective order is insufficient to protect whatever

19   "proprietary information" is at stake here, or asked to strengthen it. If Verizon thinks the

20   stipulated protective is not sufficient in light of Lofton's discovery, it should have "ask[ed] the

21   court to strengthen [the SPO]. Courts do not lightly assume that counsel will violate a protective

22   order[.]" *Id.*

23   _____

    employees, agents, and others, who conceivably, but in realistic terms, may have
24   information which may lead to or furnish the necessary and appropriate response.
    The inquiry may require venturing beyond the parties to the litigation and include,
25   under certain limited circumstances, non-parties. . . .
    *A. Farber*, 237 F.R.D. at 254 (quoting *Henry v. Champlain Enter., Inc.*, 212 F.R.D. 73, 78
26   (N.D.N.Y. 2003); internal quotation marks omitted).
    [13]   *Cf. Trevino*, 232 F.R.D. at 617 (where "stipulated protective order [is] in place, there is
27   virtually no risk that [private information] will be disclosed"); *Charles O. Bradley Trust v.*
    *Zenith Capital LLC*, No. 04-2239, 2005 WL 1030218, *2 (N.D. Cal. May 3, 2005) (given
28   protective order which restricted dissemination of private information sought in discovery,
    "interest in disclosure outweighs [state law] privacy interests").

**"Privacy":** Verizon routinely objects that Lofton's discovery "infringes on the privacy rights of third parties" without elaboration. (Pl.'s App. 2:15.) These objections fail for the same reason that Verizon's proprietary information objections failed. Courts have found objections based on "third party privacy rights," and "confidential and proprietary business information" are "unexplained and unsupported boilerplate objections," and are "improper." *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009). "Boilerplate objections regarding confidentiality and privacy do not suffice." *Howard v. DeAzevedo*, No. 11-0101, 2013 WL 6185054, *9 (E.D. Cal. Nov. 26, 2013). Again, the stipulated protective order in place should be sufficient to accommodate any legitimate privacy concerns, and *Verizon* needed to take appropriate action if it was not—rather than making boilerplate objections and sitting on its hands.

### B. If Verizon Substantiates Its Objections, Class Discovery as to GC Services Is Unnecessary

Verizon knows perfectly well how to make non-boilerplate objections when it has a basis to do so. Verizon objects to class discovery regarding one of its debt collectors (GC Services) because it only called Verizon customers "before their telephone numbers were disconnected." (See, e.g., Pl.'s App. 3.) If Verizon provides competent testimony confirming this assertion, Lofton can accept that GC Services never called any "wrong numbers" (and, therefore, called no class members) so class discovery as to GC Services is unnecessary.

### C. Verizon Cannot Substantiate Its Boilerplate Objections Now

Content-free objections like those above present several problems for the Court and other litigants. Obviously, they permit one party to unilaterally delay and obstruct the discovery process, which is supposed to be self-executing. But they also thwart the meet and confer process:

> Objections that fail to provide an appropriate factual basis make it difficult for the parties to even informally discuss any alleged defects in a discovery request or response in hope of fixing the defects. . . . This inhibits the parties' abilities to resolve discovery disputes on their own, as intended by the Rules. Incomplete, evasive and overly general responses and objections also put the requesting party at a tactical disadvantage in trying to shake free responsive documents [at] the Rule 37 conference, which cannot be fairly (and therefore effectively) conducted when the requesting party does not even know the extent of what has been withheld or why.

*Chevron Midstream Pipelines LLC v. Settoon Towing LLC*, No. 13-2809, 2015 WL 269051, *4-5

1  (E.D. La. Jan. 21, 2015) (citation omitted). *See also Wachtel v. Health Net, Inc.*, 239 F.R.D. 81,

2  94 (D.N.J. 2006) (where defendant "compromised" meet and confer process with "willful failure

3  to identify . . . full range of [responsive] documents," plaintiffs "could not engage in meaningful

4  dialogue to reduce the scope of the documents requested"). Hence, "[o]bjections not interposed

5  in a timely initial response may not be held in reserve and interposed after the period allowed for

6  [the initial] response[.]" *Safeco Ins. Co. of America v. Rawstrom*, 183 F.R.D. 668, 671 (C.D. Cal.

7  1998) (such objections waived).[14] Indeed, a party responding to discovery waives its objections

8  "by failing to specifically raise [them] in its written discovery response[s] . . . [S]pecific

9  objections are not a mere technical requirement; they put the opposing party on notice that

10  certain documents are not being produced." *Church & Dwight Co., Inc. v. Mayer Labs., Inc.*, No.

11  10-4429, 2011 WL 6119146, *2 (N.D. Cal. Dec. 8, 2011) (Corley, J.). *See also Io Group Inc. v.*

12  *GLBT Ltd.*, No. 10-01282, 2011 WL 3443773, *2 (N.D. Cal. Aug. 8, 2011) ("all grounds for

13  objections to [discovery] must be stated with specificity [in the initial response] or the objection

14  is waived," citing *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 359 (D. Md.

15  2008)).[15] Under these circumstances, it would be unfair to allow Verizon to use boilerplate

16  objections to conceal specific details in the meet and confer process, only to spring evidence

17  supporting its objections on Lofton in an opposition to a motion to compel, which leaves Lofton

18  insufficient time to challenge that evidence. "By not establishing the basis for its . . . objection at

19  the time [Verizon] asserted its objection, [Lofton] was denied the opportunity to challenge the

20  objection." *In re Toys R Us-Delaware, Inc. Fair and Accurate Credit Transactions Act (FACTA)*

21  *Litig.*, No. 08-1980, 2010 WL 4942645, *5 (C.D. Cal. July 29, 2010). The meet and confer

22  process cannot function if obstinate parties can stubbornly assert contentless, boilerplate

---

14  *See Ashley v. Lake County*, No. 06-360, 2008 WL 2954975, *4 (N.D. Ind. July 29, 2008) ("[w]aiver is more commonly found when a party, after providing a response or more generalized objection, subsequently attempts . . . to make another objection in order to delay the proceedings"; citing *Safeco*, 183 F.R.D. at 671-72).

15  "[B]oilerplate objections or blanket refusals" to discovery "are insufficient" to avoid waiver. *Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). "[B]oilerplate objections . . . are improper unless based on particularized facts. [Discovery] responses must state objections with particularity, on pain of waiver." *Mancia*, 253 F.R.D. at 358, 359 (citations omitted; quoted by *Heller v. City of Dallas*, 303 F.R.D. 466, 490-91 (N.D. Tex. 2014)).

objections in responses and throughout the meet and confer process, only to fully substantiate their position with specific detail and supporting evidence in opposition to a motion to compel, when the discovery party has little ability to react or counter. Validating this approach would "encourage litigants to demand the moon thinking they can always fall back to something reasonable. They should be reasonable from the start." *Boston Sci. Corp. v. Lee*, No. 14-80188, 2014 WL 3851157, *7 n.59 (N.D. Cal. Aug. 4, 2014) (citation, punctuation omitted). Permitting Verizon to justify its position now "would make a mockery of both parties' obligation to meet and confer in good faith from the start. The time to tap flexibility and creativity is during meet and confer, not after." *Id*. at *7.

### III.   Verizon Has Failed to Correct the Other Deficiencies in Its Discovery Responses

Verizon's discovery responses raise several other issues which require (unlike the boilerplate objections above) individualized discussion of either the specific discovery requests or the responses at issue. Verizon's refusal to correct the remaining miscellaneous collection of objections and defects in its responses reflects the same recalcitrant attitude toward discovery reflected by the boilerplate objections discussed above. The Court should overrule Verizon's objections and require it to fully comply with Lofton's discovery.

#### A.   Verizon's Responses Do Not Indicate What Documents It Has Withheld

In its responses to Requests for Production of Documents ("RPDs") Nos. 49-50, 54, 60, 62, and 63, Verizon agrees to produce some documents "[w]ithout waiving" its objections. (Pl.'s App. 26-27; 30-34.) While this is a "common practice," it violates Rule 34 because it does not provide Lofton notice of what documents Verizon has withheld.[16] *Heller v. City of Dallas*, 303 F.R.D. 466, 486 (N.D. Tex. 2014). For instance, the Court ordered "Verizon to produce documents responsive to Plaintiff's RFP Nos. 49 and 50," but Verizon has never served amended responses so Lofton still cannot tell whether its production is complete. (ECF No. 71 at 4:10.) RPD No. 53 presents a similar issue—Lofton cannot tell what Verizon has withheld, if anything. (Pl.'s App. 28-30.) Courts agree that a response that commits to producing documents "subject to" and/or "without waiving" objections is "manifestly confusing (at best) and misleading (at

---

[16]   Indeed, as seen below, it is clear Verizon *has* withheld unidentified responsive documents.

1   worse), and has no basis at all in the Federal Rules of Civil Procedure." *Id*. at 486-87 (citation,

2   punctuation omitted). Rule 34 states that an "objection to part of a request *must specify the part*

3   *and permit inspection of the rest.*" Fed. R. Civ. P. 34(b)(2)(C) (italics added).

> [T]his language is meant to 'make clear that, if a request for production is objectionable only in part, production should be afforded with respect to the unobjectionable portions.' The natural corollary of this is that *any objection must identify the particular portion which is not being responded to on the basis of the objection*.

7   *Haeger v. Goodyear Tire & Rubber Co.*, 906 F. Supp. 2d 938, 976 (D. Ariz. 2012) (italics

8   added). Thus, Verizon cannot "combine its objections with a partial response, without any

9   indication that the response was, in fact, partial[:] any objection must identify the particular

10  portion which is not being responded to on the basis of the objection." *Id*. Compliance with Rule

11  34 ensures "both the requesting party and the court [are] assured that *all* responsive, non-

12  privileged materials are being produced, except to the extent a valid objection has been made."

13  *Heller*, 303 F.R.D. at 487 (citation, punctuation omitted; italics in citation). Verizon should

14  amend its responses to RPDs Nos. 49-50, 54, 60, 62, and 63 to indicate that nothing has been

15  withheld, or (if any of the objections survive this Motion) to indicate what documents it has

16  withheld.

17  **B.    Verizon's Response to RPD No. 54 Also Violates Rule 34(b)**

18          Verizon's response to RPD No. 54 contains a related defect. RPD No. 54 asks Verizon to

19  produce "[a]ll documents which Rule 26(a)(1) requires Verizon to disclose." The instructions for

20  RPD No. 54 required Verizon to produce responsive documents "on the same day that [its]

21  response to [RPD No. 54 was] due." Verizon's response simply states that Verizon "will produce

22  all records and documents as required by Rule 26," which of course does not indicate when it

23  will produce responsive documents.[17] (Pl.'s App. 30-31.) This response violates Rule 34(b). *A*

24  *belated production on RPD No. 54—timed just before Verizon* actually used *the responsive*

25  *documents—could cause Lofton more prejudice as the failure to disclose withheld documents*

26  *responsive to other RPDs.* Under Rule 34(b),

27
[17]   Lofton recognizes that Verizon's response RPD No. 53 (documents "referenced in any
28       disclosure by Verizon under Rule 26(a)(1)") is fulsome, but (again) it is impossible to tell
         whether any responsive documents have been withheld.

a response to a request for production of documents which merely promises to produce the requested documents at some unidentified time in the future, without offering a specific time, place and manner, is not a complete answer as required by Rule 34(b) and . . . is treated as a failure to answer or respond.

*Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D. Md. 1997) (citing, e.g., Fed. R. Civ. P. 34(b)(2)(B), which requires a response to document request to "either state that inspection and related activities will be permitted *as requested* or state an objection").[18]

"Unilaterally deciding to conduct a cursory initial search to be followed by 'rolling' productions . . . is not an acceptable option." *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 376 (S.D. Ind. 2009).[19]

Likewise, Verizon's objection that RPD No. 54 is "premature" lacks merit. (Pl.'s App. 31:4-5.) An objection that discovery is "premature" is a "misplaced, boilerplate objection." *SEC v. Sells*, No. 11-04941, 2013 WL 450844, *1 (N.D. Cal. Feb. 4, 2013). "'[D]iscovery is ongoing' is not a valid objection. . . . To the extent [Verizon] is concerned that its [discovery responses] might change during the course of discovery, then [it] can, and in fact, may have a duty to, supplement its interrogatory answer." *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 689 (D. Kan. 2004) (citing Fed. R. Civ. P. 26(e)).[20] To the extent Verizon anticipates that it will continue to find new responsive documents, its remedy (and obligation) is to supplement its response under Rule 26(e). But Verizon should produce *all* documents *now* in its possession or control

---

[18] *Jayne* has wide acceptance and has been quoted and followed by, e.g., *United States v. Reeves*, No. 12-01916, 2013 WL 5523815, *1 (D. Nev. Oct. 3, 2013).

[19] [T]he Court cannot agree with Defendant's implicit claim that it may produce documents over a time frame it views as reasonable. The rules of procedure allows the requesting party to initially set the time and place of production. Fed. R. Civ. P. 34(b)(1)(B). "Absent a court order or an agreement among the litigants, a party from whom discovery is sought cannot unilaterally alter these directives to suit its fancy." *Resolution Trust Corp. v. North Bridge Assocs., Inc.*, 22 F.3d 1198, 1205 (1st Cir.1994). [A] party may not serve a written response stating that "responsive documents will be produced," and then take whatever time they deem reasonable to make the documents available.

*Heaney v. Time Warner Cable, Inc.*, No. 09-701, 2010 WL 56068, *2 (W.D. Tex. Jan. 5, 2010). "A promise to produce at some future, indefinite time sounds nice enough, but it is the actual production that counts." *Hyman Cos., Inc. v. Brozost*, No. 97-269, 1997 WL 535180, *1 (E.D. Pa. Aug. 8, 1997).

[20] *See also Williams v. Woodford*, No. 06-01535, 2010 WL 4530160, *3 (E.D. Cal. Nov. 2, 2010) ("fact that 'discovery is still ongoing and not yet complete' is not an appropriate objection to a discovery request," party "must respond to all discovery requests with any information or documents [in its] control at the time [of response]"; if party learns of new responsive information or documents, Rule 26(e) requires supplementation).

---

which it "may use to support its claims or defenses," and are therefore responsive to RPD No. 54. Fed. R. Civ. P. 26(a)(1)(A)(ii).

## C. Advance Notice of TCPA Liability Precludes Claims Class Discovery Is Unduly Burdensome

Lofton's RPD No. 45 seeks recordings of calls from Verizon's debt collectors to class members. (*See* Pl.'s App. 24.) Lofton's Interrogatory No. 21 and RPD No. 48 are also core class discovery: they ask Verizon to "unambiguously and definitively" provide several categories of information for each outgoing call placed by its debt collectors necessary to determine whether the recipient telephone number belongs to a class member (including whether the debt collector coded the number as a "bad" number, whether the call was answered, etc.). (*Id.* at 3-4; 24-25.) Verizon acknowledges its production of reconstructed call logs in November and December 2014 does not provide some categories of this information. (*See* ECF No. 76 ¶8.) Lofton has noted elsewhere that the reconstructed call logs are incomplete and appear to contain far fewer "wrong number" records than the Collecto's archived call records. (ECF No. 119-2 ¶47-50; 57.) And Verizon's reconstructed call logs concern only Collecto—they do not cover any of the calls made by any of the other debt collectors.

Lofton expects Verizon will nonetheless contend that complying with Lofton's class discovery (including Interrogatory No. 21 and RPDs Nos. 45 and 48) is unduly burdensome because its debt collectors' information systems are not configured to facilitate class discovery. At the outset, Verizon had full notice of the potential for TCPA and IPA liability: Verizon's own contracts reflect concern for TCPA liability and purport to prohibit autodialer calls to cellular telephones. (*See* ECF No. 77-4 to -10.) And Collecto specifically had notice of TCPA liability from the case captioned *Powell v. Collecto, Inc.*, No. 1:10-cv-3709 ("*Powell*") in the Northern District of Illinois that TCPA litigation might require segregating records of "wrong number" calls.[21] It is well-established that inefficient record-keeping systems do not shield Verizon from class discovery. In *Appleton*, the Seventh Circuit rejected the arguments of class defendants who

---

[21]   As Lofton's pending motion for sanctions explains, the effect of *Powell* on what Verizon and Collecto should have known about class discovery casts the concealment of *Powell* in a significantly more sinister light. (*See* ECF No. 119-1 at 3-4.)

failed "to keep adequate records for easy identification" of class members that a class action was unmanageable. *Appleton*, 494 F.2d at 135. "Defendants who had early notice of their possible liability cannot avoid a class suit merely because their own actions have made the class more difficult to identify." *Id*. The Ninth Circuit followed *Appleton* in a case where the defendants failed "to record and retain" information required by "statutory recording requirements." *Six (6) Mexican Workers*, 904 F.2d at 1306, 1307 ("defendants may not attempt to 'avoid a class suit merely because their own actions have made the class more difficult to identify or locate'"; quoting *Appleton*, 494 F.2d at 135). *Cf. Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 145-46 (N.D. Ill. 2010) (whether defendant's "record-keeping violated any regulatory standard" or not, determination of "whether a class action is appropriate cannot be a function of [class defendant's] record-keeping practices").[22] Class defendants cannot thwart class actions simply by maintaining defective or inefficient records:

> Should a debt collection company as large and as sophisticated as Transworld be able to avoid class action liability by mere identifying of inadequate record-keeping, the Congressional purpose behind the [FDCPA] would indeed be thwarted. Given the number of claims that have been pursued against Transworld and the number of classes that have been certified, defendant's claim that their records are not up to the task of differentiating the debts it collects rings hollow.

*Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 57-58 (D. Conn. 2000). "Undue burden" cannot shield Verizon from class discovery.

This precept fits within the more general rule that plaintiffs are not responsible for defendants using defective or inefficient information systems. "The fact that a responding party maintains records in different locations, utilizes a filing system that does not directly correspond to the subjects set forth in Plaintiffs' interrogatory, or that responsive documents might be voluminous does not suffice to sustain a claim of undue burden." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1033 (E.D. Cal. 2010) (citation, punctuation omitted). Courts have rejected the contention that litigants must "simply accept whatever information management practices [the other party] may have. . . . While a party may design its information management practices to suit its business purposes, one of those business purposes must be accountability to third

---

[22]   *See also Oatman v. Sec'y of Treasury*, 893 F. Supp. 937 (D. Idaho 1995).

parties." *Phillip M. Adams & Associates, L.L.C. v. Dell, Inc.*, 621 F. Supp. 2d 1173, 1193 (D. Utah 2009).[23]

Finally, Verizon cannot continue to avoid providing adequate "technical support" on the relevant records, especially clarification about the meaning of the different disposition or result codes used by its debt collectors. Rule 34 entitles Lofton to some assistance with processing the call logs into usable and effective class discovery. Under Rule 34, a party may request "translation [of responsive information] by the responding party into a reasonably usable form." Fed. R. Civ. P. 34(a)(1)(A). This provision means that, "[u]nder some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information." Fed. R. Civ. P. 34(a) advisory committee notes on 2006 amendments. "'The normal and reasonable translation of electronic data into a form usable by the discovering party should be the ordinary and foreseeable burden of a respondent in the absence of a showing of extraordinary hardship.'" *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-897, 1995 WL 360526, at *2 (N.D. Ill. June 15, 1995) (quoting *Daewoo Elecs. Co. v. United States*, 650 F. Supp. 1003, 1006 (Ct. Int'l Trade 1986)).

### D.   Verizon's "Compound" Objections Lack Merit

**RPD No. 48 and Interrogatory No. 21:** Verizon objects that various discovery is compound. (Pl.'s App. 2:6-7.) Again, Lofton's Interrogatory No. 21 and RPD No. 48 seek a list of outgoing calls by Verizon's debt collectors, together with categories of information needed to determine whether the call corresponds to a member of the class. (*Id.* 3-4; 24-26.) Verizon objects that Interrogatory No. 21 and RPD No. 48 are "compound." (*Id.* 3:9; 25:9.) This objection makes no sense in the context of RPD No. 48, because there is no numerical limit on requests for production. *Cf.* Fed. R. Civ. 34. A "compound" objection would only merit in the

---

[23]    "'The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information.'" *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, 05-01318, 2006 WL 1582122, at *2 (D. Nev. June 5, 2006) (quoting *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 611 (D. Neb. 2001) (citing multiple cases)).

context of an interrogatory to the extent that its "discrete subparts" caused a party to exceed its limit of 25 interrogatories. *Cf.* Fed. R. Civ. P. 33(a)(1) (parties may serve "no more than 25 written interrogatories, including all discrete subparts"). *But see Trevino*, 232 F.R.D. at 614 (N.D. Cal. 2006) (party cannot "avoid answering" interrogatories with discrete subparts unless the total number of interrogatories exceeds 25). Indeed, Verizon objections to Interrogatory No. 21 on the grounds "that the number of interrogatories and discrete sub-parts that have been served by the plaintiff exceeds the 25-interrogatory limit of FRCP 33(a)(1)." (Pl.'s App. 3:11-13.) Subparts are not "discrete" if they "are subsumed within and related to the primary question." *Id. See also In re Lithium Ion Batteries Antitrust Litigation,* No. 13-02420, 2015 WL 1221924, *3 (N.D.Cal. Mar. 17, 2015) (overruling "compound objections" because subparts sought "details concerning a common theme" were not discrete).[24] Here, Interrogatory No. 21 only seeks information integrally related and necessarily dependent on the outgoing calls by Verizon's debt collectors, and so does not contain discrete subparts.[25]

In the alternative, to the extent that the Court finds that Lofton has exceeded the limit of 25 interrogatories, Lofton moves *nunc pro tunc* for leave to serve more than 25 interrogatories. *Cf.* Fed. R. Civ. P. 33(a)(1) ("Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2).") Additional interrogatories are warranted because Lofton was judicious with his interrogatories and served most of them (i.e., 20) in state court (where the presumptive limit is 35). Conversely, Verizon concealed the extent to which its debt collectors could produce call logs that would have enormously simplified class discovery—and Lofton expended most of his interrogatories seeking other ways to take class discovery efficiently.

**RFAs Nos. 62-67, 76-97, and 98-103:** Conversely, Lofton's RFAs Nos. 62-67, 76-97, and 98-103 seek admissions about whether Verizon and its different debt collectors can produce

---

[24] *See also Safeco of America v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (subparts are not "subsumed within and necessarily related to the primary question" if the subpart "can . . . stand alone" or is "independent" of primary question).

[25] *See In re Lithium Ion Batteries Antitrust Litig.,* 2015 WL 1221924, *2 (interrogatory subparts were not discrete where they sought "identification of [related entities involved in manufacture, sale, marketing, or distribution of batteries], as well as their functions, personnel, and mechanisms of oversight and control"); *Trevino*, 232 F.R.D. at 614 (interrogatory seeking "caption, court, civil action number, and result [of] all litigation filed against you" were not discrete subparts).

call logs for outgoing calls with different sets of data. (Pl.'s App. 4-20.) This is basic information about the capabilities and functionality of the record-keeping systems at issue which Verizon should have disclosed—at a minimum—at the time of the parties' Rule 26(f) conference. Verizon's "compound" objections to these RFAs lack merit. Under Rule 36, "when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). Under Rule 36(a)(4), even if a request for admission "covers more than one topic, [Verizon] still has an obligation to admit any portion that it can and deny the remainder." *Akins v. State Farm Mut. Auto. Ins. Co.,* No. 10-12755, 2011 WL 3204839, *2 (E.D. Mich. July 28, 2011) (overruling "compound" objection to request for admission). Verizon should have answered these RFAs even if the RFAs listed a single item in the set which would have required it to deny the RFA as a whole:

> Where . . . multiple, interdependent issues are contained in one request, defendant may deny the entire statement if one fact, on which the remainder of the request is premised, is denied; plaintiff drafts complex requests at his peril. Compound requests that are capable of separation into distinct components and that follow a logical or chronological order, however, should be denied or admitted in sequence with appropriate designation or qualification by defendant in its response.

*Diederich v. Dep't of Army*, 132 F.R.D. 614, 621 (S.D.N.Y. 1990). Lofton drafted multiple sets of RFAs precisely to address the issue flagged in *Diederich*: Verizon can legitimately deny any compound RFA based on a single untrue factor. But, again, even when RFAs are compound but can be "easily broken down into component parts," they "should be denied or admitted in sequence with appropriate designation or qualification." *In re Plascencia*, No. 10-05097, 2012 WL 2161412, *12 (Bankr. N.D. Cal. Jun 12, 2012) (quoting *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 247 F.R.D. 198, 203 (D.D.C. 2008) (where RFA concerned "19 identifiable alcoholic beverage," party should "provide an admission or denial for each of the 19 separate alcoholic products"; quoting *Diederich*)). The drafting of RFAs Nos. 56-67, 76-97, and 98-103 reflects another issue: the question whether various categories of call data could be produced *as a set* is critical to class discovery. It is very significant whether Verizon can collect and produce different types of call data in a single call log.

**RFAs Nos. 104-106:** Lastly, Verizon has objected to RFAs Nos. 104-106 as

---

"compound." (Pl.'s App. 20-21.) These RFAs ask whether Verizon's counsel knew that Verizon's debt collectors could produce call logs at different times. Verizon has failed to explain how these RFAs are compound, let alone shown that it cannot answer them consistent with Rule 36(a)(4) above.

### E.   Verizon's Privilege Assertions Are Invalid

As set forth below, Verizon has made boilerplate privilege objections to a variety of discovery requests which are presumptively invalid because Verizon refused to prepare a privilege log. (Pl.'s App. 2:5.) Again, in many cases, Verizon has had years to respond to Lofton's request for a privilege log. (Preston Decl. ¶¶4-12.) However, Verizon's privilege claims as to the discovery below fail for other reasons—even a timely privilege log could not save them.

### 1.   Verizon's Termination of Collecto Is Not Privileged

RPD No. 62 seeks documents related to Verizon's termination of Collecto; Verizon maintains these documents are privileged. During the meet and confer process, Verizon has relied on an abbreviated, categorical privilege log that Collecto produced in January 17, 2014 which covers communications between Collecto, Verizon, their counsel, (unidentified) consulting experts, and (unidentified) insurers about the *In re Collecto* case –i.e., not this case. This privilege log indicates no responsive communications occurred between Verizon and Collecto's in-house attorneys. (*Id*. ¶13.) Lofton first asked for a detailed, document-by-document privilege log for communications relating to Collecto's termination on December 30, 2014, but Verizon has refused. (*Id*. ¶¶27-30.)

Verizon has asserted privilege over these documents because Verizon transmitted its notice of termination to Collecto through counsel. (*Id*. ¶28.) This is not the law: "[t]hat a person is a lawyer does not, ipso facto, make all communications with that person privileged. The privilege applies only when legal advice is sought 'from a professional legal advisor in his capacity as such.'" *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (citation, punctuation omitted). Using an attorney to conduct ordinary business transactions does not make that communication privileged. "An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction." *In re*

*Fischel*, 557 F.2d 209, 212 (9th Cir. 1977).

> Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys. *Fischel*, 557 F.2d at 211. . . . Extending protection to communications primarily and sufficiently animated by some other purpose would not be necessary to encourage forthright disclosures by clients to lawyers—so such communications should not be privileged.

*United States v. ChevronTexaco Corp.*, 241 F.Supp.2d 1065, 1076 (N.D. Cal. 2002).[26] The same reasoning applies with greater force to the joint defense privilege. *Cf. In re Imperial Corp. of Am.*, 167 F.R.D. 447, 456 (S.D. Cal. 1995) (rejecting contention that, under joint defense privilege, "mere contractual relationship would allow entities to exchange privileged information for any reason, at any time, without third parties ever being allowed access to the information"). Verizon's termination of Collecto was a business transaction—Verizon cannot use counsel to make the termination privileged any more than it could make thake the terms of its contract with Collecto privileged by having counsel negotiate the contract's terms.

### 2. Verizon's Knowledge of Debt Collector Call Logs Is Not Privileged

Requests for Admission ("RFAs") Nos. 104-106 and 107-109 ask whether Verizon or its counsel knew at various times whether Verizon's debt collectors had the ability to produce call logs. (Pl.'s App. 20- 24.) These RFAs are relevant to Verizon's good faith in discovery, and Verizon should have answered them. State of mind is a matter of fact. *Cf. United States Postal Service Bd. v. Aikens*, 460 U.S. 711, 716-17 (1983) ("'state of a man's mind is as much a fact as the state of his digestion"; citation omitted). The attorney-client privilege only protects against "disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]" *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Verizon "cannot be compelled to answer the question, 'What did you say or write to the

---

[26] *See also United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) ("any communication related to the preparation and drafting of the appraisal for submission to the IRS was not made for the purpose of providing legal advice, but, instead, for the purpose of determining the value of the Easement"); *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007) ("[c]hanneling work through a lawyer rather than having non-legal personnel perform it does not provide a basis for claiming attorney-client privilege"); *Montgomery v. Leftwich, Moore & Douglas*, 161 F.R.D. 224, 227 (D.D.C. 1995) ("documents consist[ing] primarily of draft by-laws, promissory notes, security agreements, incorporation documents, partnership documents and tax information [were] business related and [did] not contain . . . legal advice," were not privileged); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1173 (D.S.C. 1974).

---

attorney?' but may not refuse to disclose any relevant fact within [its] knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id.* at 395-96 (citation, punctuation omitted). Whether Verizon *knew* about its debt collectors' abilities to produce call logs is a matter of fact, not a privileged communication.

### 3. There Is No Valid Privilege for Verizon's Communications With Its Debt Collectors About Discovery in this Case

Verizon continues to dispute that it has control over its debt collectors' compliance with discovery. (Pl.'s App. 2:12-13.) In particular, Verizon's failure to comply with the Court's February 9 order brings the dispute over the extent of Verizon's control into sharp relief.[27] Verizon "bears the burden of proving that it [was] 'factually impossible' to comply with the [Court's discovery] order." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992) (citations omitted).[28] If Verizon plans to show it cannot comply with the Court's order or Lofton's other discovery, it needs to show competent evidence that (1) it used the means at its disposal to compel its debt collectors' compliance; and (2) the debt collectors nonetheless refused Verizon's demands. Further, the Court should carefully scrutinize Verizon's evidence on this point: the Court should "guard against . . . sharp practices, inequitable conduct, or other false and misleading actions whereby corporations try to hide documents or make discovery of them difficult," and particularly has to guard against Verizon making "official request' with a proverbial knowing wink to the [debt collectors] that [they] need not comply." *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 517-18, 22 (D. Kan. 2007) (citations, punctuation omitted).

RPD No. 64 seeks Verizon's communications third parties (including its debt collectors) about this case. (Pl.'s App. 34.) Verizon asserts an attorney-client privilege over "all correspondence and emails between and among counsel for Verizon Wireless, for Collecto, and for other Verizon Wireless vendors" regarding discovery in this case. (*Id.*) Verizon cannot sustain this wildly overbroad privilege claim, whether or not it intends to maintain its claim that

---

[27] *See Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 n. 7 (9th Cir. 1983) ("impossibility is a complete defense to a charge of contempt").

[28] *See also FTC v. Affordable Media*, 179 F.3d 1228, 1240 (9th Cir. 1999) (subject of court order has "burden of proving that compliance with . . . order was impossible").

it lacks control over information in its debt collectors' possession—and whether or not Verizon prepared an adequate privilege log for communications responsive to RPD No. 64. Lofton's motion for sanctions lays out the argument that the crime-fraud exception applies to communications with Verizon's debt collectors. (ECF No. 119-1 at 19:4-21:11.) But, at the threshold, the attorney-client privilege does not apply to communications concerning compliance with discovery. "[Q]uestions about the adequacy of [a document] search do not entail legal advice, [so] the topic is not off limits just because an attorney plays a role." *Matter of Feldberg*, 862 F.2d 622, 627 (7th Cir. 1988).

> There is no need for a privilege to cover information exchanged in the course of document searches, which are mostly mechanical yet which entail great risks of dishonest claims of complete compliance. Dropping a cone of silence over the process of searching for documents [does] more harm than good. . . . [A party] may not throw the veil of privilege over the details of how [its] files were searched, and by whom, through the expedient of involving a lawyer in the process.

*Id. See also Doe v. District of Columbia*, 230 F.R.D. 47, 56 (D.D.C. 2005) (attorney-client privilege did not prevent discovery into "to what extent defendant is meeting its discovery obligations").

Second, Verizon has waived any privilege over communications with its debt collectors by disclosing the content of those communications to Lofton and the Court. On February 12, 2015, Verizon disclosed relevant communications with its debt collectors concerning their refusal to comply with the Court's February 9 order:

> [Verizon's Defense Counsel:] CBE Group and Vantage decline to participate in calls. Through their lawyers, they have acknowledged receipt of the court's order, and acknowledged demands from me, from VZW's in-house counsel, and from VZW's business contact to their business contacts, to participate in these court-ordered calls. Their view is that, There are no plaintiffs against them, there are no claims against them, there are no Orders against them, they agree with VZW's MJOP, and they decline to participate in the plaintiff's fishing expedition.
>
> I have not heard from Convergent.

(Preston Decl. ¶35.) Verizon has disclosed the content of communications with its debt collectors about discovery in this case on any number of occasions when it has suited its purposes, but asserts privilege over the communications themselves. (*See*, *e.g.*, *id.* ¶¶33-34.) This constitutes waiver of any legitimate attorney-client privilege that might have existed:

> The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness. Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable.

*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996). Verizon cannot claim a privilege over communications with its debt collectors after it disclosed the content of those communications at times where it has suited Verizon's purposes. Further, such waiver extends not just to the communications on which Verizon relies, but all communications related to compliance with Lofton's discovery: "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as *to all other such communications on the same subject*." *Weil v. Inv./Indicators, Research and Mgmt., Inc.*, 647 F.2d 18, 23 (9th Cir. 1981) (italics added). Verizon has disclosed the contents of communications with its debt collectors in many different situations to support assertions that it has complied with its discovery obligations. The Court should require Verizon to produce all its communications with its debt collectors about Lofton's discovery.

### F.      Unilateral Redaction of the *Powell* Documents Was Improper

RPD No. 63 seeks all communications related to the *Powell* litigation, including communications between Verizon and Collecto about *Powell* and communications between Collecto and the plaintiff in the *Powell* litigation. (Pl.'s App. 33.) Verizon refused to produce the documents, but Collecto (who is defending Verizon in this action) did.[29] (*Id.*; Preston Decl. ¶37.) However, Collecto unilaterally withheld a number of settlement communications in *Powell*. These settlement communications are relevant to this case, because they identify members of the

---

[29] Verizon has control over these documents, even if they do not fall under the scope of control previously established by the Court. Collecto is required to defend and is defending Verizon under the defense and indemnity clause in their contract. (ECF No. 59-1 ¶¶10-11.) A contractual duty to defend a party equates to the party's control over relevant documents in the indemnitee's possession. *See Doe v. AT&T W. Disability Benefits Program*, No. 11-4603, 2012 WL 1669882, *4 (N.D. Cal. May 14, 2012) (duty of defense clause "establishe[d] [a] contractual obligation pursuant to which [the [party] controls documents and information" relevant to litigation); *Moore v. Firstsource Advantage, LLC*, No. 07-770, 2011 WL 4345703, *4 (W.D.N.Y. Sept. 15, 2011) (defendant "deemed to have 'control' over [relevant] documents in [the non-party's] possession" under "mutual indemnification clause providing that [the non-party] would be required to cooperate with the defense" of defendant).

1  "wrong number" class alleged in *Powell* **and further show Collecto's ability to identify class**

2  **members**. (*See id.*) Verizon should produce these communications; Lofton has no objection to

3  the redaction of payment amounts. "[U]nilateral redaction" of responsive documents "is

4  disfavored," where "concern about protecting privacy interests and confidential/proprietary

5  information could be addressed through a protective order." *Live Nation Merchandise, Inc. v.*

6  *Miller*, No. 13-03936, 2014 WL 1877912, *3 (N.D. Cal., May 9, 2014). The facts that the

7  withheld documents relate to a settlement does not preclude discovery: "there is no federal

8  privilege preventing the discovery of settlement agreements and related documents." *Bd. of Trs.*

9  *of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008).

10  Verizon should produce all the *Powell* communications responsive to RPD No. 63. At a

11  minimum, Verizon needs to provide a detailed, document-by-document privilege log for all

12  settlement communications redacted from Collecto's *Powell* production. Also, Lofton has reason

13  to believe some of Verizon's communications with Collecto may be subject to the crime-fraud

14  exception. Verizon should prepare a full privilege log with respect to communications between

15  Verizon and Collecto responsive to RPD No. 63.

16  **G.     Verizon's Statute of Limitations Objection Is Wrong**

17          Verizon has objected to the scope of some of Lofton's class discovery on the grounds that

18  the "alleged TCPA class runs from November 2009, not from June 2008." (Pl.'s App. 16.) In

19  essence, Verizon objects that the class runs from Lofton's Third Amended Complaint (filed in

20  November 2009), not his original complaint (filed in June 2012). This is wrong as a matter of

21  black-letter law: Lofton's Third Amended Complaint "relates back to the date of the original

22  pleading [because] the amendment asserts a claim . . . that *arose out of the conduct, transaction,*

23  *or occurrence* set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1) (italics added).

24  "[R]elation back depends on the existence of a common core of operative facts uniting the

25  original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (citation omitted).

26  Rule 15(c) does "not require adequate notice of the claims, but rather of the facts that formed the

27  basis for those claims." *Martell v. Trilogy Ltd.*, 872 F.2d 322, 326 (9th Cir. 1989). *See also*

28  *McKee v. Peoria Unified Sch. Dist.*, 963 F. Supp. 2d 911, 923 (D. Ariz. 2013).

**IV.     Conclusion**

       Verizon has obstructed discovery at every opportunity with boilerplate objections and deficient responses that conceal what documents Verizon is withholding. Verizon has also obstructed discovery by permitting (even instructing) its debt collectors to ignore Lofton's legitimate discovery, and concealed the extent to which Verizon has endeavored to obtain (or conspired to prevent) responses to Lofton's discovery with overbroad claims of privilege, while refusing to provide even the most basic privilege log for most communications at issue. The Court should require Verizon to comply with Lofton's discovery in full, without further objection, delay, or obstruction.

Dated: March 31, 2015                    By:     /s/Ethan Preston
                                            Ethan Preston

                                            David C. Parisi (162248)
                                            Suzanne Havens Beckman (188814)
                                          PARISI & HAVENS LLP
                                            212 Marine Street, Suite 100
                                            Santa Monica, California 90405
                                            (818) 990-1299 (telephone)
                                            (818) 501-7852 (facsimile)
                                            dcparisi@parisihavens.com
                                            shavens@parisihavens.com

                                            Ethan Preston (263295)
                                            PRESTON LAW OFFICES
                                            4054 McKinney Avenue, Suite 310
                                            Dallas, Texas 75204
                                            (972) 564-8340 (telephone)
                                            (866) 509-1197 (facsimile)
                                            ep@eplaw.us

                                            *Attorneys for Plaintiff John Lofton,*
                                            *on his own behalf, and behalf of all*
                                            *others similarly situated*