David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff John Lofton, on his own
behalf, and behalf of all others similarly situated*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| JOHN LOFTON, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON WIRELESS (VAW) LLC, and DOES 1-100, inclusive,<br><br>Defendants. | No. 4:13-cv-05665-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Jacqueline Scott Corley<br><br>**FOURTH AMENDED CLASS ACTION COMPLAINT FOR**<br><br>**(1) VIOLATION OF THE INVASION OF PRIVACY ACT;**<br><br>**(2) VIOLATION OF THE TCPA; AND**<br><br>**(3) VIOLATION OF THE UNFAIR COMPETITION LAW.**<br><br>**JURY DEMAND**<br><br>Complaint Filed: June 14, 2012<br>Removed: December 6, 2013 |

**FOURTH AMENDED CLASS ACTION COMPLAINT**

Plaintiff John Lofton ("Lofton" or "Plaintiff"), makes this complaint against Defendant

Verizon Wireless (VAW) LLC ("Verizon" or "Defendant"), and Does 1 to 100 (collectively,

"Defendants"). Plaintiff's allegations as to his own actions are based on personal knowledge.

The other allegations are based on his counsel's investigation, and information and belief.

1

2                                    **Introduction**

3          1.      This case arises from commission of unlawful acts by Defendants' agents.

4   Verizon uses third-party vendors to collect alleged consumer debts. These vendors record and/or

5   monitor outgoing telephone calls placed in the course of collecting debts without first disclosing

6   the recording and/or monitoring to consumers or obtaining their consent and permission to do so.

7   These vendors also use predictive dialers to make telephone calls to telephone numbers, often

8   without the prior consent of the persons using those cellular telephone numbers. This practice

9   violates California's Invasion of Privacy Act ("IPA") (specifically, Penal Code section 632.7),

10  the Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA"), and the unfair competition

11  law (Business and Professions Code 17200) ("UCL").

12         2.      Plaintiff has sustained actual damages and lost property in the form of wasted

13  cellular telephone airtime. Plaintiff seeks statutory damages and injunctive relief on his

14  individual and class IPA claim under Penal Code section 637.2, statutory damages and injunctive

15  relief on his individual and class claims under 47 U.S.C. § 227(b)(3), injunctive relief under his

16  individual and class claims under Business and Professions Code 17203, and an award of

17  attorneys' fees under Code of Civil Procedure section 1021.5.

18                                     **Parties**

19         3.      Plaintiff John Lofton is a natural person residing in San Leandro, California.

20  Lofton brings this action on behalf of himself and others similarly situated.

21         4.      Defendant Verizon Wireless (VAW) LLC is a limited liability company which

22  lists its address with the California Secretary of State as One Verizon Way, Basking Ridge, New

23  Jersey 07920.

24         5.      Plaintiff is currently ignorant of the true names and capacities, whether individual,

25  corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does

26  1 through 100, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff

27  will seek leave to amend this complaint to allege the true names and capacities of said fictitiously

28  named Defendants when their true names and capacities have been ascertained. Plaintiff is

---

1  informed and believes and based thereon alleges that each of the fictitiously named Doe

2  Defendants is legally responsible in some manner for the events and occurrences alleged herein,

3  and for the damages suffered by plaintiff.

4        6.     Plaintiff is informed and believes and based thereon alleges that all defendants,

5  including the fictitious Doe Defendants, were at all relevant times acting as actual agents,

6  conspirators, ostensible agents, partners and/or joint venturers and employees of all other

7  defendants, and that all acts alleged herein occurred within the course and scope of said agency,

8  employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or

9  implied permission, knowledge, consent, authorization and ratification of their co-Defendants;

10  however, each of these allegations are deemed "alternative" theories whenever not doing so

11  would result in a contraction with the other allegations.

12        7.     All Defendants, including Does 1 through 100, are collectively referred to as

13  "Defendants" or "Verizon."

14        8.     Whenever this complaint refers to any act of Defendants, the allegations shall be

15  deemed to mean the act of those defendants named in the particular cause of action, and each of

16  them, acting individually, jointly and severally, unless otherwise alleged.

17                 **Jurisdiction and Venue**

18        9.     This Court may exercise jurisdiction over this case and these parties under Code

19  of Civil Procedure § 410.10. This is a court of general jurisdiction, and the amount in

20  controversy exceeds this court's jurisdictional minimum. Plaintiff is a California resident. All the

21  proposed Class members are residents of California at the time this Complaint is filed. All

22  Defendants are citizens of California.

23        10.     Venue in this County is proper under Code of Civil Procedure section 395.5,

24  because Verizon's liability arose in the County of Alameda.

25        11.     All allegations in this complaint are based on information and belief and/or the

26  documents and information currently available and in the hands of Plaintiff's attorneys, and are

27  such that additional evidentiary support and detail will be forthcoming after a reasonable

28  opportunity for further investigation or discovery.

**The Invasion of Privacy Act**

12.     The Legislature enacted a comprehensive statutory scheme called the Invasion of

Privacy Act (Pen. Code, §§ 630-638) to regulates recording telephone calls, which generally

prohibits the same without the informed consent of all parties to the telephone call. The

Legislature expressly identified the Act's purpose and set forth its statutory intent:

> The Legislature hereby declares that advances in science and technology have led
> to the development of new devices and techniques for the purpose of
> eavesdropping upon private communications and that the invasion of privacy
> resulting from the continual and increasing use of such devices and techniques has
> created a serious threat to the free exercise of personal liberties and cannot be
> tolerated in a free and civilized society.

(Pen. Code, § 630.) The IPA prohibits monitoring or recording a telephone communication

without the consent of the parties to the communication:

> Every person who, without the consent of all parties to a communication,
> intercepts or receives and intentionally records, or assists in the interception or
> reception and intentional recordation of, a communication transmitted between
> two cellular radio telephones, a cellular radio telephone and a landline telephone,
> two cordless telephones, a cordless telephone and a landline telephone, or a
> cordless telephone and a cellular radio telephone, shall be punished by a fine not
> exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a
> county jail not exceeding one year, or in the state prison, or by both that fine and
> imprisonment

(Pen. Code, § 632.7(a).)

13.     The Legislature provided for a private right of action for actual damages and civil

penalties for violations of the IPA as follows:

> (a)     Any person who has been injured by a violation of this chapter may bring
> an action against the person who committed the violation for [$,5000] . . .
>
> (b)     Any person may, in accordance with Chapter 3 (commencing with Section
> 525) of Title 7 of Part 2 of the Code of Civil Procedure, bring an action to
> enjoin and restrain any violation of this chapter, and may in the same
> action seek damages as provided by subdivision (a).
>
> (c)     It is not a necessary prerequisite to an action pursuant to this section that
> the plaintiff has suffered, or be threatened with, actual damages.

(Pen. Code, § 637.2.)

**The Telephone Consumer Protection Act**

14.     Congress enacted the Telephone Consumer Protection Act in 1991. The TCPA

prohibits certain uses of telecommunication equipment that would interfere with telephone

service subscribers' privacy and/or property rights with respect to their telephone. In particular,

the TCPA provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…to any telephone number assigned to a… cellular telephone service…

47 U.S.C. § 227(b)(1)(A).

15.     The TCPA provides telephone service subscribers a private right of action for

injunctive relief and statutory damages for violations:

> A person or entity may…bring… an action based on a violation of [47 U.S.C.§ 227(b)] to enjoin such a violation, an action to recovery for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or both… If the court finds that the defendant willfully or knowingly violated [47 U.S.C.§ 227(b),] the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the [statutory damages available above].

47 U.S.C. § 227(b)(3).

**Plaintiff's Individual Allegations**

16.     Verizon engaged Collecto to assist in the collection of debts on past-due Verizon

accounts. Collecto has persistently and repeatedly called Lofton, seeking to contact another

individual who is apparently a delinquent subscriber of Verizon. As Lofton has repeatedly

explained to Collecto, he is not this person Verizon is seeking, he does not know this person, and

the other person does not use the number at which Collecto called Lofton.

17.     Lofton is the regular user and carrier of the cellular telephone called by Collecto.

18.     Collecto called Lofton on June 4, 2012. After waiting an unspecified amount of

time for a live representative, Lofton explained to Collecto's representatives that he was not the

person Verizon sought.

19.     Collecto called Lofton again on June 7, 2012. Once again after waiting for a live

representative to begin talking, Lofton explained to Collecto's representatives that he was not the

person Verizon sought. Lofton asked Collecto's representative if Collecto was recording the call.

Collecto's representative indicated that Collecto was recording the call. Lofton did not know that

Collecto was recording the call prior to that disclosure. Lofton told Collecto's representative to stop the recording and that he did not consent to be recorded. Collecto's representative stated that she could not stop the recording, and that Collecto recorded all calls for quality assurance purposes. Collecto's representative promised to take Lofton's number off the call list Collecto was using.

20.    Lofton never received any notice that Collecto recorded its *outgoing* calls until he asked during the June 7, 2012 conversation. On the basis of its representative's June 7, 2012 statement, Collecto recorded and/or monitored all of its outgoing calls to Lofton but did not alert or inform Lofton that the calls  were being recorded, eavesdropped, monitored and/or tapped until Lofton inquired during the June 7 call.

21.    In light of the foregoing circumstances, Lofton had a reasonable expectation that Collecto was not recording, eavesdropping, wiretapping and/or monitoring its outgoing calls to Lofton. Lofton did not consent to Collecto's recording of its outgoing calls to Lofton.

22.    Collecto obtained Lofton's cellular telephone via skip-tracing. Collecto did not have prior express consent to call Lofton's cellular telephone via skip-tracing.

23.    Collecto frequently uses skip-tracing services to locate telephone numbers used by consumers whom it calls. These skip-tracing services include LexisNexis and/or CBCInnovis. Collecto does not obtain such numbers from the original creditor. When Collecto obtains cellular numbers from a skip-tracing service, it does not have prior express consent to call those numbers.

24.    Predictive dialing is a computerized method for automatically dialing lists of telephone numbers commonly used in call center operations. A device with predictive dialing functionality can make multiple outbound telephone calls without human intervention, hang up calls that are not answered by a human (i.e., disconnected numbers, answering machines, etc.), and match calls which are answered with an available call center employee. Predictive dialing helps maximize the call center employees' efficiency by eliminating time wasted on unanswered calls. To achieve this efficiency, in a typical situation, a predictive dialer will automatically dial an outbound call. If a person answers the call, the call will then be redirected back to a call center

employee "predicted" to be the most likely to be available to answer the call. Hence, sometimes a person will answer a predictive dialer's call and hear "dead air" while the predictive dialer connects the call back to an available employee. Hence, the pause before a call center employee starts speaking indicates that the call was made with a predictive dialer:

> Predictive dialers initiate phone calls while telemarketers are talking to other consumers…In attempting to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either "hang up" on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as "dead air".

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 *Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶146, 18 FCC Rcd. 14014, 14101, 2003 WL 21517853, *51 (July 3, 2003), *available at* http://hraunfoss.fcc.gov/edocs _public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*"). To be clear, the "dead air" pause described above is *sufficient* to show that a call was made with a predictive dialer, but is definitely not *necessary* to show that a predictive dialer was used. Certainly, not every call made with a predictive dialer involves such a pause, and indeed predictive dialers are designed and configured to maximize call center efficiency, i.e., the total time call center employees are speaking with a live person—predictive dialers are typically configured to minimize the total amount of such "dead air."

25.     The FCC has held on two occasions that predictive dialers constitute an "automatic telephone dialing system" (ATDS) under the meaning of 47 U.S.C. § 227(b)(1)(A)(i). Even without the FCC's rulings, it is clear that predictive dialers constitute ATDSs because they are capable of (1) storing, producing, and dialing lists of arbitrary telephone numbers; (2) loading more than one telephone numbers into a list of numbers that the dialer can call without further human intervention; and (3) dialing more than one such telephone number at a time. However, the key functionality of a predictive dialers is matching available call center employees with answered calls: this function does not directly relate to storing or calling telephone numbers. Hence, predictive dialing is not the *sine qua non* of ATDSs: while all predictive dialers are ATDSs, not all ATDSs are predictive dialers.

26.     During all of Collecto's calls, there was a significant pause before Collecto's representative started speaking. In  discovery, Collecto has indicated that it called Lofton with its Noble Systems Maestro dialer. The Maestro dialer is a predictive dialer, and is otherwise an ATDS. Collecto has also testified in other civil actions that it has used predictive dialers. Collecto placed each and every call alleged in this complaint with one or more predictive dialers.

27.     Verizon is vicariously liable for Collecto's violations of the IPA and TCPA alleged above. Collecto acted as Verizon's agent, and violated the IPA and TCPA in the course of such agency.

### Class Certification Allegations

28.     **Class Definition:** Lofton seeks to certify two classes and brings this Complaint against the Defendants, pursuant to Code of Civil Procedure section 382, on behalf of himself and the following classes:

The "IPA Class":

All California residents who

(a)     received on their cellular telephone one or more telephone calls from Collecto or any other of third-party vendors which Verizon engaged to collect debts,

(b)     in which such persons made a spontaneous oral communication (i.e., excluding any voicemail greeting or similar recording) in response to Defendants or their Agents (such as Collecto),

(c)     which communication the Agents recorded or monitored or caused to be recorded or monitored without or prior to disclosing or alerting the persons that Defendants were recording or monitoring the telephone call.

The "TCPA Class":

All natural persons residing in the United States who

(a)     received one or more telephone calls from a predictive dialer, operated by Collecto or any other third party vendors which Verizon engaged to collect debts, to their cellular telephone number,

(b)     on or before four years from the date Lofton's original complaint was filed,

(c)     where the number was obtained through skip-tracing or captured by Collecto's or other Verizon' agent's equipment from an

1    inbound call, but the person never had an agreement with the creditor .

2 Excluded from the IPA Class and TCPA Class are Defendants, any person which Verizon's

3 record identify as a current or past subscriber, any entity in which Defendants (or Agents) have a

4 controlling interest or which has a controlling interest in Defendants, and any of the Defendants'

5 agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded

6 from the classes are the judge and staff to whom this case is assigned, and any member of the

7 judge's immediate family. Lofton reserves the right to revise the definition of the classes based

8 on facts learned during discovery. Lofton is a member of the classes that he seeks to represent.

9        29.    The members of the IPA Class and TCPA Class can be reasonably identified

10 using information that is kept by Defendants and/or Agents in the usual course of business and/or

11 is in Defendants' control. The calls in controversy can be identified through, e.g., ministerial

12 review of the recordings at issue.

13       30.    **Class Numerosity:** The exact numbers of members of the classes are unknown

14 and are not available to Plaintiff at this time, but Plaintiff believes the numbers exceed the

15 minimum needed to establish numerosity.

16       31.    **Class Commonality:** Common questions of fact and law exist as to all members

17 of the classes and predominate over the questions affecting only individual members of the

18 classes. Identification of the individuals who qualify as a member of the classes will be sufficient

19 to establish liability to the class member.

20       32.    **Typicality:** Plaintiff's claims are typical of the claims of the other members of the

21 classes. Plaintiff is not different in any relevant way from any other member of the classes, and

22 the relief he seeks is common to the classes.

23       33.    **Adequate Representation:** Plaintiff will fairly and adequately represent and

24 protect the interests of the other members of the classes: his interests do not conflict with their

25 interests. Plaintiffs have retained counsel competent and experienced in complex class actions,

26 and they intend to prosecute this action vigorously.

27       34.    **Predominance and Superiority:** The classes alleged in this Complaint are

28 appropriate for certification because class proceedings are superior to all other available methods

1 for the fair and efficient adjudication of this controversy, since joinder of all members is

2 impracticable. The damages suffered by each individual class member will likely be relatively

3 small, especially given the burden and expense of individual prosecution of the complex

4 litigation necessitated by Defendants' actions. It would be virtually impossible for class members

5 to individually obtain effective relief from Defendant's misconduct. Even if class members

6 themselves could sustain such individual litigation, it would still not be preferable to a class

7 action, because individual litigation would increase the delay and expense to all parties due to the

8 complex legal and factual controversies presented in this Complaint. By contrast, class actions

9 present far fewer management difficulties and provide the benefits of single adjudication,

10 economy of scale, and comprehensive supervision by a single Court. Economies of time, effort,

11 and expense will be fostered and uniformity of decisions will be ensured.

12        35.    **Generally Applicable Policies:** This class action is also appropriate for

13 certification because Defendants have acted or refused to act on grounds generally applicable to

14 the class, thereby making appropriate final injunctive relief or corresponding declaratory relief

15 with respect to the classes as a whole. The policies of the Defendants challenged herein apply

16 and affect members of the classes uniformly, and Plaintiff's challenge of these policies hinges on

17 Defendants' conduct, not on facts or law applicable only to Plaintiff.

18        36.    **Injunctive Relief is Appropriate:** Based on information and belief, Defendants

19 and Agents continue to engage in the improper practices discussed above. Injunctive relief is

20 necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to

21 Plaintiff and class members for which they have no adequate remedy at law.

22                              **Class Allegations**

23        37.    **Verizon's Agents:** This complaint concerns not only Collecto's IPA and TCPA

24 violations, but also the IPA and TCPA violations committed by any of the other third-party

25 vendors which Verizon engaged to collect debts under a contract materially similar to the

26 contract between Verizon and Collecto ("Agents"). A copy of the relevant portions of Verizon's

27 contract is attached as Exhibit 1. Based on the information Lofton has obtained through

28 discovery to date, he alleges that the relevant Agents include The CBE Group, Inc. ("CBE"),

1   Convergent Outsourcing, Inc. (also known as ER Solutions) ("Convergent"), Valentine &

2   Kebartas, Inc. ("VKI"), Vantage Sourcing, LLC ("Vantage"), and Sunrise Credit Group, Inc.

3   ("Sunrise"), as well as Collecto.

4       38.   **The Agents Violate the IPA:** The Agents make outgoing calls to consumers and

5   others in the regular course of the work they perform for Verizon. During the times relevant to

6   this complaint, Collecto and some of the other Agents recorded and/or monitored all of their

7   outgoing calls to consumers in which they sought to collect a debt. The Agents have intentionally

8   installed and/or caused to be installed recording, wire-tapping and eavesdropping equipment on

9   their telephone lines. In addition or in the alternative, the Agents have configured their telephone

10  systems to record outgoing calls.

11      39.   The Agents do not disclose to the IPA Class members that they are recording at

12  the start of the call – *or at all* – in some of their outgoing calls. In light of the foregoing

13  circumstances, the IPA Class members had a reasonable expectation that the Agents were not

14  recording, eavesdropping, wiretapping and/or monitoring the calls to the IPA Class members. In

15  light of the foregoing circumstances, the IPA Class members did not and could not consent to

16  recording of the calls which they received from Defendants and/or the Agents.

17      40.   **The Agents Violate the TCPA:** The Agents make outgoing calls to consumers

18  and others cellular telephone numbers during the regular course of its business. The Agents place

19  calls to the TCPA Class members using predictive dialers (as well as other automated telephone

20  dialing systems). The predictive dialers are an automatic telephone dialing system; no human

21  manually dialed the cellular telephone numbers which agents called at the time it was made.

22      41.   The Agents obtain the TCPA Class members' cellular telephone via skip-tracing

23  and other means. The Agents do not obtain prior consent to call TCPA Class members's cellular

24  telephones. In light of the foregoing circumstances, the TCPA Class members did not and could

25  not consent to the calls which they received from Defendants and/or the Agents.

26      42.   **Verizon Is Liable for the Agents' Conduct**: Defendants are vicariously liable

27  for the violations of the IPA and TCPA alleged above. Verizon gave the Agents authority to

28  collect debts on past-due Verizon accounts on Verizon's behalf, and the Agents recorded the

calls to Plaintiff in the course of collecting debts on Verizon's behalf. Further, Verizon knew that its Agents recorded outgoing calls without disclosing the same. Indeed, as set forth below, Verizon's policy instructed the Agents that they did not need to disclose such recording. The Agents acted as Verizon's agents, and violated the IPA in the course of such agency. In addition or the alternative, Verizon advised and encouraged the Agents' IPA violations.

43.    In addition or the alternative, Verizon conspired to violate the IPA with the Agents. Verizon implicitly and/or explicitly agreed that the Agents would record outgoing calls without disclosure by continuing to employ and assign accounts to the Agents.

44.    In the addition or the alternative, Verizon assisted and/or aided and abetted the Agents' IPA violations. Verizon paid the Agents in connection with their debt collection activities, and the funds paid to the Agents facilitated, e.g., the purchase and maintenance of the equipment used to record their calls, and the purchase of telephone service used to make the calls. Verizon permitted the Agents to use its name while making debt collection calls. By allowing the Agents to use its name, Verizon facilitated the Agents' collection activities by promoting their ability to initiate and continue more live telephonic conversations and thereby assisted/aided the Agents to record more calls.

45.    **Verizon Directed Its Agents to Call Skip-Traced Telephone Numbers:** Verizon required the Agents to obtain and call telephone numbers (by skip-tracing or otherwise) which it did not have consent to call. For instance, Verizon's contract with Collecto explicitly states that, "[i]n the event a Placed Account does not include an accurate telephone number," Collecto must "initiate a minimum of eight (8) Skip Tracing efforts within the first thirty (30) days of receipt of the Placed Account, and a minimum of two Skip Tracing efforts each month thereafter[.]" (VER000057.) The contract also requires Collecto to "[i]nitiate a minimum of eight (8) telephone call attempts in the first thirty (30) days, or until customer contact" and to "[i]nitiate a minimum of two (2) telephone attempts every thirty (30) days thereafter until either customer contact, or end of Placement Period." (VER000056.) Verizon's contracts with CBE (VER002816), Convergent (VER002474), and Sunrise (VER002739) contain similar provisions.

46.    **Verizon Knew that the Agents Typically Used Automated Dialers to Make**

**Calls on Its Behalf:** Verizon has filed portions of its contracts with CBE, Collecto, Convergent, and Sunrise in this Court which state, e.g., that those Agents are "expected to use reasonable judgment when interpreting accounts notes and not place automated dialer or broadcast calls to pagers, cell phones, etc in accordance with federal, state and local laws." (ECF Nos. 77-4 at VER000042; 77-5 at VER002724; 77-6 at VER002459; 77-7 at VER002801.) (Verizon's contract with VKI and Vantage simply mandates those Agents "shall comply with the provisions of all applicable federal, state and local laws. . . in performance of this Agreement." (ECF No. 77-8 at VER002853; 77-9 at VER0005879.) Verizon's contracts reflect that Verizon knew that the Agents were likely to use automated dialers to make calls to, e.g., skip-traced telephone numbers, and that such calls were likely to implicate the TCPA.

47.     In addition, Verizon knew— given the volume of accounts Verizon assigned to the Agents, and the amount of skip-tracing required under its contracts—that its Agents needed to use predictive dialers or automated dialers to economically and profitably perform their contracts with Verizon. This is evidenced in part by the fact that in at least one circumstances, VKI skip-traced telephone numbers for one set of accounts in October 2011 and then determined that it could not efficiently call skip-traced numbers manually and needed to use automated dialers to perform profitably and economically under its contract with Verizon and that (on information and belief) Verizon knew that VKI had made the foregoing determination..

48.     **Verizon Knew that the Agents Recorded Calls Without Disclosing the Recording:** Verizon has produced a declaration from Craig Battinelli dated August 21, 2012 (attached as Exhibit 2) which avers that Verizon's policy is to "disclose immediately after identifying themselves on a call that the call may be monitored or recorded for quality purposes" and that this policy "is expressed to third-party vendors of Verizon Wireless that assist in the collection of debts on past-due Verizon Wireless accounts," including Collecto and the other Agents. (VER000091.) In fact, the written policy authenticated in the August Battinelli declaration provides that certain calls "may be made without disclosure" of the recording, such as calls where a non-subscriber "answers the call and advises it is a wrong number." (VER000093-94.)

49.     There is no rational reason for Verizon to express its "disclosure policy" is to the Agents unless the Agents recorded their outgoing telephone calls in the regular course of business. The only reasonable inferences from the August Battinelli declaration is that (1) Verizon knew the Agents were recording outgoing telephone calls, and that (2) Verizon knew that the Agents did not disclose such recording in every outgoing telephone call to non-subscribers.

50.     **Verizon Controlled the Agents' Communications with Class Members:** Under its contracts with Collecto and the Agents, Verizon tightly controlled the Agents' operations. As the August Battinelli declaration indicates, Verizon dictated how and when the Agents would disclose that they recorded outgoing telephone calls through the "disclosure policy" alleged above. Under the contracts, the Agents agreed to follow any procedures that Verizon provided for authenticating the identity of, e.g., the person receiving a call before discussing account information. (VER000053.) Verizon also required the Agents to

> furnish to Verizon for *its review and approval* all correspondence, telegrams, and other communications that it intends to utilize with respect to the collection of debts owing to Verizon, and any changes to these that may be contemplated in the future.

(VER000055 [emphasis added]. *See also* VER000051.)

51.     **Verizon Controlled the Agents' Personnel:** Further, the contracts provided Verizon the right to demand that "at any time and for any reason that specific employees, subcontractors, and agents of [the Agents] be removed from" providing services for Verizon. (VER000022.) Verizon also had the right to approve and disapprove any of the Agents' subcontractors. (VER000019.) Also, the contracts required that the Agents' personnel who were assigned to collect Verizon accounts "do so exclusively for Verizon." (VER000053.)

52.     **Verizon Controlled the Agents' Operations:** Verizon's control over the Agents extended to other areas. Under the contracts, the Agents agreed (1) to conduct background checks and drug tests on all their employees (VER000006); (2) not to store or access Verizon's confidential information outside the United States without authorization (VER000012); and (3) to return data concerning closed Verizon accounts "in a format and media approved by Verizon"

(VER0000052; *see also* VER000058). Verizon also required the Agents to disclose, assign, and/or license to Verizon

> all notes, designs, models, prototypes, drawings, data storage media, listings, deliverables, technical data, inventions, improvements, discoveries, computer software (including firmware), and other forms of technology or intellectual property made, conceived, developed or actually or constructively reduced to practice in connection with or pursuant to the terms and conditions of [the contracts.]

(VER000016.) Verizon's contracts also (1) controlled when and how often the Agents would communicate with or attempt to locate subscribers (VER000056-57); (2) controlled the Agents' authority to settle delinquent accounts with subscribers (VER000057); and (3) controlled when Agents could litigate against subscribers and prohibited the Agents from threatening to litigate against subscribers (VER000057).

53.     **Verizon Has the Ability to Terminate the Agents' Services Unilaterally:** Under the operative contracts, Verizon has unrestricted ability to unilaterally terminate the Agents' services. The contracts provide Verizon the right to terminate the Agents' services on thirty (30) days' written notice of "a material breach or default of any of the terms, conditions or covenants" of contracts. (VER000014.) The contracts require the Agents to provide services "at the highest professional standards in the field, to Verizon's satisfaction." (VER000012.) In addition, the contracts provide that "any dispute or controversy relating to whether any Services meet the highest level of performance in the industry shall be decided by Verizon in its reasonable discretion and its decision shall be final, conclusive and binding." (*Id.*)

54.     The contracts call for the Agents to perform the specific tasks identified in "Authorization Letters" provided by Verizon. However, the contracts also provide that "Authorization Letters may be withdrawn at any time in writing by Verizon Wireless, and may be made effective immediately. (VER000052.) In addition to the foregoing, the contracts provided Verizon the ability to terminate an Agent's services by withdrawing all pending Authorization Letters from the Agent.

55.     Likewise, the contracts provide that Agents collect on "Placed Accounts." "Placed Accounts" mean "any past due and/or charged-off Customer account which Verizon, *in its sole*

*discretion*, may place with Supplier to enact telephone collections and dunning notices, Skip Tracing, or other activity on behalf of Verizon pursuant to this Agreement." (VER000005 (emphasis added).) Moreover, the contracts provide that "Verizon is under no obligation to refer any particular type, age or minimum number of Customer accounts to Supplier." (*Id.*) In addition to the foregoing, the contracts provided Verizon the ability to terminate an Agent's services by no longer placing any accounts with the Agent.

56.     **Apparent Agency:** When Collecto's representatives called Plaintiff and the other Class members, they stated they were "with Verizon." Further, Collecto called Plaintiff from the telephone number (877) 208-4175. Calls to (877) 208-4175 are answered by an automated voice that says "Thank you for calling Verizon Wireless." In contracts with Verizon, Verizon has explicitly authorized Collecto and the other Agents to use Verizon's trade names: "Supplier may use the names . . . "Verizon Wireless" . . . solely for the purpose of identifying a creditor (i) in communications with a Debtor with respect to a Placed Account in order to collect amounts outstanding thereon . . ." (VER000017.) Defendants and the Agents called Class members on their cellular telephones.

57.     In addition or in the alternative to the foregoing, Plaintiff alleges that the Agents are "ostensible agents" under Civil Code section 2300. Plaintiff and the Class members reasonably believed that the Agent representatives who called them were employed by Verizon. Verizon is liable for the Agents' IPA violations because it knew that the Agents used Verizon's name when calling Class members, but did nothing to prevent Class members from believing that the Agents were Verizon's employees (and indeed expressly authorized the Agents to use Verizon's name).

**FIRST CAUSE OF ACTION:**
**Violation of IPA Against All Defendants**
**by Plaintiff Individually and on Behalf of the IPA Class**

58.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the IPA Class Members.

59.     The Agents configured their telephone system to record all of their telephone

calls. In addition or in the alternative, the Agents installed and/or caused to be installed certain wiretapping, eavesdropping, monitoring and/or recording equipment on all or many of their telephone lines.

60.    The Agents' policy is to use this equipment (including their telephone systems) to record and/or monitor their outgoing telephone calls. The Agents in fact used this equipment to record and/or monitor their outgoing telephone calls to the IPA Class members' cellular telephones.

61.    The Agents did not disclose that they were recording and/or monitoring its outgoing telephone calls to the IPA Class members prior to recording and/or monitoring such telephone calls. In light of the foregoing allegations, Lofton and the other members of the IPA Class had an objectively reasonable expectation that the Agents were not recording, eavesdropping, wiretapping and/or monitoring these outgoing calls which the Agents initiated to Lofton and the other members of the IPA Class.

62.    Defendants' recording and/or monitoring of the outgoing telephone calls to IPAClass members' cellular telephones without their consent violated California Penal Code section 632.7(a).

63.    Defendants are vicariously liable for the violations of the IPA alleged above. Verizon gave the Agents authority to collect of debts on past-due Verizon accounts on Verizon's behalf, and the Agents recorded the calls to Plaintiff in the course of collecting debts on Verizon's behalf. The Agents acted as Verizon's agents, and violated the IPA in the course of such agency. On information and belief as alleged more specifically above, Verizon knows that the Agents record outgoing calls to cellular telephones without the recipients' consent and does not take action to stop these practices.

64.    Lofton, on his own behalf, and behalf of the other IPA Class members, seeks to recover statutory damages, as well as injunctive and equitable relief under Penal Code section 637.2. Lofton brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Lofton is therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

**SECOND CAUSE OF ACTION:**
**Violation of the TCPA Against All Defendants by Plaintiff Individually**
**and on behalf of the TCPA Class**

65.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the TCPA Class.

66.    The Agents make outgoing calls to consumers and others in the regular course of its business. The Agents called Lofton and the TCPA Class members' cellular telephone numbers.

67.    The Agents placed calls to Lofton and class members using predictive dialers or other devices which constitute an ATDS under the meaning of 47 U.S.C.§ 227(a)(1). Verizon produced manuals and other discovery which identifies the various dialers the Agents used to make calls to collect Verizon accounts. Excerpts of Verizon's production, together with publicly-available documentation described below, are attached as Exhibit 3 to this complaint. CBE uses the Noble Systems' Maestro dialer, and a device called the "Manual Clicker." Collecto uses several dialers: the Guaranteed Contacts ("GC") dialer integrated into its account note system (FACS), a device called the "SoundBite Cloud Predictive Dialer," and the LiveVox dialer. Collecto also uses the Noble Systems' Maestro dialer. Convergent also uses the GC dialer integrated into the FACS account note system. Vantage uses the LiveVox dialer system, as well as a device called the "SunDial Windows Predictive Dialer." VKI indicates that it also uses the LiveVox dialer. Sunrise uses the "Enghouse/CosmoCall contact center universe platform."

68.    The GC dialer is an ATDS and a predictive dialer. Ontario Systems Corporation manufactures the GC dialer: it has both hardware and software components which reside on-site in users' own call centers. One of the pages on Collecto's website touted its "state-of-the-art technology," including a "Predictive Dialer - GC (Guaranteed Contacts)." Likewise, publicly-available documentation for the GC dialer from Ontario Systems describes predictive dialer functionality:

> An inbound/outbound contact management dialer designed for complete integration with Artiva and FACS, Guaranteed Contacts™ (GC) provides a highly efficient method of contacting debtors, maximizing productivity by relieving

representatives of the dialing function. Reduce wait times and provide a continual flow of live contacts using:

. . .

Advanced algorithms that pass live accounts directly to account representatives, significantly reducing cost per contact, and boosting contact rates up to 300%

. . .

Outbound dialing modes that enable tailoring activity to client needs

This documentation contrasts the GC dialer with a "Manual Contact System" which "offers customers a solution to dial cell phone inventory for which they do not have the express consent of the consumer on a platform lacking the capacity to predictively dial or store or produce numbers using a random or sequential number generator." It is reasonable to infer from this documentation that the GC dialer has the capacity to predictively dial or store or produce numbers using a random or sequential number generator.

69.     Noble Systems' Maestro dialer is an ATDS and a predictive dialer. The Maestro dialer has both hardware and software components which reside on-site in users' own call centers. Noble Systems provides publicly-available documentation for its dialers which states that "[p]redictive dialing is one of several collections dialer modes," and as well as case studies indicating that Noble's dialers provide "Outbound Predictive Dialing" functionality.

70.     The SunDial Windows Predictive Dialer is an ATDS and a predictive dialer. The SunDial Dialer has both hardware and software components which reside on-site in users' own call centers. The documentation on the SunDial Dialer provided to Lofton provides the following description of the predictive dialing functionality:

A predictive dialer is a computerized dialing system that dials phone numbers from a database, screens out the majority of answering machines, no answers, busy signals and operator intercepts, transferring real people to the telephone agent. . . . The SunDial Windows Predictive Dialer consists of a Dialer Engine and multiple Agent Workstations running on a local-area network.

71.     LiveVox is an outsourced (or "hosted") software-as-a-service ("SaaS") automatic dialing provider. LiveVox uses an ATDS and a predictive dialer. Users access and configure LiveVox's services via the Internet. The LiveVox dialers reside off-site (i.e., in the "cloud"), on LiveVox's computers and connected telecommunications equipment at LiveVox's offices. LiveVox's website states: "LiveVox delivers all outbound dialing modes without the limitations of hardware licenses and telephony infrastructure. Develop predictive, preview or manual dialing

campaigns on demand to suit a variety of portfolios." Moreover, several courts have found that the LiveVox dialer systems constitute a predictive dialer (or otherwise constitute an ATDS). *See Smith v. Markone Fin., LLC*, No. 13-933, 2015 WL 419005, *3 (M.D. Fla. Feb. 2, 2015); *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 225-26 (D. Mass. 2014); *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1220-23 (S.D. Fla. 2014); *Echevvaria v. Diversified Consultants, Inc.*, No. 13-4980, 2014 WL 929275, *6-7 (S.D.N.Y. Feb. 28, 2014).

72.     SoundBite is also a hosted SaaS dialer, provided by Genesys Telecommunications Laboratories, Inc. SoundBite is an ATDS and a predictive dialer. Publicly-available documentation from Genesys explicitly describes SoundBite as the "SoundBite Cloud Predictive Dialer," and states "SoundBite's cloud predictive dialer improves agent efficiency and boosts productivity while reducing costs by offering a wide range of capabilities," and "allows agents to spend their time talking with live people by filtering out unproductive calls including voice mail systems, busy signals, and disconnected numbers resulting in agents only being connected to calls that are answered by live people."

73.     The Enghouse Interactive Contact Center Service Provider (formerly CosmoCall Universe) is a hosted SaaS dialer. It is an ATDS and a predictive dialer. Publicly-available documentation for the system describes Sunrise's Enghouse Interactive Contact Center SP dialer as "includ[ing] predictive dialing" And otherwise describes predictive dialing functionality:

> Contact Center: Service Provider includes a state-of-the-art outbound dialer with an array of campaign management tools. Dialing modes include preview, progressive, predictive, and IVR. Advanced algorithms based on real-time massive simulation are used to dynamically control the pacing, enabling compliance with abandoned call regulations without sacrificing agent productivity. Virtual Outbound Dialing means outbound agents can be anywhere and linked campaigns enables organizations to utilize agent resources most efficiently.

74.     CBE's Manual Clicker Application ("MCA") is a hosted SaaS dialer. It is an ATDS because it is capable of (1) loading more than one (arbitrary) telephone number into a list of numbers that the dialer can call without further human intervention; and/or (2) dialing more than one such telephone number at a time. MCA is an application that enables users to upload a list (or set of lists) of telephone numbers (defined as "groups") via a website for storage within

the application for subsequent outbound dialing. CBE's documentation indicates that, once a group of telephone numbers is selected for outbound dialing, the call center employee can click a button to initiate dialing of the telephone numbers within the group. However, it is evident from CBE's documentation that the clicking action does not actually invoke the dialing of individual digits. Hence, even if the user clicked MCA's interface very rapidly, it would not cause MCA to dial additional numbers while a call is ongoing. Rather, the MCA system simply queues up and stores multiple clicks internally as a counter for that user within the application. As long as a particular user has clicks "on queue" within MCA, MCA will automatically dial the next number from the list of telephone numbers within the selected group and subtracts one of the clicks queued up for that user. MCA stops dialing telephone numbers for a user when that user's counter of clicks reaches zero. In effect, MCA's click counter enables the user to instruct MCA how many telephone numbers it should dial for that user before the user must click the MCA interface again. MCA functions the same way without regard for the telephone number MCA dials, and does not indicate to the user what actual numbers are dialed.

75.     Additionally, CBE, Convergent, and Vantage have obtained an Automatic Dial Announcing Devices permit required under Texas law for an "automated dial announcing device" ("ADAD"). These permits are collectively attached to this complaint as Exhibit 4. The relevant Texas statute defines an ADAD, in part, as a device that can "store telephone numbers to be called or produce numbers to be called through use of a random or sequential number generator." Tex. Util. Code § 55.121(1)(A). Hence, these Agents' ADAD permits indicate that their dialers fall under the same statutory language as ATDS.

76.     Each of the Agents' dialers above constitutes an ATDS, whether or not it constitutes a predictive dialer, because it has the capacities required under 47 U.S.C. § 227(a)(1), *regardless of whether that capacity was used in any particular call. Cf. Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009). These dialers do not require a human to manually dial the individual digits of the TCPA members' cellular telephone numbers. Rather, the dialers are able to electronically dial the TCPA Class members' cellular telephones in an automated fashion. Additionally, all these dialers are capable of storing, producing, and dialing arbitrary

1    telephone numbers (including numbers generated with a random or sequential number

2    generator). In particular, all these dialers are capable of (1) loading more than one (arbitrary)

3    telephone numbers into a list of numbers that the dialer can call without further human

4    intervention; and/or (2) dialing more than one such telephone number at a time.

5          77.    The Agents do not and did not obtain legally effective prior express consent to

6    call the TCPA Class members cellular telephone numbers. The Agents frequently use skip-

7    tracing services to identify TCPA Class members' cellular telephone numbers. Agents also

8    obtained TCPA Class members' cellular telephone numbers by logging the originating number

9    for any incoming calls. When agents obtain TCPA Class members' cellular telephone number in

10   this manner, they does not have legally effective prior express consent to call those numbers.

11         78.    Defendants are vicariously liable for the violations of the TCPA alleged above.

12   Verizon gave the Agents authority to collect debts on past-due Verizon accounts on Verizon's

13   behalf, and the Agents used predictive dialers to call Plaintiff in the course of collecting debts on

14   Verizon's behalf. The Agents acted as Verizon's agents, and violated the TCPA in the course of

15   such agency. Agents, and through vicarious liability, Defendants, violated 47 U.S.C. §

16   227(b)(1)(A)(iii) by placing telephone calls to Lofton and other members of the TCPA Class (1)

17   that were automatically dialed by the agents telephone system; (2) made to a cellular telephone

18   number; (3) which number the agents obtained from a skip-tracing service, and not as the result

19   of the TCPA Class members' transaction with a creditor or alleged creditor.

20         79.    Lofton, on his own behalf, and behalf of the other TCPA Class members, seeks to

21   recover statutory damages (including treble damages for willful violation of the TCPA), as well

22   as injunctive and equitable relief under 47 U.S.C. § 227(b)(3), against Defendants. Lofton brings

23   this action as a private attorney general, and to vindicate and enforce an important right affecting

24   the public interest. Lofton is therefore entitled to an award of attorneys' fees under Code of Civil

25   Procedure section 1021.5 for bringing this action.

26                              **THIRD CAUSE OF ACTION:**
                    **Violation of the UCL Against All Defendants by Plaintiff Individually**
27                     **and on behalf of the IPA and/or TCPA Class**

28         80.    Plaintiff hereby incorporates by reference the allegations contained in all

---

1  preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the

2  IPA and TCPA Class Members.

3       81.    The Agents' conduct violates California Penal Code section 632.7(a) and is

4  therefore unlawful under the UCL. Defendants are vicariously liable for the Agents' conduct

5  under the UCL.

6       82.    The Agents' conduct violates 47 U.S.C. § 227(b)(1)(A)(iii) and is therefore

7  unlawful under the UCL. Defendants are vicariously liable for the Agents' conduct under the

8  UCL.

9       83.    Plaintiff and the other IPA Class members and TCPA Class members have

10 suffered injury in fact and lost property during the course of the foregoing UCL violations in the

11 form of wasted cellular telephone airtime. Lofton, on his own behalf, and on behalf of the other

12 Class members, seeks injunctive and equitable relief under Business & Professions Code §

13 17203, and to recover the costs of the action (including attorneys' fees) under Code of Civil

14 Procedure section 1021.5.

15     WHEREFORE, Plaintiff John Lofton prays that the Court enter judgment and orders in

16 his favor and against Verizon and Does 1 to 100 as follows:

17     a.    An order certifying the classes, directing that this case proceed as a class action,
            and appointing Lofton and his counsel to represent the IPA Class and the TCPA
18          Class;

19     b.    Judgment against Defendants, and in favor of Lofton and the other IPA Class
            members in the amount of $5,000 per violation of the IPA as proven at trial;
20
21     c.    Judgment against Defendants, and in favor of Lofton and the other TCPA Class
            members in the amount of $1,500 per violation of the TCPA to be proven at trial;

22     d.    Equitable and injunctive relief, including injunctions enjoining further violations
            of the IPA, the TCPA, and the UCL;
23
24     e.    An order granting costs and attorneys' fees; and

       f.    Such other and further relief as this Court may deem appropriate.
25

26 Dated: April 8, 2015              By:               s/Ethan Preston
                                           David C. Parisi (162248)
27                                         Suzanne Havens Beckman (188814)
                                           PARISI & HAVENS LLP
28                                         212 Marine Street, Suite 100

Santa Monica, California 90405
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff John Lofton, on his own behalf, and behalf of all others similarly situated*

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: April 8, 2015                    By: _____ s/Ethan Preston _____
                                        David C. Parisi (162248)
                                        Suzanne Havens Beckman (188814)
                                        PARISI & HAVENS LLP
                                        212 Marine Street, Suite 100
                                        Santa Monica, California 90405
                                        (818) 990-1299 (telephone)
                                        (818) 501-7852 (facsimile)
                                        dcparisi@parisihavens.com
                                        shavens@parisihavens.com

                                        Ethan Preston (263295)
                                        PRESTON LAW OFFICES
                                        4054 McKinney Avenue, Suite 310
                                        Dallas, Texas 75204
                                        (972) 564-8340 (telephone)
                                        (866) 509-1197 (facsimile)
                                        ep@eplaw.us

                                        *Attorneys for Plaintiff John Lofton, on his*
                                        *own behalf, and behalf of all others*
                                        *similarly situated*