David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff John Lofton, on his own
behalf, and behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LOFTON, an individual, on his own behalf and on behalf of all others similarly situated, | No. C 13-05665 YGR |
| | Honorable Yvonne Gonzalez Rogers |
| Plaintiff, | Honorable Jacqueline Scott Corley |
| v. | **MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |
| VERIZON WIRELESS (VAW) LLC, and DOES 1-100, inclusive, | Date:       January 26, 2016 |
| Defendants. | Time:       2:00 p.m. |
| | Location:  Courtroom 1 |
| | Ronald V. Dellums Federal Bldg. |
| | 1301 Clay Street |
| | Oakland, California 94612 |

# **TABLE OF CONTENTS**

I.  Introduction ................................................................................................................1

II.  Background ................................................................................................................2

    A.  The Parties Extensively Litigated This Case .................................................2

    B.  The Settlement Negotiations Were Non-Collusive.........................................4

    C.  Lofton Expects Verizon to Vigorously Litigate this Action in Future
        Proceedings Absent Settlement......................................................................4

III.  A Summary of the Settlement Agreement's Benefits and Features ...........................5

    A.  The Agreement's Class Definitions ...............................................................5

    B.  The Plan of Allocation ..................................................................................7

    C.  The Agreement's Release ..............................................................................7

    D.  Attorneys' Fees and an Incentive Award.......................................................8

    E.  Incentive Award ............................................................................................9

    F.  *Cy Pres* Award .............................................................................................9

    G.  CAFA Notice ..............................................................................................10

    H.  Notice to the Class ......................................................................................10

IV.  The Court Should Grant Preliminary Approval to the Parties' Settlement ..............11

    A.  The Court Should Approve the Parties' Notice ............................................12

    B.  The Court Should Approve the Agreement on a Preliminary Basis ..............13

        1.  The Agreement Warrants a Presumption of Fairness as it Followed
            Extensive Discovery and Is the Result of Arms-Length
            Negotiations ................................................................................... 15

        2.  The Agreement Falls within the Range of Possible Approval.................. 15

V.  The Court Should Approve the Plan on a Preliminary Basis...................................16

    A.  The Plan's Proposed Distribution of the Common Fund is Fair.....................16

    B.  The Court Should Appoint A.B. Data as the Settlement Administrator...........18

    C.  The Court Should Approve the Claims Form ................................................18

VI.  The Court Should Certify the IPA and TCPA Classes on a Preliminary Basis.................18

    A.  The IPA and TCPA Classes Meet the Requirements of Rule 23(a) ......................18

B.      The IPA and TCPA Classes Meet the Requirements of Rule 23(b)(3) ................22

VII.    Conclusion ..........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC,*
    243 F.R.D. 377 (C.D. Cal. 2007) ............................................................13

*Alberto v. GMRI, Inc.,*
    252 F.R.D. 652 (E.D. Cal. 2008) ............................................................14

*Am. Civil Liberties Union of Illinois v. Alvarez,*
    679 F.3d 583 (7th Cir. 2012) ....................................................................4

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997) ..............................................................18, 19, 24

*Armstrong v. Board of School Directors of City of Milwaukee,*
    616 F.2d 305 (7th Cir. 1980) ............................................................13, 21

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. 2015) ......................................................9, 10, 15

*Biben v. Card,*
    789 F. Supp. 1001 (W.D. Mo. 1992) ............................................................17

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ....................................................................15

*Browning v. Yahoo! Inc.,*
    No. 04-01463, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006)..................................18

*Californians for Disability Rights, Inc. v. California Dep't. of Transp.,*
    249 F.R.D. 334 (N.D. Cal. 2008) ............................................................22

*Churchill Vill., LLC v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ....................................................................13

*In re Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation,*
    No. 1:14-md-2513-RGS ..........................................................................4, 8

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.,*
    270 F.R.D. 521 (N.D. Cal. 2010)..................................................................6

*Cummings v. Connell,*
    316 F.3d 886 (9th Cir. 2003) ....................................................................22

*Custom LED, LLC v. eBay, Inc.*,
 No. 12-00350, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ................................................17

*Durham v. Continental Central Credit, Inc.*,
 No. 07-1763, 2011 WL 90253 (S.D. Cal. 2011) .............................................................13

*Garner v. State Farm Mut. Auto. Ins. Co.*,
 No. 08-1365, 2010 WL 1687832 (N.D. Cal., Apr. 22, 2010) ...............................................15

*General Tel. Co. of Sw. v. Falcon*,
 457 U.S. 147 (1982) ...................................................................................................21

*In re Google Referrer Header Privacy Litig.*,
 87 F. Supp. 3d 1122, 1129 (N.D. Cal. 2015) ...............................................................13

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 ....................................................................................................... *passim*

*Hartless v. Clorox Co.*,
 273 F.R.D. 630 (S.D. Cal. 2011) ...................................................................................12

*In re Holocaust Victim Assets Litig.*,
 225 F.3d 191 (2d Cir. 2000) ............................................................................................6

*Hughes v. Kore of Indiana Enter., Inc.*,
 731 F.3d 672 (7th Cir. 2013) .....................................................................................12, 13

*Ikonen v. Hartz Mountain Corp.*,
 122 F.R.D. 258 (S.D. Cal. 1988) ...................................................................................19

*Johnson v. Kakvand*,
 192 F.3d 656 ...............................................................................................................8

*Klier v. Elf Atochem N. Am., Inc.*,
 658 F.3d 468 (5th Cir. 2011) ........................................................................................17

*Krakauer v. Dish Network, LLC*,
 No. 14-333, 2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) ..................................................10

*Kristensen v. Credit Payment Servs.*,
 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) ......................................................................20

*Lee v. Ocwen Loan Servicing, LLC*,
 101 F. Supp. 3d 1293, 1297 (S.D. Fla. 2015) ...................................................................17

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
 244 F.3d 1152 (9th Cir. 2001) ......................................................................................23

*Lofton v. Verizon (VAW) Wireless LLC*,
   No. RG12634618 (Sup. Ct. Alameda County Apr. 4, 2013) ..................................4, 20

*Lofton v. Verizon Wireless (VAW) LLC*,
   308 F.R.D. 276 (N.D. Cal. 2015) ..........................................................................3

*Lofton v. Verizon Wireless (VAW) LLC*,
   586 F. App'x 420 (9th Cir. 2014) ..........................................................................3

*Marlo v. United Parcel Serv. Inc.*,
   251 F.R.D. 476 (C.D. Cal. 2008) ..........................................................................18

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ..........................................................................6

*McPhail v. First Command Fin. Planning, Inc.*,
   247 F.R.D. 598 (S.D. Cal. 2007) ..........................................................................21

*Mendoza v. Tucson Sch. Dist. No. 1*,
   623 F.2d 1338 (9th Cir. 1980) ..........................................................................13

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2009) ..........................................................................8

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) ..........................................................................20

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ..........................................................................21

*In re National Western Life Ins. Deferred Annuities Litig.*,
   268 F.R.D. 652 (S.D. Cal. 2010) ..........................................................................19

*Norris-Wilson v. Delta-T Group, Inc.*,
   270 F.R.D. 596 (S.D. Cal. 2010) ..........................................................................18

*Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ..........................................................................14

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ..........................................................................9

*Patel v. Trans Union, LLC*,
   308 F.R.D. 292 (N.D. Cal. 2015) ..........................................................................22

*People v. Clark*,
   6 N.E.3d 154 (Ill. 2014) ..........................................................................4

*People v. Melongo*,
  6 N.E. 3d 120 (Ill. 2014) ...........................................................................................4

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..........................................................................9, 14, 15

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ......................................................................................12

*Simpson v. Vantage Hospitality Group, Inc.*,
  No. 12-04814-YGR, 2012 WL 6025772 (N.D. Cal. Dec. 4, 2012) .........................20

*Smith v. Univ. of Wa. Law Sch.*,
  2 F. Supp. 2d 1324 (W.D. Wash. 1998) ....................................................................21

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ......................................................................................18

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ........................................................................................17

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .....................................................................14

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ......................................................................................23

*Villegas v. J.P. Morgan Chase & Co.*,
  No. 09-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ..................................15

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) ......................................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .........................................................................................19, 20

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ........................................................................................8

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
  571 F.3d 953 (9th Cir. 2009) ......................................................................................23

*Xiufang Situ v. Leavitt*,
  240 F.R.D. 551 (N.D. Cal. 2007) ...............................................................................21

*Young v. Hilton Worldwide, Inc.*,
  565 F. App'x 595 (9th Cir. 2014) (Motz, J. dissenting) .............................................4

**Statutes**

28 U.S.C. § 1715(b) ...............................................................................................................10

47 U.S.C. § 227 .......................................................................................................................1

47 U.S.C. § 227(a)(1) ........................................................................................................1, 20

47 U.S.C. § 227(b)(3)(B) .......................................................................................................17

Cal. Bus. & Prof. Code, § 17200 ............................................................................................1

Cal. Pen. Code § 632.7.................................................................................................1, 2, 20

Cal. Pen. Code § 632.7(a) .....................................................................................................20

Cal. Pen. Code § 637.2(a) .....................................................................................................17

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:53 (4th ed. 2002) ..............13

Fed. R. Civ. P. 23.............................................................................................................12, 18

Fed. R. Civ. P. 23(a) .................................................................................................18, 21, 22

Fed. R. Civ. P. 23(a)(1) .........................................................................................................19

Fed. R. Civ. P. 23(a)(2) .........................................................................................................19

Fed. R. Civ. P. 23(a)(3) .........................................................................................................21

Fed. R. Civ. P. 23(a)(4) .........................................................................................................21

Fed. R. Civ. P. 23(b)(3)....................................................................................................22, 23

Fed. R. Civ. P. 23(c) ..............................................................................................................18

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................................12

Fed. R. Civ. P. 23(e) ..............................................................................................................11

Fed. R. Civ. P. 23(g) ..............................................................................................................22

Fed. R. Civ. P. 23(g)(1)(A) ....................................................................................................22

Fed. R. Evid. 702 ...................................................................................................................10

Under Rule 23(c) and 23(e) of the Federal Rules of Civil Procedure, Plaintiff John Lofton ("Lofton") hereby moves the Court for an order preliminarily approving the proposed Settlement Agreement ("Agreement") with Defendant Verizon Wireless (VAW) LLC ("Verizon"). Verizon does not oppose this Motion.

## I.   Introduction

This case arises out of calls Verizon's debt collector (Collecto, Inc. ("Collecto")) made to Lofton and other cellular telephone users in the course of attempting to collect unpaid Verizon accounts. Lofton alleges that Collecto made these calls using "automatic telephone dialing systems," as defined under 47 U.S.C. § 227(a)(1), so that Verizon is vicariously liable under the Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA") and the unfair competition law (Business and Professions Code 17200) ("UCL"). Lofton also alleges that Collecto recorded some of these calls without disclosing the fact in violation of section 632.7 of California's Invasion of Privacy Act ("IPA") (Cal. Penal Code §§ 630-638), which prohibits intentionally recording a communication with a cellular telephone "without the consent of all parties to [the] communication." Cal. Penal Code § 632.7. Lofton bases his claim that Verizon is vicariously liable for Collecto's IPA violations on Verizon's monitoring disclosure policy, which at the time provided that recording was not disclosed before the initial request to "speak with the account holder" at the beginning of the call, or "to confirm or remove [an] invalid CBR (Can Be Reached) Number" during calls to collect pre-write off debts. (*See* Preston Decl., ECF No. 13-2 ¶7.) Lofton alleges that Collecto's implementation of this policy with respect to calls to wrong numbers violated the IPA.

Collecto was seeking a certain former Verizon subscriber on the three occasions it called Lofton, but Lofton was never a Verizon subscriber. In the operative complaint, Lofton alleged two classes, each involving only "wrong-number" calls: (1) a class of California residents who received calls from Collecto while it was collecting pre-write off debts for Verizon, and whose calls were recorded, and (2) a nationwide class of individuals who were called by Collecto on behalf of Verizon using a predictive dialer. (*See*, *e.g.*, Pl.'s Fourth Am. Compl., ECF No. 142 ¶28.) These proposed classes are also limited to calls made to cell phones and excluded "any

person which Verizon's record[s] identify as a current or past subscriber." (*Id.*)

After years of litigation, the parties were finally able to settle the case. In very broad strokes, the settlement provides a $4 million common fund distributed to class members who submit claims forms, in exchange of release of any claims against Verizon (but not Collecto) related to the calls made by Collecto. Given the number of Class Members and the size of the common fund, the settlement's benefits compare favorably to similar settlements on a pro rata basis. (Parisi Decl., ¶¶16-18.) Conversely, the path of continued litigation is always treacherous and the risk that Lofton might lose, either on the merits or on class certification, and that Class Members would recover nothing, is ever-present. Given the benefits of the settlement and the risks of continued litigation, this settlement is fair, reasonable, and adequate.

## II.      Background

### A.      The Parties Extensively Litigated This Case

This case has been extensively and bitterly litigated for years. Lofton provides a summary of important milestones in the litigation below.

On June 14, 2012, Lofton filed a complaint against Verizon in the Superior Court of California, County of Alameda, No. RG12634618. (Parisi Decl., Ex. 3.)  Lofton's original complaint only alleged that Verizon violated section 632.7 of the IPA. (*Id.*)  On August 10, 2012, Lofton filed a first amended complaint which alleged, e.g., that Collecto violated section 632.7 of the IPA during the course of collecting on the unpaid balance of a Verizon account, and that Verizon was vicariously liable for Collecto's conduct. (Parisi Decl., Ex. 4.)

On December 3, 2012, the Superior Court entered an order denying Verizon demurrer to Lofton's first amended complaint in part and sustaining the demurrer in part with leave for Lofton to amend his complaint. (Parisi Decl., Ex. 5.) On December 10, 2012, Lofton filed his second amended complaint under seal. (*See* Parisi Decl., Ex. 6.) The second amended complaint was unsealed on January 4, 2013. (Parisi Decl., ¶8.)

On February 19, 2013, the Superior Court denied Verizon's demurrer to the second amended complaint. (Parisi Decl., Ex. 7.) On April 4, 2013, the Superior Court denied Verizon's motion for judgment on the pleadings against the second amended complaint. (*Id.*, Ex. 8.)

The parties fought a pitched battle on discovery while in state court. By Lofton's count, the parties presented no less than *fifteen* informal discovery disputes to the state court for resolution. (*See* Parisi Decl., ¶11.)

On November 12, 2013, Lofton filed his third amended complaint which alleged that, e.g., Collecto violated the TCPA as well as the IPA, and that Verizon was vicariously liable for both such violations. (*See* Parisi Decl., Ex. 9.) On December 6, 2013, Verizon removed the case from state court to the United States District Court for the Northern District of California, alleging federal subject matter jurisdiction. (ECF No. 1.)

The parties continued to litigate vigorously after removal. On March 14, 2014, the District Court entered an order denying Verizon's motion to dismiss Lofton's third amended complaint and denying Lofton's motion for preliminary injunction. (ECF No. 22.) Lofton appealed the denial of preliminary injunction, although the Ninth Circuit affirmed. *Lofton v. Verizon Wireless (VAW) LLC*, 586 F. App'x 420 (9th Cir. 2014). On March 18, 2015, the District Court entered an order partially granting and partially denying Verizon's motion for judgment on the pleadings. The March 2015 order dismissed Lofton's TCPA allegations to the extent they involved debt collectors other than Collecto, with leave to amend. (ECF No. 122.) Lofton then filed a fourth amended complaint, which Verizon again moved to dismiss on June 17, 2015. (ECF Nos. 142, 168.) Briefing on the motion to dismiss was continued several times, and the motion was ultimately withdrawn without prejudice while the parties discussed settlement.

Meanwhile, again, the parties' pitched discovery battles continued in federal court. As the Court noted in its February 9, 2015 order, it "has held no fewer than nine hearings and status conferences with the parties . . . and issued six discovery orders . . . in an attempt to move discovery" since August 28, 2014. (ECF No. 106 at 1.) Ultimately, after the parties exhausted the Court's informal discovery dispute resolution procedures, Lofton brought a formally noticed motion for sanctions and a motion to compel. On June 18, 2015, the Court partly granted (and partly denied) those motions based on the conduct of Collecto in responding to requests related to class discovery. *See Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 287 (N.D. Cal. 2015). In short, discovery has been extensive. Lofton counts 19 different sets of requests for

production of documents (totaling 83 separate requests), nine sets of requests for admission (totaling 123 separate requests) and 21 interrogatories.

## B.   The Settlement Negotiations Were Non-Collusive

On September 21, 2015, the Parties participated in a mediation with Mr. Antonio Piazza acting as the mediator. (Blavin Decl., ECF No. 185 ¶¶6-7; 187.) The mediation facilitated good-faith, arm's-length negotiations between Lofton and Verizon and, with Mr. Piazza's assistance, ultimately produced an agreement in principle on the fundamental elements of the instant Agreement.[1] (Parisi Decl., ¶¶13-14.)  The parties have spent several months carefully negotiating the details of the Settlement and analyzing previously-produced data to define the contours of the class definition, as well as the notice and claims procedures.  (*Id*.)

## C.   Lofton Expects Verizon to Vigorously Litigate this Action in Future Proceedings Absent Settlement

If the proposed Settlement did not go forward, Lofton would expect Verizon to vigorously litigate this action, and as a result Lofton would face risks both on the merits and at class certification.

On the merits, Verizon intended to vigorously assert its defenses to Lofton's claims. Verizon has argued that Lofton's IPA claims fail because they fell under an IPA exemption that permits the recording of calls for quality purposes. While this argument was rejected by the state trial court on Verizon's demurrer, Verizon has asserted that it has continuing viability on appeal in light of a recent Ninth Circuit dissent espousing a broad view of the exemption.[2] Verizon also argues that the IPA contains a privacy requirement, and that Collecto's calls to Lofton fail to satisfy this requirement. Although this Court has ruled against imposing such a requirement (ECF No. 22), Verizon has asserted that there is authority from the Illinois Supreme Court, issued after this Court's ruling, which may support its position on appeal.[3]

---

[1]   The September 21 mediation did not result in the compromise of the related case against Collecto (*In re Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, No. 1:14-md-2513-RGS before the United States District Court for the District of Massachusetts).

[2]   (*Cf.* Ex. C to Preston Decl., ECF No. 37-1 at AC02390-95 (*Lofton v. Verizon (VAW) Wireless LLC,* No. RG12634618 (Sup. Ct. Alameda County Apr. 4, 2013)) *with Young v. Hilton Worldwide, Inc.,* 565 F. App'x 595, 597-98 (9th Cir. 2014) (Motz, J. dissenting).

[3]   *People v. Clark*, 6 N.E.3d 154, 159 (Ill. 2014) (citing *Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012)); *People v. Melongo*, 6 N.E. 3d 120 (Ill. 2014).

Likewise, no class has yet been certified in this action, and Verizon intended to vigorously contest class certification. For example, Verizon was expected to argue that no wrong-number class (IPA or TCPA) can be certified because individualized inquiries will be required to determine whether a call was in fact wrongly dialed, and to exclude calls that reached subscribers. Verizon also was expected to oppose certification of the IPA Class based on individualized issues regarding whether class members consented to receiving the calls.

In summary, while Lofton believes he could and should prevail on his claims at class certification and at trial, he is forced to acknowledge the risks of continued litigation. Those risks do not menace only Lofton's claims, they menace the claims of Class Members who may not even know that their rights were violated and have no way to vindicate those rights. The Agreement represents a compromise that accounts for and avoids these risks.

## III.    A Summary of the Settlement Agreement's Benefits and Features

The Agreement is attached as an exhibit to the Declaration of David Parisi in support of this Motion, and incorporates the Website Notice, Direct Notice, and Publication Notices, as well as the proposed Orders for Preliminary and Final Approval. (Ex. 1 to Parisi Decl. (cited as "Agreement" hereinafter).) The Parisi Declaration also attaches Lofton's Plan of Allocation, which incorporates the Claims Form. (Ex. 2 to Parisi Decl. (cited as "Plan" hereinafter).) The parties intend that the Court may modify the Plan while otherwise preserving, and approving the fairness of, the Settlement as a whole. (Settlement, Art. IV(2).)[4]

### A.    The Agreement's Class Definitions

Lofton moves the Court to certify the two classes proposed in the Agreement for settlement purposes, which are defined around the two principal causes of action alleged in the case. First, the Settlement proposes an IPA Class:

> "IPA Class" or "IPA Class Members" means all California residents who, between September 10, 2010 and the date on which Notice is completed, and while located within the state of California, received on their cellular telephone one or more telephone calls from Collecto in its capacity as a third-party vendor engaged by Verizon to collect Pre-Writeoff Debts, where the call was answered by the recipient. The IPA Class excludes any person which Verizon's records

---

[4]    This structure permits the Court to, for instance, require modifications to the allocation or re-designate the *cy pres* recipient without affecting the Settlement.

identify as a current or past Verizon subscriber.

(Agreement, Art. II(18).) The Settlement also proposes a TCPA Class:

> "TCPA Class" or "TCPA Class Members" means all natural persons residing in the United States who, between June 14, 2008 and the date on which Notice is completed, received one or more telephone calls to their cellular telephone number from a representative of Collecto in its capacity as a third-party vendor engaged by Verizon to collect Pre-Writeoff  Debts. The TCPA Class excludes any person which Verizon's records identify as a current or past Verizon subscriber.

(Agreement, Art. II(36).) There are two differences between the class definitions proposed in the Agreement and those alleged in Lofton's complaints that the Court may wish to account for. *See United States District Court for the Northern District of California, Procedural Guidance for Class Action Settlements* ¶1a, *at* http://www.cand.uscourts.gov/ClassActionSettlementGuidance.

First, the Agreement does not encompass persons who received calls from debt collectors besides Collecto. As noted, the Court dismissed the Complaint's TCPA class claims as to such class with leave to amend. (ECF No. 122.) While the Court left open the possibility of such claims, part of the Lofton's compromise with Verizon required that he abandon those claims. Managing discovery against Collecto was difficult for both Lofton and the Court; discovery against the other debt collectors was doubly-so. It is proper for Lofton to "refine [ his] theory . . . liability as a result of the [developments in the case.] [Class plaintiffs] are permitted to press a theory of . . . liability that affords them the best chance of certification and of success on behalf of the class." *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 532 (N.D. Cal. 2010). *See also McBean v. City of New York*, 228 F.R.D. 487, 496-97 (S.D.N.Y. 2005) (rejecting argument that narrowed class definition in class settlement was improper; citing *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) ("broad language of a complaint in a class action lawsuit does not vest in putative class members a right to be part of the class ultimately certified by the District Court").

Second, the Agreement expressly incorporates a "pre-write off" qualification. This is less a change of class definition and more a refinement that explicitly acknowledges the factual underpinning for Lofton's vicarious liability theory. The premise for Lofton's vicarious theory allegations in this case has always been Verizon's policies and practices for collection of "pre-write off" debts that are owed directly to, and collected on behalf of, Verizon, and its agreements

with its "pre-write off" collection agencies. (*See*, *e.g.*, Pl.'s Fourth Am. Compl., ECF No. 142 ¶¶ 42-57.) These "pre-write off" policies, practices, and agreements are substantially different than those applying to post-write off collection. (*See* Battinelli Decl. ¶¶4-6, May 2, 2013.) Litigating Verizon's post-write off practices is a different case: the Court would have to begin adjudicating a whole new set of facts, substantially different than those that have been at issue to date.

### B.      The Plan of Allocation

The Agreement establishes a common fund of $4 million; however, the Plan of Allocation (not the Agreement) controls most aspects of how the fund is distributed. (Agreement, Art. IV(1).) Under the Plan, the Settlement Administrator will deduct settlement administration costs (including notice and claims processing) from the fund. (Plan § 4.) At the time for final approval, Class Counsel and Lofton will seek costs, attorneys' fees, and an incentive award. (*Id.*) After these deductions, each Settlement Class Member is eligible to submit a claim form (which confirms they are a Settlement Class Member). Settlement Class Members who submit approved claim forms will receive a share of the remaining common fund. (*Id.* § 5.) The Settlement Class Members' shares of the net compensation are based on the number of TCPA and IPA claims (either reflected in the data previously produced by Verizon and Collecto or approved in the claims process).  (*Id.* § 3.1.)  Claims Forms that include a unique identification number provided in the Direct Notice result in automatic crediting of the shares calculated by A.B. Data. (*Id.*)

### C.      The Agreement's Release

In exchange, under the Settlement, the IPA Settlement Class releases Verizon and related parties from any claims "that relate to the recording of telephone calls made by Collecto in its capacity as a third-party vendor engaged by Verizon to collect Pre-Writeoff Debts, and that have been, or could have been, asserted in the Action." (Agreement, Art. II(17), VII(2).) Likewise, the TCPA Settlement Class will release Verizon from any claims "that relate to the use by Collecto, in its capacity as a third-party vendor engaged by Verizon to collect Pre-Writeoff Debts, of a dialer allegedly prohibited under the TCPA, and that have been, or could have been, asserted in the Action." (Agreement, Art. II(35), VII(2).) Hence, the Agreement's releases do not sweep any more broadly than is necessary to afford finality and peace to Verizon as to the subject matter

1    actually litigated in this case. The Settlement does not release any Class Members' claims

2    against *Collecto*—Class Members are free to seek additional relief from Collecto either

3    individually or in the *In re Collecto TCPA* proceeding. (Settlement, Art. II(29), VII.)

4        **D.**    **Attorneys' Fees and an Incentive Award**

5        Under the Agreement, Class Counsel may apply to the Court for an award of attorneys'

6    fees and reimbursement of costs and expenses incurred in the prosecution of this action, as well

7    as a class representative incentive award for Lofton. (Agreement, Art. IV(6), (7).) Accordingly,

8    Lofton will file a motion for fees and costs no later than forty (40) calendar days prior to the

9    Final Approval Hearing so that Class Members may have sufficient time to review the motion

10   prior to the time for them to object. *Cf. In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988,

11   995 (9th Cir. 2009).

12       The Agreement is a straight common fund. In a common fund settlement structure, "how

13   the fund is divided between members of the class and class counsel is of no concern whatsoever

14   to the defendants who contributed to the fund." *In re Washington Pub. Power Supply Sys. Sec.*

15   *Litig.*, 19 F.3d 1291, 1301 (9th Cir. 1994). Because the parties negotiated a flat payment from

16   Verizon that included all expenses related to the settlement, concerns about the propriety of

17   negotiations about attorneys' fees need not infect the Agreement. Attorney's fees in the common

18   fund format are a percentage of total recovery for the Classes, so their effect on Class Members'

19   compensation is transparent. Class Counsel may seek up to 33.75 percent of the common fund.

20       While Class Counsel intend to fully document their fee request at Final Approval, a quick

21   glance at the docket confirms that Class Counsel's efforts in this case support a fee award that is

22   moderately higher than the 25 percent benchmark used in this Circuit. The discovery disputes

23   and motion practice in this case, alone, support an attorney fee of 33.75 percent. *See Johnson v.*

24   *Kakvand*, 192 F.3d 656, 661-62 ("it is a known fact that a party's uncooperativeness with pretrial

25   proceedings will increase the amount of time that the opposing attorney must devote to the

26   case"). Class Counsel have roughly $1,320,000 in lodestar in the case (Ethan Preston has an

27   estimated 2,100 hours at $450 an hour (*i.e.*, ($945,000 in fees, excluding costs (Preston Decl.,

28   ¶2); Parisi & Havens, LLP have in excess of 729 hours and $375,000 in lodestar, plus costs in

excess of $38,000 (Parisi Decl., ¶15)). Accounting for all settlement proceedings, Class Counsel

expects their lodestar will equal or exceed 33.75 percent of the common fund. Given the history

of this litigation and the work involved in obtaining the common fund, 33.75 percent is

appropriate compensation to Class Counsel.

### E.   Incentive Award

Lofton plans to seek an incentive award. While Class Counsel also intend to fully

document Lofton's request for an incentive award at Final Approval, "[i]ncentive awards are

fairly typical in class action cases . . . and are intended to compensate class representatives for

work done on behalf of the class, to make up for financial or reputational risk undertaken in

bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

general. Awards are generally sought after a settlement or verdict has been achieved." *Rodriguez*

*v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (cited, followed by *In re Online DVD-*

*Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015)). All these typical factors are here.

Lofton brought his claims to Class Counsel, assisted Class Counsel in identifying the claims and

responding to discovery, sat for a lengthy deposition, devoted substantial time to reviewing

developments in the litigation, and was generally available for consultation with Class Counsel.

*See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) ("amount of

time and effort spent by the class representative" factor in determining incentive fee).

### F.   *Cy Pres* Award

The Plan provides that the common fund is distributed to Class Members who submit

valid claims by mailing checks for the entire amount remaining in the fund. Hence, Lofton

intends to distribute the entire fund to Class Members, after making deductions for himself, the

Settlement Administrator, and Class Counsel. (Plan §§ 4, 5.) The Plan precludes reversion of any

funds back to Verizon (*i.e.*, there is no disfavored reverter provision). (*Id*.) Still, Class Members

have 180 days to deposit their checks and it is likely not every check will be deposited. If any

money remains in the fund after the last check becomes invalid, that money will be paid to the

proposed *cy pres* recipient, Consumer Action. (*Id*. §§ 1.7, 4.) Consumer Action in a national non-

profit which maintains the website privacy-information.org.  (Parisi Decl., ¶24.)  The

organization has received *cy pres* funds in privacy related litigation in the past. (*Id.*) With his final approval motion, Lofton will submit a declaration from the Executive Director of Consumer Action which will document more fully Consumer Action's qualifications.

### G.      CAFA Notice

The Agreement provides for appropriate notice to the Attorney General of the United States and the Attorneys General of all fifty states, within ten days of the submission of this Motion, under 28 U.S.C. § 1715(b). (Agreement, Art. VI.2.)

### H.      Notice to the Class

The Settlement Agreement calls for Notice in several formats.

**Direct Notice.** Through an extensive analysis of previously-produced data and employing sophisticated reverse-lookup databases, the Settlement Administrator expects that at least seventy percent of the potential Class Members to whom Direct Notice will be sent will receive that notice. (*Cf.* Peters-Stasiewicz Decl. ¶15 *with Krakauer v. Dish Network, LLC*, No. 14-333, 2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) (overruling objections to AB Data's declarations as to efficacy of similar reverse-lookup process to identify TCPA Class Members under Rule of Evidence 702).)

First, the Settlement Administrator will prepare a Class List of potential Class Members based on data produced by Collecto. (Plan of Allocation §§ 1.11, 2.) To identify potential TCPA Class Members, the Settlement Administrator will exclude from the Class List (a) calls that did not connect; (b) calls to telephone numbers that appear in Verizon's database of "Can Be Reached" numbers for subscribers; and (c) calls not made to cellular numbers, based on a commercially reasonable database of historical cellular telephone numbers. (*Id.* § 2.) For the records that remain, the Settlement Administrator will extract the recipient telephone number and obtain the corresponding name and mailing address from a reverse lookup database. (*Id.*) To identity potential IPA Class Members, the Settlement Administrator will (1) exclude calls that were not answered (e.g., were terminated or went to voicemail); and (2) filter based on whether the Class Member's mailing address was in California at the time of the call(s). (*Id.* § 2.2.)

Once the Class List is complete, and no later than 25 days after the date that the Court

grants preliminary approval to the Settlement, the Settlement Administrator will mail Direct Notice in the form attached to the Settlement Agreement as Exhibit D to all potential Class Members on the Class List who received calls from Collecto on or after June 1, 2010, through and including January 31, 2013. (Agreement, Art. V.1.b.) This is the time period during which Verizon referred pre-writeoff accounts to Collecto for collection. (Battinelli Decl. ¶¶ 4-6, Nov. 24, 2015.)

**Publication Notice:** A.B. Data has prepared a targeted and cost-efficient Publication Notice program that includes delivery of 165,000,000 impressions of online text and banner ads via Facebook and one-time publication in *People* magazine which has a total audience of over 40 million adults aged 18 or over who own a cellular phone. (See Agreement, Art. V.1.c; Peters-Stasiewicz Decl. ¶23.)

**Website Notice.** No later than 10 days after the Court grants preliminary approval to the Settlement, the Settlement Administrator will post on a publicly accessible Internet website the long-form Website Notice attached to the Settlement Agreement as Exhibit E. (Agreement, Art. V.1.a.) The website also will include the Claims Form and copies of relevant filings and judicial rulings in the case. (Plan § 3.)

## IV.    The Court Should Grant Preliminary Approval to the Parties' Settlement

A class action may not be dismissed, compromised, or settled without approval of the Court. *See* Fed. R. Civ. P. 23 (e). Rule 23(e) provides for the appropriate procedure here: 1) preliminary approval of the proposed settlement; 2) dissemination of notice to the class; and 3) a final approval hearing at which class members may be heard and argument provided about the reasonableness of the settlement. *Via* this Motion, Lofton asks that the Court take the first step in this process and preliminarily approve the proposed Agreement. The Court should preliminarily approve the Agreement and the Plan, certify the IPA and TCPA Classes, appoint Parisi & Havens LLP and Preston Law Offices as Class Counsel and Lofton as class representative on a preliminary basis, appoint A.B. Data, Ltd. ("A.B. Data") as Settlement Administrator, direct the Settlement Administrator to issue Notice as set forth in the Agreement, approve deadlines for objections, exclusions, and claims, and set briefing deadlines and a hearing for final approval.

**A.      The Court Should Approve the Parties' Notice**

Notice is the most important aspect of preliminary approval because it drives all the potentially significant considerations of final approval. Overall, Lofton expects notice will be in the approved range of seventy to ninety-five percent of the potential Class Members that can be identified based on the data produced by Collecto. (*Cf.* Peters-Stasiewicz Decl. ¶26 *with Hartless v. Clorox Co.*, 273 F.R.D. 630, 641 (S.D. Cal. 2011) (approving settlement where direct and publication notice were "estimated to reach 75-83 percent of the class").) Rule 23 does not require perfect notice, but rather "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Direct notice to every Class Member is not possible because some "members of the class in this case can't be identified through reasonable effort." *Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672, 676 (7th Cir. 2013).  Even when absent class members do not receive actual notice, it "does not mean that the best practicable notice under the circumstances was not given to absent class members." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (affirming class settlement absent actual notice to class member).

By definition, the Class Members in this case are not and were never Verizon subscribers. Class Members were not the intended recipients of Collecto's calls, and instead were reached through wrong-number calls. Accordingly, neither Verizon nor Collecto has their contact information; the only identifying information Collecto has is the telephone number at which it called the Class Members. The parties have endeavored to determine the identity of potential Class Members by applying filters to the data produced by Collecto, as described above, to identify the telephone numbers for potential Class Members, then determining those individuals' addresses via a reverse-lookup database.

A robust publication notice program also is expected to provide notice to those Class Members whom the parties cannot identify through direct mail notice:

> When reasonable effort would not suffice to identify the class members, notice by publication, imperfect though it is, may be substituted [even though it] involves a risk that a class member will fail to receive the notice and as a result lose his right to opt out of the class action—a right that can be valuable if his individual claim is sizable.

*Hughes*, 731 F.3d at 677. In sum, "individual notice is not always practical. When that is the case, publication or some similar mechanism can be sufficient to provide notice to the individuals that will be bound by the class action judgment." *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1129 (N.D. Cal. 2015).

Finally, the content of the Direct Notice, Publication Notices, and Website Notice is sufficient. "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard,'" *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)), and is "adequate if it may be understood by the average class member." 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:53 at 167 (4th ed. 2002). The planned notice provides enough information about the Agreement for interested Class Members to determine whether it is appropriate to object, and is clear enough to be understood. Each notice document briefly describes the case and the Settlement, informs Class Members of the deadline and requirements for objections and requests for exclusion, and directs Class Members to sources for additional information.

**B.     The Court Should Approve the Agreement on a Preliminary Basis**

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. Manual for Complex Litigation (Fourth) § 21.632. *Cf. id*. § 40.42 (primary holding in draft order for preliminary approval is that the proposed settlement is "within the range of reasonableness").

> [R]eview of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." [A preliminary approval] hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.

*Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (cited by, e.g., *Durham v. Continental Central Credit, Inc.*, No. 07-1763, 2011 WL 90253, *2 (S.D. Cal. Jan. 10, 2011); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007)).

Notice of a proposed class settlement should be sent when the Court finds that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The more relaxed standard of review for preliminary approval applies because some of the factors relevant to final approval "cannot be fully assessed until the court conducts its fairness hearing, [so that] a full fairness analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation, punctuation omitted).

Nonetheless, "the range of possible" settlements that could receive final approval necessarily informs the Court's decision on preliminary approval. At the final approval stage, the decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (citation, punctuation omitted). The discretion given to the Court reflects the policy "that voluntary conciliation and settlement are the preferred means of dispute resolution [which] is especially true in complex class action litigation." *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). However, the Court's role in approving

> what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625). "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. "[P]arties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Rodriguez*, 563 F.3d at 965. As shown below, the proposed Agreement falls within the range of possible approval and thus satisfies the

requirement for preliminary approval. It is non-collusive, fair and reasonable.

### 1. The Agreement Warrants a Presumption of Fairness as it Followed Extensive Discovery and Is the Result of Arms-Length Negotiations

The first consideration in the preliminary approval analysis is the negotiation process that gave rise to the Agreement. The Ninth Circuit places "a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]" *Id.* "Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the Court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-1365, 2010 WL 1687832, *13 (N.D. Cal., Apr. 22, 2010). The parties' negotiations here were at all times conducted in good faith and at arms-length. (Parisi Decl., ¶¶13-14) Lofton investigated the case, vigorously litigated against Verizon's efforts to dismiss or narrow his claims, and took extensive discovery, including engaging in significant discovery motion practice. The proposed Agreement is the result of Plaintiff fending off repeated dispositive motions while pursuing a multitude of discovery disputes. Ultimately, the parties mediated before Antonio Piazza, a very experienced and well-respected mediator. (*Id.*) The settlement is the result of Mr. Piazza's mediator's proposal.  (*Id.*)  Courts have recognized that "use of a mediator and the presence of discovery support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement." *Bellinghausen*, 303 F.R.D. at 620 (citation, punctuation omitted).[5]

### 2. The Agreement Falls within the Range of Possible Approval

The proposed Agreement falls well within the "range of reasonableness." Based on the information available, Lofton expects (even at an optimistic claim rate of five percent) that each share would still yield payment of over $150 per share.[6] The estimated $150 per share compares

---

[5]  *See also Hanlon*, 150 F.3d at 1029 (district court properly relied on mediator "as independent confirmation that [portion of settlement] was not the result of collusion or a sacrifice of the interests of the class"); *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261, 2012 WL 5878390, *6 (N.D. Cal. Nov. 21, 2012) (use of experienced mediator "tends to support the conclusion that the settlement process was not collusive"). *But see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) ("presence of a neutral mediator, though a factor weighing in favor of a finding of non-collusiveness, is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement").

[6]  Of course, this estimate relates to future, not past, events. By its nature the claims rate and

1   favorably to the benefits achieved in similar cases. (Parisi Decl., ¶¶16-18.) Class Counsel believe

2   that the benefits of the Agreement to the classes sharply weigh in favor of approval. (*Id.* at ¶¶18

3   and 19-23.)  The Agreement provides Class Members significant monetary compensation; many

4   of these Class Members are unaware of their claims, would be unable to litigate those claims

5   even if they were aware of them, and would not obtain any monetary relief from Verizon without

6   the Agreement. Under the Agreement, Settlement Class Members will not only collect a

7   substantial portion of their claims' value, *they can continue to pursue the primary tortfeasor—*

8   *Collecto*.

9          Conversely, even if Lofton continued to pursue the claims to class certification and trial,

10  there is no way to assure that the Class would fare any better than the proposed Agreement.

11  Verizon has shown these last three years that it is more than willing to vigorously litigate this

12  matter. On balance, the proposed Agreement is a compromise—but nonetheless provides an

13  excellent result for the Classes while eliminating the risk, expense, delay, and uncertainty of

14  continued litigation. Accordingly, the proposed Agreement is within range of obtaining final

15  approval and the instant Motion should be granted.

16  **V.      The Court Should Approve the Plan on a Preliminary Basis**

17         In addition to the Settlement, the Court should approve the Plan on a preliminary basis,

18  which requires addressing three items. The Court does not need to decide whether the Plan's

19  distribution of the $4 million common fund is fair at this point, only that it falls within the range

20  of possible final approval. The Court does need to appoint a Settlement Administrator to provide

21  Notice and process claims, and to approve the Claims Form itself.

22         **A.      The Plan's Proposed Distribution of the Common Fund is Fair**

23         The Plan's proposed formula for distribution of the common fund is eminently fair, and is

24  not susceptible to manipulation. The Plan provides that Class Members submit Claims Forms;

25  Class Members whose Claims Forms are approved receive (after deduction of costs) shares from

26  the common fund. (Plan §§ 4, 5, 6.) The claims-submission structure is standard in similar sorts

27  _____
     the per-share benefits are uncertain, and there are any number of factors beyond Lofton's
28   control that could cause the actual claims rate or per-share benefits to be materially
     different than the estimate above.

of TCPA and IPA class settlements. (Parisi Decl., ¶¶16-17.) Here, a claims process is appropriate given the data available regarding potential Class Members. As mentioned, Class Members in this case are not Verizon subscribers subject to Verizon's verification; they are the recipients of Collecto's wrong-number calls. The only available data regarding Class Members are the telephone numbers called by Collecto. In addition, the identity of the individuals receiving calls had to be obtained through reverse lookup. Given these limitations, a claims-made process is appropriate.  *See Lee v. Ocwen Loan Servicing, LLC*, 101 F. Supp. 3d 1293, 1297 (S.D. Fla. 2015) ("a claims-made settlement is the best possible settlement structure" given that "it is not feasible to determine specific information about proceeds on a member-by-member basis").

The shares are based on the number of TCPA and IPA claims (either reflected in the data previously produced by Verizon and Collecto or approved in the claims process). (*Id*. §§ 2.1, 2.3, 3.1, 5) Each TCPA claim (i.e., each individual call) is worth one share; each IPA claim is worth ten shares. (*Id*. §§ 2.1, 2.3.)[7] Again, Lofton has cause to believe each share will likely yield at least $150; this is meaningful enough compensation to provide Class Members an incentive to participate in the settlement and file claims—one of the most crucial factors that drive class member participation.[8] The Plan also places caps and a cut-off on payments to Class Members. The Plan restricts any payments to Class Members over $500 per share; again, it reserves the excess (over $500 per share) for the Cy Pres Recipient.[9] (Plan § 5(4).) Likewise, the Plan prohibits any payments to Class Members under $15; it reserves those funds for the *Cy Pres Recipient* instead.[10] (*Id*. § 5(5).)

---

[7] This comparative value of the IPA and TCPA claims reflects the difference in statutory damages for the two respective statutes, as well as the possibility of multiple calls. *See* 47 U.S.C. § 227(b)(3)(B) ("$500 in damages for each such violation"); Cal. Penal Code § 637.2(a) ($5,000 per violation). Distribution of class settlement benefits does not need to be uniform: some Class Members may benefit more than others if they have stronger claims. *See Custom LED, LLC v. eBay, Inc.*, No. 12-00350, 2014 WL 2916871, *7 (N.D. Cal. June 24, 2014).

[8] *Biben v. Card*, 789 F. Supp. 1001, 1005 (W.D. Mo. 1992) ("settlements should provide sufficient incentive to the notice" and submit claims).

[9] *See Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 n.17 (5th Cir. 2011).

[10] *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) ("'de minimis thresholds for payable claims are beneficial to the class as a whole since they save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs and courts have frequently approved such thresholds, often at $10'"; citation omitted).

### B. The Court Should Appoint A.B. Data as the Settlement Administrator

A.B. Data, an experienced and capable settlement administrator (Peters-Stasiewicz Decl. ¶¶3-6; Parlow Decl. ¶6), should be appointed as Settlement Administrator by the Court. *Cf. Browning v. Yahoo! Inc.*, No. 04-01463, 2006 WL 3826714, *8 (N.D. Cal. Dec. 27, 2006). Additionally, the Plan provides for a mechanism for review and approval of the Settlement Administrator's invoices before it pays itself from the common fund. (Plan § 6.) The Plan also provides another accounting control: the Settlement Administrator has agreed that the Court may order it not to exceed the total estimated costs of $499,342. (*Id.*)

### C. The Court Should Approve the Claims Form

The Court should approve the Claims Form. (*See* Ex. 1 to Plan.) Class Members can file Claims Forms online or mail them. (*Id.*) When Claims Members submit a Claims Form with the identification number from their Direct Notice, they are automatically credited the shares calculated by A.B. Data. (*See id.*; Plan § 3.1.) And the Claims Form clearly directs Class Members that they must file one to receive money from the settlement and clearly explains how to do so. (*See* Ex. 1 to Plan.)

## VI. The Court Should Certify the IPA and TCPA Classes on a Preliminary Basis

Class certification under Rule 23(c) is a prerequisite to preliminary approval of the Agreement. *See* Manual for Complex Litigation (Fourth) § 21.632 (2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("courts must peruse the proposed [settlement] to ratify both the propriety of the certification and the fairness of the settlement").

### A. The IPA and TCPA Classes Meet the Requirements of Rule 23(a)

Certification of a class under Rule 23 requires numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Lofton's "burden at the class certification stage is slight[;] a court need only be able to make a reasonable judgment that Rule 23 requirements are satisfied." *Marlo v. United Parcel Serv. Inc.*, 251 F.R.D. 476, 487 (C.D. Cal. 2008) (quoted by *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 601 (S.D. Cal. 2010)). Further, the standards applicable to settlement classes are less stringent than those that apply to litigation classes.

*Amchem Prods., Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."). The IPA and TCPA Classes meet all of the Rule 23(a)'s requirements.

**The IPA and TCPA Classes Are Sufficiently Numerous:** Based on A.B. Data's analysis of the call data previously provided by Collecto, Lofton has identified 2,691 potential IPA Class Members and 239,975 potential TCPA Class Members whom Collecto called between June 1, 2010 and January 31, 2013. (Parlow Decl. ¶15.) This covers the entire period during which Collecto performed pre-write off collection work for Verizon (and would have followed the policies which triggered this lawsuit), as well as any potentially "straggler" calls that might have occurred after Collecto's August 2012 termination. (Battinelli Decl. ¶¶5-6, Nov. 24, 2015.)

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "Courts have found joinder impracticable in cases involving as few as forty class members." *In re National Western Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 660 (S.D. Cal. 2010) (citing *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) for proposition that, "[a]s a general rule," a class "of 40 or more" satisfies numerosity). The number of IPA and TCPA Class Members well exceed these minimal requirements.

**The Material Factual and Legal Issues are Common to the Members of the IPA and TCPA Classes:** The IPA and TCPA Classes meet the commonality requirement under Rules 23(a)(2). Commonality requires "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions of law or fact "must be of such a nature [they are] capable of classwide resolution"; that is, that the answer to such common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation, punctuation omitted). The commonality element requires that the case be such that a class action will "generate common answers apt to drive the resolution of the litigation." *Id.* (citation, punctuation omitted).

The facts are the same for every member of the TCPA Class: they all received a wrong-

number call from Collecto, made using the same set of dialers, on their cellular telephone. All the telephone call data from which Lofton derived the TCPA Class Member's telephone numbers came from one of three dialers, all of which Lofton contends constitute automatic telephone dialing systems ("ATDSs") under 47 U.S.C. § 227(a)(1). (*Cf.* Cappola Depo. Tr., ECF No. 119-3 at 59:5-18; 61:17-19; 62:13-15.) Further, A.B. Data has screened calls to numbers in Verizon's database of "Can Be Reached" telephone numbers for Verizon current and former subscribers (Zawodny Decl. ¶ 4), which is evidence of an absence of consent. *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) (citing, e.g., *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)). All of these facts are material to TCPA Class Members' claims, and they are all common to each TCPA Class Member. *Cf. Wal-Mart Stores*, 131 S. Ct. at 2551.

Some of these facts are also material to the IPA Class Members' claims. (*See* Ex. B to Preston Decl., ECF No. 37-1 at AC01663 (*Lofton v. Verizon (VAW) Wireless LLC,* No. RG12634618 (Sup. Ct. Alameda County Dec. 3, 2012)).) The other material facts are also common to every IPA Class Member. Section 632.7 of the IPA applies to

> [e]very person who, without the consent of all parties to a communication, intercepts or receives and intentionally records . . . a communication transmitted between two cellular radio telephones, [or, .e.g.,] a cellular radio telephone and a landline telephone . . .

Cal. Pen. Code § 632.7(a). Hence, a plaintiff can establish liability under IPA section 632.7 by proving that "Defendant received [Plaintiff's] communications via calls made on [Plaintiff's] cellular phone, that Defendant recorded the calls, and that Defendant did so without obtaining [Plaintiff's] consent." *Simpson v. Vantage Hospitality Group, Inc.*, No. 12-04814-YGR, 2012 WL 6025772, *6 (N.D. Cal. Dec. 4, 2012).  Here, calls to Class Members were made under the same policy related to call recording, which Lofton contends establishes the absence of consent for recording on a class-wide basis.  (Lastly, by definition, the IPA Class is limited to California residents at the time of Collecto's call.)

These common legal and factual issues are sufficient to establish commonality. Commonality can be "easily satisf[ied]" where class members "all base their claims on the same

legal theory." *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007) (citation, punctuation omitted).

**Lofton is Typical of Both the IPA and TCPA Classes:** Lofton is entirely typical of both the IPA and TCPA Class Members under Rule 23(a)(3). He received wrong-number calls from Collecto (while it was collecting Verizon's pre-write off debts) on his cellular telephone, and Collecto recorded the calls without disclosing it to Lofton first. (*See* Lofton Decl., ECF No. 14; Preston Decl., ECF No. 13-2 ¶¶2-5.) Because Lofton shares these material common factual and legal issues with the other Settlement Class Members, he also satisfies the typicality requirement. "The commonality and typicality requirements of Rule 23(a) tend to merge." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (cited by, e.g., *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 611 (S.D. Cal. 2007) ("the commonality and typicality inquiries overlap in their focus on the similarities in class claims")); *Armstrong*, 275 F.3d at 868-69 ("issue presented with respect to typicality is similar to that presented with respect to commonality"). Typicality only requires that absent class members "have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id.* at 869.[11] Lofton's claims are typical because they are "reasonably co-extensive with those of absent class members; [his claims] need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

**Lofton Is an Adequate Representative for the Classes:** Rule 23(a)(4) requires that Lofton fairly and adequately protect the Classes' interests. The adequacy test poses two questions: (1) are there conflicts between Lofton or his counsel and the other members of the IPA or TCPA Classes, and (2) will Lofton and his counsel vigorously prosecute the class action? *See Hanlon*, 150 F.3d at 1020. *See also Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (adequacy "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood

---

[11] *See also Xiufang Situ*, 240 F.R.D. at 561 ("[t]ypicality requires that named plaintiffs be members of the class they represent and possess the same interest and suffer the same injury as class members," citation, punctuation omitted). *Cf. Smith v. Univ. of Wa. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) (typicality does not turn on "particularized defenses against individual class members").

that the suit is collusive"). No evidence of any potential conflicts exist here: Lofton shares the same claims as the Classes, and has an acute interest in recovering from Verizon. The Ninth Circuit "does not favor denial of class certification on the basis of speculative conflicts." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citation omitted). "[C]ourts have generally declined to consider conflicts . . . sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Blackie*, 524 F.2d at 909.

**Lofton's Counsel Are Adequate Counsel for the Class:** Rule 23(g) was added in 2003 to require a separate analysis of class counsel adequacy independent from the analysis of class representative adequacy under Rule 24(a)(4). *See* Fed. R. Civ. P. 23(g) advisory committee's note on 2003 amendment. Rule 23(g) provides that the Court must consider counsel's work on the case, experience in handling complex litigation, counsel's knowledge and the resources of counsel. Fed. R. Civ. P. 23(g)(1)(A). "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. California Dep't. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) (quoted, followed by *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 306 (N.D. Cal. 2015)). Here, Lofton's counsel has diligently and skillfully litigated this case. Lofton's counsel are generally well qualified and experienced in litigating consumer class actions, and specifically have successfully litigated other consumer class actions in the past. (*See* Preston Decl. ¶3; Parisi Decl. ¶¶19-20.) Counsel have advanced the costs of litigation, representing the Class on a contingent fee basis, and have provided adequate representation to the class pursuant to Rule 23(g).

**B.     The IPA and TCPA Classes Meet the Requirements of Rule 23(b)(3)**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under [Rule] 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. *See also* Manual for Complex Litigation (Fourth) § 21.131. The IPA and TCPA Classes can be certified under Rule 23(b)(3). Certification under Rule 23(b)(3) requires the Court find (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**Common Facts Predominate Both IPA and TCPA Classes:** "The main concern in the predominance inquiry [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). As set forth in the commonality discussion above, the facts material to each Class predominate. All Class Members received wrong-number calls from the same three dialers, subject to the same policy related to recording. These material facts common to each Class significantly outweigh any individual issues. Predominance is satisfied when "[a] common nucleus of facts and potential legal remedies dominates th[e] litigation," *Hanlon*, 150 F.3d at 1022, and "[i]ndividualized issues are few, and most of them are likely to be relatively easy [to resolve]." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1166 (9th Cir. 2001). The IPA and TCPA Class meet Rule 23(b)(3)'s predominance requirement.

A **Class Action is the Superior Dispute Resolution Mechanism:** Predominance overlaps some aspects of superiority. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  *See also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (same). At the outset, assessing superiority under Rule 23(b)(3) "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. "A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino*, 97 F.3d at 1234-35. Hence, the Court must compare a certified class to "individual claims for a small amount of consequential damages," rather than no litigation whatsoever. *Hanlon*, 150 F.3d at 1023. Over two hundred thousand individual TCPA and IPA cases—even assuming those cases were ever filed— is not a realistic alternative to a certified settlement class. Even if hundreds of thousands of individual erstwhile class members actually brought their claims, it "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs. In most cases, litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023. A class proceeding is superior

here.[12]

**VII.     Conclusion**

For the foregoing reasons, Plaintiff respectfully requests the Court grant preliminary approval of the proposed Agreement and the Plan, approve Notice, certify the IPA and TCPA Classes on a preliminary basis, appoint Class Counsel and Lofton as class representative, appoint A.B. Data as Settlement Administrator, enter the proposed Preliminary Order submitted herewith, and set the hearing for final approval.

Dated: December 22, 2015          By:  _/s/Ethan Preston_____
                                               Ethan Preston

                                               David C. Parisi (162248)
                                               Suzanne Havens Beckman (188814)
                                               PARISI & HAVENS LLP
                                               212 Marine Street, Suite 100
                                               Santa Monica, California 90405
                                               (818) 990-1299 (telephone)
                                               (818) 501-7852 (facsimile)
                                               dcparisi@parisihavens.com
                                               shavens@parisihavens.com

                                               Ethan Preston (263295)
                                               PRESTON LAW OFFICES
                                               4054 McKinney Avenue, Suite 310
                                               Dallas, Texas 75204
                                               (972) 564-8340 (telephone)
                                               (866) 509-1197 (facsimile)
                                               ep@eplaw.us

                                               *Attorneys for Plaintiff John Lofton,*
                                               *on his own behalf, and behalf of all*
                                               *others similarly situated*

---

[12]  Because the case can be resolved through a negotiated settlement, the Court does not need to consider issues of manageability relating to trial. *Amchem Prods.*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"; citation omitted).