David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff John Lofton, on his own*
*behalf, and behalf of all others similarly situated*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LOFTON, an individual, on his own behalf and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VERIZON WIRELESS (VAW) LLC, and DOES 1-100, inclusive, <br><br> Defendants. | No. C 13-05665 YGR <br><br> Honorable Yvonne Gonzalez Rogers <br> Honorable Jacqueline Scott Corley <br><br> **MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND PLAN OF DISTRIBUTION** <br><br> Date:       May 24, 2016 <br> Time:       2:00 p.m. <br> Location:   Courtroom 1 <br>              Ronald V. Dellums Federal Bldg. <br>              1301 Clay Street <br>              Oakland, California 94612 |

## **TABLE OF CONTENTS**

I.      Introduction ...................................................................................................1

         A.      The TCPA and IPA Classes Defined by the Agreement ............................2

         B.      The Agreement's Benefits to the TCPA and IPA Class Members ..........3

         C.      The Release Has Appropriate Limitations ................................................3

II.     The Settlement Classes Received the Best Notice That Was Practicable .........4

III.    The Court Should Grant Final Approval to the Agreement ................................7

         A.      The Agreement Warrants a Presumption of Fairness as it Followed
                 Extensive Discovery and Is the Result of Arms-Length Negotiations ..................8

         B.      The Relevant Factors for Analyzing Final Approval Support the
                 Agreement ..........................................................................................10

                 1.      Lofton's Class Claims Are Not So Strong That He Must Prolong
                         Litigation of this Case .............................................................. 11

                 2.      The Risk, Expense, Complexity, and Likely Duration of Further
                         Litigation Favor Final Approval .............................................. 12

                 3.      The Risk of Maintaining Class Action Status Throughout Trial
                         Supports Final Approval ......................................................... 13

                 4.      The Relief Offered in the Agreement Supports Final Approval.............. 13

                 5.      Extent of Discovery and Stage of Proceedings Favors Final
                         Approval ............................................................................... 14

                 6.      Class Counsel's Recommendation Favors Final Approval ..................... 15

                 7.      Absence of Government Opposition Supports Final Approval .............. 15

                 8.      Class Member Reaction Favors Final Approval ....................... 16

IV.     The Court Should Grant Final Approval to the Plan of Allocation ..................17

         A.      The Plan Does Not Reflect Collusion ......................................................17

         B.      The Plan's Settlement Expenses Are Fair and Reasonable ..................19

         C.      The Plan's Distribution of the Residue Is Fair and Reasonable ..........19

V.      The Court Should Finally Certify the Classes for Purposes of Entering Judgment...........22

         A.      The IPA and TCPA Classes Meet the Requirements of Rule 23(a) ....................22

         B.      The IPA and TCPA Classes Meet the Requirements of Rule 23(b)(3) ................26

VI.    Conclusion ................................................................................................................28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*
  No. 06-5428, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ...................................................10

*Air Lines Stewards & Stewardesses Ass'n Local 550 v. Am. Airlines, Inc.*
  455 F.2d 101 (7th Cir. 1972) ..........................................................................................7

*In re Am. Apparel, Inc. S'holder Litig.*
  No. 10-06352, 2014 WL 10212865 (C.D. Cal. July 28, 2014)...........................................16

*Amchem Prods. Inc. v. Windsor*
  521 U.S. 591 (1997) .........................................................................................22, 28

*Anderson v. Nextel Retail Stores, LLC*
  No. 07-4480, 2010 WL 8591002 (C.D. Cal. Apr. 12, 2010) ...............................................6

*Armstrong v. Davis*
  275 F.3d 849 (9th Cir. 2001) ..........................................................................................25

*Bayat v. Bank of the W.*
  No. 13-2376, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015)..............................................18

*Bellinghausen v. Tractor Supply Co.*
  303 F.R.D. 611 (N.D. Cal. 2014) ....................................................................................10

*Blackie v. Barrack*
  524 F.2d 891 (9th Cir. 1975) ..........................................................................................26

*In re Bluetooth Headset Products Liability Litigation*
  654 F.3d 935 (9th Cir. 2011) ....................................................................................17, 18

*Boyd v. Bechtel Corp.*
  485 F. Supp. 610 (N.D. Cal. 1979) .................................................................................15

*Browne v. Am. Honda Motor Co.*
  No. 09-06750, 2010 WL 9499072 (C.D. Cal. July 29, 2010)..............................................6

*California v. IntelliGender, LLC*
  771 F.3d 1169 (9th Cir. 2014) ........................................................................................16

*Californians for Disability Rights, Inc. v. California Dep't. of Transp.*
  249 F.R.D. 334 (N.D. Cal. 2008).....................................................................................26

*Churchill Vill., LLC v. Gen. Elec.*
   361 F.3d 566 (9th Cir. 2004) ...................................................................6, 16

*In re Citric Acid Antitrust Litig.*
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) ....................................................17, 21

*Couser v. Comenity Bank*
   125 F. Supp. 3d 1034 (S.D. Cal. 2015).........................................................14

*Cummings v. Connell*
   316 F.3d 886 (9th Cir. 2003) .....................................................................26

*Custom LED, LLC v. eBay, Inc.*
   No. 12-00350, 2014 WL 2916871 (N.D. Cal. June 24, 2014)................................21

*Ferrington v. McAfee, Inc.*
   No. 10-01455, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012)....................................6

*Forcellati v. Hyland's, Inc.*
   No. 12-1983, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .....................................6

*Garner v. State Farm Mut. Auto. Ins. Co.*
   No. 08-1365, 2010 WL 1687832 (N.D. Cal., Apr. 22, 2010)....................................8

*General Tel. Co. of Sw. v. Falcon*
   457 U.S. 147 (1982)................................................................................25

*In re Google Referrer Header Privacy Litig.*
   87 F. Supp. 3d 1122, 1129 (N.D. Cal. 2015) ..............................................5, 12

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir.1998) ..........................................................*passim*

*Harris v. Vector Mktg. Corp.*
   No. 08-5198, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ....................................19

*Hartless v. Clorox Co.*
   273 F.R.D. 630 (S.D. Cal. 2011) ...................................................................5

*Hesse v. Sprint Corp.*
   598 F.3d 581 (9th Cir. 2010) .......................................................................4

*In re High-Tech Employee Antitrust Litig.*
   No. 11-02509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015).................................18

*Hughes v. Kore of Indiana Enter., Inc.*
   731 F.3d 672 (7th Cir. 2013) .......................................................................5

*Ikonen v. Hartz Mountain Corp.*
   122 F.R.D. 258 (S.D. Cal. 1988) ........................................................................23

*In re Ionosphere Clubs, Inc.*
   156 B.R. 414 (S.D.N.Y. 1993)............................................................................14

*Jack v. Hartford Fire Ins. Co.*
   No. 09-1683, 2011 WL 4899942 (S.D. Cal. Oct. 13, 2011) .............................7

*Kristensen v. Credit Payment Servs.*
   12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) .......................................................24

*Laguna v. Coverall N. Am., Inc.*
   753 F.3d 918 (9th Cir.), *vacated as moot in light of settlement*, 772 F.3d 608
   (9th Cir. 2014) (Chen, J., dissenting) ...............................................................20

*Lane v. Facebook, Inc.*
   696 F.3d 811 (9th Cir. 2012) ........................................................................12, 14

*Lee v. Ocwen Loan Servicing, LLC*
   101 F. Supp. 3d 1293, 1297 (S.D. Fla. 2015) ...................................................20

*Linney v. Cellular Alaska P'ship*
   151 F.3d 1234 (9th Cir. 1998) ...........................................................................14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
   244 F.3d 1152 (9th Cir. 2001) ...........................................................................27

*Lofton v. Verizon Wireless (VAW) LLC*
   308 F.R.D. 276 (N.D. Cal. 2015)...................................................................9, 15

*Marlo v. United Parcel Serv. Inc.*
   251 F.R.D. 476 (C.D. Cal. 2008) .......................................................................22

*McPhail v. First Command Fin. Planning, Inc.*
   247 F.R.D. 598 (S.D. Cal. 2007) .......................................................................25

*In re Mego Fin. Corp. Sec. Litig.*
   213 F.3d 454 (9th Cir. 2000) ........................................................................15, 21

*Mendoza v. Tucson Sch. Dist. No. 1*
   623 F.2d 1338 (9th Cir. 1980) .............................................................................6

*Meyer v. Portfolio Recovery Assocs., LLC*
   707 F.3d 1036 (9th Cir. 2012) ...........................................................................24

*Molski v. Gleich*
   318 F.3d 937 (9th Cir. 2003) .............................................................................25

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................12, 13, 15, 16

*In re National Western Life Ins. Deferred Annuities Litig.*
  268 F.R.D. 652 (S.D. Cal. 2010) ...................................................................23

*In re Netflix Privacy Litig.*
  No. 11-00379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...............................16

*Nielson v. The Sports Auth.*
  No. 11-4724, 2013 WL 3957764 (N.D. Cal. July 29, 2013) ..................................7

*Norris-Wilson v. Delta-T Group, Inc.*
  270 F.R.D. 596 (S.D. Cal. 2010) ...................................................................22

*Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*
  688 F.2d 615 (9th Cir. 1982) ...................................................................8, 10, 11, 14

*In re Omnivision Techs., Inc.*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .....................................................7, 13, 14, 15

*In re Pac. Enters. Sec. Litig.*
  47 F.3d 373 (9th Cir. 1995) ...................................................................15

*Patel v. Trans Union, LLC,*
  308 F.R.D. 292 (N.D. Cal. 2015) ...................................................................26

*Pelletz v. Weyerhaeuser Co.*
  255 F.R.D. 537 (W.D. Wash. 2009) ...................................................................12

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*
  227 F.R.D. 553 (W.D. Wash. 2004) ...................................................................7

*Protective Comm. for Indep. Stockholders v. Anderson*
  390 U.S. 414 (1968) ...................................................................11

*Rodriguez v. W. Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) ................................................................... *passim*

*Rose v. Bank of Am. Corp.*
  No. 11-02390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ...............................14

*Rubenstein v. Republic Nat. Life Ins. Co.*
  74 F.R.D. 337 (N.D. Tex. 1976) ...................................................................7

*Rubio-Delgado v. Aerotek, Inc.*
  No. 13-03105, 2015 WL 3623627 (N.D. Cal. June 10, 2015).........................14, 20

*Satchell v. Fed. Express Corp.*
   No. 03-2878, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)...................................10

*Silber v. Mabon*
   18 F.3d 1449 (9th Cir. 1994) .............................................................................5

*Simpson v. Vantage Hospitality Group, Inc.*
   No. 12-04814-YGR, 2012 WL 6025772 (N.D. Cal. Dec. 4, 2012).........................24

*Smith v. Univ. of Wa. Law Sch.*
   2 F. Supp. 2d 1324 (W.D. Wash. 1998)................................................................25

*Spann v. J.C. Penney Corp.*
   No. 12-0215, 2016 WL 297399 (C.D. Cal. Jan. 25, 2016) ......................................6

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) .........................................................................7, 22

*Torrisi v. Tucson Elec. Power Co.*
   8 F.3d 1370 (9th Cir. 1993) ...............................................................................12

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and*
   *Prods Liab. Litig.*
   No. 10-02151, 2013 WL 3224585 (C.D. Cal. June 17, 2013) ................................16

*In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act*
   *(FACTA) Litig.*
   295 F.R.D. 438 (C.D. Cal. 2014)...........................................................12, 13, 16

*Valentino v. Carter-Wallace, Inc.*
   97 F.3d 1227 (9th Cir. 1996) ..............................................................................27

*Villegas v. J.P. Morgan Chase & Co.*
   No. 09-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...............................10

*Vinole v. Countrywide Home Loans, Inc.*
   571 F.3d 935 (9th Cir. 2009) ..............................................................................27

*Vizcaino v. Microsoft Corp.*
   290 F.3d 1043 (9th Cir. 2002) ............................................................................18

*Wal-Mart Stores, Inc. v. Dukes*
   131 S. Ct. 2541 (2011)................................................................................23, 24

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*
   571 F.3d 953 (9th Cir. 2009) ..............................................................................27

*In re Wells Fargo Loan Processor Overtime Pay Litig.*
   No. 07-1841, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ..............................7

*Williams v. Boeing Co.*
   517 F.3d 1120 (9th Cir.2008) ...............................................................4

*In re Wireless Facilities, Inc. Sec. Litig. II*
   253 F.R.D. 607 (S.D. Cal. 2008) .......................................................8, 12

*Xiufang Situ v. Leavitt*
   240 F.R.D. 551 (N.D. Cal. 2007)......................................................24, 25

*Young v. Hilton Worldwide, Inc.*
   565 F. App'x 595 (9th Cir. 2014) ........................................................11

**Other State Cases**

*Lofton v. Verizon (VAW) Wireless LLC*
   No. RG12634618 (Sup. Ct. Alameda County Apr. 4, 2013)....................11, 24

*People v. Clark*
   6 N.E.3d 154 (Ill. 2014) ...................................................................11

**Federal Statutes**

18 U.S.C. § 2710...............................................................................14

28 U.S.C. § 1715...............................................................................15

47 U.S.C. § 227..................................................................................1

47 U.S.C. § 227(a)(1).......................................................................1, 24

47 U.S.C. § 227(b)(3)(B)......................................................................21

**California Statutes**

Cal. Bus. & Prof. Code § 17200 .............................................................1

Cal. Pen. Code § 632.7........................................................................1, 24

Cal. Pen. Code § 632.7(a)....................................................................24

Cal. Pen. Code § 637.2(a)....................................................................21

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:53 (4th ed.
   2013) .............................................................................................6

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 12:18 (4th ed. 2013) ................................................................................................................20, 21

Fed. R. Civ. P. 23 ...........................................................................................................5, 22

Fed. R. Civ. P. 23(a) ...........................................................................................22, 25, 26

Fed. R. Civ. P. 23(a)(1) ...................................................................................................23

Fed. R. Civ. P. 23(a)(2) ...................................................................................................23

Fed. R. Civ. P. 23(a)(3) ...................................................................................................25

Fed. R. Civ. P. 23(a)(4) ............................................................................................25, 26

Fed. R. Civ. P. 23(b)(3) ............................................................................................26, 27

Fed. R. Civ. P. 23(c) ...................................................................................................1, 22

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................5

Fed. R. Civ. P. 23(c)(3) ...................................................................................................22

Fed. R. Civ. P. 23(e) ....................................................................................................1,7

Fed. R. Civ. P. 23(g) .......................................................................................................26

Fed. R. Civ. P. 23(g)(1)(A) .............................................................................................26

Manual for Complex Litigation (Fourth) § 21.61 ...........................................................10

Manual for Complex Litigation (Fourth) § 21.632 .........................................................22

Manual for Complex Litigation (Fourth) § 21.131 .........................................................26

Under Rule 23(c) and 23(e) of the Federal Rules of Civil Procedure, Plaintiff John Lofton ("Lofton") hereby moves the Court for an order finally approving the proposed settlement agreement (the "Agreement") with Defendant Verizon Wireless (VAW) LLC ("Verizon"). Verizon does not oppose this Motion.

## I.    Introduction

This case arises out of calls Verizon's debt collector (Collecto, Inc. ("Collecto")) made to Lofton and other cellular telephone users in the course of attempting to collect unpaid Verizon accounts. Lofton alleges that Collecto made these calls using "automatic telephone dialing systems," as defined under 47 U.S.C. § 227(a)(1), so that Verizon is vicariously liable under the Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA") and the unfair competition law (Business and Professions Code § 17200) ("UCL"). Lofton also alleges that Collecto recorded some of these calls without disclosing the fact in violation of section 632.7 of California's Invasion of Privacy Act ("IPA") (Cal. Penal Code §§ 630-638), which prohibits intentionally recording a communication with a cellular telephone "without the consent of all parties to [the] communication." Cal. Penal Code § 632.7. Lofton bases his claim that Verizon is vicariously liable for Collecto's IPA violations on Verizon's monitoring disclosure policy, which at the time provided that recording was not disclosed before the initial request to "speak with the account holder" at the beginning of the call, or "to confirm or remove [an] invalid CBR (Can Be Reached) Number" during calls to collect pre-write off debts. (*See* Preston Decl., ECF No. 13-2 ¶7.) Lofton alleges that Collecto's implementation of this policy with respect to calls to wrong numbers violated the IPA.

On January 28, 2016, the Court granted preliminary approval of the parties' Agreement to settle the case. (ECF No. 198.) The Agreement incorporates various forms of notice, and proposed Orders for Preliminary and Final Approval. (Ex. 1 to Parisi Decl. (cited as "Agreement" hereinafter).) The Agreement also contemplates that, separate from the Agreement, Lofton would propose a Plan of Allocation which sets forth how the settlement proceeds are distributed, and which is separate and apart from the Agreement. (Ex. 2 to Parisi Decl. (cited as "Plan" hereinafter).) The parties intend that the Court may modify the Plan while otherwise

preserving, and approving the fairness of, the Settlement as a whole. (Settlement, Art. IV(2).)[1]

## A.    The TCPA and IPA Classes Defined by the Agreement

The Court certified two classes for settlement purposes. The first was the "IPA Class," defined as

> all California residents who, between September 10, 2010 and the date on which Notice is completed, and while located within the state of California, received on their cellular telephone one or more telephone calls from Collecto in its capacity as a third-party vendor engaged by Verizon to collect Pre-Writeoff Debts, where the call was answered by the recipient. The IPA Class excludes any person which Verizon's records identify as a current or past Verizon subscriber.

(ECF No. 198 at ¶4(a).) The second was the "TCPA Class," defined as

> all natural persons residing in the United States who, between June 14, 2008 and the date on which Notice is completed, received one or more telephone calls to their cellular telephone number from a representative of Collecto in its capacity as a third-party vendor engaged by Verizon to collect Pre-Writeoff Debts. The TCPA Class excludes any person which Verizon's records identify as a current or past Verizon subscriber.

(*Id*. ¶4(b).) The Settlement Administrator (A.B. Data, Ltd.) has disseminated notice to the members of the IPA and TPCA Classes. (Supplemental Declaration of Christina Peters-Stasiewicz dated April 13, 2016 ("Supp. Peters-Stasiewicz" Decl.), ¶¶13, 16 & 19.)  In accordance with the Court's Preliminary Approval Order, A.B. Data mailed notice to 190,491 Class Members; published notice on a case website, in *People* magazine, and delivered online text and banner ads via Facebook over the course of five weeks.  (*Id*.); (*Cf*. *id*. *with* ECF No. 198 ¶11.) Between notice directly mailed to the names and addresses derived from Collecto's data and notice published in *People* magazine, the more than 175 million impressions delivered via Facebook, the Settlement Administrator estimates that notice reached at least eighty-five percent of the members of the IPA and TPCA Classes (Supp. Peters-Stasiewicz Decl. ¶22.) As of April 13, 2016, the Settlement Administrator has received approximately 12,000 claims, and has determined that 7,189 of these claims are invalid. (*Id*. ¶28.) The Settlement Administrator has preliminarily determined the remaining 4,819 claims are valid. (*Id*. ¶29.) Of those valid claims, the Settlement Administrator has reviewed and approved 861 claim forms (which consist of 931 TCPA shares and 400 IPA shares). (Supp. Peters-Stasiewicz Decl. ¶29.)  (While class counsel

---

[1]    This structure permits the Court to, for instance, require modifications to the allocation or re-designate the *cy pres* recipient without affecting the Settlement.

may delegate the review and approval of claims to the Settlement Administrator, these determinations is preliminary only—class counsel retains ultimate discretion over the claims process. (Plan § 3.1.) Class counsel plans to consult with the Court on final determinations in the claims process.) The Settlement Administrator has also received two opt-outs, but has not received and no objections to the Agreement. (Supp. Peters-Stasiewicz Decl. ¶¶30 & 31.) As of the date of this filing, no objections have yet been filed with the Court.

Lofton now asks the Court to enter the proposed Final Approval Order. The Final Approval Order (1) holds that the notice provided by the parties to the IPA and TCPA Class Members constituted "the best notice practicable and fully satisfied" applicable legal requirements; (2) overrules any objections to the Agreement; (3) dismisses the case with prejudice, subject to enforcement of the Agreement; (4) releases the claims of Settlement Class Members covered by the Agreement who do not opt out of the settlement; (5) confirms John Lofton as the class representative; and (6) confirms Ethan Preston of Preston Law Offices and David C. Parisi of Parisi & Havens LLP as class counsel. In sum, the entry of the Final Approval Order effectively brings the case to a close.

**B.    The Agreement's Benefits to the TCPA and IPA Class Members**

The Agreement provides for a $4 million common fund. (Agreement, Art. III(1).) Under the Plan separately proposed by Lofton, settlement expenses, attorneys' fees, and incentive award are deducted from the common fund. (Plan § 4.) Then the remainder of the common fund will be distributed to members of the IPA and TPCA Classes who submitted valid claims to the Settlement Administrator—each TCPA violation claimed will receive one share and each IPA violation claimed will receive ten shares. (*Id*. §§ 2.1, 2.3, 5.)  Based on the current information available to the parties (and current estimates about expenses and fees), Lofton expects the common fund will yield $281.12 for each share.  (Parisi Decl. ¶12.)  Given the number of Class Members and the size of the common fund, the settlement's benefits compare favorably to similar settlements on a pro rata basis. (Parisi Decl. ¶¶6 & 7.)

**C.    The Release Has Appropriate Limitations**

In exchange for the benefits the Agreement provides to the IPA and TCPA Classes, those

who do not opt out of those Classes release Verizon from any claims "that relate to the recording of telephone calls made by Collecto" or "that relate to the use by Collecto . . . of a dialer allegedly prohibited under the TCPA" (while Collecto was collecting Pre-Writeoff Debts for Verizon) which "have been, or could have been, asserted in the Action." (Agreement, Art. II(17), II(34), VII(2).) This release comports with Ninth Circuit law. "A settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where [as in this case] the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir.2008), other citations omitted).

However, the Agreement carves out any claims against **Collecto** from the release—TCPA and IPA Class Members are free to seek additional relief from Collecto either individually or in the *In re Collecto TCPA* proceeding. (Agreement, Art. II(28), VII.)

## II.   The Settlement Classes Received the Best Notice That Was Practicable

By definition, the Class Members in this case are not and were never Verizon subscribers, or the intended recipients of Collecto's calls, so neither Verizon nor Collecto has their contact information. Accordingly, the Settlement Administrator had to analyze Collecto's call records to identify calls to potential Class Members, then use a reverse-lookup database to identify Class Members and their current addresses from the telephone numbers that Collecto called. (Parlow Decl. ¶¶7-14, Dec. 22, 2015, ECF No. 193-17.) Only then could the Settlement Administrator mail notice to those potential Class Members who could be identified.  The potential Class Members whose names and addresses could be identified received a postcard which directed them to the full notice on the website maintained by the Settlement Administrator. (Supp. Peters-Stasiewicz Decl. ¶¶10 & 11. *See also* Agreement, Art. V(b); Plan §§ 2, 2.1, 2.2, 2.3, 2.4, 3.)

Because not all potential Class Members could be identified and receive mail notice, notice also was provided via publication in *People* magazine and some 175,707,842 online impressions delivered via Facebook. (Supp. Peters-Stasiewicz Decl. ¶¶17 & 19. *See also* Agreement, Art. V(c).) Together, mail notice, the publication notice in *People,* the more than 175

1    million impressions delivered via Facebook, has resulted in an estimated reach of 85.5%. (Supp.

2    Peters-Stasiewicz Decl. ¶23.)  This number is consistent with the notice achieved in other

3    approved settlements.  (*Cf Hartless v. Clorox Co.*, 273 F.R.D. 630, 641 (S.D. Cal. 2011)

4    (approving settlement where direct and publication notice were "estimated to reach 75-83

5    percent of the class").)

6    **Class Members Received the Best Notice Practicable:**  The Settlement Agreement

7    provided for "the best notice that is practicable under the circumstances, including individual

8    notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

9    23(c)(2)(B).  Here, all Class Members who could be identified based on Collecto's records and

10   whose addresses could be obtained received individual notice, in accordance with Rule 23.

11   Rule 23(c)(2)(B) does not require *perfect* notice: "individual notice is not always

12   practical. When that is the case, publication or some similar mechanism can be sufficient to

13   provide notice to the individuals that will be bound by the class action judgment." *In re Google*

14   *Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1129 (N.D. Cal. 2015). Here, direct notice

15   to every Class Member is not possible because some "members of the class in this case can't be

16   identified through reasonable effort." *Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672, 676

17   (7th Cir. 2013).  Collecto and Verizon never had records that identified the Class Members; all

18   the calls were "wrong-number" calls, so identification of potential Class Members required the

19   use of call records and a reverse-lookup database. Under the circumstances, it was appropriate

20   (and necessary) for the parties to supplement individual notice with publication notice:

21   When reasonable effort would not suffice to identify the class members, notice by
     publication, imperfect though it is, may be substituted [even though it] involves a

22   risk that a class member will fail to receive the notice and as a result lose his right
     to opt out of the class action—a right that can be valuable if his individual claim

23   is sizable.

24   *Id.* at 677. Indeed, even when absent class members do not receive actual notice, it "does not

25   mean that the best practicable notice under the circumstances was not given to absent class

26   members." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (affirming class settlement

27   absent actual notice to class member). The Agreement's notice provision satisfies Rule

28   23(c)(2)(B). Ultimately, the proof of the notice's adequacy is in the pudding: the Settlement

Administrator has received at least 4,819 facially valid claim forms from Class Members, reflecting a claims rate of over 2.5 percent (2.5%) of the total number of direct notices mailed out to Class Members that Lofton was able to identify (i.e., 190,491). (Supp. Peters-Stasiewicz Decl. ¶¶ 13 and 29.) This is evidence of a strong notice program in a consumer class action setting—especially given the fact that Verizon and Collecto never had records identifying the Class Members.[2]

**The Notice's Content Was Sufficient:** The content of the notice was also sufficient. "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard,'" *Churchill*, 361 F.3d at 575 (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)), and is "adequate if it may be understood by the average class member," *Spann v. J.C. Penney Corp.*, No. 12-0215, 2016 WL 297399, *15 (C.D. Cal. Jan. 25, 2016) (citing 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:53 (4th ed. 2013)). Indeed, two Class Members have decided to opt out, "which shows that 'at least some portion of the class understood the notice and chose not to participate in the settlement for whatever reason.'" *Anderson v. Nextel Retail Stores, LLC*, No. 07-4480, 2010 WL 8591002, *12 (C.D. Cal. Apr. 12, 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir.1998)).

The notice provided enough information about the Agreement for interested Class Members to determine whether they should object or make a claim. Each notice document briefly describes the case and the Agreement's salient terms, informs Class Members of the deadline and requirements for objections and requests for exclusion, and directs Class Members to the full notice on the Settlement Administrator's website for additional information. This is sufficient: "no matter how extensive a notice campaign is, more can always be done. . . . The

---

[2] *See Ferrington v. McAfee, Inc.*, No. 10-01455, 2012 WL 1156399, *4 (N.D. Cal. Apr. 6, 2012) ("prevailing rule of thumb with respect to [claims rate in] consumer class actions is 3-5 percent"; quoted by *Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, *6 (C.D. Cal. Apr. 9, 2014)); *see also Browne v. Am. Honda Motor Co.*, No. 09-06750, 2010 WL 9499072, *7 (C.D. Cal. July 29, 2010) (finding "that class members have received adequate notice of the settlement and have had adequate opportunity to file a claim form, opt out of the class, or object to the settlement," "given the significant number of claims that [settlement administrator had] already received").

applicable standard is not the best conceivable notice, but the best notice practicable under the circumstances." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 565 (W.D. Wash. 2004) (punctuation omitted).

**The Notice Provided Class Members Sufficient Time to, e.g., Make a Claim:** Finally, the notice program also provides sufficient time to make a claim, opt out, or object. There are seventy-two (72) days between February 22, 2016 (when the Settlement Administrator mailed notice to Class Members) and May 4, 2016 (when the deadline to submit an objection or Claims Form expires). Given the circumstances presented on this Motion, 72 days is a sufficient amount of time. *See Nielson v. The Sports Auth.*, No. 11-4724, 2013 WL 3957764, *7 (N.D. Cal. July 29, 2013) (where "parties have . . . revised the settlement agreement to provide for a sixty day claims period," it was "sufficient to address the Court's concerns that the notice period is too short"); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. 07-1841, 2011 WL 3352460, *3 (N.D. Cal. Aug. 2, 2011) (approving class settlement that provided class members "60 days to opt out or file a claim form . . . or to file an objection with the Court"). *See also Air Lines Stewards & Stewardesses Ass'n Local 550 v. Am. Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (30 days from notice to object to class settlement "afforded a reasonable time for those interested to make their appearance with due regard to the practicalities and peculiarities of the case, thus satisfying the demands of due process"); *Jack v. Hartford Fire Ins. Co.*, No. 09-1683, 2011 WL 4899942, *1 (S.D. Cal. Oct. 13, 2011) (approving class settlement which provided 45 days to make a claim, object, or opt out); *Rubenstein v. Republic Nat. Life Ins. Co.*, 74 F.R.D. 337, 348 (N.D. Tex. 1976) (45-day period to opt out or make a claim was sufficient).

## III. The Court Should Grant Final Approval to the Agreement

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval," and the court's approval may be granted "only after a hearing and on finding that the [proposal] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *accord In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1040 (N.D. Cal. 2008) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)). The decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed

to the litigants, and their strategies, positions and proof." *Hanlon*, 150 F.3d at 1026 (citation, punctuation omitted). However, the Court's scope of discretion reflects the policy "that voluntary conciliation and settlement are the preferred means of dispute resolution [which] is especially true in complex class action litigation." *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Hence, the Court's role in approving

> what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625). "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. "[P]arties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

The Agreement readily fits within the broad parameters of a fair, reasonable, and adequate settlement, and should be finally approved.

### A. The Agreement Warrants a Presumption of Fairness as it Followed Extensive Discovery and Is the Result of Arms-Length Negotiations

The Court should begin its analysis with a presumption that the Agreement is fair and should be approved. The Ninth Circuit has repeatedly ruled that the courts "put a good deal of stock in [class settlements that are] the product of arms-length, non-collusive, negotiated resolution." *Id. See also Hanlon*, 150 F.3d at 1011, 1027. "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008). *See also Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-1365, 2010 WL 1687832, *13 (N.D. Cal., Apr. 22, 2010) ("[w]here a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the Court begins its analysis with a presumption that the settlement is fair and reasonable").

The record in this case leaves no room to doubt that these negotiations were at arms' length; the parties did not broach settlement until after extensive discovery and years of litigation. Lofton filed his complaint in state court in June 2012. (Preston Decl. ¶28.) On December 3, 2012, the state court denied Verizon's demurrer in part and sustained it in part with leave for Lofton to amend his complaint. (*Id.* ¶29.) On February 19, 2013, the state court denied Verizon's demurrer to the second amended complaint, and on April 4, 2013, the state court denied Verizon's motion for judgment on the pleadings. (*Id.* ¶¶31 & 32.) The parties heavily litigated discovery disputes in state court, presenting no less than fifteen informal discovery disputes to the state court. (*See id.* ¶¶33 – 51.)

On November 12, 2013, Lofton amended his complaint to allege a TCPA claim and Verizon removed from state court to this Court on December 6, 2013. (*Id.* ¶53.) The parties continued to litigate vigorously after removal. On March 14, 2014, the Court denied Verizon's motion to dismiss. (ECF No. 22.) On March 18, 2015, the Court entered an order partially granting and partially denying Verizon's motion for judgment on the pleadings. (ECF No. 122.) On June 17, 2015, Verizon again moved to dismiss after Lofton filed a fourth amended complaint. (ECF Nos. 142, 168.) Briefing on the motion to dismiss was continued several times, and the motion was ultimately withdrawn to permit settlement discussions.

Meanwhile, the parties continued to litigate discovery disputes after the case was removed to federal court. As the Court noted in its February 9, 2015 order, it "has held no fewer than nine hearings and status conferences with the parties . . . and issued six discovery orders . . . in an attempt to move discovery" since August 28, 2014. (ECF No. 106 at 1.) Ultimately, after the parties exhausted the Court's informal discovery dispute resolution procedures, Lofton brought a formally noticed motion for sanctions and a motion to compel. On June 18, 2015, the Court partly granted (and partly denied) those motions based on the conduct of Collecto in responding to requests related to class discovery. *See Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 287 (N.D. Cal. 2015). In sum, discovery has been extensive. Lofton counts 20 different sets of requests for production of documents (totaling 84 separate requests), nine sets of requests for admission (totaling 123 separate requests) and 21 interrogatories.

The parties had no settlement discussion of any substance until September 21, 2015, when they participated in mediation with Mr. Antonio Piazza. (Blavin Decl., ECF No. 185 ¶¶6-7; 187.) The parties' negotiations here were at all times conducted in good faith and at arms-length. (Parisi Decl. ¶5; Preston Decl. ¶82.) "The use of a mediator and the presence of discovery support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement." *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 620 (N.D. Cal. 2014) (citation, punctuation omitted).[3] The Agreement is presumptively fair, reasonable, and adequate.

**B.     The Relevant Factors for Analyzing Final Approval Support the Agreement**

A settlement is "fair, adequate, and reasonable" when "the interests of the class are better served by the settlement than by further litigation." Manual for Complex Litigation (Fourth) § 21.61. The Court should assess the following factors when analyzing final approval:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Rodriguez*, 563 F.3d at 963. "This is by no means an exhaustive list of relevant considerations, nor have we attempted to identify the most significant factors. The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit has "never prescribed a particular formula by which that outcome must be tested[,] . . . ultimately, the [Court's] determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice[.]"*Rodriguez*, 563 F.3d at 965. The Court's decision on the

---

3     *See also Hanlon*, 150 F.3d at 1029 (district court properly relied on mediator "as independent confirmation that [portion of settlement] was not the result of collusion or a sacrifice of the interests of the class"); *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261, 2012 WL 5878390, *6 (N.D. Cal. Nov. 21, 2012) (use of experienced mediator "tends to support the conclusion that the settlement process was not collusive"); *Adams v. Inter-Con Sec. Sys., Inc.*, No. 06-5428, 2007 WL 3225466, *3 (N.D. Cal. Oct. 30, 2007) ("assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Satchell v. Fed. Express Corp.*, No. 03-2878, 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007) (same).

final approval of the Agreement "must show it . . . explored comprehensively all factors", but the Court "is not required to 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Id.* at 964 (quoting *Officers for Justice*, 688 F.2d at 625; other citation, punctuation omitted).

### 1. Lofton's Class Claims Are Not So Strong That He Must Prolong Litigation of this Case

"Basic to [analyzing a proposed settlement] in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation." *Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414, 424-25 (1968). Lofton and his counsel believe their claims to be strong and are confident that they would likely succeed if the case were to proceed to class certification, summary judgment, or trial.

However, Verizon has indicated it will vigorously litigate its defenses to Lofton's claims. Verizon has argued that Lofton's IPA claims fail because they fell under an IPA exemption that permits the recording of calls for quality purposes. While this argument was rejected by the state court on Verizon's demurrer, Verizon has asserted that it has continuing viability on appeal in light of a recent Ninth Circuit dissent espousing a broad view of the exemption.[4] Verizon also argues that the IPA contains a privacy requirement, and that Collecto's calls to Lofton fail to satisfy this requirement. Although this Court has ruled against imposing such a requirement (ECF No. 22), Verizon has asserted that there is authority from the Illinois Supreme Court, issued after this Court's ruling, which may support its position on appeal.[5] Likewise, no class has yet been certified in this action, and Verizon intended to vigorously contest class certification, as described in more detail below.

While Lofton believes he would likely prevail over these defenses, he must concede that continued litigation poses inherent risks—even if those risks might not arise again until trial or appeal. No one can reasonably argue that Lofton's "case is so strong that the inherent risks of

---

[4]   (*Cf. Ex. C to Preston Decl., ECF No. 37-1 at AC02390-95 (*Lofton v. Verizon (VAW) Wireless LLC*, No. RG12634618 (Sup. Ct. Alameda County Apr. 4, 2013)) *with Young v. Hilton Worldwide, Inc.*, 565 F. App'x 595, 597-98 (9th Cir. 2014) (Motz, J. dissenting).)
[5]   *People v. Clark*, 6 N.E.3d 154, 159 (Ill. 2014).

trying the case before a jury would have been obviated." *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 542 (W.D. Wash. 2009) (approving settlement). "Because further litigation would have been protracted and likely have included one or more appeals . . . [risks of continued litigation] support[] approval of the settlement." *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 452 (C.D. Cal. 2014). The Court does not need to make "a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action," or provide "specific commentary on each of the plaintiffs' . . . statutory claims." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012).

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Favor Final Approval

The second factor requires the Court to "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation, punctuation omitted).  Even a quick glance at Court's docket for this case (let alone the state court's docket) provides a good case that further litigation would have been risky, expensive, complex, and prolonged.

Aside from the specific legal defenses identified above, class counsel is also cognizant of the "inherent risks of litigation" and "cost, complexity and time of fully litigating [a] case" favor settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). *Cf. In re Wireless Facilities*, 253 F.R.D. at 612 (recognizing "uncertainties inherent in litigation" in approving settlement). Lofton expects Verizon would vigorously litigate the case at every juncture, considering the potential for damages resulting from thousands of class members with statutory damage claims of $500 or $5,000 per violation. Conversely, if Lofton lost, he and the Classes would lose everything. Where "both sides faced this type of all-or-nothing prospect" from continued litigation, and "the amount at stake was so large, this factor supports approval of the settlement." *In re Toys R Us-Delaware*, 295 F.R.D. at 452. Generally, where "a negotiated resolution provides for a certain recovery in the face of an uncertain legal theory, this factor favors the settlement." *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1131

(N.D. Cal. 2015) ("'[s]ettlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class'"; citation omitted). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural*, 221 F.R.D. at 526 ("proper to take the bird in hand instead of a prospective flock in the bush"; citation, punctuation omitted).

### 3.  The Risk of Maintaining Class Action Status Throughout Trial Supports Final Approval

No class was certified in this case until the Court preliminarily approved certification of a settlement class. Verizon has stated it would vigorously contest certification of a litigation class. It was expected to argue, for example, that no wrong-number class could be certified because individualized inquiries are required to determine whether a call was in fact wrongly dialed, and to exclude calls that reached subscribers. Verizon was also expected to oppose certification of the IPA Class based on individualized issues regarding whether class members consented to recording. While Lofton again believes he would prevail on these arguments, litigating class certification nearly always poses heightened risks.

> If the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely. Even if the Court were to certify the class, there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.

*Omnivision*, 559 F. Supp. 2d at 1041. *See also In re Toys R Us-Delaware*, 295 F.R.D. at 452 ("[a]voiding the risk of decertification, especially where there are doubts concerning the viability of the class, favors approval of the settlement"; citations omitted). The risks attending class certification are especially weighty here, where it is likely many or most members of the Classes are unaware of their claims and have no realistic prospect of litigating those claims even if they were aware of them: individual litigation "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs. In most cases, litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023.

### 4.  The Relief Offered in the Agreement Supports Final Approval

Again, the Agreement provides for a $4 million common fund. (Agreement, Art. III(1).)

This is a substantial recovery in this case—as it would be in most cases. *Cf. Lane*, 696 F.3d at 824 (9th Cir. 2012) (commenting on settlement of 3.6 million-member class claiming $2,500 in statutory damages per violation of 18 U.S.C. § 2710, "[a] $9.5 million class recovery would be substantial under most circumstances, and we see nothing about this particular settlement that undermines the . . . conclusion that it was substantial in this case"). Based on the information available, Lofton expects that the value of each share of the common fund under the Plan will exceed $280.00. (Parisi Decl. ¶12.) This compares favorably to the benefits achieved in similar cases. (Parisi Decl.  ¶¶6 & 7.) *See also Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (settlement amount favored approval, where high claims rate resulted in pro rata payment of approximately $13.75 per class member, even though "recovery amount is on the low end when compared with other TCPA settlements"; cataloguing various TCPA settlements which recovered $100 or less per approved claim).

While $4 million does not represent the maximum potential damages available, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" *Omnivision*, 559 F. Supp. 2d at 1042 (quoting *Officers for Justice*, 688 F.2d at 628). "Of course, it is unlikely that a settlement would result in claimants receiving the full [statutory damages] they might be entitled to under the TCPA [or IPA]." *Rose v. Bank of Am. Corp.*, No. 11-02390, 2014 WL 4273358, *10 (N.D. Cal. Aug. 29, 2014). Such an expectation flies in the face of the reality that "'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 624). Even where a "proposed settlement is only a small percentage of the total expected recovery at trial, 'there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'" *Rubio-Delgado v. Aerotek, Inc.*, No. 13-03105, 2015 WL 3623627, *9 (N.D. Cal. June 10, 2015) (quoting *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993)).

### 5.   Extent of Discovery and Stage of Proceedings Favors Final Approval

"The extent of the discovery conducted to date and the stage of the litigation are both

indicators of [Class] Counsel's familiarity with the case and of [Lofton] having enough information to make informed decisions." *Omnivision*, 559 F. Supp. 2d at 1042 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)). Discovery was extensive. Lofton served 20 different sets of requests for production of documents (totaling 84 separate requests), nine sets of requests for admission (totaling 123 separate requests) and 21 interrogatories. Discovery was also extensively litigated. *See*, *e.g.*, *Lofton*, 308 F.R.D. 276. The record in this case provides eloquent and persuasive support that Lofton and his counsel were well-informed about the merits and risks when they settled this case.

### 6.     Class Counsel's Recommendation Favors Final Approval

The Court should give due weight to class counsel's opinion that the Agreement is fair, reasonable, and adequate. "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural*, 221 F.R.D. at 528 (C.D. Cal. 2004). Indeed, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Omnivision*, 559 F. Supp. 2d at 1043 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Class counsel here are regularly engaged in major complex litigation and have extensive experience in prosecuting consumer class action lawsuits of similar size and complexity. (Parisi Decl. ¶¶8, 13, & 14; Preston Decl. ¶3.) Class counsel have gained an intimate understanding of the instant litigation, and believe the Agreement exceeds the "fair, adequate, and reasonable" standard required for final approval. (Parisi Decl. ¶¶10 & 11; Preston Decl. ¶86.)

### 7.     Absence of Government Opposition Supports Final Approval

On December 30, 2015, Verizon provided notice to various government officials of the Agreement, as required by the Class Action Fairness Act's notice provision in 28 U.S.C. § 1715. (*Cf.* Peters-Stasiewicz Decl. ¶4 (authenticating Verizon's CAFA notice).) "CAFA's class action settlement notice requirement . . . give[s] states a role in ensuring that citizens are equitably

compensated in class action settlements[.]" *California v. IntelliGender, LLC*, 771 F.3d 1169, 1172 (9th Cir. 2014) (citations, punctuation omitted). "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *In re Netflix Privacy Litig.*, No. 11-00379, 2013 WL 1120801, *8 (N.D. Cal. Mar. 18, 2013) (citation, punctuation omitted). *See also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods Liab. Litig.*, No. 10-02151, 2013 WL 3224585, *11 (C.D. Cal. June 17, 2013) (citation, punctuation omitted). As "no state or federal official has raised any objection or concern regarding the settlement" to date, the "governmental participant" favors the final approval of the Agreement. *In re Netflix*, 2013 WL 1120801, at *8.

### 8.  Class Member Reaction Favors Final Approval

The final factor for the Court to consider is the TCPA and IPA Class members' reaction to the Agreement. *See Rodriguez*, 563 F.3d at 967. Here, the members of the Classes have a May 4, 2016 deadline to make a claim, opt out of the Agreement, or make an objection. (ECF No. 198 ¶¶13, 15, 29.) While notice was mailed to at least 190,000 Class members, no Class member has objected and only two have opted out to date. (Supp. Peters-Stasiewicz Decl. ¶¶ 30 & 31.) These facts support final approval. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural*, 221 F.R.D. at 529. *Cf. In re Am. Apparel, Inc. S'holder Litig.*, No. 10-06352, 2014 WL 10212865, *15 (C.D. Cal. July 28, 2014) (collecting cases supporting approval here, including *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (reaction of class supported settlement where "only 45 of the approximately 90,000 notified class members objected to the settlement")); *In re Toys R Us-Delaware*, 295 F.R.D. at 456 (same).

In the event that any objection is filed before the May 4, 2016 deadline, Lofton will address that objection in his reply brief.

**IV.     The Court Should Grant Final Approval to the Plan of Allocation**

The Court should also grant approval to Lofton's proposed Plan of Allocation. "Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement: the distribution plan must be 'fair, reasonable and adequate.'" *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). Lofton addresses the Plan's distinct factors in tandem with reiterating the Plan's salient provisions below. (Lofton's counsel address fees in the separate motion filed concurrently with this one.)

**A.     The Plan Does Not Reflect Collusion**

The design of the Agreement ensures that the Plan adequately addresses the concerns about collusion raised by *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) and its progeny. *Bluetooth* identifies three hallmarks of potential collusion:

(1)     when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

(2)     when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

(3)     when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* at 947 (citations, punctuation omitted). None of the concerns raised by *Bluetooth* apply to this settlement because it is a straight common fund: Verizon's $4 million financial obligation is fixed and does not change, regardless of class counsel's fee. (*See* Agreement, Art. III.)

First, class counsel will not receive a disproportionate share of the settlement. As the motion for a fee award explains, while class counsel seek 33.75 percent of the common fund (which exceeds the 25 percent benchmark in the Ninth Circuit), it is warranted under the circumstances. *Bluetooth*, 654 F.3d at 942. (This is a far cry from *Bluetooth*, where attorneys' fees were "83.2% of the total amount defendants were willing to spend to settle the case," *Id.* at 945.) Further, Verizon's obligation to pay is fixed at $4 million, and the Court will calculate

class counsel's fee as a percentage of that common fund. This makes the underlying conflict completely transparent, well-established, and well-understood: "in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage[;] when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (citation, punctuation omitted).

While the Agreement provides a "'clear sailing'" agreement (in that class counsel may seek 33.75 percent of the common fund as fees), the *second* Bluetooth factor does not apply because "the payment of attorneys' fees [is not] separate and apart from class funds." *Bluetooth*, 654 F.3d at 947. (*Cf.* Agreement, Art. IV(6).) Where "attorneys' fees award will come out of the common fund, there is no 'clear sailing' agreement here that would warrant against settlement approval." *Bayat v. Bank of the W.*, No. 13-2376, 2015 WL 1744342, *7 (N.D. Cal. Apr. 15, 2015) (distinguishing *Bluetooth*, 654 F.3d at 947). *See also In re High-Tech Employee Antitrust Litig.*, No. 11-02509, 2015 WL 5158730, *14 (N.D. Cal. Sept. 2, 2015) ("'clear sailing' provision 'does not signal the possibility of collusion' where . . . fee [is] awarded . . . from the same common fund as the recovery to the class"; citation punctuation omitted). This is consistent with *Bluetooth*'s animating concern is that the defendant might use increased fees for class counsel to "obtain[] an economically beneficial concession . . . in the form of lower monetary payments to class members[.]" *Bluetooth*, 654 F.3d at 947. Because the Agreement leaves it to the Court to divide the $4 million common fund between class claims and attorneys' fee (but caps Verizon's liability for both), it does not provide Verizon any means to leverage fees against class claims. Conversely, a "clear sailing provision reveals the defendant's willingness to pay," but the Agreement here is clear that the full extent of Verizon's willingness to pay is a $4 million common fund. *Id.* at 949.

Similarly, the Plan ensures that "fees not awarded to [class counsel are] added to the class fund"; they do not revert to Verizon. *Bluetooth*, 654 F.3d at 947. Rather, "any fees not awarded to the attorneys will be added to the class fund and ultimately distributed to class members, just as the Ninth Circuit has indicated is preferable." *Bayat*, 2015 WL 1744342, at *7. The fact that

the Plan prohibits reversion of the common fund to Verizon refutes any notion that the Plan is structured to increase fees at the expense of the class claims.

### B.     The Plan's Settlement Expenses Are Fair and Reasonable

The Plan first deducts settlement expenses and attorneys' fees from the common fund established by the Settlement. (Plan §§ 4, 6.) The Settlement Administrator's maximum expenses (which the Court capped at $499,342 (ECF No. 198)) ***work out to just over $2.62 per Class Member to whom the Settlement Administrator mailed direct notice.*** (Supp. Peters-Stasiewicz Decl. ¶11 (notice mailed to 190,491 addresses).) This figure is not out of line with other cases, including those where identifying class members presented fewer complications. *Cf.*, *e.g.*, *Harris v. Vector Mktg. Corp.*, No. 08-5198, 2012 WL 381202, *6 (N.D. Cal. Feb. 6, 2012) (awarding $250,000 in settlement administration costs where claims administrator sent out 68,487 notices, or $2.89 per notice mailed). This figure reflects the usual expenses like postage and publication notice (including *People* magazine and a massive Internet notice campaign via Facebook), as well as tasks like mailing notice to hundreds of thousands of addresses, and processing thousands of claims. But the Settlement Administrator also faced unusual challenges here: it had to analyze and untangle Collecto's convoluted call data (including reconstructing records that Collecto had not preserved), as well the inherent nature of Lofton's classes: "wrong numbers," which Collecto called looking for someone other than the Class members, and for whom neither Collecto nor Verizon had contact information. (Parlow Decl. ¶¶7-14, Dec. 22, 2015, ECF No. 193-17.).

In addition, the Settlement Administrator has been alert in identifying a substantial number of invalid claims (including, e.g., claims by Verizon subscribers, duplicate claims, and claims which present concerns about fraud). (Supp. Peters-Stasiewicz Decl. ¶28.) This is a significant value to Settlement Class Members, as it will prevent the dilution of the common fund that should be reserved for them. The Settlement Administrator's costs are justified.

### C.     The Plan's Distribution of the Residue Is Fair and Reasonable

The Plan requires Class Members to submit Claims Forms; Class Members whose Claims Forms are approved receive a distribution from the remainder of the common fund after deduction of expenses and fees. (Plan §§ 4, 6.) The claims-submission structure is standard in

similar sorts of TCPA and IPA class settlements. (Parisi Decl. ¶6.) A claims process is necessary and appropriate given the limitations of the records available regarding potential Class Members: Class Members in this case are not Verizon subscribers, but are the recipients of Collecto's wrong-number calls. The only available data regarding Class Members are the telephone numbers called by Collecto, so the Settlement Administrator had to obtain their identity through a reverse-lookup database. "There are certain settlements in which a claiming process is inevitable. . . . There would be no way of distributing a settlement fund to the class members without a process by which the class members identified themselves, their mailing addresses, etc." *Newberg on Class Actions* § 12:18 (5th ed. 2015). *See also Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 934 (9th Cir.), *vacated as moot in light of settlement*, 772 F.3d 608 (9th Cir. 2014) (Chen, J., dissenting) ("there are situations in which a claims process is unavoidable (such as a consumer class action where there is no readily accessible record of purchases to identify class members and their contact information)");  *Lee v. Ocwen Loan Servicing, LLC*, 101 F. Supp. 3d 1293, 1297 (S.D. Fla. 2015) ("a claims-made settlement is the best possible settlement structure" given that "it is not feasible to determine specific information about proceeds on a member-by-member basis").

   Hence, the claims process necessarily reflects the reality that Lofton did not have records that definitively identified every last Class Member.

   Lofton and class counsel share concerns about a burdensome claims process and designed the Plan to minimize the burden of submitting a claim form.[6] Hence, the Plan provided for an individual code in the notice mailed to Class Members that automatically filled out the Claims Form with the information that the Settlement Administrator had compiled for that Class Member.

> The Direct Notice shall contain a unique code associated with that Class Member (which is of sufficient length that it is secure, and others cannot reasonably guess a Class Member's unique code) ("Notice Code"). When a valid Notice Code is entered into the website which contains the Website Notice, the website shall

---

[6]  "Intentionally reducing the number of class members who receive a payment by requiring them to jump through unnecessary hoops, however, is . . . highly dubious. . . All else equal, the goal should be to distribute settlement payments to as many class members as possible." *Rubio-Delgado*, 2015 WL 3623627, at *7.

provide a Claims Form that is automatically filled with the information derived from the Class List, but the Class Member shall have the ability to alter such information in the Claims Form.

(Plan § 3.1.) The Plan's Claims Form promotes a higher participation rate by minimizing the barriers to submitting any claims; the Plain requires persons submitting claims do the least possible to confirm they are Class Members.

Finally, the Plan compensates Class Members on the basis of their shares; in turn, shares are based on the number of TCPA and IPA claims (either reflected in the data previously produced by Verizon and Collecto or approved in the claims process). (*Id.* §§ 2.1, 2.3, 3.1, 5) Each TCPA claim (i.e., each individual call) is worth one share; each IPA claim (i.e., every recording of a call to California) is worth ten shares. (*Id.* §§ 2.1, 2.3.) Notably, the Settlement Administrator calculated the number of shares based on the number of distinct telephone calls/recordings. The Plan's share-based compensation scheme reflects and addresses the concern that the IPA and TCPA claims have different values, and the notion that a Class Member with more claims should receive more than a Class Member with a single claim.[7] "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (citations omitted).[8] Finally, while the Plan also placed a minimum (no payments to Class Members under $15) and a maximum (no payments to Class Members over $500 per share) on payments to Class Members, it does not look like the claim process will trigger either the maximum or the minimum. (*Cf.* Plan §§ 5(4); 5(5).) Again, to avoid any confusion, the Plan's maximum caps the amount paid **per share**—not the aggregate amount that may be paid to Class Members who claim more than one TCPA or IPA violation.

The Plan precludes reversion of any funds back to Verizon. (*Id.*) Still, Class Members

---

[7]   The value of the IPA and TCPA claims reflects the difference in statutory damages for the two respective statutes, as well as the possibility of multiple calls. *See* 47 U.S.C. § 227(b)(3)(B) ("$500 in damages for each such violation"); Cal. Penal Code § 637.2(a) ($5,000 per violation).

[8]   *See Custom LED, LLC v. eBay, Inc.*, No. 12-00350, 2014 WL 2916871, *7 (N.D. Cal. June 24, 2014) ("evidence material to the class members' claims" overcame concerns that proposed distribution "would unfairly benefit some class members at the expense of the others"; citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460-61 (9th Cir.2000) as "approving a distribution plan that was bifurcated by time on the ground that the parties showed that the strength of the class members' claims changed at an identifiable date").

have 180 days to deposit their checks and it is likely not every check will be deposited. If any money remains in the fund after the last check becomes invalid, that money will be paid to the proposed *cy pres* recipient, Consumer Action. (*Id.* §§ 1.7, 4.) Consumer Action in a national non-profit which maintains the website privacy-information.org.  (McEldowney Decl. ¶4.)  The organization has received *cy pres* funds in privacy related litigation in the past and "educates consumers about their rights under the [TCPA], how to exercise them to stop unwanted calls, and how to notify the appropriate authorities when their rights have been violated.  (*Id.* at ¶¶ 5 & 6.)

**V.      The Court Should Finally Certify the Classes for Purposes of Entering Judgment**

Final class certification under Rule 23(c) is a prerequisite to approving the Agreement and entering a class-wide final judgment. *See* Fed. R. Civ. P. 23(c)(3); Manual for Complex Litigation (Fourth) § 21.632 (2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton*, 327 F.3d at 952 ("courts must peruse the proposed [settlement] to *ratify both the propriety of the certification* and the fairness of the settlement"; italics added). The Court's certification of the TCPA and IPA Classes is a precondition to consummating the Agreement. (Final Approval Order ¶7.) The Court has already certified the TCPA and IPA Classes in connection with preliminary approval; nothing has changed that would require the Court to revisit that decision.

**A.      The IPA and TCPA Classes Meet the Requirements of Rule 23(a)**

Certification of a class under Rule 23 requires numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Lofton's "burden at the class certification stage is slight[;] a court need only be able to make a reasonable judgment that Rule 23 requirements are satisfied." *Marlo v. United Parcel Serv. Inc.*, 251 F.R.D. 476, 487 (C.D. Cal. 2008) (quoted by *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 601 (S.D. Cal. 2010)).  Further, the standards applicable to settlement classes are less stringent than those that apply to litigation classes. *Amchem Prods., Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."). The IPA and TCPA Classes meet all of the Rule 23(a)'s requirements.

**The IPA and TCPA Classes Are Sufficiently Numerous:** Based on A.B. Data's analysis of the call data previously provided by Collecto, Lofton has identified 2,691 potential IPA Class Members and 239,975 potential TCPA Class Members whom Collecto called between June 1, 2010 and January 31, 2013. (Parlow Decl. ¶15, Dec. 22, 2015, ECF No. 193-17.) This covers the entire period during which Collecto performed pre-write off collection work for Verizon (and would have followed the policies which triggered this lawsuit), as well as any potentially "straggler" calls that might have occurred after Collecto's August 2012 termination. (Battinelli Decl. ¶¶5-6, Nov. 24, 2015, ECF No. 193-15.)

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "Courts have found joinder impracticable in cases involving as few as forty class members." *In re National Western Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 660 (S.D. Cal. 2010) (citing *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) for proposition that, "[a]s a general rule," a class "of 40 or more" satisfies numerosity). The number of IPA and TCPA Class Members well exceed these minimal requirements.

**The Material Factual and Legal Issues are Common to the Members of the IPA and TCPA Classes:** The IPA and TCPA Classes meet the commonality requirement under Rules 23(a)(2). Commonality requires "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions of law or fact "must be of such a nature [they are] capable of classwide resolution"; that is, that the answer to such common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation, punctuation omitted). The commonality element requires that the case be such that a class action will "generate common answers apt to drive the resolution of the litigation." *Id*. (citation, punctuation omitted).

The facts are the same for every member of the TCPA Class: they all received a wrong-number call from Collecto, made using the same set of dialers, on their cellular telephone. All the telephone call data from which Lofton derived the TCPA Class Member's telephone numbers came from one of three dialers, all of which Lofton contends constitute automatic telephone

dialing systems ("ATDSs") under 47 U.S.C. § 227(a)(1). (*Cf.* Cappola Depo. Tr., ECF No. 119-3 59:5-18; 61:17-19; 62:13-15.) Further, A.B. Data has screened calls to numbers in Verizon's database of "Can Be Reached" telephone numbers for Verizon current and former subscribers (Zawodny Decl. ¶ 4, ECF No. 193-16), which is evidence of an absence of consent. *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) (citing, e.g., *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)). All of these facts are material to TCPA Class Members' claims, and they are all common to each TCPA Class Member. *Cf. Wal-Mart Stores*, 131 S. Ct. at 2551.

Some of these facts are also material to the IPA Class Members' claims. (*See* Ex. B to Preston Decl., ECF No. 37-1 at AC01663 (*Lofton v. Verizon (VAW) Wireless LLC,* No. RG12634618 (Sup. Ct. Alameda County Dec. 3, 2012)).) The other material facts are also common to every IPA Class Member. Section 632.7 of the IPA applies to

> [e]very person who, without the consent of all parties to a communication, intercepts or receives and intentionally records . . . a communication transmitted between two cellular radio telephones, [or, e.g.,] a cellular radio telephone and a landline telephone . . .

Cal. Pen. Code § 632.7(a). Hence, a plaintiff can establish liability under IPA section 632.7 by proving that "Defendant received [Plaintiff's] communications via calls made on [Plaintiff's] cellular phone, that Defendant recorded the calls, and that Defendant did so without obtaining [Plaintiff's] consent." *Simpson v. Vantage Hospitality Group, Inc.*, No. 12-04814-YGR, 2012 WL 6025772, *6 (N.D. Cal. Dec. 4, 2012). Here, calls to Class Members were made under the same policy related to call recording, which Lofton contends establishes the absence of consent for recording on a class-wide basis. (Lastly, by definition, the IPA Class is limited to California residents at the time of Collecto's call.)

These common legal and factual issues are sufficient to establish commonality. Commonality can be "easily satisf[ied]" where class members "all base their claims on the same legal theory." *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007) (citation, punctuation omitted).

**Lofton is Typical of Both the IPA and TCPA Classes:** Lofton is entirely typical of both the IPA and TCPA Class Members under Rule 23(a)(3). He received wrong-number calls from Collecto (while it was collecting Verizon's pre-write off debts) on his cellular telephone, and Collecto recorded the calls without disclosing it to Lofton first. (*See* Lofton Decl., ECF No. 14; Preston Decl., ECF No. 13-2 ¶¶2-5.) Because Lofton shares these material common factual and legal issues with the other Settlement Class Members, he also satisfies the typicality requirement. "The commonality and typicality requirements of Rule 23(a) tend to merge." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (cited by, e.g., *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 611 (S.D. Cal. 2007) ("the commonality and typicality inquiries overlap in their focus on the similarities in class claims")); *Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir. 2001) ("issue presented with respect to typicality is similar to that presented with respect to commonality"). Typicality only requires that absent class members "have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id.* at 869.[9] Lofton's claims are typical because they are "reasonably co-extensive with those of absent class members; [his claims] need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

**Lofton Is an Adequate Representative for the Classes:** Rule 23(a)(4) requires that Lofton fairly and adequately protect the Classes' interests. The adequacy test poses two questions: (1) are there conflicts between Lofton or his counsel and the other members of the IPA or TCPA Classes, and (2) will Lofton and his counsel vigorously prosecute the class action? *See Hanlon*, 150 F.3d at 1020. *See also Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (adequacy "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive"). No evidence of any potential conflicts exist here: Lofton shares the same claims as the Classes, and has an acute interest in recovering from Verizon. The Ninth

---

[9] *See also Xiufang Situ*, 240 F.R.D. at 561 ("[t]ypicality requires that named plaintiffs be members of the class they represent and possess the same interest and suffer the same injury as class members," citation, punctuation omitted). *Cf. Smith v. Univ. of Wa. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) (typicality does not turn on "particularized defenses against individual class members").

1   Circuit "does not favor denial of class certification on the basis of speculative conflicts."

2   *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citation omitted). "[C]ourts have

3   generally declined to consider conflicts . . . sufficient to defeat class action status at the outset

4   unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Blackie v.*

5   *Barrack*, 524 F.2d 891, 909 (9th Cir. 1975).

6       **Lofton's Counsel Are Adequate Counsel for the Class:** Rule 23(g) was added in 2003

7   to require a separate analysis of class counsel adequacy independent from the analysis of class

8   representative adequacy under Rule 24(a)(4). *See* Fed. R. Civ. P. 23(g) advisory committee's

9   note on 2003 amendment. Rule 23(g) provides that the Court must consider counsel's work on

10  the case, experience in handling complex litigation, counsel's knowledge and the resources of

11  counsel. Fed. R. Civ. P. 23(g)(1)(A). "Adequate representation is usually presumed in the

12  absence of contrary evidence." *Californians for Disability Rights, Inc. v. California Dep't. of*

13  *Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) (quoted, followed by *Patel v. Trans Union, LLC*,

14  308 F.R.D. 292, 306 (N.D. Cal. 2015)). Here, Lofton's counsel has diligently and skillfully

15  litigated this case. Lofton's counsel are generally well qualified and experienced in litigating

16  consumer class actions, and specifically have successfully litigated other consumer class actions

17  in the past. (*See* Preston Decl. ¶3; Parisi Decl. ¶¶8, 13 & 14.) Counsel have advanced the costs of

18  litigation, representing the Class on a contingent fee basis, and have provided adequate

19  representation to the class pursuant to Rule 23(g).

20      **B.   The IPA and TCPA Classes Meet the Requirements of Rule 23(b)(3)**

21      "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

22  certification must also show that the action is maintainable under [Rule] 23(b)(1), (2) or (3)."

23  *Hanlon*, 150 F.3d at 1022. *See also* Manual for Complex Litigation (Fourth) § 21.131. The IPA

24  and TCPA Classes can be certified under Rule 23(b)(3). Certification under Rule 23(b)(3)

25  requires the Court find (1) that "questions of law or fact common to class members predominate

26  over any questions affecting only individual members;" and (2) "that a class action is superior to

27  other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

28  23(b)(3).

**Common Facts Predominate Both IPA and TCPA Classes:** "The main concern in the predominance inquiry [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). As set forth in the commonality discussion above, the facts material to each Class predominate. All Class Members received wrong-number calls from the same three dialers, subject to the same policy related to recording. These material facts common to each Class significantly outweigh any individual issues. Predominance is satisfied when "[a] common nucleus of facts and potential legal remedies dominates th[e] litigation," *Hanlon*, 150 F.3d at 1022, and "[i]ndividualized issues are few, and most of them are likely to be relatively easy [to resolve]." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1166 (9th Cir. 2001). The IPA and TCPA Class meet Rule 23(b)(3)'s predominance requirement.

A **Class Action is the Superior Dispute Resolution Mechanism:** Predominance overlaps some aspects of superiority. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). *See also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (same). At the outset, assessing superiority under Rule 23(b)(3) "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. "A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino*, 97 F.3d at 1234-35. Hence, the Court must compare a certified class to "individual claims for a small amount of consequential damages," rather than no litigation whatsoever. *Hanlon*, 150 F.3d at 1023. Over two hundred thousand individual TCPA and IPA cases—even assuming those cases were ever filed— is not a realistic alternative to a certified settlement class. Even if hundreds of thousands of individual erstwhile class members actually brought their claims, it "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs. In most cases, litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023. A class proceeding is superior here.[10]

---

[10]   Because the case can be resolved through a negotiated settlement, the Court does not need

**VI.     Conclusion**

For the foregoing reasons, Plaintiff respectfully requests the Court grant final approval of the proposed settlement, and enter the Final Preliminary Order submitted herewith.

Dated: April 14, 2016            By:  _____/s/Ethan Preston_____
                                                    Ethan Preston

                                                    David C. Parisi (162248)
                                                    Suzanne Havens Beckman (188814)
                                                    PARISI & HAVENS LLP
                                                    212 Marine Street, Suite 100
                                                    Santa Monica, California 90405
                                                    (818) 990-1299 (telephone)
                                                    (818) 501-7852 (facsimile)
                                                    dcparisi@parisihavens.com
                                                    shavens@parisihavens.com

                                                    Ethan Preston (263295)
                                                    PRESTON LAW OFFICES
                                                    4054 McKinney Avenue, Suite 310
                                                    Dallas, Texas 75204
                                                    (972) 564-8340 (telephone)
                                                    (866) 509-1197 (facsimile)
                                                    ep@eplaw.us

                                                    *Attorneys for Plaintiff John Lofton,*
                                                    *on his own behalf, and behalf of all*
                                                    *others similarly situated*

---

to consider issues of manageability relating to trial. *Amchem Prods.*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"; citation omitted).